C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Plaintiff

ENDORSED
FILED

2012 MAR -8  AM 8:08

David H. Yamasaki, Chief Executive Officer/Clerk of the Superior Court
County of Santa Clara, California

By:_____ Deputy Clerk

R. CHOPOFF

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| GLYNNIS BOHANNON, individually and on behalf of her minor child I.B. and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 112CV219256<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Glynnis Bohannon, individually and on behalf of the class described below, by their attorneys, make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff and counsel, which are based on personal knowledge.

### I.    OVERVIEW OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and other parents and guardians whose minor children purchased from defendant Facebook a virtual good, incurring charges for voidable purchases that Facebook has misrepresented to be "final" and nonrefundable.

2. In addition to its distinction as operator of the largest social network, Facebook also provides a payment system, Facebook Credits, for users to make purchases within

First Amended Class Action Complaint
1

Facebook. For example, a user can purchase a "virtual flower" to "send" to another friend, causing a picture to appear on the friend's page. A user can also use Facebook Credits, which the user has purchased from Facebook in exchange for real-world currency, to acquire points, coins, or virtual currency within Facebook Applications or "Apps" that appear within the Facebook site.

3. Facebook knows that many of its users are minors. Facebook specifically permits minors to register and use its service: Facebook's Statement of Rights and Responsibilities requires only that a user be at least thirteen years of age. Furthermore, in order to create a Facebook account, a user must specify his or her date of birth. Through its Statement of Rights and Responsibilities contract, Facebook specifically requires that users agree "not [to] provide any false personal information on Facebook." Millions of Facebook's users have thereby told Facebook that they are minors, and Facebook has actual knowledge of each of its minor users' age and status as a legal infant. Furthermore, users' youth is readily apparent through the profiles they create on Facebook. For example, millions of users say they are enrolled in junior high school, middle school, or high school.

4. Facebook has uniformly told all of its users that purchases through Facebook Credits are final, including purchases within Apps and purchases of virtual goods. Facebook's Payments Terms says "Don't commit to a transaction unless you are ready to pay, because all sales are final." When consumers seek refunds from Facebook, Facebook denies that it is obliged to provide such refunds.

5. Plaintiff brings this action for monetary, declaratory and equitable relief under California's contract laws, the California Consumers Legal Remedies Act at California Civil Code § 1750 et seq., California Business and Professions Code Sections 17200 et seq., and/or for Unjust Enrichment.

## II. JURISDICTION AND VENUE

6. This Court has personal and subject matter jurisdiction over this case. This Court has personal jurisdiction over Defendant, who is a California citizen. The amount in controversy exceeds the jurisdictional minimum for unlimited superior court.

7. Defendant is a California corporation, has its principal place of business in Palo Alto, California, transacts business in this county, has subjected itself to this Court's jurisdiction through such activity, and a substantial part of the events and omissions giving rise to the claim occurred in this county. Accordingly, venue is proper in this county under Code of Civil Procedure 395(a).

### III. PARTIES

8. Plaintiff Glynnis Bohannon resides in Phoenix, Arizona with her son I.B. I.B. joined Facebook on or about July 11, 2011. I.B. was then, and is still now, a minor.

9. Defendant Facebook is a California corporation with its principal place of business in Palo Alto, California.

### IV. FACTUAL ALLEGATIONS

10. Facebook describes itself as "a social utility that helps people communicate more efficiently with their friends, family and coworkers." Facebook has more than 800 million active users worldwide and is the single most visited web site in the United States.

11. When users make payments within Facebook apps and on the Facebook site, Facebook requires that all such payments flow through the Facebook Credits system.

12. Facebook allows third-party application developers to provide software "Apps" that appear within the Facebook site. Facebook supervises and controls the function and operation of the apps it allows to appear on the Facebook platform. Facebook has the right and ability to remove any App at any time, or to prevent an App from soliciting or receiving payment through Facebook Credits.

13. In all instances relevant to this action, the purchase and/or purchase of virtual goods is a transaction directly between Facebook and the consumer. Facebook charges consumers' credit or debit card, PayPal account, mobile phone, or other payment account. No App developer ever receives a Facebook customer's payment information.

