COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
KRISTINE VAN HAMERSVELD (278745)
(kvanhamersveld@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
FACEBOOK, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GLYNNIS BOHANNON, Individually and on Behalf of Her Minor Child I.B. and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>FACEBOOK, Inc.,<br><br>                    Defendant. | Case No.  CV-12-01894-CW<br><br>**FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>**FED. R. CIV. PRO. 12(b)(6); 12(f)**<br><br>Date:        June 28, 2012<br>Time:        2:00 p.m.<br>Judge:       Hon. Claudia Wilken<br>Dept.:       Courtroom 2, 4th Floor<br>             1301 Clay Street<br>             Oakland, CA 94612 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

**Table of Contents**

Page

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE ............................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

I.      INTRODUCTION ......................................................................................................... 2

II.     BACKGROUND ............................................................................................................ 3

        A.      Facebook Games & Credits ............................................................................. 3

        B.      Facebook's Disclosures Related to Payments and Minors ............................... 6

        C.      Plaintiff's Allegations ..................................................................................... 8

III.    MOTION TO DISMISS ................................................................................................ 9

IV.     ARGUMENT ............................................................................................................... 10

        A.      Plaintiff Cannot "Disaffirm" Her Son's Contractual Obligation To Pay For Facebook Credits He Has Already Used ............................................. 10

                1.      Minors Cannot Disaffirm Contracts For Which They Have Already Accepted the Benefits ................................................................. 10

                2.      Only Minors, Not Parents, May Disaffirm Contracts Under § 6710 ........ 11

                3.      Minors May Not Recover Consideration Paid By Others ......................... 12

        B.      Plaintiff's Causes of Action Fail for Additional, Claim-Specific Reasons ........... 13

                1.      Plaintiff's Claim for Declaratory Relief Fails For Multiple Reasons ....... 13

                2.      Plaintiff's CLRA and UCL (Fraud Prong) Claims Fail Because the Complaint Does Not Allege Reliance ........................................................ 15

                3.      Plaintiff's UCL and CLRA Claims Fail Because They Cannot Be Maintained Where the Defendant Has Complied With the Terms of the Contract ............................................................................................... 16

                4.      Plaintiff's CLRA Claim Fails Because Credits Are Not Tangible "Goods" .................................................................................................... 17

                5.      Plaintiff's Claims Under the Unlawful and Unfair Prongs of the UCL Also Fail ........................................................................................... 18

                6.      Plaintiff's CLRA Claims Contain Procedural Defects ............................. 19

                        a.      Plaintiff Failed to File the Affidavit Required Under 1780(d) ...................................................................................... 19

                        b.      Plaintiff Failed to Provide Timely Notice under Section 1782(a) ..................................................................................... 20

                7.      Plaintiff's Alternative Claim for Unjust Enrichment (Claim IV) Fails as a Matter of Law .......................................................................... 21

V.      MOTION TO STRIKE ................................................................................................ 21

VI.     CONCLUSION ........................................................................................................... 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

i.

**Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*A.V. et. al. v. iParadigms, LLC,*
   544 F. Supp. 2d 473 (E.D. Va., 2008) ..................................................................... 11

5

6

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ........................................................................................... 9, 15

7

*Baidoobonso-Iam v. Bank of Am.,*
   No. CV 10-9171 CAS, 2011 WL 5870065 (C.D. Cal. Nov. 22, 2011) ................... 14

8

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................... 9

10

*Berg v. Traylor,*
   148 Cal. App. 4th 809 (2007) ................................................................................... 12

11

12

*Berry v. American Exp. Publishing, Inc.*
   147 Cal. App. 4th 224 (2007) .............................................................................. 17, 18

13

*Brazil v. Dell Inc.,*
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................................... 22

14

15

*Buckland v. Threshold Enters., Ltd.,*
   155 Cal. App. 4th 798, 809 (2007) .......................................................................... 15

16

17

*Casey Wasserman Living Trust v. Bowers,*
   No. 5:09-CV-180-JMH, 2011 U.S. Dist. LEXIS 14165 (E.D. Ky. Feb. 11, 2011) ............... 12

18

19

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................... 15

20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) .............................................................................................. 18

21

22

*Charles Schwab & Co., Inc. v. Bank of Am.,*
   No. C 10-4913 JL, 2011 WL 1753805 (N.D. Cal. May 9, 2011) ............................ 21

23

24

*Durrell v. Sharp Healthcare,*
   183 Cal. App. 4th 1350 (2010)................................................................................. 21

25

*E.K.D v. Facebook,*
   No 3:11-cv-00461 ..................................................................................................... 11

26

27

*Fairbanks v. Superior Court,*
   46 Cal. 4th 56 (2009) .......................................................................................... 17, 18

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Ferrington v. McAfee, Inc.*,
    10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................. 17, 18

*Gene & Gene L.L.C. v. BioPay, L.L.C.*,
    541 F.3d 318 (5th Cir. 2008) .................................................................................... 23

*Guerard v. CNA Fin. Corp.*,
    No. 4:09-cv-01801-SBA, 2009 WL 3152055 (N.D. Cal. Sep. 23, 2009) ............................. 16

*Hanni v. Am. Airlines, Inc.*,
    No. C-08-00732 CW, 2010 U.S. Dist. LEXIS 38436 (N.D. Cal. Apr. 19, 2010).................. 23

*Hastings v. Dollarhide*,
    24 Cal. 195 (1864) ................................................................................................ 10

*Hernandez v. Hilltop Financial Mortg., Inc.*
    622 F.Supp.2d 842 (N.D. Cal. 2007) ......................................................................... 18

*Hines v. Cheshire*,
    36 Wash. 2d 467 (1950) .......................................................................................... 13

*Holland v. Universal Underwriters*,
    270 Cal.App.2d 417 (1969) ..................................................................................... 10

*Hovsepian v. Apple, Inc.*,
    No. 08-cv-5788-JF, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)................................. 19, 22

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    No. C-10-2553-RMW, 2011 U.S. Dist. LEXIS 77411 (N.D. Cal. July 18, 2011) ................ 19

*In re Facebook, Inc. PPC Advertising Litig.*,
    No. C 09-3034 PJH, 2012 WL 1253182 (N.D. Cal. April 13, 2012)....................................... 6

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................................ 15

*Janda v. T-Mobile, USA, Inc.*,
    No. C 05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ...................... 16, 19, 20

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007)..................................................................................... 22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2008)............................................................................... 10, 15

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................................... 15, 20

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ................................................................................. 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

iii.

**Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

*MacGreal v. Taylor*,
    167 U.S. 688 (1897) ........................................................................................ 10

*Mangindin v. Washington Mut. Bank*,
    637 F. Supp. 2d 700 (N.D. Cal. 2009) ........................................................... 14

*McCarty-Greene Motor Co. v. McCluney*,
    219 Ala. 211 (1929) ........................................................................................ 13

*McDonald v. Coldwell Banker*,
    543 F. 3d 498 (9th Cir. 2008) ........................................................................ 19

*Nabors v. Google, Inc*,
    No. 5:10-CV-03897 EJD (PSG), 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ............ 14, 21

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................... 9

*O.C. Harden v. Am. Airlines*,
    No. 97-A-1058-N, 1998 U.S. Dist. LEXIS 4325 (D. Ala. Mar. 25, 1998) ............................ 10

*O'Donovan v. Cashcall, Inc.*,
    No. C-08-03174 MEJ, 2011 U.S. Dist. LEXIS 131868 (N.D. Cal. Nov. 14, 2011) .............. 23

*Olagues v. Russoniello*,
    770 F.2d 791 (9th Cir. 1985) ........................................................................... 13

