C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem BRYAN FIFE; GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT; JULIE WRIGHT, individually and on behalf of all others similarly situated, <br><br>       Plaintiffs, <br><br>  v. <br><br> FACEBOOK, INC., <br><br>       Defendant. | Case No.  CV 12-01894 CW <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

      Plaintiffs I.B., a minor, by and through his Guardian ad Litem Bryan Fife; Plaintiff Glynnis Bohannon; Plaintiff J.W., a minor by and through his Guardian ad Litem Steven Wright Wright; and Plaintiff Julie Wright, individually and on behalf of all others similarly situated as described below, by their attorneys, make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and counsel, which are based on personal knowledge.

### I.      OVERVIEW OF THE ACTION

    1.      Plaintiffs bring this class action on behalf of themselves and all other similarly-

situated individuals.  This case arises from minor children purchasing from Defendant Facebook certain virtual goods, incurring charges for void or voidable purchases that Facebook has misrepresented to be "final" and nonrefundable, under a scheme that does not comply with either California or Federal law and regulations.

2.     The operator of the largest social network in the world, Facebook  provides a payment system, Facebook Credits, for users to make purchases within Facebook.  For example, a user can purchase a "virtual flower" to "send" to another friend, causing a picture to appear on the friend's page.  A user can also use Facebook Credits, which the user has purchased from Facebook in exchange for real-world currency, to acquire points, coins, or virtual currency within Facebook Applications or "Apps" that appear within the Facebook site.

3.     Facebook knows that many of its users are minors.  Unlike major e-commerce hubs on the internet, like Google, Netflix, eBay, Twitter, and Amazon, which have restricted minors' access to their websites, Facebook specifically permits minors to register and use its service.  *See United States v. Nosal*, No. 10-10038, 2012 WL 1176119, *5 (9th Cir. April 10, 2012).   Furthermore, in order to create a Facebook account, a user must specify his or her date of birth.  Millions of Facebook's users have thereby told Facebook that they are minors, and Facebook has actual knowledge of each of its minor users' age and status as a legal infant. Furthermore, users' youth is readily apparent through the profiles they create on Facebook.  For example, millions of users say they are enrolled in junior high school, middle school, or high school.

4.     Facebook has uniformly told all of its users that purchases through Facebook Credits are final, including purchases within Apps and purchases of virtual goods.  Facebook's Payments Terms document says "Don't commit to a transaction unless you are ready to pay, because all sales are final."  When consumers seek refunds from Facebook, routinely refuses such refund requests.

5.     Plaintiffs bring this action for monetary, declaratory, injunctive, and equitable relief under California's contract laws, the California Consumers Legal Remedies Act, California Civil Code § 1750 et seq., and California Business and Professions Code Sections

17200 et seq.

## II.   JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because: (1) this matter is a class action with an amount in controversy that exceeds $5,000,000; (2) there are thousands of class members; and (3) Plaintiffs I.B. and Glynnis Bohannon and members of the class are citizens of a State different from Defendant.

7.       Venue is proper in this District pursuant to pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant is subject to personal jurisdiction in this District.

## III.   PARTIES

8.      Plaintiff Glynnis Bohannon resides in Phoenix, Arizona with her son Plaintiff I.B. At all relevant times I.B. was then, and is still now, a Facebook user and a minor.

9.      Plaintiff Julie Wright resides in San Jose, California with her son Plaintiff J.W. At all relevant times J.W. was then, and is still now, a Facebook user and a minor.

10.     Defendant Facebook is a California corporation with its principal place of business in Palo Alto, California.

## IV.   FACTUAL ALLEGATIONS

11.     Facebook describes itself as "a social utility that helps people communicate more efficiently with their friends, family and coworkers."  Facebook has more than 800 million active users worldwide and is the single most visited web site in the United States.

12.     When users make payments within Facebook apps and on the Facebook site, Facebook requires that all such payments flow through the Facebook Credits system.

13.     Facebook allows third-party application developers to provide software "Apps" that appear within the Facebook site.  Facebook supervises and controls the function and operation of the apps it allows to appear on the Facebook platform.  Facebook has the right and ability to remove any App at any time, or to prevent an App from soliciting or receiving payment through Facebook Credits.

14.     In all instances relevant to this action, the purchase and/or purchase of virtual

goods is a transaction directly between Facebook and the consumer.  Facebook charges consumers' credit or debit card, PayPal account, mobile phone, or other payment account.  No App developer ever receives a Facebook customer's payment information.

