COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
KRISTINE VAN HAMERSVELD (278745)
(kvanhamersveld@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
FACEBOOK, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem BRYAN FIFE; GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT; JULIE WRIGHT, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK, Inc.,<br><br>　　　　　　Defendant. | Case No.  CV-12-01894-CW<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>**FED. R. CIV. P. 12(b)(6); 12(f)**<br><br>Date:　　　August 30, 2012<br>Time:　　　2:00 p.m.<br>Judge:　　　Hon. Claudia Wilken<br>Dept.:　　　Courtroom 2, 4th Floor<br>　　　　　　1301 Clay Street<br>　　　　　　Oakland, CA 94612 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

**Table of Contents**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE ....................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

I.   INTRODUCTION ................................................................................ 2

II.   BACKGROUND ................................................................................. 3

    A.   Facebook Games & Credits ....................................................... 3

    B.   Facebook's Disclosures Related to Payments and Minors ................. 6

    C.   Plaintiff's Allegations & Claims ................................................ 7

III.   MOTION TO DISMISS ........................................................................ 9

IV.   ARGUMENT ..................................................................................... 9

    A.   Minors Cannot Disaffirm Contracts When They Have Accepted the Benefits ................................................................................ 9

    B.   Minors May Not Recover Consideration Paid By Others ................... 11

    C.   The Minor Plaintiffs' Transactions Are Not Void Under Family Code Section 6701(a) and (c) ........................................................... 12

    D.   Parents Cannot "Disaffirm" The Contracts Of Their Children ............ 13

    E.   Plaintiffs' Additional Statutory Claims Fail Because Facebook Credits Are Not Governed By The MTA Or The EFTA ...................... 14

        1.   The Money Transmission Act Is Inapplicable ......................... 14

        2.   The EFTA Is Inapplicable. ................................................ 15

    F.   Plaintiffs' Fraud-Based Theories Under the CLRA and UCL Fail Because the Amended Complaint Does Not Allege Reliance ............... 17

    G.   Plaintiffs' Claims Also Fail For Additional Claim-Specific Reasons ................. 19

        1.   Plaintiffs' CLRA Claim Fails Because Credits Are Neither "Goods" Nor "Services" ............................................................. 19

        2.   Plaintiffs' Claims Under the Unlawful and Unfair Prongs of the UCL Also Fail ............................................................... 21

        3.   Plaintiffs' Claim for Declaratory Relief Fails For Multiple Reasons ....... 21

V.   MOTION TO STRIKE .......................................................................... 22

    A.   Plaintiffs' Classes Contains Members that Lack Article III Standing ................. 22

    B.   Plaintiffs' Class Claims Are Unworkable On Their Face ..................... 23

VI.   CONCLUSION .................................................................................. 25

Cooley LLP
Attorneys At Law
San Francisco

i.

Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

**Table of Authorities**

Page

CASES

*A.V. v. iParadigms, LLC,*
   544 F. Supp. 2d 473 (E.D. Va. 2008)....................................................................... 10

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................................... 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 9, 11, 12

*Avritt v. Reliastar Life Ins. Co.,*
   615 F.3d 1023 (8th Cir. 2010)............................................................................... 23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................................. 9, 17

*Berry v. Am. Express Publ'g, Inc.,*
   147 Cal. App. 4th 224 (2007).............................................................................. 19, 20

*Brazil v. Dell Inc.,*
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) .................................................................. 24

*Buckland v. Threshold Enters., Ltd.,*
   155 Cal. App. 4th 798 (2007).................................................................................. 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) .......................................................................................... 21

*Charvat v. First Nat'l Bank of Wahoo,*
   Case No. 8:12CV97, 2012 U.S. Dist. LEXIS 77616 (D. Neb. June 4, 2012)......................... 17

*Dura Pharm., Inc. v. Broudo,*
   544 U.S 336 (2005) ............................................................................................... 17

*E.K.D v. Facebook, Inc.,*
   No. 3:11-cv-00461-GPM-SCW, slip op. (S.D. Ill. Mar. 8, 2012) ............................ 10

*Fairbanks v. Super. Ct.,*
   46 Cal. 4th 56 (2009) ........................................................................................ 19, 20

*Ferrington v. McAfee, Inc.,*
   10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................ 19, 20

*Friedman v. 24 Hour Fitness USA, Inc.,*
   580 F. Supp. 2d 985 (C.D. Cal. 2008)...................................................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

**Table of Authorities**
**(continued)**

Page

*Hanni v. Am. Airlines, Inc.*,
  No. C-08-00732 CW, 2010 U.S. Dist. LEXIS 38436 (N.D. Cal. Apr. 19, 2010).................. 25

*Hastings v. Dollarhide*,
  24 Cal. 195 (1864) ......................................................................................................... 9

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
  622 F. Supp. 2d 842 (N.D. Cal. 2007) ........................................................................... 20

*Hines v. Cheshire*,
  36 Wash. 2d 467 (1950) .................................................................................................. 11

*Holland v. Universal Underwriters Ins. Co.*,
  270 Cal. App. 2d 417 (1969) .......................................................................................... 10

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .................................................................................................... 17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...................................................................................... 9, 19

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) .......................................................................... 18

*MacGreal v. Taylor*,
  167 U.S. 688 (1897) ....................................................................................................... 10

*Mangindin v. Wash. Mut. Bank*,
  637 F. Supp. 2d 700 (N.D. Cal. 2009) ........................................................................... 22

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)........................................................................................... 23

*McCarty-Greene Motor Co. v. McCluney*,
  219 Ala. 211 (1929) ........................................................................................................ 11

*Nabors v. Google, Inc*,
  No. 5:10-CV-03897 EJD (PSG), 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ........... 21, 22

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D Cal. 2006) ....................................................................... 16, 17

*O.C. Harden v. Am. Airlines*,
  No. 97-A-1058-N, 1998 U.S. Dist. LEXIS 4325 (D. Ala. Mar. 25, 1998)........................... 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

**Table of Authorities**
**(continued)**

Page

*O'Donovan v. Cashcall, Inc.*,
   No. C-08-03174 MEJ, 2011 U.S. Dist. LEXIS 131868 (N.D. Cal. Nov. 14, 2011) .............. 25

*Olagues v. Russoniello*,
   770 F.2d 791 (9th Cir. 1985) ............................................................................................ 21

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062, 1999 U.S. Dist. LEXIS 9194 (C.D. Cal. June 8, 1999) ........................... 10

*Peers v. McLaughlin*,
   88 Cal. 294 (1891) ............................................................................................................. 9

*Pinel v. Aurora Loan Servs., LLC*,
   814 F. Supp. 2d 930 (N.D. Cal. 2011) .............................................................................. 21

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................... 23, 25

*Scott Eden Mgmt. v. Kavovit*,
   563 N.Y.S.2d 1001 (1990) ................................................................................................ 10

*Sheller v. Frank's Nursery & Crafts, Inc.*,
   957 F. Supp. 150 (N.D. Ill., 1997) .................................................................................... 10

*Swann v. Secretary, Georgia*,
   668 F.3d 1285 (11th Cir. 2012) ........................................................................................ 23

*Taylor v. Indus. Accident Comm'n*,
   216 Cal. App. 2d 466 (1963) ............................................................................................ 13

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
   454 F. Supp. 2d 62 (E.D.N.Y. 2006) ................................................................................ 23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 9

**STATUTES**

15 U.S.C
   § 1693 .............................................................................................................................. 15
   § 1693a ............................................................................................................................ 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**Def. Facebook, Inc.'s Mot. to Dismiss**
**Plaintiffs' Second Amend. Class Action Compl.**
**No. CV-12-01894-CW**

**Table of Authorities**
**(continued)**

**Page**

Cal. Civ. Code
§ 1761(a) ............................................................................................... 19, 20
§ 1770(a) ............................................................................................... 8, 19

Cal. Fin. Code
§ 2001 ......................................................................................................... 14
§ 2003 ......................................................................................................... 15
§ 2102 ......................................................................................................... 15

