1  C. Brooks Cutter, SBN 121407
   John R. Parker, Jr., SBN 257761
2  KERSHAW, CUTTER & RATINOFF, LLP
   401 Watt Avenue
3  Sacramento, CA 95864
   Telephone: (916) 448-9800
4  Facsimile: (916) 669-4499

5
   Attorneys for Plaintiff
6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9                    OAKLAND DIVISION

10

11 | I.B., by and through his Guardian ad Litem    | Case No.  CV 12-01894 CW
   | BRYAN FIFE; GLYNNIS BOHANNON; J.W.,           |
12 | by and through his Guardian ad Litem STEVEN   | **PLAINTIFFS' MEMORANDUM OF**
   | WRIGHT; JULIE WRIGHT, individually and        | **POINTS AND AUTHORITIES IN**
13 | on behalf of all others similarly situated,   | **OPPOSITION TO DEFENDANT'S**
   |                                               | **MOTION TO DISMISS, MOTION TO**
14 |              Plaintiffs,                       | **STRIKE, AND REQUEST FOR**
   |                                               | **JUDICIAL NOTICE**
15 |                                               |
   |   v.                                           |
16 |                                               | Hearing Date: August 30, 2012
   | FACEBOOK, INC.,                                | Hearing Time: 10:00 a.m.
17 |                                               | Courtroom:    2 (4th Floor)
   |              Defendant.                         |
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES TO BE DECIDED ......................................................................1

II.  INTRODUCTION.............................................................................................................1

III. FACTS .............................................................................................................................2

IV.  ARGUMENT....................................................................................................................4

    A.   The Minor Plaintiffs Are Entitled to Disaffirm Their Facebook
        Credit Purchases.......................................................................................................4

    B.   The Minor Plaintiffs May Disaffirm Facebook Credit Purchases
        Nothwithstanding That the Consideration Was Paid by Others.................................7

    C.   The Minor Plaintiffs' Transactions Are Void Under Family
        Code § 6701(a) and (c)............................................................................................7

    D.   As Legal Representatives of Their Minor Children, Parents Can
        "Disaffirm" the Contracts of Their Minor Children ......................................................10

    E.   The Money Transmission Act Applies to Purchases of Facebook Credits...................10

    F.   The Electronic Funds Transmission Act Applies to Purchase of
        Facebook Credits Using Funds from a Debit Account .................................................11

    G.   Facebook Violated the UCL by Engaging in Unlawful, Unfair
        And/Or Fraudulent Business Acts or Practices ...........................................................13

        1.  Plaintiffs Have Pleaded Unlawful Acts Under the UCL............................................13

        2.  Plaintiffs Have Pleaded Unfair Acts Under the UCL ................................................14

        3.  Plaintiffs Have Pleaded Fraudulent Acts Under the UCL .........................................15

    H.   Facebook's Practices Violated the CLRA....................................................................17

    I.   Plaintiffs Have Pleaded a Right to Declaratory Relief................................................19

    J.   Plaintiffs Have Pleaded Sufficient Class Allegations ................................................20

        1.  Plaintiffs Have Pleaded Standing.........................................................................20

        2.  Plaintiffs Have Presented Workable Class Definitions That May Be
           Refined After Appropriate Discovery ..................................................................22

    K.   The court Should Decline to Take Judicial Notice of Exhibits
        C, D, E, F, G, H, and I.............................................................................................23

V.   CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

1

**Cases**

*In re 2TheMart. Com, Inc. Secs. Litig.*
114 F. Supp. 2d 955 (C.D. Cal. 2000) ...............................................................20

*AOL v. Super. Ct. of Alameda*
90 Cal. App. 4th 1 (2001) ....................................................................18, 19

*Aron v. U-Haul*
143 Cal. App. 4th 796 (2006) ...........................................................................23

*Baghdasarian v. Amazon.com, Inc.*
258 F.R.D. 383 (C.D. Cal. 2009) ......................................................................23

*Bass v. Dollar Tree Stores*
No. 07-03108 2007 U.S. LEXIS 65979 ............................................................23

*Berg v. Traylor*
148 Cal. App. 4th 809, 56 Cal. Rprtr. 3d 147 (2007) ...................................4,5, 7

*Berry v. Am. Express Publ'g, Inc.*
147 Cal. App. 4th 224 (2007) ...........................................................................18

*Burnand v. Irigoyen*
30 Cal.2d 861, 186 P.2d 417 (1947) ..............................................................4, 5

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*
217 F Supp. 2d 1028 (C.D. Cal. 2002) ............................................................20

*Campbell v. PricewaterhouseCoopers, LLP*
253 F.R.D. 586 (E.D. Cal. 2008) ......................................................................22

*Clerkin v. MyLife.com, Inc.*
2011 U.S. Dist. LEXIS 96735 (N.D. Cal.) .......................................................20

*Cohen v. Facebook, Inc.*
No. cv-5282-RS, 798 F. Supp. 2d 1090, 2011 U.S. Dist. LEXIS 83058,
2011 WL 3100565 (N.D. Cal. June 28, 2011) ..................................................24

*Coto Settlement v. Eisenberg*
593 F. 3d 1031 (9th Cir. 2010) .........................................................................24

*Deck v. Spartz, Inc.*
2011 WL 7775067 (E.D. Cal. 2011)...............................................................4, 7

*Doe 1 v. AOL LLC*
719 F. Supp. 2d 1102 (N.D. Cal. 2010) ...........................................................19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES (continued)**

<u>Cases</u>

*In re Easysaver Rewards Litig.*
     737 F. Supp. 2d 1159 (S.D. Cal. 2010)..............................................................12, 19

*Edwards v. First Am. Corp.*
     610 F. 3d 514 (9th Cir. 2010) ..........................................................................22

*Ellis v. Cmty. Chevrolet, Inc.*
     242 Cal. App. 2d 79, 51 Cal. Rptr. 154 (1966)............................................9, 10

*Engalla v. Permanente Medical Group*
     15 Cal. 4th 951 (1997) .....................................................................................16, 17

*Fairbanks v. Super. Ct.*
     46 Cal. 4th, 56 (2009) .......................................................................................18

*Ferrington v. McAfee, Inc.*
     10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)...................18

*Flittner v. Equitable Life Assur. Soc. Of U.S.*
     30 Cal. App. 209 (1st Dist. 1915) ....................................................................14

*Fraley v. Facebook, Inc.*
     830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................24, 25

*Gruen v. Edfund*
     No. C 09-00644 JSW (2009) (N.D. Cal. Jul. 15, 2009).....................................16

*Friedman v. 24 Hour Fitness USA, Inc.*
     580 F. Supp. 2d 985 (D.D. Cal. 2009) .........................................................12, 13

*Hastings v. Dollarhide*
     24 Cal. 195 (1864) ..............................................................................................5, 10

*Heliotis v. Schuman*
     181 Cal. App. 3d 646 (1986) ..............................................................................16

*Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007).........................18

*Hines v. Cheshire*
     36 Wash. 2d 467 (1950).......................................................................................7

*Hitz v. First Interstate Bank*
     38 Cal. App. 4th 274 (1995) ............................................................................18, 19

*Holland v. Universal Underwriters Ins. Co.*
     270 Cal. App. 2d 417 (1969) .............................................................................6

**TABLE OF AUTHORITIES (continued)**

<u>Cases</u>

*Kearns v. Ford Motor Co.*
     567 F. 3d 1120 (9th cir. 2009) ................................................................................15

*Kwikset Corp. v. Super. Ct.*
     51 Cal. 4th 310 (2011) .........................................................................................16

*Lerwill v. Inflight Motion Pictures, Inc.*
     582 F. 2d 507 (9th Cir. 1978) ...............................................................................22

*Lujan v. Defenders of Wildlife*
     504 U.S. 555 (1992)........................................................................................20, 21

*MacGreal v. Taylor*, 167 U.S. 688 (1897) ...................................................................6

*Maier v. Harbor Center Land Co.*
     41 Cal. App. 79 (1st Dist. 1919) ...........................................................................14

*Maya v. Centex Corp.*
     658 F.3d 1060 (9th Cir. 2011) ...............................................................................21

*Marcelos v. Dominguez*
     No. C 088-00056 WHA (N.D. Cal. Jul. 18, 2008) ...........................................16

*In re Mattel, Inc.*
     588 F. Supp. 2d 1111 (C.D. Cal. 2009) ................................................................16

*Mazza v. Am. Honda Motor Co.*
     666 F. 3d 581 (9th cir. Cal. 2012)....................................................................21, 22

*McCarty-Greene Motor Co. v. McCluney*
     291 Ala. 211 (1929) ...............................................................................................7

*Meyer v. Sprint Spectrum, LP*
     45 Cal. 4th 634 (2009) .........................................................................................21

