**United States District Court**
For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4    I.B., by and through his Guardian          No. C 12-1894 CW
     ad Litem BRYAN FIFE, et al.,

5                                               ORDER GRANTING IN
              Plaintiffs,                       PART AND DENYING
6                                               PART MOTION TO
         v.                                     DISMISS; DENYING
7                                               MOTION TO STRIKE
     FACEBOOK, INC.,
8
              Defendant.
9    _____/

10

11        Defendant Facebook, Inc. moves to dismiss the Second Amended

12   Complaint (2AC).  Plaintiffs I.B., by and through his guardian ad

13   litem Bryan Fife, Glynnis Bohannon, J.W., by and through his

14   guardian ad litem Steven Wright, and Julie Wright oppose the

15   motion.  The Court held a hearing on Facebook's motions on August

16   30, 2012.  For the reasons discussed below, the Court grants the

17   motion to dismiss the claims brought under California Family Code

18   section 6701(a), the claims by parents Bohannon and Wright to

19   disaffirm the minors' contracts, the CLRA claim, and the UCL

20   claims alleging violations of the CLRA and MTA, without leave to

21   amend; grants the motion to dismiss the EFTA claim and the claims

22   brought under the unlawful and fraudulent prongs of the UCL, with

23   leave to amend; and denies the motion to dismiss the claims

24   brought by the minor Plaintiffs to disaffirm their contracts

25   pursuant to California Family Code sections 6701(c) and 6710, and

26   the claims alleging violation of public policy protecting minors

27   under the unfair prong of the UCL.  The Court further denies as

28   premature Facebook's motion to strike the class allegations.

BACKGROUND

The following facts are alleged in the 2AC.

Facebook operates the largest online social network in the world and provides a payment system, Facebook Credits, for users to make purchases within the Facebook website.  2AC ¶ 2.  Facebook permits minors to register on its website and use its service.  Id. ¶ 3.

In October 2011, Plaintiff I.B., a minor, asked his mother, Plaintiff Glynnis Bohannon, for permission to spend twenty dollars on his Facebook account using Bohannon's Wells Fargo Master Card, in exchange for twenty dollars in cash.  2AC ¶ 25.  I.B. purchased Facebook Credits from Facebook for use in "Ninja Saga."  Id. Subsequently, without any notice that his mother's credit card information had been stored by Facebook and the Facebook Credits system, or that his mother's credit card information was being used again after the initial twenty dollar purchase, I.B. made in-game purchases for which he thought he was spending virtual, in-game currency.  Id.  As a result, Bohannon's credit card was charged repeatedly and without her consent, and the charges totaled several hundred dollars.  Id.  Upon discovering the transactions, Bohannon tried to obtain a refund from Facebook by leaving a phone message at a phone number listed for Facebook but received no response.  2AC ¶ 27.

In December 2011, Plaintiff J.W., a minor, began to make a series of charges via Facebook Credits using the debit card of his parents, Plaintiff Julie Wright and Steven Wright, which J.W. had taken from his parents without their permission.  2AC ¶ 29.  The total charges exceeded one thousand dollars.  Id.  On or about

United States District Court
For the Northern District of California

February 8, 2012, after learning of these charges, Steven Wright submitted a complaint to Facebook as to the "20 debits directly to my bank account," noting that neither he nor his wife (the only authorized users of the debit card's account) had authorized any such charges, and requesting a refund. Id. ¶ 31. On February 10, 2012, a Facebook "Payment Operations" representative replied to Steven Wright to say he "refunded the charges to your [Wright's] funding instrument." Id. However, on April 13, 2012, Steven Wright noticed that only $59.90 had been refunded and contacted Facebook to request a refund of the full amount at issue. Id. In the course of further correspondence, Facebook responded that "we are not able to process your refund request at this time . . . because it has been more than 90 days since you completed the stated transaction(s)." Id. As of the date of filing the 2AC, the Wrights have not been reimbursed $999.30 charged for transactions originating from their minor child's Facebook account. Id.

On February 23, 2012, Plaintiff Bohannon filed this action individually and on behalf of her minor child, I.B., against Facebook in the Superior Court for the County of Santa Clara. Plaintiffs amended the complaint on March 8, 2012, to assert classwide claims against Facebook. Plaintiffs served Facebook on March 19, 2011, and Facebook removed the putative class action on April 17, 2012. Notice of Removal (Docket No. 1) at 1-2.

Plaintiffs filed the 2AC on May 31, 2012, on behalf of the proposed class: "All Facebook users who have purchased Facebook Credits from January 1, 2011 to the date on which a class is certified ('the MTA Class')." 2AC ¶ 37. The 2AC identifies three

**United States District Court**
For the Northern District of California

proposed subclasses: (a) the "Minor Subclass" of "[a]ll Facebook users who are or were minor children according to Facebook's own records, and those children's parents and guardians for the four years preceding the date on which the original complaint was filed to the date on which a class is certified; (b) the "Refund Subclass" of "[a]ll Facebook users who are or were minor children according to Facebook's own records, and those children's parents and guardians, who attempted to obtain a refund of a Facebook Credit transaction originating from a minor child's account for the four years preceding the date on which the original complaint was filed to the date on which a class is certified;" and (c) the "EFTA Subclass" within the Refund Subclass consisting of "[a]ll members of the Refund Subclass whose payment to Facebook was made from a debit card or PayPal account linked to a U.S.-based bank from May 31, 2011 to the date on which a class is certified." 2AC ¶¶ 39-41. The 2AC asserts the following class claims against Facebook: (1) Declaratory Judgment; (2) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (CLRA); (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (UCL); and (4) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. (EFTA).

Facebook moves to dismiss the 2AC for failure to state a claim and to strike the class allegations. Plaintiffs oppose the motions.

LEGAL STANDARD

I. Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

**United States District Court**
For the Northern District of California

Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of

1  a Rule 12(b)(6) motion.  <u>Durning v. First Boston Corp.</u>, 815 F.2d

2  1265, 1267 (9th Cir. 1987).

3  II.  Motion to Strike

4      Under Federal Rule of Civil Procedure 12(f), a court may

5  strike from a pleading "any redundant, immaterial, impertinent or

6  scandalous matter."  The purpose of a Rule 12(f) motion is to

7  avoid spending time and money litigating spurious issues.

8  <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993),

9  <u>reversed on other grounds</u>, 510 U.S. 517 (1994).  A matter is

10 immaterial if it has no essential or important relationship to the

11 claim for relief plead.  <u>Id</u>.  A matter is impertinent if it does

12 not pertain and is not necessary to the issues in question in the

13 case.  <u>Id</u>.