14. Facebook users may fund their Facebook Credits purchases by various methods including credit card, debit card, Paypal, and mobile phone. Facebook draws funds from the specified source to pay for users' purchases. For purchases from third-party Apps, Facebook

keeps a 30% fee for itself and forwards the balance to the provider of the App.

15. Anyone thirteen years old or older can open an account on Facebook. Opening an account requires, among other things, selecting a user name and password, providing certain contact and other information, and agreeing to Facebook's Statement of Rights and Responsibilities which incorporates by reference Facebook's Payment Terms.

16. Many Facebook apps are targeted to minors. For example, Facebook Apps often feature cartoon-style images, exaggerated facial features, children within the applications, animals, and other design characteristics consistent with use by minor children.

17. Many Facebook Apps are, by design, highly addictive. Often, an App presents a virtual environment in which a user seeks to build an imaginary city, farm, or other facility – a task made difficult by the limited supplies. Facebook sells Facebook Credits for real money, which allows users to obtain additional supplies to speed progress and otherwise enhance use of the App and play of the game.

18. For example, the App FarmVille is free for new players to start playing. However, the object of the game is to build a thriving virtual farm, a process rendered progressively more difficult by inadequate supplies, but the process is greatly sped up by obtaining Facebook Credits to be used in the App. By using Facebook Credits to buy a virtual "biplane," a FarmVille player can "instant grow" his virtual crops rather than waiting several hours for crops to "grow." Similarly, if virtual crops "wither" and "die," a FarmVille player can pay real money to "unwither" the crops.

19. Facebook Credits are obtained by users for consumption in many games and Apps that use the same business scheme as FarmVille. For each such game, Facebook and its App partners sell Facebook Credits that users must obtain to enjoy the game as it was designed to be played. While using such a game, a player sees a screen that sells virtual currency, so that the player can "build" things or "have" other virtual things.

20. In-App purchases and virtual goods are substantial money-makers for Facebook. Facebook charges App developers a 30% fee on users' payments via Facebook Credits, and Facebook does not allow App developers to charge users via methods other than Facebook

First Amended Class Action Complaint
4

Credits. Facebook's recent SEC filing indicates that Facebook's revenue from "Payments and other fees" was $557 million in 2011.

21. Facebook has not offered to return any of the millions of dollars it received from minor children's purchases of Facebook Credits for virtual currency or items within Facebook Apps. To the contrary, Facebook has represented that, with regard to Facebook Credits, "all sales are final," and that minors and their parents and guardians have no proper claim to refunds for purchases originated from accounts that belong to minors—purchases with regard to which Facebook is on constructive and actual notice that it is doing business with minors. Facebook carefully stores and tracks the personal information associated with each Facebook profile and ID, including whether or not the Facebook user is a minor.

22. In October 2011, I.B. (the minor child of Plaintiff Glynnis Bohannon) asked his mother Glynnis Bohannon for permission to spend $20 on his Facebook account using Glynnis Bohannon's Wells Fargo Master Card. I.B. gave his mother $20 in cash in exchange. He purchased Facebook Credits from Facebook for use in "Ninja Saga." Subsequently, without any notice that his mother's credit card information had been stored by Facebook and the Facebook Credits system, or that his mother's credit card information was being used again after the initial $20 purchase, I.B. made in-game purchases in which he thought he was expending virtual, in-game currency. In fact, Bohannon's credit card was charged repeatedly, and the charges totaled several hundred dollars.

23. Upon learning of these charges, Glynnis Bohannon attempted to find a mechanism to contact Facebook to dispute the charges. After several hours of searching, Bohannon finally found a phone number at Facebook, and she left a message about her problem, to which she has to date received no reply. She was never able to find an email address for someone at Facebook who could process her complaint. Glynnis Bohannon has still not received a refund.

## V.   CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action for monetary and equitable relief pursuant to California Code of Civil Procedure section 382, California Civil Code section 1781,

and applicable case law on behalf of the following class: All parents and legal guardians in the United States whose minor children made unauthorized purchases of Facebook Credits from the minor child's Facebook account (the "Class"). Excluded from the Class are Facebook; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the federal judiciary.