*Paster v. Putney Student Travel, Inc.*,
    No. CV 99-2062, 1999 U.S. Dist. LEXIS 9194 (C.D. Cal., 1999) ........................................ 10

*Peers v. McLaughlin*,
    88 Cal. 294 (1891) .......................................................................................... 10

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ........................................................................... 22

*Pinel v. Aurora Loan Servs., LLC*
    814 F. Supp. 2d 930 (N.D. Cal. 2011) ........................................................... 19

*Salmo v. PHH Mortgage Corp.*,
    No. CV 11-1582-ODW, 2012 WL 84222 (C.D. Cal. Jan. 11, 2012) .......................... 14

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................... 22, 24

*Scott Eden Mgmt. v. Kavovit*,
    563 N.Y.S.2d 1001 (1990) .............................................................................. 10

*Sheller v. Frank's Nursery and Crafts, Inc.*,
    957 F. Supp. 150 (N.D. Ill., 1997) ................................................................. 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

iv.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F. 2d 880 (9th Cir. 1983) .................................................................................... 22

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ..................................................................... 16

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746-JF, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) ............... 20

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir.2003) ..................................................................................... 9

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) ................................................................................. 23

**STATUTES**

Bus. & Prof. Code
   §§ 17200 .................................................................................................................... 16

Cal. Civ. Code
   § 1770(a) .................................................................................................................... 17
   § 1770(a)(5) ................................................................................................................. 9
   § 1761(a),(b) .............................................................................................................. 18
   § 1780(d) .............................................................................................................. 19, 20
   § 1782(a) .................................................................................................................... 20

Family Code
   § 6710 .................................................................................................................. 11, 12

**OTHER AUTHORITIES**

43 C.J.S. Infants
   § 233 .......................................................................................................................... 13
   § 226 .......................................................................................................................... 12

Federal Rules of Civil Procedure
   8 ................................................................................................................................. 15
   9(b) ........................................................................................................... 9, 15, 16, 19
   12(f) ........................................................................................................................ 1, 21
   12(b)(6) ..................................................................................................................... 1, 9

Williston on Contracts § 9:10 at n. 2 (2011) ................................................................ 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

v.

**Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

**NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on June 28, 2012 at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 1301 Clay Street, Oakland, California in Courtroom 2, 4th Floor, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss the Complaint (the "Complaint") filed by Plaintiff or, in the alternative, to strike the class allegations from the Complaint, as detailed in the Proposed Order filed herewith.

Facebook's Motion is made pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Bill Richardson, and accompanying exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Should the Court dismiss Plaintiff's Complaint where Plaintiff claims her minor son can disaffirm his purchases of Facebook Credits but (i) he has already used the Credits and received benefits therefrom, (ii) she does not allege that her minor son wishes to disaffirm the purchases, and (iii) her son did not pay for the Credits with his own funds?

2.      Should the Court dismiss Plaintiff's CLRA and UCL claims where Plaintiff alleges Facebook misrepresented that "all sales are final" in connection with sales of Facebook Credits but does not allege that she or her minor son relied on the allegedly misleading phrase?

3.      Should the Court dismiss Plaintiff's claim for unjust enrichment given established precedent holding that unjust enrichment is not an independent claim under California law?

4.      If the Court does not dismiss the Complaint, should the Court strike class-related allegations Complaint where the proposed class definition turns on the parental "authorization" of minors' purchases and thus requires individualized determination of whether consent was given between each parent and child and for each individual purchase?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672/SF

1.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1

## I.     INTRODUCTION

2

Plaintiff's Complaint should be dismissed because it seeks a windfall recovery that

3 violates established black-letter law.  Plaintiff's son, I.B., allegedly used Plaintiff's credit card to

4 purchase "Facebook Credits" (a form of digital currency) to spend on virtual items in games on

5 Facebook.  According to Plaintiff, she should now get a refund of those amounts because her son,

6 as a minor, can freely "disaffirm" any payment obligation that he incurs to Facebook.  Plaintiff

7 demands this refund even though she admits she authorized her son's initial purchase of

8 Facebook Credits (hereafter "Credits") from Facebook and further admits that I.B. has *already*

9 used the Credits he purchased to obtain various premium virtual items while playing a game on

10 Facebook.  Even more remarkably, Plaintiff asks the Court to enter declaratory judgment that

11 would effectively allow her teenage son – and all other minors who use Facebook – to *continue*

12 purchasing and using Credits for free.  In short, Plaintiff is asking the Court to create entirely new

13 law allowing minors – with the full knowledge of their parents – to get something for nothing.

14

There is no basis for this extraordinary relief.  To the contrary, California law has long

15 applied the common-sense rule that minors like I.B. cannot accept the benefits of a contract while

16 avoiding its reciprocal obligations.  Even if that were not the case, Plaintiff cannot disaffirm

17 contracts on behalf of her child, particularly where (as here) there is no indication that I.B. is

18 actually seeking to disaffirm the contract or even agrees with Plaintiff's purported efforts to do so

19 on his behalf.   Nor can I.B. disaffirm a contract to obtain a refund of consideration contributed by

20 *others* (here, his mother).

21

Plaintiff's Complaint should be dismissed with prejudice given these fatal defects in her

22 "disaffirmance" theory.  While the Complaint suffers from additional pleading defects (described

23 below), this flaw applies to each of Plaintiff's claims and mandates dismissal of the Complaint in

24 its entirety.

25

Plaintiff's class action allegations also are improper as a matter of law and should be

26 stricken.  Plaintiff's proposed class – defined as all parents whose minor children made allegedly

27 "unauthorized charges" while using Facebook – is inherently unworkable because it would

28 require the Court to assess the interactions of each parent and each child for each transaction to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                           2.                    **Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

ascertain the members of the purported class.  This class definition is untenable on its face and the Court need not wait for full class certification briefing to strike it and all related allegations as a matter of law.

**II.    BACKGROUND**

    **A.    Facebook Games & Credits**

Facebook is a free social networking website that allows users age 13 and older to connect and share with each other.  (Compl. ¶ 10.)  Facebook also provides a free platform on which third-party developers can create applications (or "apps").   (*Id.* ¶ 12).  Apps on Facebook allow users to play social games with their friends, remember birthdays, share their tastes in movies and music with friends, send gifts, and more.

Facebook allows users to purchase Facebook Credits, a virtual currency they can use to buy virtual goods in apps.[1]  For example, in FarmVille – a popular game developed by Zynga – a user can use Credits to buy enhancements for his or her virtual farm, helping virtual crops grow faster, or bringing withered crops back to life.  (*Id.* ¶18). As the Complaint illustrates, there are a wide variety of games and potential uses for Credits, with the common thread that they are used to enhance users' experiences.

Credits can be purchased using credit or debit cards, PayPal, and other payment methods.  (*Id.* ¶ 13).  Credits are available in $0.10 increments, and users may purchase them directly within any game that accepts payments (an "in-game purchase").[2]   As alleged in the Complaint, Facebook charges developers a 30% fee for payment processing and related costs.  (Compl. ¶ 20.)  Thus, in general, if a user purchases $10.00 of Credits in a game, Facebook retains $3.00 and the developer of the game in which the Credits are used earns the remaining $7.00.

The following images illustrate the purchase of items (via Credits) in the game "Ninja Saga" as alleged in the Complaint.   (Compl. ¶ 22.)  The first screen captures the prompt that

---

[1] *See* Exhibit E to the Declaration of Bill Richardson in support of Facebook's Request for Judicial Notice ("RJN").  As further explained in Facebook's RJN, the Court can and should consider these public materials at the pleading stage because they are referenced in (but not attached to) the Complaint and are not subject to reasonable dispute.