15.     Facebook users may fund their Facebook Credits purchases by various methods including credit card, debit card, PayPal, and mobile phone.  Facebook draws funds from the specified source to pay for users' purchases.  For purchases from third-party Apps, Facebook keeps a 30% fee for itself and forwards the balance to the provider of the App.

16.     Anyone thirteen years old or older can open an account on Facebook.  Opening an account requires, among other things, selecting a user name and password, providing certain contact and other information, and agreeing to Facebook's Statement of Rights and Responsibilities which incorporates by reference Facebook's Payment Terms.

17.     Many Facebook apps are targeted to minors.  For example, Facebook Apps often feature cartoon-style images, exaggerated facial features, children within the applications, animals, and other design characteristics consistent with use by minor children.

18.     Many Facebook Apps are, by design, highly addictive.  Often, an App presents a virtual environment in which a user seeks to build an imaginary city, farm, or other facility – a task made difficult by the limited supplies.  Facebook sells Facebook Credits for real money, which allows users to obtain additional supplies to speed progress and otherwise enhance use of the App and play of the game.

19.     For example, the App FarmVille is free for new players to start playing. However, the object of the game is to build a thriving virtual farm, a process rendered progressively more difficult by inadequate supplies, but the process is greatly sped up by obtaining Facebook Credits to be used in the App.  By using Facebook Credits to buy a virtual "biplane," a FarmVille player can "instant grow" his virtual crops rather than waiting several hours for crops to "grow."  Similarly, if virtual crops "wither" and "die," a FarmVille player can pay real money to "unwither" the crops.

20.     Facebook Credits are obtained by users for consumption in many games and Apps that use the same transactional scheme as FarmVille.  For each such game, Facebook and its App

partners sell Facebook Credits that users must obtain to enjoy the game as it was designed to be played.  While using such a game, a player sees a screen that sells virtual currency, so that the player can "build" things or "have" other virtual things.

21.     In-App purchases and virtual goods are substantial money-makers for Facebook. Facebook charges App developers a 30% fee on users' payments via Facebook Credits, and Facebook does not allow App developers to charge users via methods other than Facebook Credits.  Facebook's recent SEC filing indicates that Facebook's revenue from "Payments and other fees" was $557 million in 2011.

22.     Facebook has not offered to return any of the millions of dollars it received from minor children's purchases of Facebook Credits for virtual currency or items within Facebook Apps.  To the contrary, Facebook has represented that, with regard to Facebook Credits, "all sales are final," and that minors and their parents and guardians have no proper claim to refunds for purchases originated from accounts that belong to minors—purchases with regard to which Facebook is on constructive and actual notice that it is engaging in Facebook Credit transactions with minors.  Facebook carefully stores and tracks the personal information associated with each Facebook profile and ID, including whether or not the Facebook user is a minor.

23.     Moreover, when engaging in Facebook Credit transactions with minors, Facebook receives a delegation of the minor's apparent power—namely, the authority to charge a debit or credit card, PayPal account, or other funds, in exchange for "Facebook Credits" and virtual currency.

24.     Facebook's transactions with minors also necessarily involve entering into contracts with minors regarding property that is not in the minors' possession or control. Namely, in connection with Facebook Credit transactions, Facebook collects funds from debit cards, credit cards, PayPal accounts, or other sources that are not in the minor's possession or control.  In fact, the funds are in the possession and control of, invariably, the minor's parents and the card issuers.

25.     In October 2011, I.B. (the minor child of Plaintiff Glynnis Bohannon) asked his mother Glynnis Bohannon for permission to spend $20 on his Facebook account using Glynnis

Bohannon's Wells Fargo Master Card.  I.B. gave his mother $20 in cash in exchange.  He purchased Facebook Credits from Facebook for use in "Ninja Saga."  Subsequently, without any notice that his mother's credit card information had been stored by Facebook and the Facebook Credits system, or that his mother's credit card information was being used again after the initial $20 purchase, I.B. made in-game purchases in which he thought he was expending virtual, in-game currency.  In fact, Bohannon's credit card was charged repeatedly and without her consent, and the charges totaled several hundred dollars.  In each of these transactions, Facebook was acting upon the minor's apparent delegation of power to charge his mother's credit card, and engaging in transactions regarding funds that were not in the minor's immediate possession or control.