Family Code
§ 6701 ................................................................................................... *passim*
§ 6710 ......................................................................................................... 14

**OTHER AUTHORITIES**

12 C.F.R
§ 205.3 ........................................................................................................ 16
§ 205.10 ...................................................................................................... 16
§ 205.13 ...................................................................................................... 16

43 C.J.S. Infants
§ 226 ........................................................................................................... 14
§ 233 ........................................................................................................... 11

5 Williston on Contracts § 9:10 (4th ed. 2011) .................................................. 14

2010 Leg. 2009-2010 Sess. (Ca. 2010) (Statement of Sen. Ronald Calderon, Chair S.
   Comm. Banking, Fin., & Ins.) ........................................................................ 14

Black's Law Dictionary (9th ed. 2009) ............................................................... 12

Federal Rules of Civil Procedure
9 ...................................................................................................................... 9
12 .................................................................................................................... 1

Merriam-Webster's New Collegiate Dictionary (11th ed. 2003) .......................... 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**Def. Facebook, Inc.'s Mot. to Dismiss**
**Plaintiffs' Second Amend. Class Action Compl.**
**No. CV-12-01894-CW**

<strong><u>Notice of Motion And Motion to Dismiss or, in the alternative, to Strike</u></strong>

PLEASE TAKE NOTICE that on August 30, 2012 at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 1301 Clay Street, Oakland, California in Courtroom 2, 4th Floor, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss the Second Amended Complaint (the "Amended Complaint" or "SAC") filed by Plaintiffs or, in the alternative, to strike the class allegations from the Amended Complaint.

Facebook's Motion is made pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Declaration of Bill Richardson ("Richardson Decl."), and accompanying exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

<strong><u>Statement of Issues To Be Decided</u></strong>

1.     Have Plaintiffs stated a claim to disaffirm I.B.'s and J.W.'s purchases of Facebook Credits (a form of digital currency that can be used to buy "virtual goods" on Facebook) where (i) the Amended Complaint expressly admits (as to I.B.) and strongly suggests (as to J.W.) that those Plaintiffs have already used and benefited from the Credits they purchased, (ii) neither I.B. nor J.W. paid for Credits with his own funds, and (iii) the established law precludes parents like Plaintiffs Bohannon and Wright from disaffirming a contract on behalf of their children?

2.     Can Family Code section 6701(a), which allows minors to void a contractual "delegation of power," be applied to Credits, which do not involve any delegation of power?

3.     Can Family Code section 6701(c), which allows minors to void contracts involving "personal property not in the immediate possession or control of the minor," be applied to Credits, which are an intangible right to purchase virtual goods?

4.     Have Plaintiffs stated a viable claim based on the Money Transmission Act (MTA) where the MTA applies only to businesses engaged in the forwarding and transmission of money?



Cooley LLP
Attorneys At Law
San Francisco

1.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

5.      Have Plaintiffs stated a viable claim under the Electronic Funds Transfer Act (EFTA) where the EFTA is directed at "financial institutions" and Plaintiffs do not allege that Facebook is a "financial institution" or that the purchase of Credits falls within a specific obligation applicable to non-financial institutions?

6.      With respect to Plaintiffs' fraud-based claims under the Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law (UCL), have Plaintiffs adequately alleged reliance where they do not allege that the alleged misstatement (Facebook's statement that "all sales are final") influenced their decision to purchase Credits or that they saw the statement at all?

7.      Should the Court strike the class-related allegations in the Amended Complaint where (i) the proposed class definitions include members that lack Article III standing, and (ii) each class member's claim would involve individualized facts concerning each purchase?

## I.      INTRODUCTION

Plaintiffs' Amended Complaint should be dismissed because it seeks a windfall recovery that violates black-letter law.  The minor Plaintiffs, I.B. and J.W., allege that they used their parents' credit and debit cards to purchase "Facebook Credits," a digital currency available to Facebook users to enhance the games they play on Facebook.  I.B. and J.W. have already used the currency they purchased and enjoyed the benefits of the bargain they struck.  Yet Plaintiffs nevertheless demand a refund of the amounts they paid, on the theory that minors can freely "disaffirm" any payment obligation that they incur– even if they have *already* used and benefited from the items obtained in the transaction.  Even more remarkably, Plaintiffs ask the Court to enter declaratory judgment that would effectively allow the minor Plaintiffs – and all other minors who use Facebook – to *continue* purchasing and using Credits for free.  In short, Plaintiffs are asking the Court to create entirely new law allowing minors – with the full knowledge of their parents – to get something for nothing.

There is no basis for this extraordinary relief.  To the contrary, California law has long applied the common-sense rule that minors cannot accept the benefits of a contract while avoiding their reciprocal obligations.  Further, minors cannot disaffirm a contract to get a refund of consideration paid by *others*, including their parents.  Given these fatal and incurable defects,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.                    Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

1   all claims predicated on Plaintiffs' disaffirmance theory should be dismissed with prejudice, as

2   Facebook showed in its first motion to dismiss.

3       Apart from repeating their flawed disaffirmance theory, Plaintiffs' Amended Complaint

4   raises a slew of new theories under the California Family Code, the MTA, and the EFTA.

5   Plaintiffs also propose a new, massively overbroad class – all Facebook users (minors or not) who

6   have purchased Credits – along with three sprawling subclasses tied to the statutes.  These new

7   statutory allegations get Plaintiffs no closer to stating a valid claim because they pertain to

8   specific types of contracts and transactions that have nothing to do with the allegations here.

9       Finally, Plaintiff's class action allegations should be stricken regardless of whether the

10  Court dismisses the Amended Complaint.  Plaintiff's proposed class definitions – which purport

11  to include *all* minors *and* all adults who have ever purchased Credits – would encompass

12  Facebook users who have no viable standing to assert claims against Facebook under any theory,

13  much less the theory alleged in the Amended Complaint.  The proposed classes are also

14  inherently unworkable because they would require the Court to assess the interactions of each

15  parent and each child for each transaction to ascertain who might fall into one of the proposed

16  classes.  These class definitions are untenable on their face and the Court need not wait for full

17  class certification briefing to strike them from the Amended Complaint.

18  **II.   BACKGROUND**

19          **A.   Facebook Games & Credits**

20      Facebook is a free "social utility that helps people communicate more efficiently with

21  their friends, family, and coworkers."  (SAC ¶ 11.)  Facebook also provides a free platform for

22  third-party developers to create applications (or "apps").   (*Id.* ¶ 13.)  Apps allow Facebook's

23  users to play social games with their friends, remember birthdays, share their tastes in movies and

24  music with friends, and more.

25      Facebook allows users to purchase Credits, a virtual currency, like arcade tokens, to

26  acquire virtual goods in Facebook games.[1]  For example, in FarmVille (a game developed by

27

28  [1]*See* Exhibit E to the Declaration of Bill Richardson in Support of Defendant Facebook Inc.'s
    Request for Judicial Notice ("RJN"), filed on May 10, 2012, ECF 17.  As explained in the RJN,

1    Zynga played on Facebook) users can use Credits to acquire enhancements for their virtual farms,

2    such as helping virtual crops grow faster.  (SAC ¶ 19.)  As the Amended Complaint illustrates,

3    Credits can be applied in a variety of ways to enhance users' experiences in using Facebook

4    games.  (Id.)

5            Credits can be purchased using credit or debit cards, PayPal, and other payment methods.

6    (Id. ¶ 14.)  Credits are available in $0.10 increments, and can be purchased directly from any

7    Facebook game that accepts payments (an "in-game purchase").[2]  The following images illustrate

8    the transactions alleged in the Amended Complaint.  The first screen appears before an initial

9    purchase and before users input payment information; this is similar to the screen I.B. would have

10   seen when he made the original $20 purchase alleged in the Amended Complaint.[3]  (SAC ¶ 25.)