*Morgan v. AT&T Wireless Services, Inc.*
     177 Cal. App. 4th 1235 (2009) ......................................................................16, 19

*Morgan v. Morgan*
     220 Cal. App. 2d 665, 35 Cal. Rptr. 82 (1963)..........................................8, 9, 10

*Nelson v. Pearson Ford*
     186 Cal. App. 4th 983 (2010) ...............................................................................18

*Niemann v. Deverich*
     98 Cal. App. 2d 861, 221 P.2d 178 (1950) ......................................................5, 14

**TABLE OF AUTHORITIES (continued)**

Cases

*Nordberg v. Trilegiant Corp.*
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ....................................................................11, 12

*O'Donovan v. CashCall, Inc.*
    278 F.R.D. 479, 2011 WL 5573845 (N.D. Cal. 2011)......................................13

*Peers v. McLaughlin*
    88 Cal. 294 (1891) ........................................................................................5, 6

*Pinel v. Aurora Loan Services, LLC*
    814 F. Supp. 2d 930 (N.D. Cal. 2011) ...............................................................14

*Podolsky v. First Healthcare Corp.*
    50 Cal. App. 4th 632 (1996) ................................................................................13

*Schram v. Poole*
    97 F.2d 566 (9th cir. 1938) ...................................................................................8

*Sullivan v. Kelly Servs.*
    268 F.R.D. 356 (N.D. Cal. 2010).........................................................................22

*In re Tabacco II Cases*
    46 Cal. 4th 298 (2009) ...............................................................................16, 23

*Taylor v. Hill*
    115 Cal. 143, 44 P. 336 (1896) ..............................................................................8

*Tierney v. Schweikeri*
    718 F. 2d 449 (D.c. Cir. 1983)...........................................................................19

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*
    673 F. Supp. 2d 1073 (E.D. Cal. 2009)..............................................................15

*In re Wal-Mart Stores, Inc.*
    505 F. Supp 2d 609 (N.D. Cal. 2007) .................................................................20

*Warth v. Seldin*
    422 U.S. 490 (1975)..............................................................................21, 22

*In re Wells Fargo Loan Processor Overtime Pay Litig.*
    No. 07-01841 MHP, 2008 U.S. Dist. LEXIS 53616 (N.D. Cal. June 10, 2008) ..............23

*Williams v. Gerber Prods. Co.*
    552 F. 3d 934 (9th Cir. 2008) ............................................................................16

1

**TABLE OF AUTHORITIES (continued)**

2

<u>**Statutes**</u>

3

15 U.S.C. § 1693a(7) ........................................................................................................12

4

15 U.S.C. § 1693a(12) ......................................................................................................13

5

15 U.S.C. § 1693g.............................................................................................................12

6

15 U.S.C. § 1693m(a) .......................................................................................................13

7

28 U.S.C. § 2201(a) ..........................................................................................................19

8

Federal Rule of Civil Procedure § 12(f) .....................................................................20, 21

9

Federal Rule of Civil Procedure § 57 ..............................................................................20

10

Federal Rule of Evidence 201 ..........................................................................................25

11

Federal Rule of Evidence 401 ..........................................................................................25

12

Federal Rule of Evidence 402 ..........................................................................................25

13

Federal Rule of Evidence 602 ..........................................................................................25

14

Federal Rule of Evidence 901 ..........................................................................................25

15

16

California Business and Professions Code § 17200 .........................................................13

17

California Civil Code § 33 .........................................................................................7, 8, 9

18

California Civil Code § 35 .............................................................................................4, 5

19

California Civil Code § 1760.......................................................................................18, 19

20

California Civil Code § 1761(a) ........................................................................................17

21

California Civil Code § 1761(b) ........................................................................................17

22

California Civil Code § 1770(a) ........................................................................................17

23

California Family Code § 6601..........................................................................................10

24

California Family Code § 6701......................................................................2, 4, 19, 22

25

26

California Family Code § 6701(a) ...............................................................................7, 8, 9

27

California Family Code § 6701(c) ...............................................................................7, 8

28

**TABLE OF AUTHORITIES (continued)**

**Statutes**

California Family Code § 6710..............................................................2, 4, 5, 6, 7, 19, 22

California Financial Code § 2003(a)..........................................................................10

California Financial Code § 2102(b) ..................................................................4, 10, 11

**Miscellaneous**

5 James W. Moore, Moore's Federal Practice § 23.21[1] (2001)..................................22

## I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Facebook's motion to dismiss should be denied because Plaintiffs' have pleaded that their facebook credit purchases can be disaffirmed.

2.   Whether Facebook's motion to dismiss should be denied because California Family Code Section 6701(a) applies Facebook Credit purchases.

3.   Whether Facebook's motion to dismiss should be denied because California Family Code Section 6701(c) applies to Facebook Credit purchases.

4.   Whether Facebook's motion to dismiss should be denied because the MTA applies to Facebook Credit purchases.

5.   Whether Facebook's motion to dismiss should be denied because the EFTA applies to Facebook Credit purchases.

6.   Whether Facebook's motion to dismiss should be denied because Plaintiffs have pleaded a scheme reasonably likely to deceive members of the public.

7.   Whether Facebook's motion to strike class allegations should be denied because Plaintiffs have sufficiently pleaded standing and workable class definitions.

8.   Whether Facebook, Inc.'s Request for Judicial Notice of web pages retrieved on May 4, May 10, and April 13, 2012 should be denied given questions as to authenticity and relevance, and because they are not referenced in the Second Amended Complaint.

## II.   INTRODUCTION

Facebook's marketing of Facebook Credits preys upon minors and upon their parents and legal guardians in defiance of the established black letter law of California that governs transactions with minors.  Declaring all sales to be final, Facebook routinely refuses requests by parents and legal guardians to provide refunds for transactions that are subject to disaffirmance under the governing law and unlawfully retains the benefit of purchases by minors.  At the same time, Facebook requires its Application developers to "acknowledge that transactions with minors may be voidable by law and agree that you may be required to refund amounts paid" (Plaintiffs' Request for Judicial Notice Ex. 3 at p. 4.)  Facebook is thereby protected from loss upon disaffirmance of these transactions.  Facebook accuses the plaintiffs of seeking "something

for nothing" in exercising their legal right to disaffirm.  To the contrary, Facebook reaps an illegal windfall when minors or their parents or guardians assert their legal right to disaffirm their purchase of Facebook Credits.  Facebook turns one face to its developers and another face entirely to the minor purchasers whom the law seeks to protect.

Plaintiffs bring their claims under the UCL, the California Family Code §§ 6701 and 6610, the CLRA, California's Money Transactions Act ("MTA"), the federal Electronic Funds Transfer Act ("EFTA") and the federal Declaratory Judgment Act.  As alleged by Plaintiffs, Facebook's provision of Facebook Credits and refusal to provide refunds, to accurately describe minors' rights to refunds under California, and to provide statutorily-required notice of rights to refunds, violated each of the substantive statutes at issue.  Plaintiffs bring their claims on behalf of several overlapping classes defined based upon each class' rights to equitable relief, damages, statutory penalties, and other remedies.

Facebook can and should either adjust the way it sells virtual goods to Facebook minor users, or stop selling virtual goods to minors entirely, a result favored by the policies that underlie California statutes and the California court decisions that address the legal questions of disaffirmance presented in Plaintiffs' Second Amended Complaint.

### III.    FACTS

Facebook operates the largest social network in the world. Second Amended Complaint ("SAC") ¶ 1.  Within its network, Facebook generates revenue by collecting real-world money from Facebook users in exchange for Facebook Credits. *Id.* ¶ 2.  Facebook Credits are acquired by Facebook users when those users are logged into Facebook. *Id.*  Because each Facebook user specifies his or her age to Facebook when the account is created, Facebook has actual knowledge that it is doing business with a minor when it engages in Facebook Credits purchase transactions that originate from minors' accounts. *Id.* ¶ 3.

Facebook users purchase Facebook Credits to be used in Applications or "Apps" that users play or use from their Facebook account.  *Id.* ¶ 4.  Many of the Apps feature cartoon-like images, exaggerated facial features, children within the applications, and other design characteristics consistent with use by minor children.  *Id.* ¶ 17.  Apps are designed to be highly

addictive, enticing the users to spend more and more Facebook Credits to purchase non-existent virtual goods and services within Apps. *Id.* ¶¶ 18–20.  Accordingly, users of these Apps, including the minor children Plaintiffs in this case, can quickly rack up hundreds or thousands of dollars of charges for Facebook Credit purchase transactions.