                            DISCUSSION

14

15 I.  Request for Judicial Notice

16     Facebook asks the Court to take judicial notice of screen

17 shots of webpages from Facebook's website on the grounds that they

18 were specifically referred to in the 2AC or illustrate the

19 allegations in the amended complaint.  These include Facebook's

20 Statement of Rights and Responsibilities, Payment Terms, Help

21 Center pages and payment screens in the game Ninja Saga.

22 Plaintiffs object to these exhibits.  Facebook's manager of

23 Payment Operations, Bill Richardson, provides a supporting

24 declaration concerning the public availability of these webpages.

25 However, Mr. Richardson states that the screen shots were viewed

26 and printed between April 13, 2012 and May 10, 2012, and his

27 declaration does not indicate whether these webpages were in

28 effect or available at the time of the events alleged in the 2AC.

Richardson Decl. at 2-4 nn.1-6.  In support of Facebook's reply, Mr. Richardson states that Facebook did not "materially alter" the Ninja Saga payment pages between October 2011 and May 2012. Suppl. Richardson Decl. ¶ 3.  However, whether the minor Plaintiffs I.B. and J.W. would have viewed these particular payment pages is subject to reasonable dispute.  Facebook's request for judicial notice is therefore denied.  See In re Easysaver Rewards Litig., 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010) (denying request for judicial notice where "[t]he Court finds that whether these are the webpages Plaintiffs would have viewed during their online transactions is subject to 'reasonable dispute.'") (citing Fed. R. Evid. 201).

Plaintiffs request that the Court take judicial notice of screen shots of webpages from Facebook's website referring to "App Basics," "What Are Facebook Credits?," "Facebook Developer Payment Terms," and "Credits Tutorial."  Plaintiffs submit these exhibits as statements made by Facebook in the ordinary course of business. Pls.' RJN at 2.  Facebook does not object to these exhibits, and these matters can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

II.  Sufficiency of Allegations

A.   Disaffirmance of Minors' Contracts

In their first claim for declaratory relief, Plaintiffs seek a determination by the Court that the contracts between Facebook and the members of the proposed Minor Subclass are void or voidable.  2AC ¶ 72.  Facebook moves to dismiss this claim on the ground that minors cannot disaffirm contracts when they have

already received the expected benefits of the contract. Plaintiffs contend that under the doctrine of infancy in California, the minor Plaintiffs I.B. and J.W. have the right to disaffirm their purchases of Facebook Credits, regardless of whether they return those Credits.

>    1.   Void Contracts Prohibited by Family Code Section 6701

California law defines minors as all persons under eighteen years of age, Cal. Fam. Code § 6500, and restricts minors from entering certain contracts:

> A minor cannot do any of the following:
>
> (a) Give a delegation of power.
>
> (b) Make a contract relating to real property or any interest therein.
>
> (c) Make a contract relating to any personal property not in the immediate possession or control of the minor.

Cal. Fam. Code § 6701. The contracts enumerated in section 6701 are void and no act of disaffirmance is required to avoid them. E.K.D. ex rel. Dawes v. Facebook, Inc., 2012 WL 3242392 (S.D. Ill.) (citing Burnand v. Irigoyen, 30 Cal.2d 861 (1947)).

>    a.   Delegation of Power

Plaintiffs allege that the minor Plaintiffs purported to delegate to Facebook the power to withdraw funds from their parents' credit cards or bank accounts in connection with their purchases of Facebook Credits. 2AC ¶ 64. Plaintiffs contend that minors are not authorized to delegate such power and that the minors' purchases of Facebook Credits were void under section 6701(a). Docket No. 32 at 16-17.

United States District Court
For the Northern District of California

Facebook argues that Plaintiffs have failed to allege any facts to support a showing of delegation of power so as to apply section 6701(a). Mot. at 12. Facebook contends that the "simple act of making a purchase" does not amount to delegation of power to Facebook, citing cases applying section 6701(a) to transactions where the minor granted power to a third party to act as his agent. Reply at 4-5. For example, in Morgan v. Morgan, 220 Cal. App. 2d 665, 673-74 (1963), the minor authorized his talent agent to endorse the minor's paychecks; the agent did so and retained part of the funds as commission. The court held that this amounted to a delegation of power and, as such, was void, whereas the minor had authority to endorse the paychecks himself and could not disaffirm his own endorsement under the circumstances presented there. See also Hakes Inv. Co. v. Lyons, 166 Cal. 557, 560 (1913) (legislative intent of the predecessor statute to section 6701(a) was to establish "the rule that an infant could not execute contracts through an agent having only a delegated authority executed by the infant").

The 2AC does not support an inference that Facebook was acting as an agent of the minor Plaintiffs, who purportedly authorized Facebook to charge a debit against their parents' credit cards and/or bank accounts. Rather, Plaintiffs allege that the members of the class engaged in an arms-length transaction involving offer, acceptance and consideration. 2AC ¶ 63. Accordingly, the 2AC fails to state a claim for declaratory relief on the ground that the purchases of Facebook Credits are void pursuant to section 6701(a) of the Family Code.

**United States District Court**
For the Northern District of California

b.   Contracts Relating to Personal Property

Plaintiffs allege that the minor Plaintiffs' purchases of Facebook Credits are void pursuant to section 6701(c) which prohibits minors from making a contract "relating to any personal property not in the immediate possession or control of the minor." They further allege that the minor Plaintiffs did not have immediate possession or control their parents' credit or bank accounts when they purchased the Facebook Credits, and lacked authority to delegate to Facebook the power to withdraw funds from their parents' accounts.  Facebook contends that section 6701(c) is inapplicable because Facebook Credits are not tangible "personal property," arguing that section 6701(c) only applies where "subject matter of the contract is beyond the immediate possession or control of the minor" and "has nothing to do with the payment method used."  Mot. at 13 (emphasis in original). Facebook relies on cases applying this statute to circumstances involving tangible property.  See Taylor v. Indus. Accident Comm'n, 216 Cal. App. 2d 466, 473 (1963) (holding that newspaper delivery boy had capacity to make contract relating to sale of newspapers that were in his immediate control and possession). However, Facebook's proposed "subject matter" limitation of the statute to exclude possession or control of the funds used to pay for the challenged transaction is inconsistent with the plain meaning of the statute which voids a minor's contract "relating to any personal property" that is not in the minor's possession or control.  Cal. Fam. Code § 6701(c) (emphasis added).

In the alternative, Facebook urges that the allegations show that I.B. and J.W. did have immediate possession and control of

10

their parents' funds as demonstrated by the fact that they were able to use their parents' credit and debit card information to buy Facebook Credits.  Reply at 6.  These allegations are not conclusive as to whether I.B. and J.W. had "immediate possession and control" of their parents' funds.  Plaintiffs have alleged a plausible claim that the transactions at issue are void contracts "relating to any personal property not in the immediate possession or control of [a] minor."