25. The members of the Class are ascertainable, and are so numerous that joinder is impracticable. Plaintiff believes there are thousands of members of the Class, whose names and addresses are in Facebook's records.

26. There are questions of law or fact common to the Class, and such questions predominate over individual questions. Facebook pursued a common course of conduct toward the Class as alleged. This action arises out of a common nucleus of operative facts and questions of law and fact which predominate over individual questions. Common questions include:

(a) Whether Facebook sold in-App purchases and virtual goods;

(b) Whether Facebook sold in-App purchases and virtual goods to minors;

(c) Whether Facebook knew that many gaming apps are designed to induce minors to make purchases;

(d) Whether Facebook intended for minors to purchase such apps and virtual currency without the knowledge or authorization of the minors' parents or guardians;

(e) Whether Facebook's sales to minors of in-App purchases and virtual goods constitute voidable contracts;

(f) Whether Facebook's scheme to sell in-App purchases and virtual goods to minors without providing refunds under any circumstance violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and Unfair Competition Law, Business & Professions Code § 17200 *et seq.*;

(g) Whether Facebook represented to minors and their parents and guardians that purchases of Facebook Credits are non-refundable under all circumstances;

(h) Whether Facebook engaged in deceptive, misleading, unfair, fraudulent and/or otherwise unlawful practices through its non-disclosure of material facts and affirmative misleading statements regarding the rights of minors to disaffirm contracts;

(i) Whether Plaintiff and members of the Class are entitled to recover restitution of monies remitted to Defendants as a result of the actions and omissions alleged herein;

(j) Whether Defendant should be enjoined from continuing to make deceptive, misleading, unfair, fraudulent and/or otherwise unlawful practices through its non-disclosure of material facts and affirmative misleading statements regarding the rights of minors to disaffirm contracts;

(k) Whether Facebook was unjustly enriched by its scheme; and

(l) Whether Facebook and the Class have been damaged, and if so, in what amount.

27. Plaintiff's claims are typical of the claims of other members of the Class, and there is no defense available to Facebook that is unique to Plaintiff. Plaintiff paid hundreds of dollars to Facebook for unauthorized purchases made by her minor child.

28. Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has the ability to assist and adequately protect the rights and interests of the Class during the litigation. Further, Plaintiff is represented by counsel who are competent and experienced in this type of class action litigation.

29. This class action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

(a) The joinder of thousands of geographically diverse individual class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources;

(b) There is no special interest by class members in individually controlling prosecution of separate causes of action;

(c) Class members' individual claims are relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual class members addressing their loss;

(d) When Facebook's liability has been adjudicated, claims of all class members can be determined by the Court and administered efficiently in a manner that is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of many individual cases;

(e) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

(f) This class action will assure uniformity of decisions among class members;

(g) Without this class action, restitution will not be ordered and Facebook will be able to reap the benefits or profits of its wrongdoing; and

(h) The resolution of this controversy through this class action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying indifferent adjudications of their rights.

30. Further, class certification is appropriate because Facebook has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory and monetary relief appropriate. In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for Facebook and inconsistent or varying adjudications for all parties. A class action is superior to other available methods for the fair and efficient adjudication of this action.

## VI.   CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

31. California's substantive laws apply to every member of the Class, regardless of where in the United States the class member resides. Facebook imposes on its account holders a Statement of Rights and Responsibilities contract that must be accepted before becoming an account holder and before joining Facebook or making any purchases via Facebook Credits. This contract provides as follows:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this

Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

32. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

33. Facebook's United States headquarters and principal place of business is located in California. Facebook also owns property and conducts substantial business in California, and therefore California has an interest in regulating Facebook's conduct under its laws. Facebook's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

34. California is also the state from which Facebook's alleged misconduct emanated. This conduct similarly injured and affected Plaintiff and all other class members.

35. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Declaratory Judgment)

36. Plaintiff repeats and re-alleges herein the foregoing allegations.

37. All Facebook Credit purchases and in-App purchases for virtual goods via Facebook Credits that Facebook presents for sale constitutes an offer to enter into a sales contract.

substantial sums Facebook pocketed.

53. Plaintiff, on behalf of herself and for all those similarly situated, demands judgment against Facebook for equitable relief in the form of restitution and/or disgorgement of funds paid to Facebook.