[2] (*Id.*)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
1266672 v4/SF
3.
Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

users, like I.B., see before an initial purchase and before inputting payment information; this is similar to the screen that I.B. would have seen when he made the original $20 purchase alleged in the Complaint.[3]



In the prompt, the user can see the price is "$1.00" (the equivalent of 10 Credits).  The prompt contains a link ("Terms Apply") to the Payments Terms (discussed below), and allows a user to select among various methods of payment.

The second screen (pictured below) appears when the user clicks "Continue" and allows users to enter in their payment information, including credit card number, billing address, etc.[4] This screen also provides users with an explicit message that Facebook saves credit card information for future purchases.

---

[3] (Richardson Decl., Ex. G.)
[4] (Richardson Decl., Ex. H.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

4.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1
2
3
4
5
6
7
8
9
10
11



12    The third screen is an example of what a user sees for all subsequent purchases in "Ninja

13   Saga" where the credit card information has already been stored, as alleged in the Complaint.[5]

14
15
16
17
18
19
20
21
22
23

24    This prompt also displays the price of the purchase in two places, which in this case is the

25   same - $7.00 ($6.99) or 70 Credits.  The phrase "Terms Apply" is another link to the Payment

26   Terms.   The method of payment (in this case, a Visa credit card with the last four digits "2442")

27

28   [5] (Richardson Decl., Ex. I.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                    5.                      Facebook, Inc.'s Motion to Dismiss
                                                                          Plaintiffs' Class Action Complaint
                                                                                    No. CV-12-01894-CW

is indicated in the lower left hand corner of the screen.  To purchase the additional Credits, the user must take affirmative action by clicking "Buy 600 Saga Token."  The user can chose not to purchase the Credits by clicking "Cancel."

### B.  Facebook's Disclosures Related to Payments and Minors.

The purchase of Credits is governed by Facebook's Payments Terms, which are referenced both in the Statement of Rights and Responsibilities ("SRR") that all users must agree to in order to use Facebook, and in the payment prompts displayed above.  (Compl. ¶ 15).  The Payments Terms state that: "When you provide a payment source to us, <u>you confirm that you are permitted to use that payment source.</u>"[6]  The Payments Terms also contain a disclosure related to minors, stating: "<u>If you are under the age of 18, you may make payments only with the involvement of a parent or guardian.  You should review these Payments Terms with a parent or guardian to make sure that you both understand them.</u>"[7]

Moreover, when users purchase Credits, they authorize Facebook to collect and store information about the payment source, such as a credit card number.  The Payments Terms state: "When you provide a payment source to us, you confirm that you are permitted to use that payment source.  <u>You also authorize us to collect and store it</u>, along with other related transaction information."[8]  As pictured above, users are also informed of Facebook's practice of storing credit card information for future purchases when they enter their credit card information.  Plaintiff's Complaint omits any reference to the terms above, but the Complaint acknowledges that users are bound by the SRR and the Payment Terms.[9]  (Compl. ¶ 15.)

---

[6] (Richardson Decl., Ex. B.)
[7] (*Id.*) (emphasis added.)
[8] (*Id.*) (emphasis added.)
[9] The Payment Terms also provide, "[t]o the fullest extent permitted by law," that any payment-related disputes must be submitted "within 30 days after the charge."  (*Id.*)  Although Plaintiff obviously knows when she disputed the charges at issue, she does not allege any facts in the Complaint to show whether she complied with this term.  (Compl. ¶ 23 (stating only that Glynnis Bohannon contacted Facebook "[u]pon learning of the[] charges").)  To the extent discovery shows the dispute was raised outside of the contractual period, Plaintiff's claim would be barred by the terms of the contract.  *See In re Facebook, Inc. PPC Advertising Litig.*, No. C 09-3034 PJH, 2012 WL 1253182 (N.D. Cal. April 13, 2012) (finding two Facebook users to be inadequate class representatives where neither plaintiff had shown that he "ever disputed his … charges within the period needed to avoid waiver under his contract.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

6.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1  Facebook provides an online process for users to dispute "unauthorized" charges.  The

2  Payments Terms state: "If you believe that an unauthorized or otherwise problematic transaction

3  has taken place under your account, you agree to notify us immediately, so that we may take

4  action to prevent financial loss."[10]   Facebook's mechanism for users to dispute charges is

5  available from the front of Facebook's "Help Center," which can be accessed by clicking the

6  "Help" link at the bottom of virtually every page on Facebook's website.[11]  A link to the online

7  dispute resolution process is also provided in the confirmation email sent each time a user

8  purchases Credits, along with links to additional explanatory content about Credits.  The front

9  page of the Help Center is reflected below:



23  By following the link highlighted above, users are directed to the Credits Support Center

24  where they are instructed to (i) answer questions about the unauthorized charges, (ii) indicate

25  whether or not they know who incurred the charges, and (iii) for credit card purchases such as

26  those at issue here, identify the charges via references numbers included on the cardholder's

---

[10] (Richardson Decl., Ex. B.)
[11] (Richardson Decl., Ex. C.)

Cooley LLP
Attorneys At Law
San Francisco

1266672 v4/SF

7.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1    statement.[12]   Payment disputes and requests for reimbursements are then handled in the normal

2    course of business based on the information submitted.[13]

3        **C.      Plaintiff's Allegations.**

4        The Complaint alleges that, in October 2011, I.B. asked Plaintiff "for permission to spend

5    $20 on his Facebook account." (Compl. ¶ 22.)   Plaintiff agreed and provided I.B. with her credit

6    card to buy Credits.  (*Id.*)  In exchange, I.B. gave Plaintiff $20 in cash.  (*Id.*)  I.B. used the Credits

7    while playing the "Ninja Saga" game on the Facebook platform.  (*Id.*)  I.B. made additional "in-

8    game purchases" using Plaintiff's credit card and he "expend[ed]" those additional Facebook

9    Credits to obtain unspecified features in Ninja Saga.  (*Id.*)  According to Plaintiff, I.B. charged

10   "several hundred dollars" to her credit card while playing Ninja Saga.  (*Id.*)  Plaintiff spent

11   "several hours" searching to find a "mechanism to contact Facebook to dispute the charges,"

12   before finding a "phone number at Facebook and [ ] le[aving] a message about her problem."

13   (Compl. ¶ 23).  Plaintiff does not indicate if she accessed the Facebook Help Center or reviewed

14   any of the multiple email confirmation messages that her son received after purchasing Credits.

15       Plaintiff brings claims for Declaratory Judgment (Claim I),[14] relief under the CLRA

16   (Claim II),[15] relief pursuant to the unfair, unlawful, and fraudulent prongs of the UCL (Claim III),

17   and for unjust enrichment (Claim IV).  Although the Complaint is nominally brought on I.B.'s

18   ─────────────

19   [12] (*See* Richardson Decl., Ex. D.)

     [13] As discussed below, Plaintiff never availed herself of this online process before filing her class
20   action lawsuit.  Nonetheless, as a courtesy, Facebook has refunded Plaintiff's credit card charges,
     with the exception of the initial $20 that she acknowledges in the Complaint she authorized (see
21   below).   These refunds were made according to Facebook's standard policies, without any
     admission as to liability or waiver of any defenses in this litigation.

22   [14] Plaintiff specifically seeks "a determination by the court that: (a) this action may proceed and
     be maintained as a class action; (b) the contracts between Defendant and the Class members
23   relating to in-App purchases and virtual goods are voidable at the option of the respective class
     members; (c) if the Class members elect to void the contracts, they will be entitled to restitution;
24   (d) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class; and (e) such
     other and further relief as is necessary and just." (*See* Compl. ¶ 45.)
25   [15] Plaintiff alleges violations of Cal. Civ. Code § 1770(a)(5) (representing that goods have uses or
26   characteristics they do not have), (a)(7) (representing that goods are of a particular standard or
     quality when they are of another), and (a)(14) (representing that a transaction confers or involves
27   rights, remedies, or obligations which it does not have or involve, or which are prohibited by
     law).  (Compl. ¶ 49.)