26.     When Facebook charged Glynnis Bohannon's credit account without her consent in a transaction that originated from I.B.'s Facebook account, Glynnis Bohannon received no benefit whatsoever from the transaction, and Glynnis Bohannon suffered actual damages as a result.  Neither I.B. nor Facebook had actual authority to charge Glynnis' credit account for any transaction beyond the single $20 transaction Glynnis authorized.

27.     Upon learning of these charges, Glynnis Bohannon attempted to find a mechanism to contact Facebook to dispute the charges. After several hours of searching, Bohannon finally found a phone number at Facebook, and she left a message about her problem, specifically that she and her minor son wanted a refund for the Facebook credits that were purchased by her minor son from his Facebook account, to which she has to date received no reply.  Bohannon sought on behalf of herself and her child to reverse, void, or otherwise cancel Facebook's transactions with her son.  She was never able to find an email address for someone at Facebook who could process her complaint.

28.     Since being served with the initial compliant in this action, Facebook has apparently provided a "courtesy" refund to Ms. Bohannon.  This refund cannot be used by Facebook to "pick off" Ms. Bohannon and her son's claims and status as class representatives. Ms. Bohannon was injured when this case was originally filed, and she remains injured given the interest that she lost on the money wrongfully retained and later involuntarily refunded by

Facebook. *See Wallace v. GEICO Gen. Ins. Co.*, 183 Cal.App.4th 1390, 1401 (Cal. Ct. App. 2010) ("pick off" tactic cannot apply when there is an injury in fact at the time of filing); *Narouz v. Charter Communication, LLC* (9th Cir. 2010) 591 F.3rd 1261, 1264.

29.     In December 2011, J.W. (the minor child of Plaintiff Julie Wright) began to make a series of charges via Facebook Credits using the debit card of Julie and Steven Wright, which J.W. had taken from his parents without their permission.  The charges totaled more than one thousand dollars.  In each of these transactions, Facebook was acting upon the minor's apparent delegation of power to charge his parents' debit card, and engaging in transactions regarding funds that were not in the minor's immediate possession or control.

30.     When Facebook charged the Wrights' debit account without their consent in a transaction that originated from J.W.'s Facebook account, the Wrights received no benefit whatsoever from the transaction, and the Wrights suffered actual damages as a result.  Neither J.W. nor Facebook had actual authority to charge the Wrights debit account.

31.     Upon learning of these charges, Steven Wright attempted to find a mechanism to contact Facebook to dispute the charges.  Steven Wright sought to inform Facebook that he and his wife and their minor son wanted a refund for the Facebook credits that were purchased by their minor son from his Facebook account.  The Wrights sought on behalf of themselves and their child to reverse, void, or otherwise cancel Facebook's transactions with their minor son on their minor son's Facebook account.  On or about February 8, 2012, Wright submitted a complaint as to the "20 debits directly to my bank account," noting that neither he nor his wife (the only authorized users of the debit card's account) had authorized any such charges, and requesting a refund.  In a reply of February 10, a Facebook "Payment Operations" representative replied to Wright to say he "refunded the charges to your [Wright's] funding instrument." However, on April 13, 2012 Wright noticed that only $59.90 had been refunded.  On that day, Wright contacted Facebook to request a refund of the full amount at issue.  In extended further correspondence with Wright, including ten further messages back and forth, Facebook argued that "we are not able to process your refund request at this time … because it has been more than 90 days since you completed the stated transaction(s)."  Wright pointed out that he had promptly

notified Facebook (via his February 8 message), that Facebook's prior representative had already stated that the "the charges" were "refunded" (necessarily referring to all "20 debits" about which Wright had initially complained), and that the delay from February 8 to April 13 resulted from Facebook's failure to reply to Steven Wright's further message and to provide the refund Facebook promised, not from any failure of Steven or Julie Wright's.  To date, the Wrights have not received $999.30 in funds received by Facebook in unauthorized Facebook Credit transactions originating from their minor child's Facebook account.

32.    As set forth above, Facebook makes it nearly impossible for users, minors or otherwise, to obtain refunds for transactions with minors by interposing unintelligible, byzantine, and impossible-to-understand barriers between a minor or minor's parent or guardian who attempts to request a refund and the refund itself.  Facebook repeatedly misinforms its users that "all sales are final"—a statement that is contrary to the law of California and Facebook's obligations under California and Federal law.  Facebook also requires its users to dispute claims of unauthorized payments within 30, or, alternatively and without explanation, 90 days of the transaction, requirements that are contrary to Facebook's obligations under California and Federal law.