22           Above, the user can see the price is "$1.00" and select among the payment methods listed.

23   The phrase "Terms Apply" (in blue) is a link to the Payments Terms (discussed below).

24           The second screen (pictured below) appears when the user clicks "Continue" and allows

27   the Court should consider these public materials because they are referenced in the Amended
     Complaint and are not subject to reasonable dispute.
     [2] (Id.)
28   [3] (Richardson Decl., Ex. G.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.                                    Def. Facebook, Inc.'s Mot. to Dismiss
                              Plaintiffs' Second Amend. Class Action Compl.
                                                    No. CV-12-01894-CW

users to enter in their payment information, including their name and credit card number.[4]   This screen also provides an explicit message stating that Facebook saves credit card information for future purchases, as illustrated below:



The third screen below is an example of what users see for subsequent purchases in "Ninja Saga" where the credit card information has already been stored, as alleged in the Amended Complaint.[5]



This screen also displays the price of the purchase, in this case $7.00 for 70 Credits.  The phrase "Terms Apply" is another link to the Payments Terms.   The payment method (in this case, a Visa credit card with the last four digits "2442") is indicated in the lower left hand corner of the

---

[4] (Richardson Decl., Ex. H.)
[5] (Richardson Decl., Ex. I.)

Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

1    screen.  To purchase the additional Credits, the user must take affirmative action by clicking "Buy

2    600 Saga Token."  The user can choose not to purchase the Credits by clicking "Cancel."

3    **B.      Facebook's Disclosures Related to Payments and Minors.**

4         The purchase of Credits is governed by Facebook's Payments Terms, which are

5    referenced in both (i) the Statement of Rights and Responsibilities ("SRR"), to which all users

6    must agree in order to use Facebook, and (ii) the payment screens above.  (SAC ¶ 16.)  The

7    Payments Terms state that: "When you provide a payment source to us, <u>you confirm that you are</u>

8    <u>permitted to use that payment source.</u>"[6]  The Payments Terms also contain a disclosure related to

9    minors, stating: "<u>If you are under the age of 18, you may make payments only with the</u>

10   <u>involvement of a parent or guardian.  You should review these Payments Terms with a parent or</u>

11   <u>guardian to make sure that you both understand them.</u>"[7]

12        The Payments Terms also state: "When you provide a payment source to us, you confirm

13   that you are permitted to use that payment source.  <u>You also authorize us to collect and store it</u>,

14   along with other related transaction information."[8]  Moreover, as pictured above, users are

15   informed that Facebook stores credit card information when they enter their credit card

16   information initially.  The Amended Complaint omits any reference to the terms above, but does

17   acknowledge that users are bound by the SRR and the Payment Terms.  (SAC ¶ 16.)

18        Facebook users can dispute "unauthorized" charges through an online process.  The

19   Payments Terms state: "If you believe that an unauthorized or otherwise problematic transaction

20   has taken place under your account, you agree to notify us immediately, so that we may take

21   action to prevent financial loss."[9]  This dispute process is available from Facebook's "Help

22   Center," which can be accessed by the "Help" link at the bottom of nearly all pages on

23   Facebook's website.[10]  The front page of the Help Center is reflected below.

24

25

26   [6] (Richardson Decl., Ex. B (emphasis added).)

27   [7] (*Id.* (emphasis added).)
     [8] (*Id.* (emphasis added).)

28   [9] (Richardson Decl., Ex. B.)
     [10] (Richardson Decl., Ex. C.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**



By following the link highlighted above, users are directed to the Credits Support Center where they are instructed to provide certain information so that Facebook can evaluate disputed charges.[11]   Disputes and reimbursement requests are then handled in the normal course of business (and in accordance with the Payments Terms) based on the information submitted.[12]   In addition, a link to this online dispute process also appears in the confirmation email sent *each time a user purchases Credits*.

### C.   Plaintiff's Allegations & Claims

The Amended Complaint involves transactions by two minors (the "Minor Plaintiffs"). Plaintiffs allege that, in October 2011, I.B., asked his mother, Plaintiff Glynnis Bohannon, "for permission to spend $20 on his Facebook account."  (SAC ¶ 25.)  Ms. Bohannon agreed and gave I.B. her credit card to buy Credits.  (*Id*.)  I.B. then made a series of "in-game purchases" using Ms. Bohannon's credit card and "expend[ed]" those additional Credits to obtain unspecified features in the game Ninja Saga.  (*Id*.)  According to the Amended Complaint, I.B. charged "several hundred dollars" while playing Ninja Saga.  (*Id*.)  After learning of these charges, Ms. Bohannon spent "several hours" searching for a "mechanism to contact Facebook to dispute the

---

[11]  (*See* Richardson Decl., Ex. D.)

[12]  As a courtesy, Facebook has refunded Glynnis Bohannon's credit card charges, with the exception of the initial $20 that she acknowledges in the Amended Complaint she authorized (*see* below).  These refunds were made according to Facebook's standard policies, without any admission as to liability or waiver of any defenses in this litigation.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

charges," before finding a "phone number at Facebook" and leaving a message about her dispute. (*Id.* ¶ 27.) Plaintiffs do not indicate if Ms. Bohannon accessed the Help Center or reviewed any of the email confirmations that her son received after purchasing Credits, all of which provided a link to Facebook's dispute resolution process.

Plaintiffs allege that, starting in December 2011, the second minor, J.W., made "a series of charges [totaling approximately $1,059.20] via Facebook Credits using the debit card of Julie and Steven Wright" which J.W. took allegedly "without their permission." (*Id.* ¶ 29.) Plaintiffs further allege that, "[u]pon learning of these charges, Stephen Wright attempted to find a mechanism to contact Facebook and dispute the[] charges." (*Id.* ¶ 31.) Unlike Ms. Bohannon, Mr. Wright contacted Facebook on February 8, 2012, about his son's charges, received a response on February 10, 2012, and received a partial refund of $59.90. (*Id.* ¶ 31.) Almost two months later, Plaintiffs allege that Mr. Wright realized that he had not received a full refund for his son's charges from Facebook. (*Id.*) On April 13, 2012, Mr. Wright allegedly contacted Facebook to seek a full refund and engaged in a series of additional communications with Facebook representatives. (*Id.*) Mr. Wright alleges that Facebook did not provide additional refunds because he failed to dispute his son's charges in accordance with the Payments Terms. (*Id.*)

Plaintiffs bring claims for Declaratory Judgment (Claim I)[13] and under the CLRA (Claim II),[14] the UCL (Claim III), and the EFTA (Claim IV). In support of the CLRA and UCL claims, Plaintiffs also allege a violation of the MTA. Plaintiffs purport to bring their suit on behalf of four separate but overlapping classes. The first class includes *all* Facebook members (minors *and* adults) who purchased Credits from January 1, 2011 to the date on which a class is certified (the

---

[13] Plaintiff specifically seeks a declaration that "(a) this action may proceed and be maintained as a class action; (b) the contracts between Defendant and the Minor Subclass Members relating to in-App purchases and virtual goods are void or voidable; (c) the Minor Subclass Members are entitled to restitution; (d) an award of reasonable attorneys' fees and costs of suit to Plaintiffs and the Minor Subclass Members; (e) that Facebook must either substantially alter its Facebook Credit transactions in order to comply with the law or not engage in Facebook Credit Transactions with minor accounts at all; and (f) such other and further relief as is necessary and just." (*See* SAC ¶ 72.)

[14] Plaintiff alleges violations of Cal. Civ. Code § 1770(a)(5) (representing that goods have uses or characteristics they do not have), (a)(7) (representing that goods are of a particular standard or quality when they are not), and (a)(14) (representing that a transaction involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law). (SAC ¶ 78.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1    "MTA Class").  (SAC ¶ 37.)  The second class, a subclass of the first, includes all minors on

2    Facebook *and their parents*.  (*Id.* ¶ 39.)  The third class, a subclass of the Minor Class, includes

3    minors and parents who sought a refund of a minor's purchase of Credits (the "Refund

4    Subclass").  (*Id.* ¶ 40.)  Last, within the Refund Subclass, Plaintiffs identify another subclass of

5    users whose payments were made from a debit card or via PayPal and originated from a U.S.