Plaintiffs here are minors who purchased Facebook Credits from within their Facebook accounts, and those minors' parents.  Minor Plaintiff I.B., unaware of the consequences of his actions, spent several hundred dollars from his parent's credit card on Facebook Credits, unaware that he was making real-world purchases. SAC ¶ 25.  When his mother discovered the transactions had taken place, she attempted without success to obtain a refund from Facebook. SAC ¶ 27.  Minor Plaintiff J.W. used his parents' debit card to obtain Facebook Credits, running over one thousand dollars in charges. SAC ¶ 29.  His father's attempt to reverse those charges was thwarted by Facebook.  SAC ¶ 31.[1]

Notably, and contrary to the arguments it presents in support of its Motion, Facebook has already imposed upon Facebook application developers its right to completely unwind all Facebook Credit transactions.  *See* Plaintiffs' Request for Judicial Notice Ex. 3 at p. 4.  Facebook has made it very clear to Facebook application developers that Facebook Credit transactions can and will be unwound by Facebook under any circumstances, and Facebook imposes upon its third-party developers an absolute right to recover all of Facebook's losses in connection with a refund or other decision by Facebook to provide compensation to users.  *Id.*  Accordingly, if Facebook were to decide to provide refunds to Plaintiffs here and to the proposed Refund Class, it has already secured from its Application developers complete indemnity.  Facebook can provide complete refunds to users and be made whole through recovery of its payments to Application developers.  Moreover, Facebook has specifically acknowledged in its contracts with developers that Facebook Credit transactions with minors may be voidable, and has imposed upon developers the obligation to make Facebook, Plaintiffs, and the Refund Class whole in the event of a refund: "3.1: 'Voidability. You acknowledge that transactions with minors may be

---

[1] Plaintiffs oppose Facebook's attempt to ignore the allegations of Plaintiffs' SAC and "illustrate" the transactions at issue through extraneous materials.  See section IV.K at p. 23, below.

voidable by law and agree that you may be required to refund amounts paid.'" *Id.*

Plaintiffs have alleged that Facebook violates California law when it comes to providing refunds to minors, as argued below, but, moreover, that Facebook makes it very difficult for users to provide refunds or even understand how their real-world money is being sucked into the Facebook Credit system for in-game currency or items in Facebook Apps.  *E.g.*, SAC ¶¶ 29–32. By systematically refusing to provide refunds or making it nearly impossible to obtain them, Facebook has created an unfair scheme that allows Facebook to reap a windfall from minor Facebook Users in contravention of California law.  Facebook has also failed to provide requisite "right to refund" and other disclosures required by California law under the Money Transmission Act ("MTA") at California Financial Code § 2102(b).  *Id.* ¶¶ 33–35.

## IV.   ARGUMENT

### A.   The Minor Plaintiffs Are Entitled To Disaffirm Their Facebook Credit Purchases

Contrary to Facebook's primary contention (Def. Br. at 9-11), the Minor Plaintiffs have the right to disaffirm their purchases regardless of their inability to "return" their credits.  The Nineteenth Century cases on which Facebook places primary reliance do not reflect the law under Family Code § 6710, which was described most recently in *Deck v. Spartz, Inc.*, 2011 WL 7775067 (E.D. Cal. 2011) and under which *restoration of consideration is no longer required*:

> There is case law stating that a disaffirmation by a minor does not require the return of consideration for the disaffirmation to be effective if the disaffirmation is made before the minor reaches the age of majority, but that a disaffirmation post majority requires the return or offer to return consideration received. *See e.g. Burnand v. Irigoyen*, 30 Cal.2d 861, 865, 186 P.2d 417 (stating the pre and post minority disaffirmation rules). The underlying law, Cal. Civ. Code § 35 was repealed and replaced with Cal. Fam. Code § 6710. See Id.; *Berg v. Traylor*, 148 Cal.App.4th 809, 56 Cal.Rptr.3d 140, 147 (Ct.App.2007). Section 6710 no longer requires restoration of consideration for any disaffirmed contract. This position is supported by the result in *Berg v. Traylor*. In that case, a minor was permitted to disaffirm all obligations under a contract, even for services previously rendered, without restoring consideration or the value of services rendered to the other party. *Berg*, 56 Cal.Rptr.3d at 147–48.

*Deck* at *7.

Facebook's broad-brush contention that minors "cannot disaffirm contracts when they have accepted the benefits," moreover, ignores the fundamental principle declared by the

California Supreme Court that "one deals with infants at his peril" and that parties such as Facebook "cannot complain . . . if they are injured by the exercise of the right of disaffirmance vested in the infant." *Burnand v. Irigoyen*, 30 Cal. 2d 861, 866, 186 P.2d 417 (1947).

*Berg v. Traylor,* 148 Cal. App. 4th 809, 56 Cal. Rptr. 3d 147 (2007), is on point and decisively undercuts Facebook's contention that the Minor Plaintiffs cannot disaffirm the purchases after expending the purchased credits. *Berg* involved a minor's contract to compensate a talent agent for services in representing the minor in dealings with television networks and others. Upon the minor's exercise of his right to disaffirm the contract, the agent initiated arbitration as provided by the contract and secured an arbitration award upholding his right to compensation. The court upheld the minor's right to disaffirm both the contract and the arbitration award notwithstanding that he had received the benefit of the agent's services:

> . . . Family Code section 6710 states: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative." Sound policy considerations support this provision: "The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor 'for his protection against his own improvidence and the designs of others.' It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract." (*Niemann v. Deverich* (1950) 98 Cal.App.2d 787, 793, 221 P.2d 178; accord *Burnand v. Irigoyen* (1947) 30 Cal.2d 861, 866, 186 P.2d 417.)

149 Cal. App. 4th at 818.

The cases on which Facebook places primary reliance (Def. Br. 9–10) not only predate the enactment of § 6710 by several decades but are otherwise plainly distinguishable in ways in which Facebook artfully attempts to obscure. What the California Supreme Court held in *Hastings v. Dollarhide,* 24 Cal. 195, 216 (1864)—and which clearly lacks application here—was that an individual who conveyed real property while a minor must exercise his right of disaffirmance within a reasonable time *after* coming of age and to "hold otherwise would make the disability of infancy a 'sword' rather than a 'shield,' . . . ." *Peers v. McLaughlin*, 88 Cal. 294, 299 (1891), held that minor children, who owned land that had been purchased for them by

their father subject to a mortgage securing the balance of the purchase price, could not *after coming of age* simultaneously affirm the deed and avoid the mortgage.   The Court emphasized: "the agreement of the father and his assumed agency in accepting a deed in pursuance of the agreement is the source or foundation of all the right, legal or equitable, which these minors have in the land." *Id.* at 298.

*MacGreal v. Taylor*, 167 U.S. 688, 701 (1897) (Def. Br. 10), actually provides strong support for the Plaintiffs.  *MacGreal* involved a woman who, while a minor, had obtained a loan that was secured by a deed of trust on real property.  She used the proceeds to satisfy prior encumbrances and make improvements on her real property, and on coming of age, proceeded to disaffirm the deed of trust.  The court held that her disaffirmance could not prevent the lender from enforcing his security to the extent of the satisfied encumbrances and improvements which she continued to enjoy and that to hold otherwise would allow her inequitably to "make profit out of those whose money has been used." *Id.*  At the same time—and significant here—the court declared it "well settled that it is *not* a condition of the disaffirmance by an infant of a contract made during infancy that he shall return the consideration received by him *if, prior to such disaffirmance and during infancy, the specific thing received has been disposed of, wasted, or consumed, and cannot be returned*." *Id.* at 698 (emphasis added).  Consistent with *MacGreal*, the fact that Minor Plaintiffs have "disposed of" their credits and are unable to return the consideration is not a barrier to disaffirmance.[2]

Moreover, unlike cases where the opposite party may suffer harm when a disaffirming minor is unable to return consideration, Facebook has protected itself from such loss through its standard contract with developers.  Because it can easily unwind the transactions at issue (*see* p. 3 above), Facebook itself will suffer no damage from voiding the purchases as requested in this

---

[2] *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417 (1969), is no help to Facebook.  Contrary to Facebook's description (Def. Br. at 10, n.15), the court held that a minor could not disaffirm his waiver of uninsured motorist coverage in his insurance policy so as to avail himself of such coverage.  The court explained that the minor "purchased liability insurance without uninsured motorist coverage" and that "no rule . . . says that because he is a minor he can suddenly claim to have bought more than he actually did." *Id.* at 422.  As the court put it:  "Section 35 of the Civil Code (the predecessor of § 6710) does not turn a noncontract into a contract." *Id.*  The difference between *Holland* and this case is obvious.   Here, the Minor Plaintiffs have entered into contracts which are voidable under § 6710.

1   action.  Accordingly, Facebook has no valid objection to paying refunds as the law requires.

2   Consistent with *Berg* and *Deck*, the Minor Plaintiffs are entitled to disaffirm the Facebook Credit

3   purchases pursuant to Family Code § 6710, regardless of their use of the Credits.