The motion to dismiss the claim for declaratory relief under section 6701(c) is therefore denied.

2.   Contracts Voidable Under Family Code Section 6710

Family Code section 6700 provides that, except for contracts that are void under section 6701, "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance" provided by section 6710.  California law permits a minor to disaffirm a contract during minority or within a reasonable time after reaching majority.  Cal. Fam. Code § 6710 ("Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.").  California courts recognize that "sound policy considerations support this provision."  Berg v. Traylor, 148 Cal. App. 4th 809, 818 (2007).  "'The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts.  Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon

11

a minor for his protection against his own improvidence and the designs of others.  It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant.  Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract.'"  Id. (quoting Niemann v. Deverich, 98 Cal. App. 2d 787, 793 (1950) (internal quotation marks omitted)).

"Simply stated, one who provides a minor with goods and services does so at her own risk."  Id. (citing Goldberg v. Superior Court, 23 Cal. App. 4th 1378, 1382-1383 (1994)).  "A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect."  Spencer v. Collins, 156 Cal. 298, 303 (Cal. 1909).  "Express notice to the other party is unnecessary." Berg, 148 Cal. App. 4th at 820 (citing Celli v. Sports Car Club of America, Inc., 29 Cal. App. 3d 511, 517 (1972)).  Disaffirmation by a minor rescinds the entire contract, rendering it a nullity. Scollan v. Gov't Employees Ins. Co., 222 Cal. App. 2d 181, 183-84 (1963).  An action for disaffirmation is one in equity, governed in many respects by the rules relating to rescission of contracts, and "the trial court is vested with a broad discretion to see that equity is done."  Le Baron v. Berryessa Cattle Co., 78 Cal. App. 536, 548 (1926).

Plaintiffs allege that "minors have the right to disaffirm contracts such as those at issue here" and that the Facebook

Credit transactions are voidable pursuant to section 6710.  2AC
¶ 68.

> a.   Minors May Disaffirm Contracts Even After
>      Receiving Benefits

Facebook contends that minor Plaintiff I.B. cannot disaffirm
his contract because he has already received the full benefit of
the Facebook Credits that he purchased by using the Credits to
make in-game purchases in "Ninja Saga."  2AC ¶ 25.  In support of
its argument, Facebook relies on court decisions enforcing forum
selection or other contract clauses against a minor.  Mot. at 9-
11.  Facebook relies primarily on E.K.D. v. Facebook, Inc., 2012
WL 3242392, *4 (S.D. Ill.), where the plaintiffs challenged
Facebook's practice of including its users' names and profile
pictures in advertisements and alleged that users under the age of
eighteen were legally incapable of consenting to commercialization
of their identity.  Granting Facebook's motion to transfer venue,
the district court held that the minor plaintiffs could not
disaffirm the forum selection clause in Facebook's Terms of
Service.  Relying on the principle that "'minors, if they would
disaffirm a contract, must disaffirm the entire contract, not just
the irksome provisions,'" id. at *3 (quoting Holland v. Universal
Underwriters Ins. Co., 270 Cal. App. 2d 417 (1969)), the court
found that the plaintiffs "have used and continue to use
facebook.com," and held that minors may not accept the benefits of
a contract and then seek to disaffirm the contract "in an attempt
to escape the consequences of a clause that does not suit them,"
id. at *4.  The court determined that the forum selection clause
was enforceable against the minor plaintiffs and granted

United States District Court
For the Northern District of California

Facebook's motion to transfer the action to the Northern District of California.

Facebook contends that the ruling in <u>E.K.D.</u> on the enforceability of the forum selection clause is directly applicable here because minor Plaintiff I.B. has already accepted the benefits of the contract to purchase Facebook Credits, as demonstrated by his concession that he used the Credits to make "in-game purchases" in the Ninja Saga game. Mot. at 10-11 (citing 2AC ¶ 25). Although Plaintiffs do not allege what Plaintiff J.W. did with the Credits that he purchased, Facebook infers that he also spent the Credits online and argues that allowing the minor Plaintiffs to disaffirm their contracts would result in "an unfair windfall to the minor." Reply at 2.

Under California law, a minor may "disaffirm all obligations under a contract, <u>even for services previously rendered</u>, without restoring consideration or the value of services rendered to the other party." <u>Deck v. Spartz, Inc.</u>, 2011 WL 7775067 (E.D. Cal.) (citing <u>Berg v. Traylor</u>, 148 Cal. App. 4th 809 (2007)) (emphasis added). Explaining that "[o]ne deals with infants at his peril," the California Supreme Court has held, "Upon disaffirmance the minor is entitled to recover all benefits paid under the contract." <u>Burnand v. Irigoyen</u>, 30 Cal. 2d 861, 866 (1947). There, the court noted that under former section 35 of the Civil Code, "where the minor was under 18, restoration of benefits received is not required." Although former Civil Code section 35 required that "restoration must accompany disaffirmance of a contract made by a minor when over 18 years," <u>Burnand</u>, 30 Cal. 2d at 865, section 35 was repealed and replaced with section 6710 of

**United States District Court**
For the Northern District of California

14

the Family Code which "no longer requires restoration of consideration for any disaffirmed contract."  Deck, 2011 WL 7775067 at *7.  See Berg, 148 Cal. App. 4th at 817 (holding that minor had statutory right to disaffirm agreement with personal manager and reversing judgment against minor for past commissions and projected future earnings).

In support of its argument that the minor Plaintiffs may not disaffirm their contracts to purchase Facebook Credits, Facebook relies on authorities that declined to allow a minor to disaffirm a particular contract clause where the minor did not disaffirm the entire contract or continued to benefit from the contract.  In E.K.D., the minor challenged the enforceability of the forum selection clause contained in the Terms of Service but continued to use the Facebook networking website.  In holding that the minor plaintiff could not continue using facebook.com and disaffirm the forum selection provision of the Terms of Service, the court cited a well-established maxim: "Minors must either accept or repudiate the entire contract, and they cannot retain the contract's fruits and at the same time deny its obligations."  2012 WL 3242392 at *3 (internal quotation marks and citation omitted).  The court relied on decisions "[i]n the specific context of forum-selection clauses" which declined to allow minors to accept the benefits but not the burdens of a contract.  Id.  The E.K.D. court cited Paster v. Putney Student Travel, Inc., 1999 WL 1074120 (C.D. Cal.), where the court granted the defendants' motion to dismiss for improper venue, or to transfer, and determined that Vermont was the proper venue pursuant to a forum selection clause.  There, both the minor plaintiff and her mother entered into a contract with the

defendants for the minor to participate in a travel program. After smoking a tobacco pipe during a Native American ceremony as part of the program, the minor allegedly suffered oral yeast infections and sued the defendants for negligence and for unlawfully permitting the use of an illegal tobacco product. _Id._ at *1.  In opposition to the motion to dismiss, the minor plaintiff argued that she disaffirmed the contract by filing the lawsuit in order to avoid the forum selection clause, but it does not appear that the plaintiff brought a claim to disaffirm the contract.  The _Paster_ court held that the plaintiff "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her." _Id._ at *2.  The court held that the minor could not disaffirm the contract to avoid application of the forum selection clause and held that the exclusive jurisdiction for the plaintiff's suit was Vermont. _Id._ at *4.