54. In accordance with § 1782(a) of the CLRA, counsel will serve Facebook, by certified mail, with notice of its alleged violations of the CLRA.

55. If Facebook does not fully meet the demand set forth in that letter, then Plaintiff will amend or seek leave to amend this complaint in order to seek the following relief under CLRA § 1780, for Facebook's violations of CLRA §§ 1770(a)(5) and (a)(7):

- actual damages under Cal. Civ. Code § 1780(a)(1);
- punitive damages under Cal. Civ. Code § 1780(a)(4);
- attorneys' fees and costs under Cal. Civ. Code § 1780(d); and
- any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

### THIRD CAUSE OF ACTION
(Violation of Bus. & Prof. Code § 17200 *et seq.*)

56. Plaintiff repeats and re-alleges herein the foregoing allegations.

57. Plaintiff brings this cause of action on behalf of herself, on behalf of the other class members, and in her capacity as private attorneys general against Facebook for its unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

58. Plaintiff asserts these claims as a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that Facebook should be required to reimburse under UCL § 17200 et seq.

59. This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices. Plaintiff and the other class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

60. The UCL § 17200 et seq. prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices;" (b) "unfair fraudulent business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

61. Facebook violated the UCL by engaging in conduct that violated each of the three prongs identified by the statute as set forth throughout this Complaint.

62. Facebook committed an unlawful business act or practice in violation of the UCL § 17200 et seq. when it violated the CLRA.

63. Facebook committed unfair and fraudulent business acts and practices in violation of the UCL §§ 17200 and 17500 et seq. by actively advertising, marketing and promoting certain gaming with the statement that "all sales are final" when Facebook knew that minors were making such purchases and that minors had the right to void such contracts if they so chose.

64. Facebook's deceptive practices were specifically designed to induce Plaintiff and the other members of the Class to believe they had no right to receive refunds, when in fact they have such a right.

65. Facebook's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

66. As a direct and proximate cause of Facebook's violation of the UCL, Plaintiff and the Class have suffered harm in that they have not been reimbursed for the purchases their minor children made from Facebook.

67. As a direct and proximate result of Facebook's violation of the UCL, Facebook has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to the UCL § 17203.

68. Plaintiff, on behalf of herself and for all others similarly situated, demand judgments against Facebook for injunctive relief in the form of restitution, and/or disgorgement of funds paid to Facebook as alleged herein.

///
///

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment (alternative claim))

69. Plaintiff repeats and re-alleges herein the foregoing allegations.

70. Plaintiff and the Class have conferred benefits on Facebook by paying for virtual goods and in-App purchases their minor children purchased from Facebook without their authorization.

71. Facebook knowingly and willingly accepted those monetary benefits from Plaintiff and the Class.

72. Under the circumstances alleged herein, it is inequitable for Defendant to retain such benefits at the expense of Plaintiff and the Class.

73. Facebook has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class by wrongfully collecting and retaining money to which Facebook, in equity, is not entitled.

74. Plaintiff and the Class are entitled to recover from Facebook all amounts wrongfully collected and improperly retained by Facebook, plus interest thereon.

75. As a direct and proximate result of Facebook's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Facebook of the benefits conferred by Plaintiff and the Class.

76. As a direct and proximate result of Facebook's misconduct as set forth herein, Facebook has been unjustly enriched.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action under California Code of Civil Procedure section 382, California Civil Code section 1781, and applicable case law and certifying the Class defined herein;

B. Designating Plaintiff as representatives of the Class and their counsel as class counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Facebook;

D. Entering a Declaratory Judgment determining that the contracts between Defendant and the Class members relating to the purchase of Game Currency are voidable at the option of the respective class members and that if the Class members elect to void the contracts, they will be entitled to restitution;

E. An injunction that either requires Facebook to cease selling Facebook Credits or similar virtual currency to accounts that belong to minors, or to adequately disclose that such transactions may be disaffirmed under California law; and

F. Awarding Plaintiff and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief; and

G. Granting such further relief as the Court deems just.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 2, 2012

Respectfully submitted,

KERSHAW, CUTTER & RATINOFF, LLP

By: _____
John R. Parker, Jr.