28

Cooley LLP
Attorneys At Law
San Francisco

1266672 v4/SF                                    8.                    Facebook, Inc.'s Motion to Dismiss
                                                                        Plaintiffs' Class Action Complaint
                                                                        No. CV-12-01894-CW

1  behalf, it nowhere alleges that I.B. actually seeks to disaffirm his contract with Facebook.

2  Instead, the Complaint alleges that Plaintiff wishes to receive a refund of money that her son

3  spent using her credit card to obtain additional features while playing Ninja Saga.  (*Id*. ¶¶ 53, 66,

4  68, 74-75.)

5      Plaintiff purports to bring her suit on behalf of all parents in the United States whose

6  minor children made allegedly "unauthorized" purchases of Facebook Credits using their parents'

7  money.  (Compl. ¶ 24.)  Plaintiffs have not proposed a specific class period.

8  **III.    MOTION TO DISMISS**

9      A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal

10  theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v.*

11  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  As the Supreme Court has emphasized, "labels and

12  conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  *Bell*

13  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient

14  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim

15  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

17  129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

18      Additionally, because the Plaintiff uses a fraud theory in her allegations under the UCL

19  and the CLRA, the heightened pleading standard required by Rule 9(b) will apply to those claims.

20  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-4 (9th Cir.2003) (holding that, if "the

21  claim is said to be grounded in fraud or to sound in fraud, [then] the pleading of that claim as a

22  whole must satisfy the particularity requirement of Rule 9(b).") (citations and quotations

23  omitted).  Plaintiff must therefore plead facts to show "'the who, what, when, where, and how' of

24  the misconduct" that forms the basis of her UCL and CLRA claims.  *See Kearns v. Ford Motor*

25  *Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2008).

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                9.                    Facebook, Inc.'s Motion to Dismiss
                                                                   Plaintiffs' Class Action Complaint
                                                                   No. CV-12-01894-CW

IV.   **ARGUMENT**

    **A.**    **Plaintiff Cannot "Disaffirm" Her Son's Contractual Obligation To Pay For Facebook Credits He Has Already Used.**

        **1.**    **Minors Cannot Disaffirm Contracts For Which They Have Already Accepted the Benefits.**

Plaintiff's Complaint is premised on the remarkable claim that minors like I.B. can retain the benefits of contract while disaffirming any reciprocal obligations.  California courts have long rejected any right to reimbursement in these circumstances.  *See Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864) (explaining that the rule allowing minors to disaffirm contracts serves as a shield to protect minors from abuse, not as a sword to allow them to retain benefits while avoiding corresponding obligations); *Peers v. McLaughlin*, 88 Cal. 294, 299 (1891) ("This commanding principle of justice is so well established that it has become one of the maxims of the law. . . . [Minors] must either accept or repudiate the entire contract.").  *Accord MacGreal v. Taylor*, 167 U.S. 688, 701 (1897) (finding that "the privilege of infancy" is not "a sword to be used to the injury of others" and "the law intends it simply as a shield to protect the infant from injustice and wrong.").[16]

This basic precept of California law applies equally in the context of online contracts.  Indeed, a federal court applying California law in a case involving the same Facebook contract at issue here (the SRR) recently confirmed that "courts, including California courts, have readily

---

[16] *See also, e.g., Paster v. Putney Student Travel, Inc.*, No. CV 99-2062, 1999 U.S. Dist. LEXIS 9194, at *7 (C.D. Cal. 1999) (enforcing a forum selection clause against a minor who had benefited from the defendant's travel services, explaining that a minor "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that does not suit her"); *Holland v. Universal Underwriters*, 270 Cal. App. 2d 417 (1969) (refusing to allow a minor to disaffirm the uninsured motorist section of his insurance policy and stating that, "minors, if they would disaffirm a contract, must disaffirm the entire contract, not just the irksome portions").  This approach has been widely adopted throughout the United States.  *See Sheller v. Frank's Nursery and Crafts, Inc.*, 957 F. Supp. 150, 153 (N.D. Ill., 1997) (stating that "there is an important corollary to the general rule permitting minors to disaffirm contracts . . . [a]fter disaffirmance, the infant is not entitled to be put in a position superior to such a one as he would have occupied if he had never entered into the voidable agreement.") (quotation and citation omitted); *Scott Eden Mgmt. v. Kavovit*, 563 N.Y.S.2d 1001, 1002 (1990) (stating that the minor "is not entitled to retain an advantage from a transaction which he repudiates"); *O.C. Harden v. Am. Airlines*, No. 97-A-1058-N, 1998 U.S. Dist. LEXIS 4325, at *15 (D. Ala. Mar. 25, 1998) (refusing to let a minors avoid a forum selection clause they agreed to when they purchased an cruise ship ticket because "[i]f the minor chooses benefits under the contract, he may not avoid his obligations thereunder.")

---

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

10.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

declined to permit minors to accept the benefits of a contract, then seek to void the contact in an attempt to escape the consequences of a clause that does not suit them." *E.K.D v. Facebook*, No. 3:11-cv-00461, slip op. at *7 (S.D. Ill. March 8, 2012).  In *E.K.D.*, the Court enforced a forum selection clause against a minor plaintiff where the minor had received the benefit of using Facebook's website and "continue[d] to use Facebook.com."  *Id.* at 8.  According to the court, the minor could not disaffirm her obligations under the SRR because she "cannot give back or in any way disgorge the benefit of her contract" and thus, "it would be inequitable to now release her from her obligations and [the] consequences attached to that benefit."  *Id.  See also A.V. et. al. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480-81 (E.D. Va., 2008) (holding that minors could not avoid a limitation of liability clause in an online contract where they had "received the benefits from entering into the Agreement").

    This unbroken line of authority mandates dismissal of Plaintiff's Complaint.  As discussed above, the Complaint concedes that I.B. has already received and used the benefits of the Credits he purchased.  (Compl. ¶ 22.)  Plaintiff admits that I.B. used the initial $20 in Credits to play Ninja Saga, made additional "in-game purchases," and "expend[ed]" those Credits to obtain further upgrades in Ninja Saga.  (*Id.*)  Having already received the full benefits of the Facebook Credits he purchased, I.B. cannot avoid his payment obligation after-the-fact.  As the California Supreme Court and other courts have consistently confirmed, minors cannot use the disaffirmance rule as a "sword" to get unfettered access to services for free in this manner.  Plaintiff's entire Complaint should be dismissed with prejudice on this ground alone.

### 2.    Only Minors, Not Parents, May Disaffirm Contracts Under § 6710.

    The Complaint fails as a matter of law for the additional reason that Family Code Section 6710 explicitly provides that, "a contract of a minor may be disaffirmed *by the minor*" (to the extent it can be disaffirmed at all) and not, as asserted here, by his parent or other representative. (Cal. Fam. Code § 6710 (emphasis added.)  *See also* Williston on Contracts § 9:10 at n.2 (2011) (stating that "the right to disaffirm is confined to the infant personally" and citing Cal. Fam. Code § 6710 as an example of a statute that "expressly provides that *only the infant* may void the contract") (emphasis added); 43 C.J.S. Infants § 226 (explaining that, "the right of an infant to

Cooley LLP
Attorneys At Law
San Francisco

1266672 v4/SF

11.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

avoid or disaffirm a contract is a personal privilege of which *only the infant* can take advantage")
(emphasis added).