33.    Facebook is engaged in behavior subject to the California Money Transmission Act, California Financial Code sec. 2000 et seq. ("MTA"), effective as of January 1, 2011. Specifically, Facebook is selling payment instruments and/or stored value for use in Facebook Credit Transactions.

34.    However, Facebook was operating Facebook Credit transactions illegally prior to February 3, 2012, when its application for certification under the California was approved.

35.    Additionally, Facebook receipts on Facebook Credit transactions with Plaintiffs and the members of the Class omit the specific and detailed "right to refund" disclosure that is required by California Financial Code section 2102(b).

36.    Plaintiffs, as well as the members of the proposed class, relied upon Facebook's false recitations when they declined to immediately seek legal action against Facebook for its wrongful conduct until after contacting counsel, losing the interest on their funds that could have

accumulated in the meantime.  More specifically, Plaintiffs have all lost money in connection with Facebook Credit Transactions that are either void or voidable under California Law and which do not comply with the MTA and the Electronic Funds Transfer Act.

### V.     CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action as a class action on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All Facebook users who have purchased Facebook Credits from January 1, 2011 to the date on which a class is certified ("the MTA Class").

38.     The MTA class seeks relief under the UCL and CLRA as described below for Facebook's unlawful operation of Facebook Credit Transactions in violation of California's Money Transmission Act.

39.     Plaintiffs bring this action as a class action on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following subclass:

> All Facebook users who are or were minor children according to Facebook's own records, and those children's parents and guardians for the four years preceding the date on which the original complaint was filed to the date on which a class is certified ("the Minor Class").

40.     This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following subclass:

> All Facebook users who are or were minor children according to Facebook's own records, and those children's parents and guardians, who attempted to obtain a refund of a Facebook credit transaction originating from a minor child's account for the four years preceding the date on which the original complaint was filed to the date on which a class is certified ("the Refund Subclass").

41.     Included within the proposed Refund Subclass is the subclass "EFTA Subclass"

consisting of

> All members of the Refund Subclass whose payment to Facebook was made from
> a debit card or PayPal account linked to a U.S.-based bank from May 31, 2011 to
> the date on which a class is certified (the "EFTA Subclass").

42.     Excluded from the Class and subclasses are Facebook; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; members of the federal judiciary, and counsel for the parties.

43.     Subject to additional information obtained through further investigation and discovery, the Class and subclass definitions may be expanded or narrowed by amendment or amended complaint.

44.     The exact number of the members of the class (or subclasses) is not presently known, but is so numerous that joinder of individual members in this action is impracticable. The exact number of the members of the class (or subclasses) can only be ascertained through discovery, because such information is in the exclusive control of Defendant. However, based upon the nature of the activities alleged herein, Plaintiffs believe that the members of the class (and subclasses) number at least in the tens of thousands and are geographically dispersed through the United States. The identities and members of the class (and subclasses) are readily obtainable from the Defendant and its agents and are maintained in the computer database of Defendant and are easily retrievable.

45.     Plaintiffs will fairly and adequately protect the interests of the class and sub-classes and have retained counsel that are experienced and capable in class action litigation, and in the fields of technology and consumer law. Plaintiffs understand and appreciate their duties to the class and subclasses under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class and subclasses.

46.     Plaintiffs are asserting claims that are typical of the claims of each member of the class and subclasses they seek to represent, in that the claims of all members of the class and subclasses, including Plaintiffs, depend upon a showing of the Defendant's unlawful practices.

All claims alleged on behalf of the class and subclasses flow from this conduct as well.

47.     There is a well-defined community of interest in the questions of law and fact involved.  Questions of fact arising out of Defendant's conduct are common to all members of the class and subclasses, and such common issue of law and fact predominate over any questions affecting only individual members of the class and sub-classes.