6    bank account (the "ETFA Subclass").  (*Id.* ¶ 41.)

7    **III.    MOTION TO DISMISS**

8           The Supreme Court has emphasized that "a complaint must contain sufficient factual

9    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial

10   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11   inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

12   662, 678 (2009) (citation omitted).  Under this standard, "labels and conclusions, and a formulaic

13   recitation of the elements of a cause of action will not" suffice.  *Bell Atl. Corp. v. Twombly*, 550

14   U.S. 544, 555 (2007).

15          Additionally, because Plaintiffs rely on a fraud-based theory under the UCL and CLRA,

16   the heightened pleading standards of Rule 9(b) apply to those claims.  *See Vess v. Ciba-Geigy*

17   *Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Plaintiffs must therefore plead facts to show

18   "'the who, what, when, where, and how' of the misconduct" that forms the basis of the UCL and

19   CLRA claims.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).

20   **IV.    ARGUMENT**

21       **A.    Minors Cannot Disaffirm Contracts When They Have Accepted the Benefits.**

22          California courts have long held that minors cannot disaffirm contractual obligations when

23   they have already received the expected benefits of a contract.  The California Supreme Court has

24   specifically explained that disaffirmance serves as a shield to protect minors from abuse, not as a

25   sword to allow them to retain benefits while avoiding corresponding obligations.  *Hastings v.*

26   *Dollarhide*, 24 Cal. 195, 216 (1864); *see also Peers v. McLaughlin*, 88 Cal. 294, 299 (1891)

27   ("This commanding principle of justice is so well established, that it has become one of the

28   maxims of the law. . . . [Minors] must either accept or repudiate the entire contract . . . .");

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1    *MacGreal v. Taylor*, 167 U.S. 688, 701 (1897) (finding that "the privilege of infancy" is not "a

2    sword to be used to the injury of others" and "the law intends it simply as a shield to protect the

3    infant from injustice and wrong.").[15]

4           This fundamental rule applies equally in the context of online contracts.  A federal court

5    applying California law in a case involving Facebook recently confirmed that "courts, including

6    California courts, have readily declined to permit minors to accept the benefits of a contract, then

7    seek to void the contact in an attempt to escape the consequences of a clause that does not suit

8    them."  *E.K.D v. Facebook, Inc.*, No. 3:11-cv-00461-GPM-SCW, slip op. at 7 (S.D. Ill. March 8,

9    2012).  In *E.K.D.*, the Court enforced a forum selection clause in the SRR (the same contract at

10   issue here) where the minor plaintiff had received the benefit of using Facebook's website and

11   "continue[d] to use Facebook.com."  *Id.* at 8.  Because the plaintiff could not "give back or in any

12   way disgorge, the benefit of her contract," the court held "it would be inequitable to now release

13   her from her obligations and [the] consequences attached to that benefit."  *Id.* at 7; *see also A.V. v.*

14   *iParadigms, LLC*, 544 F. Supp. 2d 473, 480-81 (E.D. Va. 2008) (minors could not avoid a

15   limitation of liability clause in an online contract where they had "received benefits from entering

16   into the Agreement").

17          The Minor Plaintiffs' claims fail for similar reasons here.  The Amended Complaint

18   concedes that I.B. has already used the Credits he purchased to make "in-game purchases" and

19

---

20   [15] *See also, e.g., Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 U.S. Dist.
LEXIS 9194, at *7 (C.D. Cal. June 8, 1999) (enforcing a forum selection clause against a minor

21   who had benefited from the defendant's travel services, explaining that a minor "cannot accept
the benefits of a contract and then seek to void it in an attempt to escape the consequences of a

22   clause that do[es] not suit her"); *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d
417, 421 (1969) (refusing to allow a minor to disaffirm the uninsured motorist section of his

23   insurance policy and stating that, "minors, if they would disaffirm a contract, must disaffirm the
entire contract, not just the irksome portions").  This approach has been widely adopted

24   throughout the United States.  *See Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp.
150, 153 (N.D. Ill., 1997) (stating that "there is an important corollary to the general rule

25   permitting minors to disaffirm contracts . . .  after disaffirmance, the infant is not entitled to be
put in a position superior to such a one as he would have occupied if he had never entered into the

26   voidable  agreement.") (internal quotation marks and citation omitted); *Scott Eden Mgmt. v.*
*Kavovit*, 563 N.Y.S.2d 1001, 1002 (1990) (stating that the minor "is not entitled to retain an

27   advantage from a transaction which he repudiates"); *O.C. Harden v. Am. Airlines*, No. 97-A-
1058-N, 1998 U.S. Dist. LEXIS 4325, at *15 (D. Ala. Mar. 25, 1998) (refusing to let a minors

28   avoid a forum selection clause they agreed to when they purchased an cruise ship ticket because
"[i]f the minor chooses benefits under the contract, he may not avoid his obligations thereunder.")

1   obtain upgrades in the Ninja Saga game.  (SAC ¶ 25.)  I.B. received the full benefit of the Credits

2   he purchased, and thus, he is barred as a matter of law from disaffirming his payment obligation.

3          Newly added plaintiff, J.W., scrupulously avoids making similar allegations about what he

4   did with the Credits he purchased.  (SAC ¶ 29.)  Nevertheless, it is implausible that J.W.

5   purchased "more than one thousand dollars" worth of Credits (in multiple purchases) and simply

6   hoarded them.  The *only* possible inference from these facts is that J.W. "expend[ed]" the Credits

7   he purchased, just as I.B. did.  *See Iqbal*, 556 U.S. at 679 ("[d]etermining whether a complaint

8   states a plausible claim for relief will … be a context-specific task that requires the reviewing

9   court to draw on its judicial experience and common sense.")

10         In any event, J.W. cannot avoid dismissal by omitting facts from the Amended Complaint

11  that are within his own knowledge.  Even if the Court does not conclude that J.W. used the

12  Credits he purchased, his claims still fail as a matter of law because the conclusory allegations

13  about J.W.'s purchases lack the basic facts needed to show he is entitled to any relief under

14  California law.  *See Iqbal*, 556 U.S. at 679 (plaintiffs must set forth "well-pleaded factual

15  allegations … [that] plausibly give rise to an entitlement to relief.")

16         **B.     Minors May Not Recover Consideration Paid By Others.**

17         The Minor Plaintiffs are also barred from disaffirming their purchases for an independent

18  reason.   Under established law, minors can only disaffirm a contract to recover their *own*

19  consideration and are, "in no event, entitled to recover any sums paid under the contract by

20  another person."  43 C.J.S. Infants § 233.  For example, in *Hines v. Cheshire*, 36 Wash. 2d 467,

21  481 (1950), a court allowed a minor to recover the purchase price he paid for a vehicle, but *only*

22  for amounts in excess of the amount that his father contributed.  The court concluded that the

23  minor was not "entitled to recover any sums paid under the contract by another person" and was

24  "not entitled to recover the $168.69 paid or advanced by his father."  *Id.*; *see also McCarty-*

25  *Greene Motor Co. v. McCluney*, 219 Ala. 211, 213 (1929) ("Upon the rescission of a contract of a

26  minor … he should recover only what he parted with, and not what another advanced or paid for

27  his benefit").

28         Similarly here, the Minor Plaintiffs cannot rely on the disaffirmance doctrine to unwind

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.                              **Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

their purchases of Credits because they acknowledge that those transactions were funded by their parents.  (*See* SAC ¶¶ 25, 29 (alleging that I.B. "us[ed] Glynnis Bohannon's Wells Fargo MasterCard" and that J.W made "us[ed] the debit card of Julie and Steven Wright.").)

### C. The Minor Plaintiffs' Transactions Are Not Void Under Family Code Section 6701(a) and (c).

Given the fatal defects of their disaffirmance theory, Plaintiffs now assert that their purchases of Credits are void under the Family Code.  These new theories fail as a matter of law because the provisions that Plaintiffs cite have nothing to do with the transactions at issue.