4   **B.      The Minor Plaintiffs May Disaffirm Facebook Credit Purchases Notwithstanding**
          **That the Consideration Was Paid by Others**

5

6            In arguing that the Minor Plaintiffs may not recover consideration paid by others,

7   Facebook relies on cases holding that a minor cannot recover consideration *knowingly* and

8   intentionally paid by a parent or other third-party adult which have no application here.  Def. Br.

9   12–13.  In *Hines v. Cheshire*, 36 Wash. 2d 467, 481 (1950), the court allowed a minor to

10  disaffirm his purchase of a vehicle and recover the price he paid, but held that the minor was

11  "not entitled to recover the $168.69 paid or advanced by his father."  The decision reflects that

12  the father, knowingly and intentionally, made three monthly payments of $56.23 on the minor's

13  purchase contract.  In *McCarty-Greene Motor Co. v. McCluney*, 219 Ala. 211, 213 (1929), the

14  court likewise allowed the minor to void a contract for purchase of a vehicle but disallowed

15  recovery of the amount contributed by the minor's father—the value of an old car which the

16  father gave his son to be applied in trade for the vehicle in question.  The court quoted the

17  father's testimony:  "I let my son have a Buick automobile to be used in making that trade. I gave

18  him the car for that purpose."  *Id.*  The court explained that providing the car was "the equivalent

19  of an advance or payment by [the father] on the purchase of a new car."  *Id.*

20

21           The cases cited by Facebook have no bearing where the parent's funds or credit are used

22  as claimed here without the parent's knowledge or authorization.  *Hines* and *McCarty-Greene* do

23  not preclude the Minor Plaintiffs from voiding the transaction and recovering money they spent

24  from funds of their parents without the parents' knowledge or authorization.

25  **C.      The Minor Plaintiffs' Transactions Are Void Under Family Code § 6701(a) and (c).**

26           California law narrowly confines the authority of minors to contract.   Fam. Code §

27  6701(a) provides that a minor cannot "give a delegation of power."  Fam. Code § 6701(c)

28

1   provides that a minor cannot "make a contract relating to any personal property not in the

2   immediate possession or control of the minor."  Such purported delegations of power and

3   contracts are *unauthorized as a matter of law* and *void. Morgan v. Morgan,* 220 Cal. App. 2d

4   665, 674, 34 Cal. Rptr. 82 (1963) (applying the predecessor provision Cal. Civ. Code § 33).

5       With respect to § 6701(c), Facebook argues that because Credits are used to purchase

6   virtual goods, which Facebook says are intangible, the protections of § 6701(c) do not apply.

7   But § 6701(c) says nothing of the sort.  In particular, § 6701(c) prevents minors from "mak[ing]

8   a contract relating to any personal property not in the immediate possession or control of the

9   minor."  The broad "relating to" scope disallows at least two separate types of transactions:

10  Transactions in which a minor attempts to make a purchase of a subject matter outside the

11  minor's immediate possession or control (perhaps goods to be delivered at a later date or other

12  location), and transactions in which a minor attempts to make a purchase using consideration

13  outside the minor's immediate control (perhaps funds to be tendered at a later date or other

14  location).   Plaintiffs have properly pleaded conduct of the latter sort, specifically that the Minor

15  Plaintiffs did not have the immediate possession or control of their parent's credit or bank

16  account when they made the Facebook Credit purchases at issue in this case. SAC ¶65.

17      Facebook's reliance on *Taylor v. Hill*, 115 Cal. 143, 151, 44 P. 336 (1896) is misplaced:

18  *Taylor* holds that hard copies of newspapers are personal property, but nothing in *Taylor* even

19  suggests that a parent's money is not "property."  Meanwhile, the predecessor provision, Cal.

20  Civ. Code § 33, similarly referred to "personal property" and was held applicable to all manners

21  of financial instruments including' bank stock in *Schram v. Poole*, 97 F.2d 566, 571 (9th Cir.

22  1938) and a debt in *Taylor v. Hill*, 115 Cal. 143, 151, 44 P. 336 (1896).  The virtual goods

23  purchased by the Minor Plaintiffs through unauthorized use of their parents' credit cards are no

24  less "personal property" within the meaning of § 6701(c).

25      Facebook is also incorrect in its argument that the Minor Plaintiffs' use of the parents'

26  credit cards involved no "delegation" under Fam. Code § 6701(a).  Pursuant to § 6701(a), and its

27  predecessor provision Civil Code sec. 33, a minor cannot "give a delegation of power." A

28  "delegation of power" is an authorization given by one person who is capable of acting that

authorizes and empowers a second person to act and delegates or assigns to that second person the power to act for the first person." *Ellis v. Cmty. Chevrolet, Inc.*, 242 Cal. App. 2d 79, 82, 84, 51 Cal.Rptr. 154, 155, 157 (1966); *Morgan*, 220 Cal. App. 2d at 674.

While Facebook argues that Minor Plaintiffs' use of parents' credit cards is not a "delegation," Facebook's own SRR contract reveals otherwise.  In particular, Facebook tells users that by providing a payment source, "You . . . *authorize us to collect and store it*, along with other related transaction information" (emphasis added).  Def. Br. at 6.  Facebook's words memorialize the Minor Plaintiffs' delegation of authority to Facebook to collect from the payment source and to store payment information for future transactions.

Plaintiffs in the present case are minors who have no authority to delegate power to Facebook to consummate multiple transactions on their parents' credit cards. SAC ¶¶ 24, 65. Because the minors are powerless in authorizing Facebook to collect, store, and use their parents' credit cards, their delegation of power is void.  In *Ellis*, the appellate court invalidated a minor's delegation of power to a car dealer for the purchase of a car.  242 Cal. App. 2d at 81.  It held that title was "not effectively transferred" because the buyer, as a minor, was powerless to delegate power to the dealer to consummate the transaction.  *Id.*  *Morgan* similarly held that a minor's authorization to an agency to endorse the name of the minor on checks constituted a delegation of power and, as such, was void.  220 Cal. App. 2d at 674.  As in *Ellis* and *Morgan*, the transactions in the present case must be voided because the minors' authorizations to Facebook for the use of their parents' credit cards constitute delegations of unauthorized power.

Failing to cite case authority, Facebook rests on dictionary definitions that a delegation involves "entrusting another with authority . . . to act as an agent or representative."  (Def. Br. 5, n.16, quoting Black's Law Dictionary).  This dictionary definition alludes to an agency relationship, where the minor is the principal and Facebook the agent.  Even the dictionary definitions undercut Facebook's position.  Measured by the dictionary definitions put forth by Facebook as well as by *Ellis* and *Morgan*, Facebook's practice of collecting payment from the parents' credit cards and storing payment information for future use rests on the Minor Plaintiffs' delegations of power, which are unauthorized as a matter of law and therefore void.

1

**D.      As Legal Representatives for Their Minor Children, Parents Can "Disaffirm" the Contracts of Their Minor Children**

2

Facebook's assertion that parents cannot disaffirm contracts of their minor children (Def.

3   Br. 13) requires only a brief response.  Facebook ignores Family Code § 6601, which provides

4   that a "guardian must conduct . . . actions or proceedings" on a minor's behalf.  *See* SAC ¶ 66.

5   Indeed, the California Supreme Court in *Hastings,* on which Facebook otherwise relies, found it

6   "well settled that no one can take advantage of the fact of infancy except the infant himself, or

7   his heirs or *personal representatives*."  *Hastings*, *supra*, 24 Cal. at 206 (emphasis added).

8   Parents are wholly entitled to disaffirm contracts entered into by their minor children.

9   **E.      The Money Transmission Act Applies To Purchases of Facebook Credits**.

10                Facebook argues that it does not provide "money transmission" services, seeking shelter

11   under an MTA exclusion for "any instrument that is redeemable by the issuer for goods or

12   services provided by the issuer or its affiliate."  Def. Br. 14.  But Facebook Credits are

13   redeemable for purchases within any of hundreds of Facebook Apps, developed by independent

14   developers.  By Facebook's own admission, many Apps are made by "outside developers"

15   (Plaintiffs' Request for Judicial Notice Ex. 1.) wholly independent of Facebook.  *See also* SAC ¶

16   13 ("[T]hird-party application developers . . . provide software 'Apps' that appear within the

17   Facebook site.").  These outside developers are not Facebook's "affiliate[s]" within the meaning

18   of the MTA.  *See* Cal. Fin. Code § 2003(a) (defining "affiliate" as only those companies

19   "controlling, controlled by, or under common ownership"—not mere business partners or

20   contract partners).  When Facebook transmits funds to these outside developers, those

21   transmissions fall squarely within the MTA.