The rulings in _Paster_ and _E.K.D._ were limited to enforceability of a forum selection clause and did not rule on the minor's right to disaffirm the entire agreement.  Although the court in _Paster_ stated that the minor could not disaffirm the forum selection provision after receiving the benefits of the contract, that court was not presented with the question whether the minor could bring a claim for disaffirmance of the entire contract under California law.  Similarly, in _E.K.D.,_ the court did not consider the question whether the minor plaintiffs stated

a claim to disaffirm their contract to use Facebook's site.[1]
Rather, the E.K.D. court considered only the arguments presented
on Facebook's motion to transfer venue and rejected the
plaintiffs' argument that the forum selection clause was invalid
because the minors disaffirmed the contract.  The E.K.D. court
relied on the fact that the minor plaintiffs continued to use the
Facebook site to hold that the minors could not disaffirm the
forum selection clause of the Terms of Service.  2012 WL 3242392
at *3-4.

Unlike Paster and E.K.D., where the courts limited their
analysis to the voidability of a forum selection clause,
Facebook's motion to dismiss presents the question whether the
minor Plaintiffs may disaffirm their contracts even after
receiving the benefits of purchasing Facebook Credits.  If all the
allegations are accepted as true, the minor Plaintiffs allege a
claim for declaratory relief that would "disaffirm the entire
contract, not just the irksome portions."  Holland, 270 Cal. App.
2d at 421.  Any unfair windfall that would be potentially gained
by the minors "'might have been avoided by declining to enter into
the contract.'"  Berg, 148 Cal. App. 4th at 818 (quoting Niemann
v. Deverich, 98 Cal. App. 2d 787, 793 (1950)).  See In re Apple

---

[1]    The original complaint in E.K.D. did not allege a claim
for relief based on disaffirmance.  After that case was
transferred to a court in this judicial district, the plaintiffs
filed an amended complaint to assert a claim for declaratory
relief based on the minors' right to disaffirm contracts pursuant
to sections 6701 and 6702 of the California Family Code.  C.M.D.
v. Facebook, Inc., C 12-1216 RS, Docket No. 107.  The amended
complaint in that action is the subject of a pending motion to
dismiss.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

In-App Purchase Litigation, 855 F. Supp. 2d 1030, 1035-36 (N.D. Cal. 2012) (denying motion to dismiss declaratory relief claim for determination that minors' sales contracts of in-app game currency are voidable).

### b.   Recovery of Consideration Paid by Others

Facebook contends that the minor Plaintiffs may not disaffirm purchase contracts to recover consideration paid by their parents. Mot. at 11-12.  Facebook does not cite any authority to support its argument under California law, which has maintained a policy "to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant."  Berg, 148 Cal. App. 4th at 818 (citation and quotation marks omitted).

Facebook relies primarily on Hines v. Cheshire, 36 Wash. 2d 467, 474 (1950), which applied Washington state law and is distinguishable from the factual allegations presented here. There, the court allowed the minor to disaffirm a contract to purchase a used car after the seller repossessed the car until the balance due had been paid.  The minor's father signed a refinancing agreement to cover the unpaid balance plus insurance and financing charges, and made the final three payments on the refinanced contract.  Id. at 471.  Upon review of the record, the court determined that the parents had relinquished their right to the minor's earnings and that the minor was partially emancipated based on the facts that the minor had been earning his own salary for at least three years before buying the car, that he maintained his own bank account, and that his father knew of the minor's employment and earnings.  Id. at 477-78.  "It follows that, where

18

the parent has relinquished his right to the child's earnings, the property purchased by the child with such earnings belongs to the child."   The court concluded that the minor was entitled to disaffirm the contract and recover the purchase price that he paid for the car (without license and filing fees or finance charges), but was not entitled to recover the amount that was knowingly paid by his father pursuant to a refinance agreement that he signed. Id. at 481 ("A minor who disaffirms his contract is, in no event, entitled to recover any sums paid under the contract by another person.").

Similarly, in McCarty-Greene Motor Co. v. McCluney, 219 Ala. 211, 213 (1929), the court recognized, under Alabama law, the minor's right to disaffirm a contract to purchase a new car but did not allow the minor to recover the value of an old car that his father traded in "by written contract to turn it in as a credit on the purchase price of the new car."   There, the court held, "Upon the rescission of a contract of a minor, upon becoming of age, he should recover only what he parted with, and not what another advanced or paid for his benefit."   Id.

In each of the cases cited by Facebook, the minor was not entitled to recover the value of consideration that his parent willingly and contractually obligated himself to provide.   Here, by contrast, Plaintiffs allege that the minor Plaintiffs used their parents' funds to purchase Facebook Credits without the parents' knowledge or authorization.

In the absence of controlling authority limiting the minor Plaintiffs' right to disaffirm their contracts to purchase Facebook Credits with their parents' funds without their parents'

consent, Plaintiffs' allegations, taken as true, are sufficient to state a claim for disaffirmance.

### 3.   Disaffirmance by Parents

Facebook contends that Plaintiffs Bohannon and Wright cannot disaffirm their children's contracts, and that only minors themselves can disaffirm their own contracts.  Docket No. 25 at 19.  Plaintiffs Bohannon and Wright appear in this action on their own behalf, not as guardians ad litem for minor Plaintiffs I.B. and J.W.  Minor Plaintiffs I.B. and J.W. are represented in this action through their guardians ad litem, Bryan Fife and Steven Wright, respectively.  The plain meaning of section 6710 provides that only the minor, acting through a legal representative, may disaffirm his contract, as recently recognized in <u>Pearson v. Superior Court</u>, 202 Cal. App. 4th 1333 (2012).  "It has long been the rule in California that a minor has limited capacity to enter into contracts (Fam. Code, §§ 6700, 6701), and that, 'a contract of a minor may be disaffirmed <u>by the minor</u> before majority. . . .' (Fam. Code, § 6710, emphasis added.)"  <u>Id</u>. at 1334.  <u>See</u> 5 <u>Williston on Contracts</u> § 9:10 n.2 (4th ed. 2011) (citing Cal. Fam. Code § 6710 as one of several state statutes that "expressly provide that only the infant may void the contract for infancy").