Moreover, a minor's disaffirmance must be reflected in an "unequivocal intent to
repudiate [the contract's] binding force and effect." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820
(2007). Applying this rule, the court in *Casey Wasserman Living Trust v. Bowers*, No. 5:09-CV-
180-JMH, 2011 U.S. Dist. LEXIS 14165, at *14-15 (E.D. Ky. Feb. 11, 2011), held that an email
from a minor and his parents addressed to the minor's agent was insufficient to disaffirm the
minor's contract with the agent even though the email stated that the minor's parents wished to
"move forward with Tyler's career down a different path" and that their statements were
"effective immediately." The court found these statements insufficient to disaffirm the contract
because the email did "not set forth in clear terms that *Tyler* [the minor] holds the contract as void
in its entirety and disaffirms its binding force and effect. Rather, it only discloses an intention not
to perform in the future and does not act to disaffirm the contract." *Id.* at 15 (emphasis added).

Here, the Complaint contains no allegation that I.B. – the only party in the case with the
theoretical authority to disaffirm a contract with Facebook – actually seeks to do so. Instead, the
Complaint makes clear that the purported disaffirmance is being pursued only by I.B.'s mother:
"Glynnis Bohannon attempted to find a mechanism to contact Facebook to dispute the charges."
(Compl. ¶ 23.) Plaintiff also proposes to assert claims on behalf of a putative class of parents of
minor children, not the children themselves. (*Id.* ¶ 24.) Plaintiff cannot invoke Section 6710 to
seek a refund of her own money for her own benefit in this manner.

### 3.    Minors May Not Recover Consideration Paid By Others.

Even if I.B. could disaffirm the contract and actually wanted to, he still could not recover
under the facts as alleged in the Complaint. Minors can only recover their *own* consideration and
are not permitted to recover sums paid by others when they disaffirm a contract: "An infant who
disaffirms a contract is, in no event, entitled to recover any sums paid under the contract by
another person." 43 C.J.S. Infants § 233. For example, in *Hines v. Cheshire*, 36 Wash. 2d 467,
481 (1950), a court allowed a minor to disaffirm his purchase of a vehicle and recover the price
he paid, but *only* for amounts in excess of the amount that his father contributed. The court

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

12.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1    concluded that he was not "entitled to recover any sums paid under the contract by another

2    person" and thus, he was "not entitled to recover the $168.69 paid or advanced by his father." *Id.*

3    *See also McCarty-Greene Motor Co. v. McCluney*, 219 Ala. 211, 213, (1929) (finding that, "upon

4    the rescission of a contract of a minor … he should recover only what he parted with, and not

5    what another advanced or paid for his benefit").

6            Here, I.B.'s allegedly unauthorized purchases were funded by his mother.  (Compl. ¶ 22).

7    The Complaint states that I.B. "purchased Facebook Credits" by "using Glynnis Bohannon's

8    Wells Fargo MasterCard" and that "his mother's credit card information was … used again after

9    the initial $20 purchase" for I.B.'s further "in-game purchases."  (*Id.*).  I.B. cannot seek to

10   disaffirm these purchases. The right to disaffirm is intended for the minor's benefit alone and

11   cannot be used as a vehicle for parents to receive a refund of *their* money when they are simply

12   unhappy with how their children spend it.

13           **B.       Plaintiff's Causes of Action Fail for Additional, Claim-Specific Reasons.**

14                   **1.       Plaintiff's Claim for Declaratory Relief Fails For Multiple Reasons.**

15           Plaintiff's claim for declaratory relief seeks to establish that "the contracts between

16   Defendant and the Class members relating to in-App purchases and virtual goods are voidable at

17   the option of the respective class members."[17]  This claim fails for multiple reasons.

18           First, Plaintiff's requested declaration is contrary to established California law and should

19   be rejected for all the reasons described above.

20           Second, Plaintiff's declaratory relief claim is procedurally improper because it is

21   inconsistent with the "central purpose" of the Declaratory Judgment Act: to enable parties to

22   clarify their rights *before* incurring the alleged injury.  *Olagues v. Russoniello*, 770 F.2d 791, 803

23   (9th Cir. 1985) (affirming denial of declaratory relief claim where plaintiff had already suffered

24   alleged harm because "[t]he central purpose of the Declaratory Judgment Act … is to provide

25   parties with a declaration of their rights prior to incurring actual injury").  In other words, "the

26   purpose of a declaratory judgment is to set controversies at rest before they cause harm to the

27

28   [17] In addition, Plaintiff requests declaratory relief that is redundant of her general class allegations
     and prayer for relief.  (*See* Compl. ¶ 45.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
1266672 v4/SF
13.
Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1    plaintiff in the interest of preventive justice, not to remedy harms that have already occurred."

2    *Nabors v. Google, Inc*, No. 5:10-CV-03897 EJD (PSG), 2011 WL 3861893, at *8 (N.D. Cal.

3    Aug. 30, 2011).

4         Yet here, Plaintiff already incurred the alleged injuries (the purportedly unauthorized

5    charges made by her son), and she does not seek to prevent any future injuries.  (*See* Compl. ¶ 23;

6    *id*. ¶ 52 ("Plaintiff and the Class suffered actual damages as a direct and proximate result of

7    Facebook's actions").)   Thus, Plaintiff's claim for declaratory relief does not serve the core

8    purpose underlying the Declaratory Judgment Act, and it should be dismissed with prejudice.

9         Third, "declaratory relief is not an independent claim, but rather a form of relief."

10   *Baidoobonso-Iam v. Bank of Am.*, No. CV 10-9171 CAS (MANx), 2011 WL 5870065, at *8

11   (C.D. Cal. Nov. 22, 2011); *see also Salmo v. PHH Mortgage Corp*., No. CV 11-1582-ODW

12   (PJWx), 2012 WL 84222, at *8 (C.D. Cal. Jan. 11, 2012) (same).  Thus, "[a] claim for declaratory

13   relief is unnecessary where an adequate remedy exists under some other cause of action."

14   *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).  Here, Plaintiff

15   is already seeking restitution of the disputed charges made by her son pursuant to her UCL and

16   CLRA claims.  (Compl. ¶¶ 46-68.)  Plaintiff's request for declaratory judgment adds nothing to

17   the relief already being sought under these claims with respect to the transactions in dispute.

18   Because "the declaratory relief [p]laintiff seeks is entirely commensurate with the relief sought

19   through [her] other causes of action … [p]laintiff's declaratory relief claim is duplicative and

20   unnecessary" and should be dismissed.  *Mangindin*, 637 F. Supp. 2d at 707-708.

21        Finally, to the extent Plaintiff is purporting to seek a declaratory judgment that would

22   apply to *future* transactions, it would only highlight the absurdity of her claims.  While Plaintiff's

23   effort to recover refunds for *prior* transactions is itself fatally flawed (for all the reasons described

24   above), any effort to impose *prospective* relief for *future* purchases by her son would constitute

25   even more blatant overreaching.  Plaintiff would be asking the Court to declare that her son I.B.

26   (and potentially millions of other minors) can continue using Facebook Credits while disclaiming

27   any payment obligation.  Any such request would be inequitable and improper.