48.     Common issues of law and face including without limitation:

(a)     Whether Facebook sold in-App purchases and virtual goods;

(b)     Whether Facebook sold in-App purchases and virtual goods to minors;

(c)     Whether Facebook knew that many gaming apps are designed to induce minors to make purchases;

(d)     Whether Facebook intended for minors to purchase such apps and virtual currency without the knowledge or authorization of the minors' parents or guardians;

(e)     Whether Facebook's sales to minors of in-App purchases and virtual goods constitute void, or, in the alternative, voidable contracts;

(f)     Whether Facebook's scheme to sell in-App purchases and virtual goods to minors without providing refunds under any circumstance violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and Unfair Competition Law, Business & Professions Code § 17200 *et seq.*;

(g)     Whether Facebook represented to minors and their parents and guardians that purchases of Facebook Credits are non-refundable under all circumstances;

(h)     Whether Facebook engaged in deceptive, misleading, unfair, fraudulent and/or otherwise unlawful practices through its non-disclosure of material facts and affirmative misleading statements regarding the rights of minors to disaffirm contracts;

(i)     Whether Plaintiffs and members of the Class are entitled to recover restitution of monies remitted to Facebook as a result of the actions and omissions alleged herein;

(j)     Whether Facebook should be enjoined from continuing to make deceptive, misleading, unfair, fraudulent and/or otherwise unlawful

practices through its non-disclosure of material facts and affirmative misleading statements regarding the rights of minors to disaffirm contracts;

(k)     Whether Facebook was unjustly enriched by its scheme;

(l)     Whether Facebook and the Class have been damaged, and if so, in what amount;

(m)    Whether Facebook violated the Electronic Funds Transfer Act;

(n)     Whether Facebook violated California's Money Transmission Act; and

(o)     Whether Facebook should be enjoined from engaging in Facebook Credit transactions with minors, or, in the alternative, required to comply with all provisions of California and Federal law in its transactions with minors.

49.     Plaintiffs' claims are typical of the claims of other members of the Class, and there is no defense available to Facebook that is unique to Plaintiff.  Plaintiffs paid hundreds of dollars to Facebook for unauthorized purchases made by minor children.

50.     Plaintiffs will fairly and adequately represent the interests of the Class.  Plaintiffs have no interests that are antagonistic to those of the Class.  Plaintiffs have the ability to assist and adequately protect the rights and interests of the Class during the litigation.  Further, Plaintiffs are represented by counsel who are competent and experienced in this type of class action litigation.

51.     The relief sought is common to the entirety of the class and sub-classes.

52.     This class action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

(a)     The joinder of thousands of geographically diverse individual class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources;

(b)     There is no special interest by class members in individually controlling prosecution of separate causes of action;

(c)     Class members' individual claims are relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual class members addressing their loss;

(d)   When Facebook's liability has been adjudicated, claims of all class members can be determined by the Court and administered efficiently in a manner that is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of many individual cases;

(e)   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

(f)   This class action will assure uniformity of decisions among class members;

(g)   Without this class action, restitution will not be ordered and Facebook will be able to reap the benefits or profits of its wrongdoing;

(h)   The resolution of this controversy through this class action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying indifferent adjudications of their rights; and

(i)   Class treatment is required for optimal deterrence.

53.   Further, class certification is appropriate because Facebook has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory and other relief appropriate.  In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for Facebook and inconsistent or varying adjudications for all parties.  A class action is superior to other available methods for the fair and efficient adjudication of this action.

## VI.   CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

54.   California's substantive laws apply to every member of the Class, regardless of where in the United States the class member resides.  Facebook imposes on its account holders a Statement of Rights and Responsibilities contract that must be accepted before becoming an account holder and before joining Facebook or making any purchases via Facebook Credits. This contract provides as follows:

You will resolve any claim, cause of action or dispute ("claim")

you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

55. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

56. Facebook's United States headquarters and principal place of business is located in California. Facebook also owns property and conducts substantial business in California, and therefore California has an interest in regulating Facebook's conduct under its laws. Facebook's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

57. California is also the state from which Facebook's alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

58. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Declaratory Relief Under 28 U.S.C. § 2201)**

59. Plaintiffs repeat and re-allege herein each allegation of this Second Amended Complaint as if fully set forth herein.

60.     All Facebook Credit purchases and in-App purchases for virtual goods via Facebook Credits that Facebook presents for sale constitutes an offer to enter into a sales contract.

61.     By purchasing a virtual good or making a purchasing inside an App, a minor accepts Facebook's offer.

62.     Members of the class tendered payment for in-App purchases or virtual goods. These payments constitute consideration.