First, Plaintiffs rely on Section 6701(a), which provides that minors may not enter into a contract to "[g]ive a delegation of power."  (*See* SAC ¶ 64 (alleging claim under Cal. Fam. Code § 6701(a)).)  In an effort to shoehorn the purchase of Credits into this provision, Plaintiffs allege that the Minor Plaintiffs "delegated" to Facebook the "power to withdraw funds from the associated cards or accounts."  (SAC ¶ 64.)  But apart from parroting the words of the statute, there are no facts in the Amended Complaint to show how this provision could possibly apply here.  The plain meaning of "delegation" involves empowering a third-party to act *on one's behalf*.[16]  Plaintiffs' purchases of Credits did not "empower" Facebook to do anything on the Minor Plaintiffs' behalf.  Facebook simply carried out the requested transactions, by providing the amount of Credits indicated and charging the corresponding amounts to the Minor Plaintiffs' designated payment methods.  This is not a "delegation of power" any more than buying an ice cream cone at a baseball game with a parent's credit card amounts to "delegating power" to a vendor.  Plaintiffs' bare assertions of a purported "delegation" are legal conclusions that are not entitled to deference and should be rejected.  *Iqbal*, 556 U.S. at 681 ("allegations [that] are conclusory [are] not entitled to be assumed true.").

Plaintiffs next allege that the Minor Plaintiffs' transactions are void under Section 6701(c) because the purchases of Credits are "contract[s] relating to … personal property not in the

---

[16] *See* Black's Law Dictionary 491 (9th ed. 2009) (defining "delegation" as "the act of entrusting another with authority or empowering another to act as an agent or representative"); *see also* Merriam-Webster's New Collegiate Dictionary 329 (11th ed. 2003) (defining "delegation" as "the act of empowering *to act for another*" (emphasis added)).

1    immediate possession or control of the minor." Cal. Fam. Code § 6701(c). This claim is puzzling

2    given Plaintiffs' acknowledgement that this case involves the use of Credits to purchase "virtual

3    goods." (*See* SAC ¶ 1.) Plaintiffs do not explain how Credits, as an intangible right to purchase

4    intangible goods, could constitute a contract involving "personal property" within the meaning of

5    Section 6701(c). Indeed, there is not a single authority that would support expanding the statute

6    in that manner. To the contrary, Section 6701(c) has been applied only in circumstances

7    involving *tangible* property. *See, e.g.*, *Taylor v. Indus. Accident Comm'n*, 216 Cal. App. 2d 466,

8    473 (1963) (applying the predecessor statute to Section 6701 with identical terms and holding that

9    hard copies of newspapers are "personal property"). Even if a Credit could somehow be

10   considered "personal property," the transaction at issue would still fall outside of Section 6701(c)

11   because the Credits were in "the immediate … control" of the Minor Plaintiffs in the sense that

12   they were able to (and in fact did) make discretionary decisions on how to use their Credits (in

13   I.B.'s case, by making "in-game purchases" in the Ninja Sage game).

14          Plaintiffs allege that Section 6701(c) applies because "I.B. and J.W did not have

15   immediate possession or control of their' [*sic*] parents' credit or bank account when they made

16   the Facebook Credit transactions at issues [*sic*] in this case." (SAC ¶ 65.) But Section 6701(c) on

17   its face applies only where the *subject matter* of the contract is beyond the immediate possession

18   or control of the minor; the statute has nothing to do with the payment method used.[17] Here, the

19   transactions at issue relate to intangible goods that fall outside the statute; the fact that they used

20   their parents' credit cards to buy the Credits is irrelevant.

21          **D.      Parents Cannot "Disaffirm" The Contracts Of Their Children.**

22          Plaintiffs Glynnis Bohannon and Stephen Wright also cannot rely on a disaffirmance

23   theory because adults have no viable claim to set aside the transactions of their children. Family

24   Code Section 6710 provides that, "a contract of a minor may be disaffirmed *by the minor*" (to the

25   extent it can be disaffirmed at all) and not by his parent or other representative. Cal. Fam. Code §

---

26   [17] *See, e.g.*, *Taylor*, 216 Cal. App. 2d at 473 (finding that newspapers constituted personal
27   property in a minor newspaper delivery boy's "immediate control and possession" such that he
     "had the capacity to make a contract *relating to the sale of the newspapers* . . . .") (emphasis
28   added).

Cooley LLP
Attorneys At Law
San Francisco

13.                                    **Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

6710 (emphasis added); *see also* 5 Williston on Contracts § 9:10 at n.2 (4th ed. 2011) (stating that "the right to disaffirm is confined to the infant personally" and citing Cal. Fam. Code § 6710 as an example of a statute that "expressly provide[s] that *only the infant* may void the contract") (emphasis added); 43 C.J.S. Infants § 226 (explaining that, "the right of an infant to avoid or disaffirm a contract is a personal privilege of which *only the infant* can take advantage") (emphasis added).   Accordingly, Plaintiffs Bohannon and Wright cannot pursue any claim predicated on a disaffirmance theory under Section 6710.

### E. Plaintiffs' Additional Statutory Claims Fail Because Facebook Credits Are Not Governed By The MTA Or The EFTA.

Given the established law barring the disaffirmance theory raised in their initial complaint, Plaintiffs now seek to invoke two entirely new statutory claims under the MTA and the EFTA.  A cursory review of these statutes, however, confirms they have nothing to do with the purchase and use of Credits.

### 1. The Money Transmission Act Is Inapplicable.

The MTA was enacted to "regulate money transmission businesses," such as Western Union and similar services.  Cal. Fin. Code § 2001.  As explained in the legislative history, the MTA "regulate[s] the issuance of open loop, stored value cards by non-bank entities."  *See Bill Analysis*: *Hearing on AB 2789 Before the S. Comm. on Banking, Fin. & Ins.*, 2010 Leg. 2009-2010 Sess. (Ca. 2010) (Statement of Sen. Ronald Calderon, Chair S. Comm. Banking, Fin., & Ins.).  The "open loop" cards regulated by the MTA are those "redeemable for goods and services at *multiple vendors; e.g., a Visa check card*."  *Id.* (emphasis added).  By contrast, the MTA does *not* regulate "closed loop" cards that are "redeemable by the issuer for goods or services *provided by the issuer or its affiliate; e.g., a Starbucks card . . . .*"  *Id.* (emphasis added).[18]

---

[18] Further clarifying that the MTA only applies to *open-loop* stored value, the Senate Committee noted that it expected "more firms" to enter the "marketplace" of "open-loop stored value cards" in the future, and as such, "AB 2789 [was] intended to ensure that the issuers of *these* cards are regulated." *Bill Analysis*: *Hearing on AB 2789 Before the S. Comm. on Banking, Fin. & Ins.*, 2010 Leg. 2009-2010 Sess. (Statement of Sen. Ronald Calderon, Chair S. Comm. Banking, Fin., & Ins.) (emphasis added).

Cooley LLP
Attorneys At Law
San Francisco

14.

**Def. Facebook, Inc.'s Mot. to Dismiss Plaintiffs' Second Amend. Class Action Compl. No. CV-12-01894-CW**

This narrow focus of the MTA is apparent from definition of "money transmission" which is defined as selling or issuing "payment instruments" and "stored value" both of which *exclude* "any instrument that is *redeemable by the issuer for goods or services provided by the issuer or its affiliate*." Cal. Fin. Code at §§ 2003(q), (v) (emphasis added). Facebook Credits fall squarely within this exclusion, as they are redeemable only to "*make purchases within Facebook*" and "to acquire points, coins, or virtual currency *within Facebook Applications … that appear within the Facebook site*." (SAC ¶ 2 (emphases added).) Thus, by Plaintiffs' own characterization, Credits are not "payment instruments" or "stored value" within the meaning of the MTA. Cal. Fin. Code §§ 2003(q), (v).