22                Facebook argues that the "right to refund" disclosure (as required by Cal. Fin. Code §

23   2102(b)) would be "nonsensical" as applied to the transactions at issue.  But Facebook quotes

24   only a portion of the statutory disclosure, and other sections of the disclosure detail significant

25   rights that would importantly benefit consumers.  In particular, the required disclosure would

26   advise consumers in bold type as to how they may request a refund, and what compensation is

27   available if a consumer is denied a refund to which the consumer is entitled:

28

**If you want a refund, you must mail or   deliver your written request to _____ (name of licensee) at _____ (mailing address**

1

2

**of   licensee). If you do  not receive your   refund, you may be entitled to your money back plus a penalty of up to $1,000 and attorney's fees pursuant to Section 2102 of the California Financial Code."**

3

Cal. Fin. Code § 2102(b). These provisions should be included with every Facebook Credits

4

receipt – a particularly valuable benefit to any class member who otherwise struggles to find

5

Facebook's preferred mechanism to request a refund.

6

Finally, Facebook argues that its Credits system "do[es] not involve the 'transmission' or

7

'forward[ing]' of money."  But Facebook's own statements reveal that the entire purpose of

8

Credits is to transmit consumers' funds to App developers.  Facebook tells consumers what they

9

can do with Credits and how they can fund their Credits purchases: "Facebook Credits are a

10

virtual currency you can use to buy virtual goods in any games or Apps of the Facebook platform

11

that accept payments.  You can purchase Facebook Credits directly from within an App using

12

your credit card, PayPal, mobile phone and many other local payment methods." (Plaintiffs'

13

Request for Judicial Notice Ex. 2)  Meanwhile, Facebook tells developers how they can receive

14

money when users make purchases from their Apps: "We will redeem your Developer Balance

15

…" followed by details of the rules, timing, and methods by which Facebook pays developers.

16

(Plaintiffs' Request for Judicial Notice Ex. 3.)  Elsewhere, Facebook reminds developers of the

17

need to provide their bank account details "so that Facebook can pay you out [because] if you

18

fail to do so, then even though users are spending in your application you will not receive any

19

payment from Facebook." (Plaintiffs' Request for Judicial Notice Ex. 4.) There can be no serious

20

dispute that the Facebook Credits system serves to transmit and forward consumers' funds to

21

independent application developers.

22

23

**F.     The Electronic Funds Transmission Act Applies To Purchases of Facebook Credits Using Funds from a Debit Account.**

24

Facebook argues that EFTA does not apply to purchases of Facebook Credits because

25

Facebook is not a financial institution.  In particular, Facebook relies on *Nordberg v. Trilegiant*

26

*Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006), for the proposition that EFTA "obligations are

27

generally limited to 'financial institutions.'"  But *Nordberg* holds nothing of the kind: the

28

Nordberg court only instructed the plaintiffs in that matter to amend their complaint to reference

1    the proper sections of the EFTA and supportive facts.  *Id.* at 1103.  Facebook quotes *Nordberg*'s

2    recitation of the definition of "electronic fund transfer" as supposed support for limiting EFTA

3    obligations to financial institutions.  Def. Br. 16.  But the quoted definition includes an order to

4    "instruct or authorize a financial institution to debit or credit an account" – orders sent *to*

5    financial instructions; orders which would naturally come from entities that (like Facebook) are

6    not, themselves, financial institutions.  *Nordberg*, 445 F. Supp. 2d at 1093.

7            Meanwhile, more recent cases routinely find EFTA liability when companies debit

8    customers' bank accounts without customers' permission.  *See Friedman v. 24 Hour Fitness*

9    *USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008) (plaintiff stated EFTA claim against fitness

10   center that allegedly withdrew membership fees from customers' bank accounts even after

11   members canceled their membership); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159

12   (S.D. Cal. 2010) (plaintiff stated EFTA claim against defendant EMI that allegedly transferred

13   funds from plaintiffs' bank accounts without authorization).  Like defendants in *24 Hour Fitness*

14   and *Easysaver*, Facebook does "order [or] instruct . . . a financial institution to debit or credit an

15   account." 15 U.S.C. § 1693a(7).  Sending these orders and instructions falls squarely within the

16   ambit of the EFTA.

17           Facebook importantly misreads *24 Hour Fitness* in claiming that the EFTA obligations

18   apply only to financial institutions.  Facebook says *24 Hour Fitness* holds that "plaintiffs' claim

19   [is] 'frivolous'" when, purportedly, plaintiffs claim that a fitness center is a financial institution.

20   The actual text of *24 Hour* provides: "*Defendant*'s contention that it is a financial institution is

21   frivolous" (emphasis added).  It was the 24 Hour Fitness corporate defendant, not consumer

22   plaintiffs, whose position the *24 Hour* court criticizes as frivolous.[3]  In sharp contrast, in the

23   instant matter Plaintiffs have not claimed that Facebook is a financial institution, nor need

24   Plaintiffs make any such showing in order to enjoy the protections of the EFTA.

25           Indeed, the plain language of the EFTA confirms that obligations extend beyond financial

26

27   [3] 24 Hour had sought to limit its EFTA liability by claiming that it was a financial institution and
     therefore enjoyed the defense set out in § 1693g(a) that applies only to financial institutions, and
28   24 Hour Fitness is not a financial institution.  Hence, the *24 Hour* court's subsequent finding that
     "Defendant's challenge to the EFTA claim based on section 1693g totally lacks merit." *24 Hour
     Fitness*, 580 F. Supp. 2d at 996.

1    institutions.  In particular, § 1693m(a) authorizes suit against "any person who fails to comply

2    with any provision" of the EFTA, and any unauthorized electronic funds transfer (meeting the

3    conditions in 1693a(12)) is a proper basis for EFTA liability.  While Facebook denies that the

4    EFTA offers "any actual obligations that could be applied to Facebook," the EFTA proscribes

5    the very conduct plaintiffs allege of Facebook, namely, the unauthorized electronic transfer of

6    funds from consumers' accounts.

7         Facebook complains that Plaintiffs are insufficiently precise as to what EFTA provisions

8    Facebook purportedly violated, or how EFA applies to the transactions at issue.  But Plaintiffs

9    appropriately identify the alleged Facebook conduct proscribed by the EFTA: unauthorized

10   electronic funds transfers from Plaintiff Wright and members of the EFTA Class.  SAC ¶¶ 29–

11   31.  Plaintiffs identify the relevant facts and relevant subsections of the EFTA.  *Id.* ¶¶ 29–31,

12   108–112.  This is enough.

13   **G.    Facebook Violated the UCL by Engaging in Unlawful, Unfair And/Or Fraudulent**
14   **       Business Acts or Practices**

15         California's Unfair Competition Law (UCL) states that "[u]nfair competition shall mean

16   and include any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof.

17   Code § 17200. Because this section is written in the disjunctive, the law establishes three

18   varieties of unfair competition: "acts or practices which are unlawful, *or* unfair, *or* fraudulent . . .

19   ." *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 2011 WL 5573845 (N.D. Cal. 2011) (emphasis

20   added).  Plaintiffs' claims encompass three distinct types of misconduct: "'(a) unlawful . . .

21   business acts or practices;' (b) 'unfair fraudulent business acts or practices;' and (c) 'unfair,

22   deceptive or misleading advertising.'" SAC ¶ 89. A UCL violation exists if any of these prongs

23   are met because "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and

24   vice versa." *Podolsky v. First Healthcare Corp.* 50 Cal. App. 4th 632, 647 (1996).

                  **1.    Plaintiffs Have Pleaded Unlawful Acts Under the UCL**
25
26         As discussed, above and below at sections E, F, and H, Plaintiffs have sufficiently

27   pleaded that Facebook committed unlawful business acts and/or practices by violating the

28   CLRA, MTA, and EFTA. SAC ¶ 91. In addition, Facebook induced minors to enter contracts

     with the condition that "all sales are final" and refused to provide refunds when requested even

1  though these contracts were void or voidable under California Family Code sections 6701 and

2  6710, statutes with which Facebook fails to comply. SAC ¶ 92–99.  Because Plaintiffs have

3  sufficiently pleaded the statutory violations alleged in the Complaint, their UCL claims survive

4  under the "unlawful" prong.

5  **2.  Plaintiffs Have Pleaded Unfair Acts Under the UCL**

6  Alternatively, Facebook's misconduct constitutes unfair business acts or practices under

7  the UCL. SAC ¶ 89.  This Court has held that "[a]n unfair business practice under the UCL is

8  'one that either offends an established public policy or is immoral, unethical, oppressive,

9  unscrupulous, or substantially injurious to consumers.'" *Pinel v. Aurora Loan Services., LLC*,

10  814 F. Supp. 2d 930, 940 (N.D. Cal. 2011).

11  Public policy protects minors from their "indiscretions and immaturity as well as against

12  the machinations of other people." *Niemann v. Deverich*, 98 Cal.App.2d 787, 793 (1950).  In

13  addition, it is the policy of California to discourage adults from contracting with minors, and

14  those who do may not complain if, as the consequence of dealings with minors, they are injured

15  by the exercise of the minors' right of disaffirmance.  *See Maier v. Harbor Center Land Co.*, 41

16  Cal. App. 79 (1st Dist. 1919); *see also Flittner v. Equitable Life Assur. Soc. of U.S.*, 30 Cal. App.

17  209 (1st Dist. 1916).