Plaintiffs contend that parents are entitled to disaffirm contracts entered into by their minor children, citing section 6601 of the Family Code which provides, "A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as an adult, except that a guardian must conduct the action or proceedings."  Docket No. 32 at 18.  This statute provides that a minor must be represented in legal proceedings by

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

a guardian because the minor lacks capacity to sue.  <u>Safai v.</u>
<u>Safai</u>, 164 Cal. App. 4th 233, 245 (2008).  "Minors lack capacity
to sue in their own names.  Instead, litigation must be conducted
'by a guardian or conservator of the estate or by a guardian ad
litem.'"  <u>Id.</u> (citing Cal. Code Civ. Proc. § 372(a) and Fam. Code
§ 6601).  "The guardian or guardian ad litem is not a party to the
action; instead, he or she is a representative of record of a
party who lacks capacity to sue."  <u>Id.</u> (citation omitted).

Plaintiffs cite no authority that a parent has an independent
right to disaffirm contracts entered into by their children, when
not acting in a representative capacity on behalf of the minor.
Section 6710 clearly provides that "a contract of a minor may be
disaffirmed by the minor before majority or within a reasonable
time afterwards," reflecting the principle that the power of
avoidance is personal to the minor.  "The power to avoid contracts
and conveyances is given to an infant for her protection and
should not be stretched beyond what her needs require.  Thus the
right to disaffirm is confined to the infant personally or his or
her legal representatives."  5 <u>Williston on Contracts</u> § 9:10 (4th
ed. 2011) (footnotes omitted).  "It is clear that while the infant
may avoid his or her obligations, the adult party to a contract
cannot avoid it on the ground that an infant's promise or
conveyance is voidable."  <u>Id.</u>

Because Plaintiffs Bohannon and Julie Wright do not bring
their claim for disaffirmance in a representative capacity on
behalf of their minor children, their claims for declaratory
relief are dismissed.

4.   Declaratory Relief

Facebook contends that Plaintiffs fail to state a claim for declaratory relief because they have already incurred the alleged injuries and do not seek to prevent future injuries.  Mot. at 21-22.  Facebook cites authority recognizing that "[t]he central purpose of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is to provide parties with a declaration of their rights prior to incurring actual injury."  Olagues v. Russoniello, 770 F.2d 791, 803 (9th Cir. 1985) (holding that denial of declaratory relief with respect to government's law enforcement activities was not abuse of discretion).  Actions brought under the Declaratory Judgment Act are not, however, limited to those seeking to prevent future harm.  See Olagues, 770 F.2d at 803 ("Declaratory relief may be appropriate even when injunctive relief is not.").  The Declaratory Judgment Act provides that in a case of actual controversy, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Courts recognize that a plaintiff may seek declaratory relief as to the rights under, and validity of, a contract, as Plaintiffs do here.  See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (in deciding whether to exercise discretionary jurisdiction under the Declaratory Judgment Act, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a

United States District Court
For the Northern District of California

general rule, remand or decline to entertain the claim for
declaratory relief"); In re Easysaver Rewards Litig., 737 F. Supp.
2d 1159, 1175 (denying motion to dismiss claim for declaratory
relief) (citing Cal. Civ. P. Code § 1060; 28 U.S.C. § 2201).

In deciding whether declaratory relief is appropriate, the
court first determines whether there is an actual case or
controversy within its jurisdiction.  In re Facebook PPC
Advertising. Litig., 709 F. Supp. 2d 762, 772 (N.D. Cal. 2010)
(citing Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669
(9th Cir. 2005)).  Here, Plaintiffs present an actual controversy
over the rights of minors to disaffirm their purchases of Facebook
Credits.  Plaintiffs seek not only declaratory relief as to the
validity of past contracts between Facebook and the minor
Plaintiffs, but also seek a determination "that Facebook must
either substantially alter its Facebook Credit transactions in
order to comply with the law or not engage in Facebook Credit
transactions with minor accounts at all."  2AC ¶ 72.  Facebook
contends that any concern about future purchases of Facebook
Credits by children "can be addressed through normal parental
supervision and hardly require the broad declaratory judgment they
seek."  Reply at 12.  Nonetheless, Plaintiffs have sufficiently
stated a claim for declaratory relief to determine their rights
under the California Family Code.

Facebook also argues that Plaintiffs may not seek declaratory
relief when an adequate remedy exists under another cause of
action.  Mot. at 22.  However, Federal Rule of Civil Procedure 57
explicitly provides, "The existence of another adequate remedy

23

does not preclude a declaratory judgment that is otherwise appropriate."

Facebook's motion to dismiss the claim for declaratory relief is therefore denied.

B.   Electronic Fund Transfer Act

Plaintiffs allege that Facebook violated the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. (EFTA), because debiting the bank accounts of Plaintiff Julie Wright and the EFTA Class members, constituted "unauthorized electronic funds transfers." 2AC ¶ 111.   Facebook argues that this statute is inapplicable to the Facebook Credits transactions at issue.

The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b).   An "electronic fund transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."   15 U.S.C. § 1693a(7).

Facebook contends that it is not a "financial institution" covered by the statute, citing Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1094-95 (N.D. Cal. 2006).   There, the defendants allegedly enrolled the plaintiffs in membership programs and debited amounts from their credit or debit card accounts without prior approval.   The Nordberg court noted that there was no indication that either defendant was a financial institution, but recognized that § 1693m provided "an enforcement mechanism" against non-financial institutions for violations of any

provisions of the EFTA. 445 F. Supp. 2d at 1094. The court recognized that the allegations that the defendants failed to obtain authorization from the plaintiffs prior to periodic electronic withdrawals from their financial accounts fell within the ambit of § 1693e governing preauthorized transfers. Because the complaint failed to cite the section of the EFTA that was allegedly violated, the court granted the defendants' motion to dismiss the EFTA claims with leave to amend to identify the proper sections of the EFTA and to allege facts in support of the EFTA claims. Id.

Plaintiffs do not contend that Facebook is a financial institution but rather assert a claim under 15 U.S.C. § 1693m, which provides for civil liability against persons other than financial institutions. 2AC ¶ 112. See Friedman v. 24 Hour Fitness USA, Inc., 580 F. Supp. 2d 985, 996 (C.D. Cal. 2008) (denying motion to dismiss EFTA claim and rejecting fitness center chain's argument that it was a financial institution and that the plaintiffs failed to provide the notice required for actions against financial institutions under § 1693g). See also In re Easysaver Rewards Litig., 737 F. Supp. 2d 1159, 1182-83 (S.D. Cal. 2010) (recognizing that "electronic transfer of funds by consumers to purchase goods [ ] falls within the plain language of the statute" and permitting plaintiffs to plead alternative theories for violation of § 1693e).