28

Cooley LLP
Attorneys At Law
San Francisco

1266672 v4/SF                    14.                    **Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

2.      **Plaintiff's CLRA and UCL (Fraud Prong) Claims Fail Because the Complaint Does Not Allege Reliance.**

Plaintiff alleges that Facebook violated the UCL and the CLRA by "marketing and promoting" Credits with the statement that "all sales are final." (Compl. ¶¶ 49, 63.)  Plaintiff alleges that Facebook's representation that "all sales are final" is deceptive because she asserts that "minors had the right to void such contracts if they so chose." (*Id.*, ¶ 63.)  But despite predicating her fraud-based claims entirely on that alleged misstatement, Plaintiff does not allege that she or her son ever "saw, read, or in any way relied on the [statements at issue]; nor do they allege that they entered into the transaction as a result of those [statements]." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (granting defendants' motion to dismiss plaintiffs claims under the UCL and FAL for lack of reliance). *See also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947 (S.D. Cal. 2007) (dismissing claims under the UCL where plaintiff, "does not allege that false statements or claims had anything to do with her decision to purchase the linens);[18] *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that the UCL "impose[s] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007) (stating that "plaintiffs asserting CLRA claims sounding in fraud must establish that they *actually relied* on the relevant representations or omissions.") (emphasis added).  Plaintiff's fraud-based claims should be dismissed as a matter of law given this glaring pleading failure.

While Plaintiff asserts in conclusory terms that she "suffered actual damages as a direct and proximate result of Facebook's actions, concealment and/or omissions in violation of the CLRA," (Compl. ¶ 52), this generic legal conclusion cannot be credited even under Rule 8's pleading standards, let alone the more demanding requirements of Rule 9(b).  *See Iqbal*, 129 S. Ct. at 1950 (finding that conclusory statements, "because they are no more than conclusions, are not entitled to the assumption of truth" under Rule 8); *compare Kearns*, 567 F.3d at 1124-25 (holding that Rule 9(b) applies to UCL and CLRA claims and that "[a]verments of fraud must be

---

[18] While the Complaint alleges Facebook's use of the phrase "all sales are final" was deceptive, it seems the statement did not "deceive" Plaintiff who apparently felt she was entitled to a refund anyway when she "attempted to find a mechanism to contact Facebook to dispute the charges" and "left a message about her problem." (Compl. ¶ 23.)

Cooley LLP
Attorneys At Law
San Francisco

1266672 v4/SF                                        15.                    Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1   accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

2        Indeed, Plaintiff and her son cannot credibly allege any reasonable reliance, even if they

3   had reviewed the Payment Terms containing the language that "all sales are final."   That is

4   because the Payment Terms explicitly caution that (i) "When you provide a payment source to us,

5   you confirm that you are permitted to use that payment source," and (ii) "If you are under the age

6   of 18, you may make payments only with the involvement of a parent or guardian.  You should

7   review these Payments Terms with a parent or guardian to make sure that you both understand

8   them."[19]   Thus, the very contractual document that Plaintiff claims to be misleading expressly

9   advises minors like I.B. that they should make purchases on Facebook *only* with the consultation

10  and consent of their parents, and I.B. agreed to abide by this rule as a condition of his use of

11  Facebook.   (Compl. ¶ 15.)   Plaintiff cannot claim that either she or her son were somehow

12  deceived under these circumstances.

13              **3.     Plaintiff's UCL and CLRA Claims Fail Because They Cannot Be
                         Maintained Where the Defendant Has Complied With the Terms of
14                       the Contract.**

15       Moreover, the UCL and CLRA claims fail as matter of law because these statutory claims

16  cannot be applied where the defendant has "complied with the express terms of the contracts, and

17  charged Plaintiffs in accordance with their terms."  *Spiegler v. Home Depot U.S.A., Inc.*, 552 F.

18  Supp. 2d 1036, 1045 (C.D. Cal. 2008); *see also id.* at 1046 (holding "the UCL cannot be used to

19  rewrite [the parties'] contracts or to determine whether the terms of their contracts are fair");

20  *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 WL 667206, at *9 (N.D. Cal. Mar. 13,

21  2009) (holding there is no "unfair" conduct as a matter of law where the defendant was

22  "permitted to charge" the fees at issue pursuant to its contract); *Guerard v. CNA Fin. Corp.*, No.

23  4:09-cv-01801-SBA, 2009 WL 3152055, at *6 (N.D. Cal. Sep. 23, 2009) ("The interpretation of

24  the clear and unambiguous terms of the policy cannot constitute an unfair, unlawful or fraudulent

25  act violative of Bus. & Prof. Code sections 17200 or 17500.").   Plaintiff does not allege (nor

26  could she) that Facebook violated the terms of the SRR and Payment Terms when it charged her

27

28  ---
    [19] (*See* Richardson Decl., Ex. B (emphasis added).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

16.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

son for what he intended to purchase: Credits to play Ninja Saga.    Under these circumstances, the UCL cannot be used to "rewrite" the terms of the contract by imposing an obligation that does not exist in the contract to provide a refund.

### 4.    Plaintiff's CLRA Claim Fails Because Credits Are Not Tangible "Goods"

Plaintiff's CLRA claims also fail because she fails to allege, and cannot allege, that her claims pertain to the sale or lease of "goods and services".  Cal. Civ. Code § 1770(a).  "Goods" are defined in the CLRA to include only "tangible chattels".  *Id.* at § 1761(a).  Clearly, Credits are not "tangible" and thus cannot be covered under the CLRA.   Indeed, Judge Koh in the Northern District has dismissed a CLRA claim on the grounds that anti-virus software downloaded from the Internet is not a "tangible good."  *See Ferrington v. McAfee, Inc.*, 10-CV-01455-LHK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) (holding that, "[w]hile the CLRA must be liberally construed . . . [t]he CLRA's express limitation of goods to 'tangible chattels' must be given meaning, and current California law suggests that these words exclude software from the Act's coverage.").  *See also Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009) (finding that, "life insurance is not a 'tangible chattel,' [and thus] it is not a "good" as that term is defined in the Consumers Legal Remedies Act.").

Of particular relevance here, California courts have also held that a credit card, though "tangible" in the sense that there is a physical card, is not a "good" under the CLRA because "the card has no intrinsic value and exists only as indicia of the credit extended to the card holder." *Berry v. American Exp. Publishing, Inc.* 147 Cal. App. 4th 224, 229 (2007).  Similar to a credit card, Credits are an "indicia" of the digital currency "extended to" the user, which the user may spend on other non-tangible goods within apps on Facebook.  Indeed, Plaintiff acknowledges that Credits are "a virtual good" and "a payment system" (*See* Compl. ¶¶ 1, 2) – *not* a "tangible good" within the scope of the CLRA.

Plaintiff also does not allege that Credits constitute "a service" under the CLRA.  Nor could she, given the narrow definition of "services" under the CLRA: "work, labor, and services for other than a commercial or business use, including services furnished in connection with the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                   17.                          Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

sale or repair of goods." Cal. Civ. Code § 1761(b).  The California decisions above holding that anti-virus software, insurance, and credit cards are not goods also held that those products did not involve "services" within the meaning of the CLRA.  *See Ferrington*, 2010 WL 3910169 at *19 (finding that, "software generally is not a service for purposes of the CLRA"); *Fairbanks*, 46 Cal. 4th at 61 (stating that "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel); *Berry*, 147 Cal. App. 4th at 230 (finding that the legislative history of the CLRA "does not support the notion that credit, *separate and apart from a specific purchase or lease of a good or service*, is covered under the act" as a "service") (emphasis in original).[20]  Similarly here, Credits by definition reflect an intangible right to purchase virtual goods and are neither "work or labor" nor a service related "to the sale or repair of any tangible chattel," as required under the CLRA. *Fairbanks*, 46 Cal. 4th at 61. *See also* Cal. Civ. Code § 1761(b).

For all of these reasons, Plaintiff's claims under the CLRA and the UCL should be dismissed.