63.     Accordingly, all transactions that are the subject of this Complaint are possessed of the three elements of a contract, i.e., offer, acceptance and consideration.

64.     However, Minor Subclass Members including Plaintiffs I.B. and J.W. purport to have delegated to Facebook the power to withdraw funds from the associated cards or accounts supplied to Facebook in connection with these transactions.  Such delegation constitutes a void contract under California Family Code § 6701, which provides:

> A minor cannot do any of the following:
>   (a) Give a delegation of power.
>   (b) Make a contract relating to real property or any interest therein.
>   (c) Make a contract relating to any personal property not in the
> immediate possession or control of the minor.

*See* California Family Code § 6701.

65.     Additionally, Minor Subclass Members and Plaintiffs I.B. and J.W. did not have immediate possession or control of their' parents' credit or bank account when they made the Facebook Credit transactions at issues in this case.  In connection with Facebook Credit transactions with minors, Facebook collects funds from debit cards, credit cards, PayPal accounts, or other sources that are not in the minor's possession or control.  In fact, the funds are in the possession and control of the minor's parents and the card issuers.  Such transactions constitute void contracts under California Family Code § 6701.

66.     California law further provides that a guardian may enforce a minor's rights in a civil action or other legal proceeding:

> A minor may enforce the minor's rights by civil action or other
> legal proceedings in the same manner as an adult, except that a
> guardian must conduct the action or proceedings.

*See* Cal. Fam. Code § 6601.

67.     Facebook Credit transactions originating from the Facebook accounts of minors between Defendant and the members of the Class are accordingly void, notwithstanding Defendant's statements to the contrary.

68.     In the alternative, if these transactions are not void, they are voidable.  Under California law, minors have the right to disaffirm contracts such as those at issue here:

> Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards

Cal. Fam. Code § 6710.

69.     California law further provides that a guardian may enforce a minor's rights in a civil action or other legal proceeding:

> A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as an adult, except that a guardian must conduct the action or proceedings.

*See* Cal. Fam. Code § 6601.

70.     The contracts between Defendant and the members of the Minor Subclass Members are voidable, notwithstanding Defendant's statements to the contrary.

71.     As set forth above, there is an actual controversy between the parties, requiring a declaratory judgment.

72.     This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 et seq., seeking a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the contracts between Defendant and the Minor Subclass Members relating to in-App purchases and virtual goods are void or voidable; (c) the Minor Subclass Members are entitled to restitution; (d) an award of reasonable attorneys' fees and costs of suit to Plaintiffs and the Minor Subclass Members; (e) that Facebook must either substantially alter its Facebook Credit transactions in order to comply with the law or not engage in Facebook Credit transactions with minor accounts at all; and (f) such other and further relief as is necessary and just.

## SECOND CAUSE OF ACTION

### (Violation of the California Consumers Legal Remedies Act)

73.     Plaintiffs repeat and re-allege herein each allegation of this Second Amended Complaint as if fully set forth herein.

74.     At all times relevant hereto, there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

75.     Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d).

76.     Cal. Civ. Code § 1761(a) defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods."  Facebook Credits, which were obtained by the minor Plaintiffs and members of the Class for personal purposes, and constitute certificates or coupons exchangeable for goods thereby constitute "goods" under the CLRA.

77.     Cal. Civ. Code § 1761(b) defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  The minor Plaintiffs and members of the Class availed themselves of the use of Facebook Credits as services for use that was neither commercial or business use, and Facebook Credits constitute "services" under the CLRA.

78.     Facebook violated the CLRA's proscription against the concealment of the characteristics, use, benefit, or quality of goods by actively marketing and promoting its in-App purchases and virtual goods with the statement that purportedly "all sales are final" when in fact that is not the case, given that Facebook Credit transactions with minors are either void or voidable, under California Family Code secs. 6701 and 6710, because it operated Facebook Credit Transactions without being certified to do so under the California's MTA, when it failed to offer refunds and provide specific statutory notice of the availability of refunds as required by California's MTA, and when it failed to provide refunds and otherwise violated the federal Electronic Funds Transfer Act.  Specifically, Facebook has violated:  (a) § 1770(a)(5)'s proscription against representing that goods have uses or characteristics they do not have;  (b) §

1770(a)(7)'s proscription against representing that goods are of  particular standard or quality when they are of another; (c) § 1770(a)(14)'s proscription against "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

79.    Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts.