Even if Credits could be deemed to fall within these statutory definitions, Plaintiffs would still have no viable claim. Apart from invoking the MTA in general terms, the only statutory requirement that Plaintiffs can point to is inapplicable on its face. Plaintiffs specifically allege that Facebook omitted the "right to refund" disclosure required under section 2102(b): "[i]n the case of money received for *transmission*, a receipt shall be provided . . . to all customers . . . ." Cal. Fin. Code § 2102(b) (emphasis added). This required receipt must state: "You, the customer, are entitled to a refund of the money *to be transmitted* as the result of this agreement if ____ (name of licensee) does not *forward the money* received from you within 10 days of the date of its receipt . . . ." *Id.* (emphasis added). These provisions are nonsensical as applied to the transactions here because Credits do not involve the "transmission" or "forward[ing]" of money to anyone; they simply give *the purchaser* the ability to buy virtual goods *for himself or herself.*

In short, the MTA has nothing to do with the purchase of Credits by minors for use with Facebook games and apps.

## 2.    The EFTA Is Inapplicable.

Plaintiffs' new EFTA claim fares no better. The ETFA is intended "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund[s] transfer systems." 15 U.S.C § 1693. As courts have recognized, these obligations are generally limited to "financial institutions": "An 'electronic fund transfer' is defined as 'any transfer of funds … which is initiated through an electronic terminal, telephonic instrument, or

Cooley LLP
Attorneys At Law
San Francisco

15.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

computer or magnetic tape so as to order, instruct or authorize a *financial institution* to debit or credit an account.'" *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1094-95 (N.D Cal. 2006) (emphasis in original) (quoting 15 U.S.C § 1693a(6)).[19] A "financial institution" is defined as a "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C § 1693a(9).[20]

Facebook is not a "financial institution," nor do Plaintiffs seek to allege as such. The mere fact that Facebook receives electronic payments from purchasers of Credits certainly does not bring Facebook within the scope of the EFTA as a "financial institution." *See Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 996 (C.D. Cal. 2008) (holding that an operator of fitness centers that receives credit card payments is not a financial institution and characterizing plaintiffs' claim as "frivolous"). Moreover, the limited aspects of the EFTA that apply to non-financial institutions have no connection to the transactions at issue and Plaintiffs cannot plausibly allege facts to state a claim within these narrow provisions. *See* 12 C.F.R § 205.3(a).[21]

Indeed, Plaintiffs do not even attempt to allege – even in the most general terms – how the EFTA purportedly applies to Facebook, what statutory requirements of the EFTA might pertain to the transactions at issue, how Facebook allegedly violated the statute, or any other fact needed to state a coherent theory under the EFTA. Instead, Plaintiffs simply refer in passing to (i) Section 1693a(12) (definition of an "unauthorized electronic funds transfer"), and (ii) Section 1693m (providing a civil remedy for violations of the statute). (SAC ¶¶ 111-112.) Neither of these provisions purports to set forth any actual obligations that could be applied to Facebook and by

---

[19] *See also* 12 C.F.R § 205.3(a) (stating that: "Generally, this part applies to financial institutions.")

[20] The EFTA defines "account" as: "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes . . . ." *Id.* § 1693a(2).

[21] 12 C.F.R § 205.3(a) specifies that "§§ 205.3(b)(2), and (b)(3), 205.10(b), and, (e) [and] 205.13" apply "to any person." Sections 205.3(b)(2)-(3) concern transfers via check or other paper instrument, and collecting fees for returned checks respectively. Section 205.10 relates to giving notice to consumers for "preauthorized" transfers. Section 205.13 deals with administrative enforcement and record retention requirements. None of these provisions has anything to do with Plaintiffs' purchases from Facebook.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

their terms they depend on *other* statutory provisions for effect.  *See Nordberg*, 445 F. Supp. 2d at 1094 (finding that, "section 1693m, is not a basis of liability under the statute, but simply an enforcement mechanism for other statutory provisions.").

These scattershot references to isolated EFTA provisions fall far short of stating a viable claim.  *Dura Pharm., Inc. v. Broudo*, 544 U.S 336, 346 (2005) (Rule 8 requires "'fair notice of what the plaintiff's claim is and the grounds upon which it rests . . . .'") (citation omitted); *Twombly*, 550 U.S. at 555 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice).  In similar circumstances, Judge Patel has dismissed EFTA claims because "broad averments of violations of the EFTA are inadequate" and held that Plaintiffs must "make specific reference to the portions of the act upon which they intend to rely." *Nordberg*, 445 F. Supp. 2d at 1095.  For similar reasons, Plaintiffs' piecemeal allegation pertaining to the EFTA should also be dismissed as a matter of law. [22]

### F.   Plaintiffs' Fraud-Based Theories Under the CLRA and UCL Fail Because the Amended Complaint Does Not Allege Reliance.

To support their CLRA and UCL claims, Plaintiffs allege in conclusory terms that they "were deceived or likely to be deceived by Facebook's false representations", specifically the statement in the Payment Terms that "all sales are final."  (SAC ¶¶ 92-93.)  But to state a viable claim, Plaintiffs must allege that they relied to their detriment on Facebook's purported misstatement.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (UCL "impose[s] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007) ("plaintiffs asserting CLRA claims sounding in fraud must establish that they *actually relied* on

---

[22] Even if the Court were to accept Plaintiffs' conclusory allegations that the MTA and EFTA apply to Credits, those claims would still fail as a matter of law because Plaintiffs allege no injury of any kind stemming from Facebook's alleged noncompliance with these statutes, as required under Article III of the Constitution.  *See Charvat v. First Nat'l Bank of Wahoo*, Case No. 8:12CV97, 2012 U.S. Dist. LEXIS 77616, at *7 (D. Neb. June 4, 2012) (finding that plaintiff lacked Article III injury where defendant allegedly failed to provide a disclosure on its ATM machines as required by the EFTA, explaining that "[t]he authorization of statutory damages is unrelated to injury" and "does not automatically mean that a litigant is entitled to damages when he has alleged no injury in fact.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1  the relevant representations or omissions.") (emphasis added).

2          Here, Plaintiffs cannot plausibly allege that they were deceived by the "all sales are final"

3  term, when their core claim is that Facebook acted *consistently* with that statement by treating

4  their transactions as "final" and declining to provide a refund.  Indeed, Plaintiffs do not even

5  attempt to allege that the "all sales are final" term influenced their decisions to purchase Credits

6  in any way.  Their fraud based claims should be dismissed for that reason alone.  *See, e.g., Laster*

7  *v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL claim for

8  lack of reliance where plaintiffs failed to "allege that they entered into the transaction *as a result*

9  of" the alleged misstatements)(emphasis in original).

10          Given their inability to allege this necessary element of their fraud-based claims, Plaintiffs

11  instead proffer the tortured theory that they "relied upon Facebook's false recitations when they

12  declined to immediately seek legal action against Facebook for its wrongful conduct . . . ." (SAC

13  ¶ 36.)  The Amended Complaint, however, actually demonstrates that Facebook's statements did

14  *not* induce Plaintiffs to defer asserting their rights in any way.  To the contrary, Plaintiffs

15  specifically allege that they promptly and repeatedly sought a refund for I.B.'s and J.W.'s

16  purchases, notwithstanding any statements in Facebook's Payments Terms.  (*See* SAC ¶¶ 25, 27,

17  29, 31 (alleging that "[u]pon learning of the[] charges" both Glynnis Bohannon and Steven

18  Wright "attempted to find a mechanism to contact Facebook to dispute the charges")).  Plaintiffs'

19  own fact allegations thus belie their claim of purported "reliance."[23]

20          In any event, Plaintiffs' bare assertion that they decided not "to immediately seek legal

21  action" falls far short of Rule 9(b)'s heightened requirements for pleading the elements of a fraud-

22  based claim.  Plaintiffs, for example, fail to allege when, if ever, they saw the "all sales are final"

23  language in the Payment Terms, what other statements they reviewed in the Payment Terms

24

25  _____

[23] If Plaintiffs in fact hesitated to "immediately seek legal action," as they claim, it was likely due
26  to their recognition that the Minor Plaintiffs had violated the Payments Terms which required
them (i) to "confirm" that they were "permitted to use [their] payment source" (which Plaintiffs
27  admit was untrue as to J.W.) and (ii) to enter into transactions "only with the involvement of a
parent or guardian" (which Plaintiffs admit was untrue as to both Minor Plaintiffs).  (*See*
28  Richardson Decl., Ex. B.)