18  Facebook offends this established public policy precisely because it exploits minors'

19  indiscretions and immaturity by "actively advertising, marketing and promoting Facebook

20  Credits with the statement that 'all sales are final' when Facebook knew that minors were

21  making such purchases and that minors had the right to void such contracts if they so chose."

22  SAC ¶ 32.  Facebook falsely represented that Facebook Credit transactions were "final" to

23  induce Plaintiffs to believe that they had no right to receive refunds, when in fact they had such a

24  right. *Id.* ¶ 35.  Plaintiffs and members of the proposed Class were deceived and substantially

25  injured by Facebook's unfair exploitation of minors in defiance of their rights to disaffirmance.

26  Facebook's business practices are also unfair under the UCL because Facebook stores

27  and collects financial information and associates that information with the accounts of minors

28  using Facebook, even though minors cannot lawfully possess or use credit cards or debit cards.

1    In other words, Facebook exploits minors' "indiscretions and immaturity" by retaining financial

2    information of third parties and permitting minors to repeatedly use this information to run up

3    enormous Facebook credit purchases to acquire vaporous virtual goods in Facebook Apps.  SAC

4    ¶¶ 23–26, 29–32, 65–67, 92–100.  Compounding its unfair conduct, Facebook then relies on its

5    SSR to maintain that "all sales are final" and refuses to issue refunds.  *Id.* ¶ 22.  These deceptive

6    practices are calculated to exploit the immaturity of minors, are unfair to minors and their

7    parents, and violate the clear public policy of California.  Accordingly, they are "unfair" for the

8    purposes of the UCL.

9                          **3.  Plaintiffs Have Pleaded Fraudulent Acts Under the UCL**

10           Facebook incorrectly argues that each of the elements of fraud, and specifically reliance,

11   must be pleaded for Rule 9(b) to be satisfied.  Def. Br. 9 ("[B]ecause Plaintiffs rely on a fraud-

12   based theory under the UCL and CLRA, the heightened pleading standards of Rule 9(b) apply to

13   those claims.").  Facebook relies on *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009),

14   but *Kearns* merely discussed the elements of fraud under California law to assist the court in

15   determining whether Rule 9(b) should be applied and whether certain allegations must be pled

16   with particularity, not to prescribe requirements for satisfying Rule 9(b).

17          Specifically, the plaintiff in *Kearns* argued that Rule 9(b) did not apply in part because

18   his "failure to disclose" claims were not "grounded in fraud."  *Kearns*, 567 F.3d at 1125–26.

19   After describing the elements of fraud under California law, the court held that "nondisclosure"

20   was an element of fraud and that allegations of nondisclosure "must be pleaded with particularity

21   under Rule 9(b)."  However, the court did not separately analyze whether each of the elements

22   for fraud was pled with particularity to determine whether Rule 9(b) was satisfied or find that

23   each element of the claims had to be pled with particularity.  *See also VP Racing Fuels, Inc. v.

24   Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1085–86 (E.D. Cal. 2009) (finding that Rule 9(b)

25   applied and that plaintiff's UCL claims were pled with sufficient particularity under Rule 9(b)

26   without analyzing each of the elements of fraud).

27          Here, Plaintiffs have not pleaded a common law cause of action for fraud and need not

28   plead each technical element of common law fraud, including actual reliance, to state a claim

under the UCL.  Rather, Plaintiffs are merely required to plead the elements of a UCL claim, which only requires proof that a defendant has engaged in a business practice that is "likely to deceive the public."  *See, e.g.*, *Morgan v. AT&T Wireless Services, Inc.,* 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr. 3d 768 (2009); *Gruen v. Edfund*, No. C 09-00644 JSW, 2009 U.S. Dist. LEXIS 60396, at *14 (N.D. Cal. July 15, 2009) ("[P]leading a claim under the fraudulent prong of Section 17200 is not the same as pleading common law fraud; '[S]ection 17200 does not require a plaintiff to plead all of the elements of fraud,'" quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008)); *see also Marcelos v. Dominguez*, No. C 08-00056 WHA, 2008 U.S. Dist. LEXIS 91155, at *32 (N.D. Cal. July 18, 2008) (holding that fraudulent conduct under Section 17200 is "defined more broadly than common law fraud and only requires a showing that 'members of the public are likely to be deceived.'") (citation omitted).

A claim under the "fraudulent" prong of the UCL is tested against a "reasonable consumer" standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.,* 552 F.3d 934 (9th Cir. 2008) (internal quotation marks omitted).   An omission or concealment of a fact is material if a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 332 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *Engalla v. Permanent Medical Group,* 15 Cal. 4th 951, 977 (1997).  Materiality is a question of fact unless "the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would not have been influenced by it."  *Engalla*, at 977.

Under California law, a duty to disclose arises "(3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *Heliotis v. Schuman* 181 Cal. App. 3d 646, 651 (1986). Here, Plaintiffs allege that Facebook had a duty to accurately state and carry out the law of California, namely, that its transactions with minors were void or voidable.  SAC ¶ 80.  The refundable quality of these transactions is a material fact that Facebook conceals from its users (though not, from its application developers ).  This is striking—Facebook requires application

1  developers to affirm that transactions with minors may be voided, while it refuses, at the same

2  time, to allow minors and their parents to void these transactions. Facebook also effectively

3  conceals from users, in particular minor users, the real-world implications of charging their

4  parents' credit cards for Facebook Credit transactions.

5  Facebook has more than "800 million active users worldwide" and permits "anyone

6  thirteen years old or older" to open an account. SAC ¶¶ 11, 16. Facebook conceals and fails to

7  disclose to reasonable members of the public that its transactions with minors are refundable,

8  including minors like minor Plaintiff J.W., who made over twenty debits against his parents'

9  bank account, totaling over one thousand dollars. *See id.* ¶¶ 29, 31. Facebook refused to comply

10  with California and Federal law concerning these transactions, then it deceptively

11  misrepresentated that "all sales are final," thwarting Minor Plaintiff J.W.'s parents and other

12  members of the putative class from immediately seeking redress for Facebook's wrongful

13  conduct. *Id.* ¶ 36.  Similarly, Plaintiff Glynnis Bohannon's reliance on Facebook's false

14  recitations that "all sales are final" prevented her from seeking immediate legal action to refund

15  her unauthorized charges by her minor son. (*Id.*).

16  Because Plaintiffs have pleaded misleading acts and practices and practices by Facebook

17  that are likely to mislead reasonable members of the public, its claims under the "fraudulent"

18  prong of the UCL should not be dismissed. The fact that Facebook has concealed from minors

19  and their parents that refunds are available is no basis for dismissing Plaintiffs' claims.

20  **H.      Facebook's Practices Violated the CLRA.**

21  California's Consumer Legal Remedies Act prohibits "unfair or deceptive acts or

22  practices . . . intended to result or which results in the sale or lease of goods or services to any

23  consumer." Cal. Civ. Code § 1770(a). The CLRA defines "goods" as "tangible chattels bought or

24  leased for use primarily for personal, family, or household purposes, including certificates or

25  coupons exchangeable for these goods." Cal. Civ. Code § 1761(a). "Services" are defined as

26  "work, labor, and services for other than a commercial or business use, including services

27  furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). Facebook's

28  unfair and deceptive business practices of inducing minors to purchase non-refundable in-App

1   purchases and Facebook Credits that are exchangeable for virtual goods clearly fall under the

2   broad scope of the CLRA because it resulted in the sale of goods and services used primarily for

3   personal purposes. SAC ¶¶ 76–80.

4          The CLRA is to be "liberally construed and applied to promote its underlying purposes,

5   which are to protect consumers against unfair and deceptive business practices and to provide

6   efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. To

7   contend that Facebook Credits are not "goods" or "services," Defendant relies on narrow

8   interpretations of inapposite cases. Def. Br. 19–20;  *e.g.*, *Ferrington v. McAfee, Inc.*, 10-CV-

9   01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) (CRLA to software); *Fairbanks v.*

10  *Super. Ct.*, 46 Cal. 4th 56, 61 (2009) (CRLA to life insurance); *Berry v. Am. Express Publ'g,*

11  *Inc.*, 147 Cal. App. 4th 224 (2007) (applying the CRLA to credit cards). Facebook Credits are

12  not software, life insurance policies, or credit cards; not only are these refundable or revocable,

13  but these can also be purchased for entirely commercial purposes.