Plaintiffs do not sufficiently allege which provision of the EFTA has been violated. As Nordberg recognized, § 1693m "is not a basis of liability under the statute" but provides "simply an enforcement mechanism for other provisions." 445 F. Supp. 2d at

United States District Court
For the Northern District of California

1094.  "Pursuant to section 1693m 'any person who fails to comply with any provision of this title with respect to any consumer . . . . is liable to such consumer . . . .'"  Id. (quoting § 1693m) (emphasis added in original).  Plaintiffs cite the statutory definition of "unauthorized electronic funds transfer" but do not identify a particular provision of the EFTA that has allegedly been violated.  2AC ¶ 111; Opp. at 12-13 (citing 15 U.S.C. § 1693a(12)).  Because the 2AC fails to allege a violation of any specific provision of the EFTA, and amendment does not appear to be futile, the motion to dismiss the EFTA claim is granted with leave to amend.

C.   Consumer Legal Remedies Act Claim

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Claims under the CLRA are governed by the "reasonable consumer" test.  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).

Plaintiffs allege that Facebook Credits are "certificates or coupons exchangeable for goods" and thereby constitute goods under the CLRA, which defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods."  Cal. Civ. Code § 1761(a).  Plaintiffs further allege that they used Facebook Credits as services, which are defined as "work, labor, and services for other than a commercial or business

use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).  Plaintiffs allege that Facebook violated the CLRA by "actively marketing and promoting its in-App purchases and virtual goods with the statement that purportedly 'all sales are final'" when the transactions with minors were actually void or voidable, and by operating Facebook Credit transactions in violation of the MTA and EFTA.  2AC ¶ 78.

Facebook contends that Plaintiffs' CLRA claim fails because Facebook Credits are not "goods and services" covered by the statute.  Mot. at 19-20.  Facebook relies on Berry v. American Express Publishing, Inc., 147 Cal. App. 4th 224 (2007), in support of its argument that California courts have consistently held that intangible interests do not qualify as "goods" under the CLRA.  In Berry, the court analyzed whether the defendant's issuance of credit to the plaintiff constituted a "good" or "service," as defined by the CLRA.  147 Cal. App. 4th at 229.  The court held that the American Express credit card was not a "good" because "the card has no intrinsic value and exists only as indicia of the credit extended to the card holder."  Berry, 147 Cal. App. 4th at 229.  The Berry court also held that the credit card was not a "service," relying heavily on legislative history to find that extending a line of credit "separate and apart from the sale or lease of any specific good or service falls outside the scope of section 1770."  Id. at 232.  Facebook argues that Facebook Credits, like the extension of credit in Berry, are not "tangible chattel" and exist "only as indicia" of digital currency that is available to the user.  Mot. at 20.

As in <u>Berry</u>, Plaintiffs here argue for liberal construction of the CLRA to promote its underlying purposes of protecting consumers against unfair and deceptive business practices.  Opp. at 18.  See <u>Berry</u>, 147 Cal. App. 4th at 232 ("'This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'") (quoting Cal. Civ. Code § 1760).  The <u>Berry</u> court cautioned, however, that courts may not "rewrite a statute under the guise of a liberal interpretation.  Although CLRA has been interpreted broadly, courts have not expanded it beyond its express terms."  <u>Id</u>.

Plaintiffs cite authorities applying the CLRA to electronic goods and services in support of their argument that Facebook Credits are goods and services, but those decisions do not address the type of digital currency at issue here.  See <u>Doe 1 v. AOL LLC</u>, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010) (holding that CLRA claim against internet service provider sufficiently alleged injury resulting from AOL's public disclosure of confidential member information); <u>Morgan v. AT & T Wireless Services, Inc.</u>, 177 Cal. App. 4th 1235, 1260 (2009) (reversing dismissal, based on CLRA notice requirement, of claim alleging that wireless telephone service provider violated CLRA by representing that goods or services have characteristics, uses, or benefits which they do not have); <u>America Online, Inc. v. Sup. Ct.</u>, 90 Cal. App. 4th 1 (2001) (affirming denial of AOL's motion to stay or dismiss action for inconvenient forum in putative consumer class action alleging that charging monthly service fees after plaintiffs terminated AOL

United States District Court
For the Northern District of California

subscriptions violated CLRA).  Facebook makes the more persuasive argument that Facebook Credits, "separate and apart from a specific purchase or lease of a good or service," are not covered by the CLRA.  <u>Berry</u>, 147 Cal. App. 4th at 229.  <u>See</u> <u>Ferrington v. McAfee, Inc.</u>, 2010 WL 3910169, *18-19 (N.D. Cal.) (holding that computer software is not a good or service covered by the CLRA).

Because amendment of the pleadings would not cure this defect, the CLRA claim is dismissed without leave to amend.

D.   Unfair Competition Law Claims

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  <u>Chabner v. United of Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th 798, 827 (2003).  Claims under the UCL must be brought "within four years after the cause of action accrued."  Cal. Bus. & Prof. Code § 17208.

Plaintiffs allege that Facebook violated the UCL under all three prongs identified in the statute.

1.   Unlawful Business Practices

In support of their UCL claim for unlawful business practices, Plaintiffs allege that Facebook violated the Money

United States District Court
For the Northern District of California

Transmission Act, Cal. Fin. Code § 2000 et seq. (MTA), the EFTA

and the CLRA.

    a.    Money Transmission Act

    The California MTA, effective January 1, 2012, states as

follows:

        The Legislature finds and declares all of the
        following:

            (a) Money transmission businesses conduct a
        significant amount of business in this state and
        technological advances are occurring in the provision
        of money transmission services.

            (b) Persons who use money transmission
        businesses in this state use those businesses for,
        among other purposes, paying for the necessities of
        life and transmitting money to family members.

            (c) The failure of money transmission businesses
        to fulfill their obligations would cause loss to
        consumers, disrupt the payments mechanism in this
        state, undermine public confidence in financial
        institutions doing business in this state, and
        adversely affect the health, safety, and general
        welfare of persons in this state.

            (d) To protect the interests of consumers of
        money transmission businesses in this state, to
        maintain public confidence in financial institutions
        doing business in this state, and to preserve the
        health, safety, and general welfare of the people of
        this state, it is necessary to regulate money
        transmission businesses in this state.