### 5.   Plaintiff's Claims Under the Unlawful and Unfair Prongs of the UCL Also Fail.

Plaintiff's claims brought under the "unlawful" and "unfair" prongs of the UCL should also be dismissed because they suffer from the same fatal defects noted above.  Under the "unlawful" prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Here, Plaintiff's claim under the "unlawful" prong is derived entirely from her CLRA claim, which itself fails as a matter of law for the reasons discussed above.  (Compl. ¶ 61 ("Facebook committed an unlawful business act or practice . . . when it violated the CLRA.").)  As multiple courts have held, "a derivative UCL claim based on a CLRA violation" necessarily fails where the underlying CLRA claim fails

---

[20] By contrast, in *Hernandez v. Hilltop Financial Mortg., Inc.* 622 F.Supp.2d 842, 851 (N.D. Cal. 2007), the Court found that a mortgage company *was* engaged in providing services where defendants were actively engaged in "advising plaintiffs and managing their loan."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                        18.                          Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

under Rule 9(b).  *Hovsepian v. Apple, Inc.*, No. 08-cv-5788-JF, 2009 WL 5069144, at *4 (N.D. Cal. Dec. 17, 2009).  *See also Janda*, 2009 WL 667206, at *7 (dismissing UCL claim under unlawful prong where the Plaintiff failed to state a claim under the FAL or CLRA).

In addition, Plaintiff's claim under the "unfair" prong of the UCL fails because it is based on the same meritless premise that underlies her declaratory relief claim – the alleged right of a parent to disaffirm a contract in which her minor child has already received the benefit of his purchase.  As discussed above, Plaintiff is not legally entitled to disaffirm I.B.'s contracts with Facebook, and thus, it is not "unfair" to deny her a refund for the Credits that her son has already used and enjoyed. *See Pinel v. Aurora Loan Servs., LLC* 814 F. Supp. 2d 930, 940 (N.D. Cal. 2011) (finding that "[a]n unfair business practice under the UCL is 'one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'") (citing and quoting *McDonald v. Coldwell Banker*, 543 F. 3d 498, 506 (9th Cir. 2008)).

Because Plaintiff's claims under the unfair, unlawful, and fraudulent (see previous section) prongs of the UCL fail, Claim III should be dismissed in its entirety.

### 6.      Plaintiff's CLRA Claims Contain Procedural Defects.

#### a.      Plaintiff Failed to File the Affidavit Required Under 1780(d)

To bring a claim under the CLRA, a Plaintiff must, "file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d).  The affidavit must be filed, "concurrently with the filing of the complaint" and, "[i]f a plaintiff fails to file the affidavit required by this section, the court *shall*, upon its own motion or upon motion of any party, dismiss the action." *Id.* (emphasis added).  *See also In re Apple & AT&T iPad Unlimited Data Plan Litig.*, No. C-10-2553-RMW, 2011 U.S. Dist. LEXIS 77411, at *16-17 (N.D. Cal. July 18, 2011) (dismissing CLRA claims in consolidated class action complaint as to all plaintiffs because each failed to provide required affidavit).  Plaintiff alleges that Facebook's conduct has violated the CLRA (Compl. ¶ 49,) and brings a claim for "judgment against Facebook for equitable relief in the form of restitution and/or disgorgement of funds paid to Facebook." (Compl. ¶ 53.)  But Plaintiff has not filed the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

19.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1    necessary affidavit under § 1780(d) to assert these claims and thus, her claims must be dismissed.

2                        **b.        Plaintiff Failed to Provide Timely Notice under Section 1782(a)**

3           The CLRA also provides that, "[t]hirty days or more prior to the commencement of an

4    action for damages pursuant to this title" a consumer shall "notify" the person alleged to have

5    violated the CLRA of their violation and "demand" a remedy "in writing . . . by certified or

6    registered mail" to the "person's principal place of business." Cal. Civ. Code § 1782(a).   In her

7    Complaint, Plaintiff alleges that, "In accordance with  § 1782(a) of the CLRA, counsel will serve

8    Facebook, by certified mail, with notice of its alleged violations of the CLRA" and that "[i]f

9    Facebook does not fully meet the demand set forth in that letter, then Plaintiff will amend or seek

10   leave to amend this complaint in order to seek . . . actual damages . . .punitive damages . . .

11   attorneys fees and costs . . . and any other relief the Court deems proper." (Compl. ¶¶ 54-5.)

12          In essence, Plaintiff is attempting to skirt the requirements of § 1782(a) by implying that

13   she need not comply the notice requirement "prior to the commencement of an action for

14   damages" because she intends to ask for damages only later, by way of amendment.   However,

15   contrary to Plaintiff's assertion that she only intends to ask for damages in the future, Plaintiff is

16   already seeking damages in the present Complaint. (See Compl. ¶ 53 ("demand[ing] judgment"

17   against Facebook "in the form of restitution and or disgorgement of funds paid to Facebook"), (¶

18   52 "Plaintiff and the Class suffered actual damages as a direct and proximate result of Facebook's

19   actions . . . in violation of the CLRA.").)    This claim is improper as a matter of law given

20   Plaintiff's failure to make a pre-litigation demand.  *See Stearns v. Select Comfort Retail Corp.*,

21   No. 08-2746-JF, 2009 U.S. Dist. LEXIS 48367, at *45-46 (N.D. Cal. June 5, 2009) ("The CLRA

22   requires that written notice be provided to the seller at least thirty days prior to commencement of

23   an action seeking damages. Failure to provide such notice prior will result in dismissal of the

24   claim with prejudice.") (citations omitted); *Janda*, 2009 WL 667206, at *10,  (dismissing CLRA

25   claim for damages with prejudice), aff'd, 378 Fed. App'x 705 (9th Cir. 2010); *Laster*, 407 F.

26   Supp. 2d at 1196 (dismissing CLRA claim for damages with prejudice and noting that "strict

27   adherence to the [CLRA's] notice provision is required to accomplish the Act's goals of

28   expeditious remediation before litigation."). Plaintiff has not made the requisite pre-suit demands

and her stated intent to do so sometime in the future is insufficient to meet the requirements of the CLRA.  Her CLRA claim should be dismissed, with prejudice, for this additional reason.

### 7.   Plaintiff's Alternative Claim for Unjust Enrichment (Claim IV) Fails as a Matter of Law.

Plaintiff's unjust enrichment claim presumes that Facebook owes minors a refund for purchases they have already enjoyed, that they have not themselves disaffirmed, and that their parents funded.  (Compl. ¶ 70.)  As such, the unjust enrichment claim should be dismissed for all the same reasons discussed above.  (*See* Section IV, A.)  If anything it is *Plaintiff's* demand for a refund that would impose an unfair windfall by asking the Court to permit her child to enjoy the benefits of Credits at no cost to either of them.

Plaintiff's unjust enrichment claim fails for the independent reason that "unjust enrichment" is not a separate cause of action in California.  The California Court of Appeals has recently explained that, "[a]lthough some California courts have suggested the existence of a separate cause of action for unjust enrichment … this court has recently held that 'there is no cause of action in California for unjust enrichment.'" *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (quoting *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)).  *See also Nabors*, 2011 WL 3861893, at *8 ("[Plaintiff] cannot state a claim for unjust enrichment because no such cause of action exists in California."); *Charles Schwab & Co., Inc. v. Bank of Am.*, No. C 10-4913 JL, 2011 WL 1753805, at *5 (N.D. Cal. May 9, 2011) (dismissing unjust enrichment claim).