80.    Facebook owed a duty to disclose material facts about the Facebook Credit transactions embedded in games it marketed, advertised and promoted to minor children, and Facebook owed a duty either to be silent as to the finality of the transactions under California law or to note that such transactions are not in fact final under California law.  Facebook breached such duty as alleged in this Complaint.

81.    Plaintiffs and the Class suffered actual damages as a direct and proximate result of Facebook's actions, concealment and/or omissions in violation of the CLRA, as evidenced by the substantial sums Facebook pocketed. Plaintiffs will seek such compensation for damages on behalf of themselves and all those similarly situated under the CLRA after the 30-day notice requirement is satisfied.

82.    Plaintiffs, on behalf of themselves and for all those similarly situated, demand judgment against Facebook for injunctive relief requiring that Facebook comply with California and Federal law in connection with all Facebook Credit transactions, including without limitation that that Facebook substantially alter the way in which it engages in Facebook Credit transactions with minors or that Facebook stop engaging in Facebook Credit transactions with minors entirely.

83.    In accordance with § 1782(a) of the CLRA, counsel is serving Facebook, by certified mail, with notice of its alleged violations of the CLRA.

84.    If Facebook does not fully meet the demand set forth in that letter, then Plaintiffs

will amend or seek leave to amend this complaint in order to seek the following relief under CLRA § 1780, for Facebook's violations of CLRA §§ 1770(a)(5) and (a)(7) and (a)(14):

- actual damages under Cal. Civ. Code § 1780(a)(1);

- punitive damages under Cal. Civ. Code § 1780(a)(4);

- attorneys' fees and costs under Cal. Civ. Code § 1780(d); and

- any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

### **THIRD CAUSE OF ACTION**
**(Violation of Bus. & Prof. Code § 17200 *et seq.*)**

85.  Plaintiffs repeat and re-allege herein each allegation of this Second Amended Complaint as if fully set forth herein.

86.  Plaintiffs bring this cause of action on behalf of themselves, on behalf of the other class members, and in their capacity as private attorneys general against Facebook for its unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

87.  Plaintiffs assert these claims as a representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that Facebook should be required to reimburse under UCL § 17200 et seq.

88.  This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices.  Plaintiffs and the other class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

89.  The UCL § 17200 et seq. prohibits acts of "unfair competition."  As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices;" (b) "unfair fraudulent business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

90.  Facebook violated the UCL by engaging in conduct that violated each of the three prongs identified by the statute as set forth throughout this Complaint.

91.     Facebook committed an unlawful business act or practice in violation of the UCL § 17200 et seq. when it violated the CLRA as described above, when it operated Facebook Credit Transactions without being certified to do so under the California's MTA, when it failed to offer refunds and provide specific statutory notice of the availability of such refunds as required by California's MTA, when it failed to provide refunds and otherwise violated the federal Electronic Funds Transfer Act, and when engaged in Facebook Credit transactions with minors without complying with the requirements of California Family Code secs. 6701 and 6710.

92.     Facebook committed unfair and fraudulent business acts and practices in violation of the UCL §§ 17200 and 17500 et seq. by actively advertising, marketing and promoting Facebook Credits with the statement that "all sales are final" when Facebook knew that minors were making such purchases and that minors had the right to void such contracts if they so chose.

93.     Plaintiffs and the members of the proposed Class and reasonable users of Facebook were deceived or likely to be deceived by Facebook's false representations about Facebook Credit transactions being "final" contrary to California and federal law as described throughout this Second Amended Complaint.  Facebook's own policies for refunds were buried in its voluminous and difficult to understand Statement of Rights and Responsibilities and payment terms, as result of which Plaintiffs and the members of the Refund Class were unable to obtain the refunds that they have sought.

94.     Facebook's deceptive practices were specifically designed to induce Plaintiffs and the other members of the Class to believe they had no right to receive refunds, when in fact they have such a right, or to conceal and prevent Plaintiffs and the other members of the Refund Class from obtaining refunds to which they were entitled under California and federal law.

95.     Facebook's deceptive practices have deceived and/or are likely to deceive Plaintiffs and members of the consuming public.

96.     Facebook's unfair practices as described within this complaint specifically violate public policy of protecting consumers in online transactions and protecting minors from abusive and predatory practices by declaring certain transactions with minors as void or voidable as set forth specifically in statutory provisions, namely, California's MTA, the EFTA, and California

Family Code secs. 6701 and 6710.