Cooley LLP
Attorneys At Law
San Francisco

18.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

(which bear on the plausibility of their reliance theory, as explained in note 2), or how Facebook's representations supposedly influenced their decision not "to immediately seek legal action . . . ." *See Kearns*, 567 F.3d at 1124-25 (dismissing UCL and CLRA claims and explaining that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted).

Plaintiffs' fraud-based theories should be dismissed as a matter of law.

### G.   Plaintiffs' Claims Also Fail For Additional Claim-Specific Reasons

#### 1.   Plaintiffs' CLRA Claim Fails Because Credits Are Neither "Goods" Nor "Services"

Plaintiffs' CLRA claim also fails because Credits are not "goods and services" covered by the statute.  By its terms, the CLRA is limited to "deceptive acts or practices . . . which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a).  "Goods" are defined to include only "*tangible chattels*" and "certificates or coupons exchangeable for *these goods*," i.e., "tangible chattels."  *Id.* at § 1761(a) (emphasis added).  The definition of "[s]ervices" is specifically limited to "work [and] labor" and "services . . . furnished in connection with the sale or repair *of goods*" (again, defined as "tangible chattels").  *See id.* § 1761(b) (emphasis added).

Applying those definitions, California courts have consistently held that intangible interests do not qualify as "goods."  *See Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229 (2007) (finding that a credit card was not a "tangible chattel" because "the card has no intrinsic value and exists only as indicia of the credit extended to the card holder."); *Ferrington v. McAfee, Inc.*, 10-CV-01455-LHK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) (finding that anti-virus software is not "tangible" and is therefore not a "good" under the CLRA and recognizing that the CLRA's "express limitation of goods to 'tangible chattels' must be given meaning"); *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009) (finding that, "[b]ecause life insurance is not a 'tangible chattel,' it is not a 'good' as that term is defined in the [CLRA].").

In each of these cases, the court also found that the subject matter at issue was not a "service" because there was no "work or labor" involved or services provided in connection with

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1    "tangible chattels."  *See  Fairbanks*, 46 Cal. 4th at 61 ("[a]n insurer's contractual obligation to pay

2    money under a life insurance policy *is not work or labor, nor is it related to the sale or repair of*

3    *any tangible chattel*.") (emphasis added); *Ferrington*, 2010 WL 3910169, at *19 ("software

4    generally is not a service for purposes of the CLRA."); *Berry*, 147 Cal. App. 4th at 230 (2007)

5    "[a] review of CLRA's legislative history . . .  does not support the notion that credit, *separate*

6    *and apart from a specific purchase or lease of a good or service*, is covered under the act.")

7    (emphasis in original).[24]

8        Similarly here, Credits are neither "goods" nor "services" governed by the CLRA.  As in

9    *Berry*, Credits are merely an "indicia" of digital currency "extended to" a user, and cannot be

10   deemed a "tangible good" or a "service."  *Berry*, 147 Cal. App. 4th at 229-30 (concluding that

11   "[t]he extension of credit is not a tangible chattel" and also not "covered under the act" as a

12   service.)  Plaintiffs' passing reference to Credits as "certificates" also gets them nowhere, because

13   the statute specifies that certificates covered under the CLRA must be "exchangeable for ...

14   *goods*," which are in turn defined as "*tangible chattels*."   Cal. Civ. Code § 1761(a) (emphasis

15   added).

16       Plaintiffs' conclusory allegation that Credits constitute services "furnished in connection

17   with the sale . . . of goods" also fails.  (SAC ¶ 77.)  As the cases recognize, a service in

18   connection with the sale of "goods" must be tied to "tangible chattels."  Moreover, Plaintiffs do

19   not allege, nor could they, that their purchase of Credits involved a contract for "work or labor."

20   In short, Credits are not "goods" or "services," and the allegations of the Amended Complaint fall

21   squarely within the precedents above rejecting CLRA claims under similar circumstances.

22       **2.    Plaintiffs' Claims Under the Unlawful and Unfair Prongs of the UCL
              Also Fail.**

23

24       Plaintiffs' claims under the "unlawful" and "unfair" prongs of the UCL should also be

25   dismissed because they rely on the same defective allegations discussed above.  Under the

26   ─────────────────────
     [24]   In contrast, where actual "work and labor" is performed, courts have found there to be

27   "services" and applied the CLRA.  *See Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d

28   842, 851 (N.D. Cal. 2007) (finding that a mortgage company was engaged in providing "services"
     where it was actively engaged in "advising plaintiffs and managing their loan . . . .").

1 "unlawful" prong, the UCL "'borrows' violations of other laws . . . ." *Cel-Tech Commc'ns, Inc. v.*

2 *L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Accordingly, if the alleged "violations of

3 other laws" are not properly plead, the UCL "unlawful" claim also cannot proceed.  Here,

4 Plaintiffs' claim under the "unlawful" prong of the UCL is derived from the CLRA, MTA and

5 EFTA claims, which all fail for the various reasons discussed above.

6        In addition, Plaintiffs' claim under the "unfair" prong of the UCL is based on the meritless

7 disaffirmance theory addressed above.  Plaintiffs are not entitled to disaffirm their purchases of

8 Credits, and thus, it is not "unfair" to deny a refund for the Credits that I.B. and J.W. have already

9 used and enjoyed.  *See Pinel v. Aurora Loan Servs., LLC,* 814 F. Supp. 2d 930, 940 (N.D. Cal.

10 2011) (finding that "[a]n unfair business practice under the UCL is 'one that either offends an

11 established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially

12 injurious to consumers.'") (citation omitted).  Plaintiffs' UCL claim should be dismissed.

13     **3.**    **Plaintiffs' Claim for Declaratory Relief Fails For Multiple Reasons.**

14        Plaintiffs' claim for declaratory relief seeks to establish that "the contracts between

15 Defendant and the Minor Subclass Members relating to in-app purchases and virtual goods are

16 void or voidable." (SAC ¶ 72.)  This claim fails for multiple reasons.

17        First, the requested declaration is contrary to established California law and should be

18 rejected for all the reasons described above.

19        Second, Plaintiffs' declaratory relief claim is procedurally improper because it is

20 inconsistent with the "central purpose" of the Declaratory Judgment Act: to enable parties to

21 clarify their rights *before* incurring the alleged injury.  *Olagues v. Russoniello*, 770 F.2d 791, 803

22 (9th Cir. 1985) ("[t]he central purpose of the Declaratory Judgment Act . . . is to provide parties

23 with a declaration of their rights prior to incurring actual injury"); *see also Nabors v. Google, Inc*,

24 No. 5:10-CV-03897 EJD (PSG), 2011 WL 3861893, at *8 (N.D. Cal. Aug. 30, 2011) ("the

25 purpose of a declaratory judgment is to set controversies at rest before they cause harm to the

26 plaintiff in the interest of preventive justice, not to remedy harms that have already occurred.").

27 Yet here, Plaintiffs already incurred the alleged injuries (the purchases of Credits they are seeking

28 to unwind) and do not seek to prevent any future injuries.  (*See* SAC ¶ 81 ("Plaintiffs and the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1   Class suffered actual damages"); *id.* ¶¶ 26, 30 (stating respectively that "Glynnis Bohannon

2   suffered actual damages" and that "the Wrights suffered actual damages").)   Thus, Plaintiffs'

3   claim for declaratory relief is not covered by the Declaratory Judgment Act.