14         In *Berry*, an appellate court analyzed whether a credit card constituted a tangible chattel

15  or whether the defendant's issuance of credit to the plaintiff constituted a "service." *Berry*, 147

16  Cal. App. 4th at 224.  This Court found *Berry* unpersuasive in *Hernandez v. Hilltop Fin. Mortg.,*

17  *Inc.*, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007), and held that a mortgage loan was a "service"

18  because it "involved more than the mere extension of a credit line.  Instead, the circumstances

19  here deal . . . with the services involved in developing, securing and maintaining plaintiffs'

20  loan."  *See Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 286–87 (1995). Similar to

21  *Hernandez*, the claims in this case deal with Facebook's deceptive services in developing,

22  securing and maintaining unauthorized financial information, inducing Minor Plaintiffs' in-App

23  and Facebook Credit purchases, and declaring these purchases "final" when it fact California law

24  allows minors to disaffirm these transactions. SAC ¶ 78.

25         Furthermore, the CLRA must be liberally construed to promote its underlying purposes

26  of protecting consumers from unfair and deceptive practices. Cal. Civ. Code § 1760; *Nelson v.*

27  *Pearson Ford*, 186 Cal. App. 4th 983 (2010).  Accordingly, California courts have applied the

28  CLRA to electronic goods and services.  *See, e.g., AOL v. Super. Ct. of Alameda*, 90 Cal. App.

4th 1 (2001) (encompassing credit card holders who were debited for monthly service fees after termination of their subscriptions); *Doe 1 v. AOL LLC*, 719 F.Supp.2d 1102, 1109–13 (N.D. Cal. 2010) (applying the CLRA to AOL's internet services, including alleged privacy and security protections); *Morgan v. AT & T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768, 787 (2009) (holding that the CLRA applied to the sale of a mobile phone and wireless telephone service contract).  Likewise, the electronic transactions of in-App purchases and Facebook Credits exchangeable for virtual goods constitute goods and services under the CLRA, especially under a broad construction as intended by the California Legislature. SAC ¶ 76–77.

## I.   Plaintiffs Have Pleaded a Right To Declaratory Relief.

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Actual cases or controversies clearly exist in the present case. First, California law prohibits minors from "giv[ing] a delegation of power" or "making a contract relating to any personal property not in the immediate possession or control of the minor"; these contracts are void. SAC ¶ 64; Cal. Fam. Code § 6701. Alternatively, minors have the right to disaffirm contracts under California law, rendering them voidable. SAC ¶ 68; Cal. Fam. Code § 6710. Thus, the contracts between Facebook and Minor Plaintiffs are void or voidable, despite Facebook's statements to the contrary. SAC ¶ 70. As such, Plaintiffs seek declaratory relief in the determination for, *inter alia*, the validity of the contracts between Defendant and Plaintiffs, and legality of Facebook Credit transactions with minors. *Id.* ¶ 72.

In addition, Facebook's contention that some other remedy (e.g., injunction, restitution, etc.) could be equally effective—a position that Plaintiffs do not concede—is not grounds for denying declaratory relief: "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R.Civ. P. 57; *see also In re Easysaver Rewards Litig.* 737 F. Supp. 2d 1159, 1175 (S.D. Cal. 2010); *Tierney v. Schweikeri*, 718 F.2d 449, 457 (D.C. Cir. 1983). Thus, Defendant's conclusory statement that "declaratory relief is

1    unnecessary" does not preclude Plaintiffs from obtaining a declaratory judgment here.

2    **J.      Plaintiffs Have Pleaded Sufficient Class Allegations.**

3            This District and other California courts have held that motions to strike are "generally

4    regarded with disfavor because of the limited importance of pleading in federal practice, and

5    because they are often used as a delay tactic." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609,

6    614 (N.D. Cal. 2007) (citing *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F.

7    Supp. 2d 1028, 1033 (C.D. Cal. 2002)).  "While courts entertain [Rule 12(f) motions to strike

8    class allegations], it is rare that the class allegations are stricken at the pleading stage." *Clerkin v.*

9    *MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735, at *9-10 n.4 (N.D. Cal.).  Facebook here makes

10   no argument that Plaintiff's "allegations are 'redundant, immaterial, impertinent, or

11   scandalous.'" *Id.* (quoting Federal Rule of Civil Procedure 12(f)).

12           Furthermore, Facebook's Motion to Strike Plaintiff's class allegations is premature at this

13   early stage of the litigation, where neither party has had any opportunity to conduct class

14   discovery, and concerns class issues that are more appropriate for consideration after Plaintiffs

15   have filed their motion for class certification. *See*, *e.g.*, *In re Wal-Mart Stores, Inc.*, 505 F. Supp.

16   2d at 615–16 (rejecting defendant's motion to strike class allegations as premature where

17   "discovery has not yet commenced, and no motion for class certification has been filed.").  "Any

18   doubt concerning the import of the allegations to be stricken weighs in favor of denying the

19   motion to strike." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 614 (citing *In re*

20   *2TheMart.com, Inc. Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)).

21                        **1.   Plaintiffs Have Pleaded Standing.**

22           Standing requires that a plaintiff suffer an injury in fact—an invasion of a legally

23   protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

24   conjectural or hypothetical. Second, there must be a causal connection between the injury and the

25   conduct complained of—the injury has to be fairly traceable to the challenged action of the

26   defendant, and not the result of the independent action of some third party not before the court.

27   Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a

28   favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  When "ruling

1    on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as

2    true all material allegations of the complaint and must construe the complain in favor of the

3    complaining party.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Warth v.*

4    *Seldin*, 422 U.S. 490, 501 (1975)).  In fact, "[a]t the pleading stage, general factual allegations of

5    injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we

6    'presum[e] that general allegations embrace those specific facts that are necessary to support the

7    claim.'" *Maya*, 658 F.3d at 1068 (quoting *Lujan*, 504 U.S. at 561).

8            The named Plaintiffs in this case have Article III standing because each Plaintiff has

9    suffered an actual concrete and particularized injury that is traceable to Defendant's actions and

10   which can be redressed by the Court.  As an initial matter, the California legislature "set a low

11   but nonetheless palpable threshold of damage" for injuries arising from the CLRA. *Meyer v.*

12   *Sprint Spectrum L.P.,* 45 Cal.4th 634, 646 (2009).  Plaintiffs Glynnis Bohannon and Julie Wright

13   were concretely injured after Facebook acted upon their minor child's "apparent delegation of

14   power to charge [their] mother's credit card," after Facebook engaged in transactions for funds

15   that were not in their minors' immediate possession or control, and after Facebook stored and

16   collected their financial information. SAC ¶¶ 25–27.  Plaintiffs suffered concrete monetary

17   injuries totaling more than several hundred dollars that can be redressed by this Court. *Id.* ¶ 25.

18   In addition, Minor Plaintiffs I.B. and J.W. suffered particularized harms caused by Facebook's

19   conduct in acting upon their apparent delegation of power to create a binding contract affecting

20   their parents, fraudulently, unfairly, and unlawfully failing to provide a refund, in

21   misrepresenting that "all sales are final," and in storing the minor  parents' financial information

22   for repeated transactions.

23           Plaintiffs seek reformation of Facebook's practices regarding refunds and minor

24   transactions that violate California and Federal law and accordingly seek equitable relief on

25   behalf of users who have been affected by Facebook's wrongful practices, and specific relief to

26   which they are entitled under California law.  Contrary to Facebook's suggestion otherwise, "that

27   state law gives a right to 'monetary relief to a citizen suing under it' without a more

28   particularized proof of injury and causation . . . is not enough to preclude class standing." *Mazza*

1   *v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. Cal. 2012) (citations omitted).  Injury as

2   required by Article III may exist by virtue of "statutes creating legal rights, the invasion of which

3   creates standing." *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Circ. 2010) (quoting

4   *Warth,*422 U.S. at 500). The harms alleged by the Plaintiffs to the various classes are redressable

5   by the Court and Plaintiffs have accordingly pleaded sufficient facts to support standing.

6   **2.  Plaintiffs Have Presented Workable Class Definitions That May Be Refined After Appropriate Discovery.**

7   "An adequate class definition specifies 'a distinct group of plaintiffs whose members

8   [can] be identified with particularity.'" *Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 362 (N.D. Cal.

9   2010) (quoting *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal.