Cal. Fin. Code § 2001. Facebook contends that its Facebook

Credits are not covered by the statute which defines "money

transmission" as (1) selling or issuing payment instruments;

(2) selling or issuing stored value; and/or (3) receiving money

for transmission. Cal. Fin. Code § 2003(o). "Payment instrument"

is defined as follows:

        a check, draft, money order, traveler's check, or
        other instrument for the transmission or payment of
        money or monetary value, whether or not negotiable.
        The term does not include a credit card voucher,

30

> letter of credit, or any instrument that is
> <u>redeemable by the issuer for goods or services</u>
> <u>provided by the issuer or its affiliate.</u>

Cal. Fin. Code § 2003(q) (emphasis added). "Stored value," in turn, is defined as

> monetary value representing a claim against the
> issuer that is stored on an electronic or digital
> medium and evidenced by an electronic or digital
> record, and that is intended and accepted for use as
> a means of redemption for money or monetary value or
> payment for goods or services. <u>The term does not</u>
> <u>include a credit card voucher, letter of credit, or</u>
> <u>any stored value that is only redeemable by the</u>
> <u>issuer for goods or services provided by the issuer</u>
> <u>or its affiliate</u>, except to the extent required by
> applicable law to be redeemable in cash for its cash
> value.

Cal. Fin. Code § 2003(v) (emphasis added).

The 2AC alleges that Facebook Credits are a payment system provided by Facebook "for users to make purchases within Facebook" and to "acquire points, coins, or virtual currency within Facebook Applications." 2AC ¶ 2. Facebook contends that this description of Facebook Credits fit squarely within the statutory exclusions for a "closed loop" payment instrument or stored value that is "only redeemable by the issuer for goods or services provided by the issuer or its affiliate." Mot. at 15 (citing Cal. Fin. Code § 2003(q), (v)). Facebook also cites legislative history to demonstrate that the MTA was intended to regulate "open loop, stored value cards by non-bank entities" that are "redeemable for goods and services at multiple vendors; e.g., a Visa check card," as opposed to "closed loop" cards that are only "redeemable by the issuer for goods or services provided by the issuer or its affiliate; e.g., a Starbucks card." Mot. at 14 (citing Bill Analysis: AB 2789 by S. Comm. on Banking, Fin. and Ins., 2009-2010

United States District Court
For the Northern District of California

Sess. (June 30, 2010 hearing), available at

http://leginfo.legislature.ca.gov/faces/billSearchClient.xhtml).

Plaintiffs respond that Facebook Credits constitute an "open loop" payment system because they provide a method of transmitting funds from Facebook users to application developers. Plaintiffs cite Facebook's Help Center description of Facebook Credits:

> Facebook Credits are a virtual currency you can use to buy virtual goods in any games or apps of the Facebook platform that accept payments. You can purchase Facebook Credits directly from within an app using your credit card, PayPal, mobile phone and many other local payment methods.

Pls.' RJN, Ex. 2. Plaintiffs argue that Facebook also has a payment system to pay developers of applications, and thereby creates a system of transmitting funds from consumers to application developers. Opp. at 11 and Pls.' RJN, Ex. 3. However, Plaintiffs allege that Facebook Credits are used to "make purchases within Facebook," 2AC ¶ 2, and fail to claim that Facebook Credits are redeemable for goods and services outside the Facebook site. Based on the allegations of the operative complaint, Facebook has sufficiently shown that Facebook Credits are "redeemable by the issuer for goods and services provided by the issuer or its affiliate," and are excluded from the definition of "payment instruments" or "stored value" regulated by the MTA. Cal. Fin. Code § 2003(q), (v). Plaintiffs therefore fail to state a claim for relief based on the MTA.

Because Plaintiffs have not demonstrated that Facebook Credits are covered by the MTA and amendment appears futile, the motion to dismiss the UCL claims based on allegations of MTA violations is granted without leave to amend.

32

b.   Other Grounds for Claims Under the
Unlawful Prong of the UCL

Plaintiffs also allege that Facebook's business practices violate the CLRA and the EFTA.  As discussed above, the CLRA is not applicable to the Facebook Credits at issue here and the CLRA claim, as well as the UCL claim based on it, are dismissed without leave to amend.  Plaintiffs also fail to state a claim under the EFTA, but that claim is being dismissed with leave to amend. Accordingly, the UCL claim for unlawful business practices is dismissed without leave to amend as to the alleged violations of the CLRA and with leave to amend as to the alleged violations of the EFTA.

2.   Unfair Business Practices

The California Supreme Court has not established a definitive test to determine whether a business practice is unfair under the UCL.  See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 187 n.12 (1999) (stating that the test for unfairness in cases involving business competitors is "limited to that context" and does not "relate[] to actions by consumers.").  California courts of appeal have applied three different tests to evaluate claims by consumers under the UCL's unfair practices prong.  See, e.g., Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735-736 (9th Cir. 2007); Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010).

Under one test, a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition."  Drum, 182 Cal. App. 4th at 256.  The "public policy which is a predicate to a consumer unfair competition action under the 'unfair prong' of the UCL must be

33

**United States District Court**
For the Northern District of California

1 tethered to specific constitutional, statutory, or regulatory

2 provisions." Id.  Under the second test, the "unfair prong"

3 requires a consumer to plead that (1) a defendant's conduct "is

4 immoral, unethical, oppressive, unscrupulous or substantially

5 injurious to consumers" and (2) "the utility of the defendant's

6 conduct" is outweighed by "the gravity of the harm to the alleged

7 victim."  Id. at 257 (citation and internal quotation marks

8 omitted).

9      The third test, which is based on the Federal Trade

10 Commission's definition of unfair business practices, requires

11 that "(1) the consumer injury must be substantial; (2) the injury

12 must not be outweighed by any countervailing benefits to consumers

13 or competition; and (3) it must be an injury that consumers

14 themselves could not reasonably have avoided."  Id. (citation and

15 internal quotation marks omitted).  In Lozano, the Ninth Circuit

16 endorsed the tethering test or balancing test and declined "to

17 apply the FTC standard in the absence of a clear holding from the

18 California Supreme Court."  504 F.3d at 736.  See Ferrington v.

19 McAfee, Inc., 2010 WL 3910169, *12 (N.D. Cal. Oct. 5, 2010)

20 ("[p]ending resolution of this issue by the California Supreme

21 Court, the Ninth Circuit has approved the use of either the

22 balancing or the tethering tests in consumer actions, but has

23 rejected the FTC test" (citing Lozano, 504 F.3d at 736, and

24 applying the tethering test first, then the balancing test to find

25 that a claim was sufficiently plead under the unfair prong of the

26 UCL).  Here, Plaintiffs allege that the unfair practices

27 "specifically violate public policy of protecting consumers in

28 online transactions and protecting minors from abusive and

predatory practices . . . as set forth specifically in statutory provisions, namely, California's MTA, the EFTA, and California Family Code secs. 6701 and 6710." 2AC ¶ 96. Because the unfair practices claims are based on alleged violations of specific statutory provisions, the Court applies the tethering test to determine the sufficiency of Plaintiffs' unfair practices allegations.