## V.   MOTION TO STRIKE

Even if the Court does not dismiss the Complaint in its entirety, it should nonetheless strike all class-related allegations under Fed. R. Civ. P. 12(f) because the proposed class definition is unworkable on its face.  The proposed class – defined as all parents whose minor children made allegedly "unauthorized charges" while using Facebook – would require a fact-intensive, individualized inquiry to determine which, if any, of the millions of Credit purchases potentially at issue were (1) made by minors, (2) paid for by their parents, and (3) made without

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

21.

Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW

1    their parents' authorization.[21] (Compl. ¶ 24.)

2            As the Ninth Circuit has recognized, "the function of a 12(f) motion to strike is to avoid

3    the expenditure of time and money that must arise from litigating spurious issues by dispensing

4    with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F. 2d 880, 885 (9th Cir.

5    1983).  Applying that standard, courts in this District have not hesitated to strike class allegations

6    at the pleading stage where the allegations show that a proposed class is unworkable.  *See*

7    *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (striking class allegations and

8    stating that "[w]here the complaint demonstrates that a class action cannot be maintained on the

9    facts alleged, a defendant may move to strike class allegations prior to discovery"); *Hovsepian*,

10   2009 WL 5069144, at *2  ("this Court has authority to strike class allegations prior to discovery if

11   the complaint demonstrates that a class action cannot be maintained").[22]

12           In particular, class allegations should be stricken at the pleading stage where the claims of

13   the proposed class depend on "the specific facts surrounding each buyer's transaction." *Sanders*,

14   672 F. Supp. 2d at 991.  In *Sanders,* a putative class filed suit against Apple the basis that Apple

15   had misrepresented the quality of the display on its new 20 inch Aluminum iMac, leading buyers

16   to believe it used the same number of bits as the 24 inch version, and the older 20 inch version,

17   when in fact, it used fewer bits.  *Id.* at 982.  Judge Fogel first determined that reliance was a

18   necessary element of the warranty claims at issue.  *Id.* at 991.  The court then concluded that the

19   individualized proof needed to determine each class member's reliance would predominate the

20   litigation, including the need to determine "what caused [each] class member to make the

21   purchase[s]" at issue.  *Id.*  Accordingly, the court struck the class allegations from the complaint

22   as a matter of law.  *Id.  See also Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008)

23   (striking class allegations where the class as defined was not readily ascertainable).

24   _____

25   [21] The specific allegations that Facebook proposes to strike are as set forth in the Proposed Order
     filed herewith.

26   [22] *See also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (stating that,
     "Where it is facially apparent from the pleadings that there is no [class that can be certified], a

27   district court may dismiss the class allegation on the pleadings"); *Pilgrim v. Universal Health
     Card, LLC*, 660 F.3d 943, 946-48 (6th Cir. 2011) (affirming district court's decision granting

28   motion to strike class allegations).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                              22.                    **Facebook, Inc.'s Motion to Dismiss
                                                                  Plaintiffs' Class Action Complaint
                                                                  No. CV-12-01894-CW**

1    Plaintiff's class allegations fail as a matter of law under these established principles.  On

2  its face, Plaintiff's proposed class definition would require parsing through the individual

3  circumstances of each of the millions of transactions potentially at issue.  For example, Plaintiffs

4  first would need to identify all Credit transactions made by users who were minors at the time

5  each purchase was made.[23]  Plaintiffs then would need to establish which transactions were paid

6  for by the minor's parent or guardian (or anyone else), as opposed to the minor himself or herself,

7  since minors can only seek disaffirmance to recover their *own* funds (as discussed above).  From

8  that subset of transactions, Plaintiffs would need to exclude any instances where the minor

9  already used the Credits or he or his parent used Facebook's existing dispute resolution system

10  and received a credit for the transaction, to avoid conferring an improper windfall.  Further

11  complicating the analysis, per Facebook's Payments Terms, Plaintiffs would need to exclude any

12  instances where minor children or their parents failed to dispute the charges within 30 days of

13  incurring them.[24]  Finally, the Court would need to conduct a fact-intensive inquiry to determine

14  whether a parent gave the minor permission to purchase Credits.[25]  Indeed, a separate analysis

15  would be needed not only for each parent and child but also for *each individual purchase* because

16  parental authorization could be granted on a transaction-by-transaction basis.

17

18  [23]  Although Facebook requires that users provide accurate information, some users may submit false birthdates, thereby requiring individualized inquiry to verify that users were minors when the challenged transactions occurred.  (*See* Richardson Decl., Ex. A., Section 4.1.)

19  [24]  (*See* Richardson Decl., Ex. B.)

20  [25]  At the class certification stage, numerous courts have refused to certify claims that require litigating issues of consent or authorization on behalf of the putative class members.  See, e.g.,

21  *O'Donovan v. Cashcall, Inc.*, No. C-08-03174 MEJ, 2011 U.S. Dist. LEXIS 131868 at *41-42 (N.D. Cal. Nov. 14, 2011) (denying certification of claims under the Electronic Funds Transfer

22  Act that would require individualized evidence to "show[] [whether] a specific borrower authorized or consented to the [transfer]").  See also *Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541

23  F.3d 318, 327-329 (5th Cir. 2008) (vacating certification where the Telephone Consumer Protection Act claim at issue required examination of "individual consent" and plaintiff "failed to

24  advance any viable theory employing generalized proof concerning the lack of consent with respect to the class"); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 237 (S.D.

25  Ill. 2011) (denying certification where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant]

26  would call," such that "determining who has consented or not consented to the [defendant's] calls will depend on individual examination of [consent issues]"); *Hanni v. Am. Airlines, Inc.*, No. C-

27  08-00732 CW, 2010 U.S. Dist. LEXIS 38436, at *17 (N.D. Cal. Apr. 19, 2010) (denying certification of claims against defendant airline that allegedly refused to let passengers deboard

28  the plane during an extended delay on the tarmac and noting that "[t]he issue of consent is individual.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF                                    23.                     **Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**

1       The facts alleged in the Complaint demonstrate the fundamental difficulties raised by the

2   proposed class claims.  Plaintiff admits that I.B.'s first transaction of $20 was made with her

3   permission (in exchange for receiving $20 from I.B.) and thus, are not part of the claims in the

4   proposed class.  She claims, however, that subsequent purchases by I.B. were not authorized

5   given the particular circumstances surrounding those transactions.  (Compl. ¶¶ 22-23.)  Plaintiff

6   further admits that her son used all the Credits he purchased in playing the Ninja Saga game.

7   (*Id.*)  And, as noted above, Plaintiff has already received a courtesy refund.

8       Regardless of how the Court might resolve the question of "authorization" as to Plaintiff's

9   individual claim, there is no conceivable way to engage in a class-wide analysis for each of the

10  millions of purchases of Credits by minors potentially at issue in this case.  As in *Sanders*,

11  Plaintiff's proposed class definition turns on "the specific facts surrounding each buyer's"

12  purchase and use of Credits.  *Sanders*, 672 F.Supp.2d at 991.  The Court should not allow the case

13  to proceed based on these class allegations, which are inherently unworkable.

14  **VI.**    **CONCLUSION**

15      For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.  In

16  the alternative, if the Court does not dismiss the Complaint in its entirety, the class allegations

17  should be stricken from the Complaint for the reasons set forth above.

18

19  Dated: May 10, 2012               COOLEY LLP

20                                  MICHAEL G. RHODES (116127)
                                WHITTY SOMVICHIAN (194463)

21                                  KRISTINE VAN HAMERSVELD (278745)

22

23                                 /s/ Whitty Somvichian
                                _____

24                                  Whitty Somvichian (194463)
                                Attorneys for Defendant

25                                 FACEBOOK, Inc.

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1266672 v4/SF

24.

**Facebook, Inc.'s Motion to Dismiss
Plaintiffs' Class Action Complaint
No. CV-12-01894-CW**