97.     As a direct and proximate cause of Facebook's violation of the UCL, Plaintiffs and the Class and subclasses have suffered harm in that they have not been reimbursed for the purchases that they and their minor children (as applicable) made from Facebook, contrary to California and Federal law and engaged in Facebook Credit Transactions that violated the MTA and EFTA.

98.     Plaintiffs and the Class and subclass members have conferred benefits on Facebook by paying for virtual goods and in-App purchases from Facebook in transactions in which Facebook did not comply with California or Federal law.

99.     Plaintiffs and the Minor Class have conferred benefits on Facebook by paying for virtual goods and in-App purchases their minor children purchased from Facebook in transactions that are either void or voidable under California law.

100.     Facebook wrongfully and knowingly and willingly accepted these monetary benefits from Plaintiffs and the Class.

101.     Under the circumstances alleged herein, it is inequitable for Defendant to retain such benefits at the expense of Plaintiffs and the Class.

102.     As a direct and proximate result of Facebook's misconduct as set forth herein, Facebook has been unjustly enriched.

103.     Facebook has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class by wrongfully collecting and retaining money to which Facebook, in equity, is not entitled.

104.     Plaintiffs and the Class are entitled to recover from Facebook all amounts wrongfully collected and improperly retained by Facebook, plus interest thereon.

105.     As a direct and proximate result of Facebook's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Facebook of the benefits conferred by Plaintiffs and the Class.

106.     As a direct and proximate result of Facebook's violation of the UCL,  Facebook has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class

or disgorge its ill-gotten profits pursuant to the UCL § 17203.

107.    Plaintiffs, on behalf of themselves and for all others similarly situated, demand judgments against Facebook for injunctive relief in the form of restitution, and/or disgorgement of funds paid to Facebook as alleged herein, and an injunction requiring Facebook to conform its practices to California and federal law.

**FOURTH CAUSE OF ACTION**

**(Violation of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.*)**
**Brought by Plaintiff Julie Wright and Her Minor Child J.W.**

108.    Plaintiffs repeat and re-allege herein the foregoing allegations.

109.    The Electronic Funds Transfer Act ("EFTA") establishes the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of individual consumer rights."

110.    Plaintiff Wright and the members of the EFTA Class each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

111.    Facebook engaged in "unauthorized electronic funds transfers" as that term is defined in 15 U.S.C. § 1693a(12) by debiting the bank accounts of Plaintiff Wright and the members of the EFTA Class.

112.    Accordingly, under 15 U.S.C. § 1693m, Plaintiff Wright on behalf of herself and the members of the EFTA Class seek damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. 23(b)(2) and 23(b)(3), and applicable case law and certifying the Class and subclasses defined herein;

B.   Designating Plaintiffs as representatives of the Class and subclasses and their counsel as class counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Facebook;

D.   Entering a Declaratory Judgment determining that the contracts between Defendant and the Class members relating to the purchase of Game Currency are void or in the alternative voidable at the option of the respective class members and that if the Class members elect to void the contracts, they will be entitled to restitution;

E.   An injunction that either requires Facebook to either cease selling Facebook Credits or similar virtual currency to accounts that belong to minors or substantially change its practices regarding Facebook Credit Transactions with minors, and to otherwise conform its practices with California and federal law;

F.   Providing all other equitable and injunctive relief sought under the CLRA and UCL above;

G.   Awarding Plaintiffs and members of the Class their individual and statutory damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief; and

H.   Granting such further relief as the Court deems just.

### VIII.   JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated: May 31, 2012                                 Respectfully submitted,

                                                    KERSHAW, CUTTER & RATINOFF, LLP


                                                    By:  /s/ John R. Parker, Jr.

                                                         John R. Parker, Jr.

**DECLARATION OF JOHN R. PARKER, JR.**
**PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, John R. Parker, Jr., declare as follows:

1.      I submit this declaration pursuant to section 1780 (d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.      Defendant Facebook, Inc. is a Delaware corporation with its principal place of business located at 1601 Willow Road in Menlo Park, Santa Clara County, California.

3.      This action was commenced in Santa Clara County Superior Court, and was removed by the Defendant to the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on May 31, 2012 in Sacramento, California.


                                        /s/ John R. Parker, Jr.

                                        John R. Parker, Jr.