4   Third, "[a] claim for declaratory relief is unnecessary where an adequate remedy exists

5   under some other cause of action."  *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707

6   (N.D. Cal. 2009).  Here, Plaintiffs are already seeking restitution of the disputed charges made by

7   the minors pursuant to their UCL and CLRA claims.  (SAC ¶¶ 73-107.)  Because "the declaratory

8   relief [p]laintiff[] seek[s] is entirely commensurate with the relief sought through [her] other

9   causes of action … [p]laintiff['s] declaratory relief claim is duplicative and unnecessary" and

10  should be dismissed.  *Mangindin*, 637 F. Supp. 2d at 707-08.

11  Finally, to the extent Plaintiffs purport to seek a declaratory judgment that would apply to

12  *future* transactions, it only highlights the absurdity of their claims.  While Plaintiffs' effort to

13  recover refunds for *prior* transactions is itself fatally flawed (for all the reasons described above),

14  any effort to impose *prospective* relief for *future* purchases by minor children amounts to a

15  request for a blank check.  Plaintiffs would be asking the Court to declare that Facebook users

16  under 18 can obtain and use Credits without limitation while avoiding any payment obligation.

17  Such a request is absurd on its face.

18  **V.   MOTION TO STRIKE**

19  **A.   Plaintiffs' Classes Contains Members that Lack Article III Standing**

20  Under Article III of the Constitution, litigants in federal court must have standing based

21  on a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to

22  be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Given that

23  fundamental requirement, the Ninth Circuit has held that "[n]o class may be certified that contains

24  members lacking Article III standing."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th

25  Cir. 2012) (citation omitted); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal.

26  2009) (Fogel, J.) (same); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010)

27  ("[a] class must [] be defined in such a way that anyone within it would have standing.") (internal

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

1    quotation marks and citation omitted).

2          The proposed class definitions in the Amended Complaint violate this established rule

3    because they purport to sweep in users with no conceivable claim of injury.  For example, the

4    Minor Class and the Refund Subclass both encompass minors who have already used their

5    Credits to obtain benefits and have no viable claim to recover their payments, for all the reasons

6    discussed above.   Even more glaringly, the MTA class purports to include "*all Facebook users

7    who have purchased Facebook Credits from January 1, 2011*" – a class that encompasses *adults'*

8    purchases of Credits, which is not even challenged in this action.  (SAC ¶ 38 (emphasis added).)

9    The Minor Class and Refund Class would also include parents, like Ms. Bohannon, who

10   knowingly authorized their children to purchase Credits using their credit cards or debit cards.

11   These adults cannot be included in any class because they incurred the costs voluntarily, and thus

12   lack injury for purposes of Article III standing.  *See Union Cosmetic Castle, Inc. v. Amorepacific

13   Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) (finding that "[a] plaintiff cannot

14   establish Article III standing to pursue a cause of action where that plaintiff is the primary cause

15   of its own alleged injury."); *Swann v. Secretary, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012)

16   ("a controversy is not justiciable when a plaintiff independently caused his own injury").

17         As a matter of law, Plaintiffs should not be allowed to litigate the class theories in the

18   Amended Complaint given the massive overbreadth of these proposed classes.

19        **B.     Plaintiffs' Class Claims Are Unworkable On Their Face.**

20         The defects in Plaintiffs' proposed class definitions are exacerbated by the highly

21   individualized facts needed to adjudicate each putative class members' claims.  As courts in the

22   Northern District have held, class allegations should be stricken at the pleading stage where the

23   claims of the proposed class depend on "the specific facts surrounding each buyer's transaction."

24   *Sanders*, 672 F. Supp. 2d at 991 (striking class allegations from a complaint where individualized

25   issues would dominate the litigation, including "what caused [each class] member to make the

26   purchase[s]" at issue); *see also Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008)

27   (striking class allegations where the class as defined was not readily ascertainable).

28         Here, Plaintiffs' claims for disaffirmance involve highly individualized facts.    First,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

**Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW**

Plaintiffs would need to identify the users who were in fact minors at the time they purchased Credits.[25] Next, they would need to establish which purchases were paid for by the minor's parents, since minors can only seek disaffirmance to recover their *own* funds (as discussed above). From that subset, Plaintiffs would need to exclude any instances where the minor already used the Credits or had already received a refund through Facebook's existing dispute resolution system, in order to avoid conferring an improper windfall. Further complicating the analysis, per Facebook's Payments Terms, Plaintiffs would also need to exclude any instances where minors or their parents failed to dispute the charges within 30 days of incurring them.[26] There is no way to adjudicate these types of individualized issues on a class wide basis.

Plaintiffs' new theories in the Amended Complaint exacerbate these difficulties. For example, under Family Code Section 6701(c), Plaintiffs would need to establish (under their own theory) whether each minor had "immediate possession or control" of their parents' payment instruments when purchasing Credits. (SAC ¶ 65.) There is no way to determine that fact without conducting individual discovery from each of the thousands of minors in the putative class. Similarly, Plaintiffs' EFTA claim is inherently unworkable because there is no way to examine each of the individual transactions at issue to determine which ones might fall within the definition of an "unauthorized transaction" under the EFTA (which in any case does not apply to the purchase of Credits for the reasons above).

Indeed, Plaintiffs' own transactions illustrate the highly individualized nature of the claims at issue. For example, Plaintiffs allege that I.B. had his mother's permission to use her credit card to make the first purchase of $20, but was not authorized to make subsequent purchases. (SAC ¶ 25.) By contrast, J.W. allegedly took his parents' debit card "without their permission." (*Id.* ¶ 29.) [27] Additionally, Mr. Wright was able to obtain a partial refund after

---

[25] Although Facebook requires that users provide accurate information, some users may submit false birthdates, thereby requiring individualized inquiry to verify that users were minors when the challenged transactions occurred. (*See* Richardson Decl., Ex. A., Section 4.1.)

[26] (*See* Richardson Decl., Ex. B.)

[27] This court has routinely refused to certify class claims that require litigation of individualized consent and authorization issues. *See, e.g., O'Donovan v. Cashcall, Inc.*, No. C-08-03174 MEJ, 2011 U.S. Dist. LEXIS 131868 at *41-42 (N.D. Cal. Nov. 14, 2011) (denying certification of claims under the EFTA that would require individualized evidence to "show[] [whether] a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
24.
Def. Facebook, Inc.'s Mot. to Dismiss
Plaintiffs' Second Amend. Class Action Compl.
No. CV-12-01894-CW

1   contacting Facebook.  (SAC ¶ 31.)

2          There is no conceivable way to adjudicate these types of highly individualized issues on a

3   class wide basis for each of the millions of transactions that Plaintiffs are purporting to sweep

4   within the reach of their class allegations.  As in *Sanders*, Plaintiffs' proposed class definitions

5   fail because they turn on "the specific facts surrounding each" of the individual transactions at

6   issue.  *Sanders*, 672 F. Supp. 2d at 991.  The Court should not allow the case to proceed based on

7   these class allegations, which are inherently unworkable on their face.

8   **VI.     CONCLUSION**

9          Plaintiffs' Amended Complaint should be dismissed with prejudice.  In the alternative, the

10  class allegations should be stricken from the Amended Complaint.

11

12  Dated: June 28, 2012                    COOLEY LLP
                                            MICHAEL G. RHODES (116127)
13                                          WHITTY SOMVICHIAN (194463)
                                            KRISTINE VAN HAMERSVELD (278745)

14

15                                          _____/s/_____

16                                          Whitty Somvichian (194463)
                                            Attorneys for Defendant
17                                          FACEBOOK, Inc.

18

19

20  1275036/SF

21

22

23

24

25

26  _____
    specific borrower authorized or consented to the [transfer]"); *Hanni v. Am. Airlines, Inc.*, No. C-
27  08-00732 CW, 2010 U.S. Dist. LEXIS 38436, at *17 (N.D. Cal. Apr. 19, 2010) (denying
    certification of claims against defendant airline that allegedly refused to let passengers deboard
28  the plane during an extended delay on the tarmac and noting that "[t]he issue of consent is
    individual.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.                          **Def. Facebook, Inc.'s Mot. to Dismiss
                             Plaintiffs' Second Amend. Class Action Compl.
                             No. CV-12-01894-CW**