10  2008); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). "The identity

11  of  class members must be ascertainable by reference to objective criteria." *Id.* (quoting 5 James

12  W. Moore, Moore's Federal Practice, § 23.21[1] (2001)).

13  Here, Facebook fundamentally mischaracterizes the classes presented in the SAC.

14  Plaintiffs proposed MTA Class includes both minors and adults because Plaintiffs contend that,

15  in its transactions with both minors and adults, Facebook has violated the MTA, and Plaintiffs

16  seek relief, including injunctive and declaratory relief, for each Facebook user who purchased

17  Facebook Credits while the MTA was in effect, because Facebook has failed and continues to

18  fail to abide by the requirements of the MTA in providing appropriate disclosures regarding

19  refunds.  SAC ¶¶ 32–35.  Similarly, Plaintiffs seek relief, including injunctive and declaratory

20  relief, on behalf of the Minor Subclass because Plaintiffs contend that Facebook has been

21  violating California law with regard to Facebook Credit Transactions with minors. *Id.* ¶ 72. The

22  Refund Subclass—defined by the fact that each member attempted to obtain a refund, an

23  objective criterion for membership in the class—is hardly unworkable, and Facebook's own

24  records, revealed in discovery, will allow for that determination to be made.  No individualized

25  inquiry will be required as to the circumstances of the refund request, because the reason for the

26  refund is relevant under California Family Code Secs. 6710 and 6701: if a refund is requested for

1   a transaction with a minor,[4] it must be provided, regardless of the specific basis for the request.

2          Facebook's motion to strike class allegations also ignores the requirements for

3   certification under the UCL and CLRA.  The Plaintiff "does not need to show affirmative proof

4   that each individual class member relied on [Facebook's] deceptive conduct." *Baghdasarian v.*

5   *Amazon.com, Inc.*, 258 F.R.D. 383, 387 (C.D. Cal. 2009) (citing *In re Tobacco II Cases*, 46 Cal.

6   4th 298, 306 (2009)).  Plaintiffs contend that Facebook has acted unfairly and unlawfully,

7   obviating any issues as to reliance for the proposed classes.  Under the fraudulent prong,

8   however, the UCL and CLRA only require Plaintiff to show that consumers were "*likely to be*

9   *deceived*" by Defendants' fraudulent conduct.  *See, e.g., Aron v. U-Haul*, 143 Cal. App. 4th 796,

10  806 (2006) (emphasis added) (citation omitted).

11          Regardless, Plaintiffs may further refine their class definition by amendment and after

12  discovery before certification.  *See, e.g., Bass v. Dollar Tree Stores*, No. 07-03108 2007 U.S.

13  Dist. LEXIS 65979, at *7 n.1 (holding that it was unnecessary to strike or dismiss class

14  allegations based on an overbroad class definition where plaintiffs represented that they would

15  amend the class definition); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. 07-

16  01841 MHP, 2008 U.S. Dist. LEXIS 53616, at *23 (N.D. Cal. June 10, 2008) (granting plaintiffs

17  leave to *expand* the class definition).We are at the inception of this litigation, which is why it is

18  too soon for the Court to decide class certification on the pleadings, absent a factual record

19  developed in discovery.

20  **K.      The Court Should Decline to Take Judicial Notice of Exhibits C, D, E, F, G, H, and I**

21          With Exhibits C, D, E, F, H and I to its Request for Judicial Notice, Facebook attempts to

22  supplant the allegations of the Complaint by "illustrating" the transactions giving rise to

23  Plaintiffs' Complaint.  Plaintiffs do not dispute that these websites existed at the time they were

24  accessed by Facebook and printed in April and May of 2012, but Plaintiffs strenuously contest

25

26  _____

27  [4] Facebook's contention that some minors may misstate their age to Facebook is of no
    consequence.  If individuals have identified themselves as over 18, they are not members of any
    minor class proposed by Plaintiffs, and any claims process in this case would require the

28  members to affirm their age.  Regardless, the argument presents questions of fact that are
    properly decided after appropriate discovery, not on the pleadings.

1    Facebook's claim that these documents "illustrate" transaction giving rise to Plaintiffs' claims.[5]

2          Accordingly, Plaintiffs contest the authenticity of each of these pages to the extent

3    Facebook contends that they were viewed by any Plaintiffs or were in place at the time that the

4    transactions alleged in the SAC took place.  Bill Richardson, Facebook's declarant, does not

5    assert that he has any knowledge of what Plaintiffs saw, when they saw it, or even if any of these

6    websites were publicly available and in place when the transactions giving rise to Plaintiffs'

7    claims took place, approximately six months before the date on which Facebook obtained

8    Exhibits C-I to its Request for Judicial Notice.

9          In another case in the Northern District of California, Judge Koh specifically rejected a

10   nearly identical attempt by Facebook to supplant the allegations of a complaint with extraneous

11   websites not referenced or relevant to the Plaintiffs' claims.  As here, in *Fraley v. Facebook,*

12   *Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011), Facebook asked the Court to take judicial notice

13   of several websites from Facebook's "Help Center."  The Plaintiffs opposed the motion because

14   Facebook offered no evidence that the websites in question were viewed by the Plaintiffs or were

15   in effect at the times relevant to the Complaint.  As to these documents, Judge Koh ruled that

16              the Court finds that they are neither documents on which the
              Complaint "necessarily relies," nor documents whose relevance
17              and authenticity are uncontested. *See Coto Settlement v. Eisenberg,*
              *593 F.3d 1031, 1038* (9th Cir. 2010). First, Exhibits B through F
18              were all accessed on July 1, 2011. It is thus unclear whether the
              particular web pages Defendant submits were even in existence at
19              the time Facebook first launched the Sponsored Stories feature or
              at the time Plaintiffs took the actions that rendered them subject to
20              Sponsored Stories. *Cf. Cohen v. Facebook, Inc.*, No. 10-cv-5282-
              RS, 798 F. Supp. 2d 1090, 2011 U.S. Dist. LEXIS 83058, 2011
21              WL 3100565, at *3 (N.D. Cal. June 28, 2011) ("Cohen 7")
              (rejecting Facebook's  request to take judicial notice of various
22              Terms of Use documents because "substantial questions . . . remain
              in this instance as to when various versions of the documents may
23              have appeared on the website and the extent to which they

24   ─────────────────────────
     [5] Plaintiffs have filed their own Request for Judicial Notice, with one exhibit in common with

25   Facebook's (Exhibit E to Facebook's Request and Exhibit 2 to Plaintiffs' Request).  However,
     Plaintiffs have asked the court to take judicial notice of these documents—Facebook's own

26   statements on its own website—for the limited purpose of demonstrating, first, that Facebook
     requires application developers to acknowledge that, as alleged in Plaintiffs' SAC, transactions

27   with minors are voidable, and second, that Facebook Credit transactions actually involve
     transmissions of money, as alleged in Plaintiffs' SAC.  Unlike Facebook, Plaintiffs do not

28   attempt to "illustrate" transactions with post-dated websites that are not referenced in the SAC
     and whose authenticity and relevance with regard to Plaintiffs' claims can be challenged.

1
2

necessarily bound all plaintiffs."). Second, although Plaintiffs cite one excerpt from a Help Center page on Facebook's website in their SAC, see SAC ¶ 34, it does not follow that a member would necessarily see the other Help Center pages Facebook submits.

3   *Fraley*, 830 F. Supp. 2d at 795.  Facebook here presents a nearly identical scenario—a series of

4   screenshots from websites not referenced in the SAC, which Facebook purports "illustrate" the

5   transactions at issue, even though Facebook can offer no evidence that these websites were

6   viewed by any Plaintiff or were even in place at the time of the events giving rise to Plaintiffs'

7   claims.  Facebook's declarant Bill Richardson, an employee of Facebook, also fails to provide

8   any competent evidence of his understanding or familiarity with the "Ninja Saga" application,

9   how one (or Plaintiffs) would have logged in to the application, or any other facts to authenticate

10  Exhibits G, H, or I to Facebook's Request.  Plaintiffs specifically object to ¶¶ 5-10, 12, 13, 15,

11  16, 18, 19, and 20 of the Richardson declaration on the grounds that the testimony is not

12  relevant, lacks foundation, fails to properly authenticate documents, references documents not

13  subject to judicial notice, lacks personal knowledge to authenticate documents viewed by

14  Plaintiffs, and fails to establish the documents are the same as the versions of the documents

15  allegedly viewed by Plaintiffs, under Fed. R. Evid. 201, 401, 402, 602, 901.

16      Accordingly, Plaintiffs contest the authenticity of Exhibits C, D, E, F, G, H, and I to the

17  extent that Facebook contends that these exhibits "illustrate" any transaction at issue in Plaintiffs

18  SAC.  The Court cannot consider these extraneous materials without converting Facebook's

19  motion to a Rule 56 motion for Summary Judgment under Fed. R. Civ. P. 12(d).

20                          **V.      CONCLUSION**

21      For the reasons set forth above, Facebook's motion to dismiss and to strike Plaintiffs'

22  class allegations should be denied.  In the alternative, Plaintiffs respectfully request leave to file

23  an amended Complaint consistent with the Court's view of the law after Facebook's motion has

24  been submitted.

25  Dated: August 1, 2012                          Respectfully submitted,

26                                          KERSHAW, CUTTER & RATINOFF, LLP

27

28                                          By:   /s/ John R. Parker, Jr.
                                                 John R. Parker, Jr.
                                                 Attorneys for Plaintiffs