Plaintiffs allege that Facebook engaged in unfair business acts and practices by "actively advertising, marketing and promoting Facebook Credits with the statement that 'all sales are final' when Facebook knew that minors were making such purchases and that minors had the right to void such contracts if they so chose." 2AC ¶ 92. Facebook contends that these UCL claims are based on a meritless theory of disaffirmance. As discussed above, however, the minor Plaintiffs sufficiently plead claims of disaffirmance and Plaintiffs have sufficiently stated a claim for unfair business practices under the UCL based on the well-established doctrine of infancy underlying the minors' right to disaffirm contract. The Court denies the motion to dismiss the claim under the unfair prong of the UCL because it is tethered to the relevant provisions of the California Family Code.

The claims under the unfair prong of the UCL based on violations of the EFTA are dismissed with leave to amend the predicate allegations supporting the EFTA claims. However, Plaintiffs cannot allege a claim under the unfair prong of the UCL based on violations of the MTA, and the motion to dismiss such claims is granted without leave to amend.

United States District Court
For the Northern District of California

1          3.   Fraudulent Prong

2         Conduct is "fraudulent" under the UCL if the conduct is

3    "likely to deceive."  Morgan v. AT&T Wireless Servs., Inc., 177

4    Cal. App. 4th 1235, 1254 (2009).  A claim under the fraudulent

5    prong of the UCL is governed by the "reasonable consumer"

6    standard, which requires the plaintiff to "show that members of

7    the public are likely to be deceived."  Williams v. Gerber Prods.

8    Co., 552 F.3d 934, 938 (9th Cir. 2008) (citation and internal

9    quotation marks omitted).

10        It is well-settled that the heightened pleading standard of

11   Federal Rule of Civil Procedure 9(b) applies to state law claims

12   sounding in fraud that are brought in a federal action.  Vess v.

13   Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-03 (9th Cir. 2003).

14   When the claim is "grounded in fraud," the pleading of that claim

15   as a whole is subject to Rule 9(b)'s particularity requirement.

16   Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 997 (N.D. Cal.

17   2009) (citing Vess, 317 F.3d at 1104).  The fraudulent conduct

18   must be alleged with particularity under Rule 9(b).  Kearns v.

19   Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b)

20   requires the plaintiff to allege "the who, what, when, where, and

21   how" of the alleged fraudulent conduct, Cooper v. Pickett, 137

22   F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to

23   why [a] statement or omission complained of was false and

24   misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548

25   (9th Cir. 1994) (en banc).

26        Plaintiffs argue that a claim under the fraudulent prong of

27   the UCL does not require pleading actual reliance and the other

28   elements of fraud, but only the elements of a UCL claim.  Opp. at

United States District Court
For the Northern District of California

36

**United States District Court**
For the Northern District of California

15-16.  California courts recognize that a claim brought under the fraudulent business practice prong of the UCL is "distinct from common law fraud" and that a UCL claim need not plead all the elements of a common law fraudulent deception, e.g., that it was reasonably relied upon by a victim who incurs damages.  Morgan, 177 Cal. App. 4th at 1255.  California law does, however, require a UCL claim to allege actual reliance, In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009), as well as the existence of a duty to disclose, Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.").  "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.  A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."  In re Tobacco II, 46 Cal. 4th at 326 (citations omitted).

Plaintiffs contend that they and reasonable Facebook users were "deceived or likely to be deceived by Facebook's false representations about Facebook Credit transactions being 'final.'" 2AC 93.  As Facebook correctly points out, the 2AC fails to plead actual reliance with the specificity required by Rule 9(b).  Thus, the motion to dismiss the claim under the fraudulent prong of the UCL is dismissed with leave to amend.

III. Motion to Strike Class Allegations

Facebook moves to strike the class allegations because Plaintiffs lack Article III standing and the class allegations present highly individualized facts. Mot. at 22-25. The motion to strike class allegations is denied as premature. Facebook must present its challenges to class certification in opposition to Plaintiffs' motion for class certification. See Clerkin v. MyLife.com, 2011 WL 3809912, *3 and n.4 (N.D. Cal.) (denying Rule 12(b)(6) motion to dismiss class allegations and noting that even if the defendants had brought a Rule 12(f) motion, the motion to strike would fail because defendants did not show that the class allegations were "redundant, immaterial, impertinent, or scandalous.").

CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    The motion to dismiss the following claims is GRANTED without leave to amend:

    a.    claim for declaratory relief under California Family Code section 6701(a);

    b.    claim to disaffirm the minors' contracts brought by parents who are not acting in a representative capacity on behalf of the minors, i.e., parent Plaintiffs Bohannon and Wright;

    c.    CLRA claim;

    d.    claims under the unlawful and unfair prongs of the UCL alleging violations of the CLRA and MTA.

2.    The motion to dismiss the following claims is GRANTED with leave to amend:

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1              a.    the EFTA claim;

2              b.    claims brought under the unlawful and unfair prongs

3        of the UCL based on violations of the EFTA; and

4              c.    claim brought under the fraudulent prong of the

5        UCL.

6      3.    The motion to dismiss the following claims is DENIED:

7              a.    declaratory relief claims brought by the minor

8        Plaintiffs to disaffirm their contracts pursuant to

9        California Family Code sections 6701(c) and 6710 and

10             b.    claim alleging violation of public policy

11       protecting minors under the unfair prong of the UCL.

12     4.    Facebook's motion to strike the class allegations is

13 DENIED.

14     If Plaintiffs assert claims on behalf of a class, they must

15 amend the class definitions to reflect the rulings on the motion

16 to dismiss, particularly the "Minor Subclass" which is defined to

17 include both minor children who are Facebook users and their

18 parents and guardians.  Plaintiffs must amend their complaint to

19 separate the minors Plaintiffs' disaffirmance claim from the

20 independent claims brought by their parents or guardians.

21     Plaintiffs must file a third amended class action complaint

22 within twenty-one days of the date of this order.  Facebook must

23 file its answer, or otherwise respond to the amended complaint, no

24 //

25 //

26

27

28

later than twenty-one days after Plaintiffs file their amended

complaint.

IT IS SO ORDERED.

Dated: October 25, 2012

CLAUDIA WILKEN
United States District Judge