COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
KRISTINE VAN HAMERSVELD (278745)
(kvanhamersveld@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem BRYAN FIFE; GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT; JULIE WRIGHT, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>FACEBOOK, INC.,<br><br>             Defendant. | Case No.  12-CV-01894 CW<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     February 14, 2013<br>Time:    2:00 p.m.<br>Judge:   Hon. Claudia Wilken<br>Dept.:    Courtroom 2, 4th Floor<br>         1301 Clay Street<br>         Oakland, CA 94612 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. FACEBOOK, INC.'S MTN TO DISMISS PLTFS'
THIRD AMEND. CLASS ACTION COMPL.
CASE NO.  12-CV-01894 CW

# Table of Contents

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE ........................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 1

I. INTRODUCTION .................................................................................... 2

II. BACKGROUND ...................................................................................... 4

    A. Facebook's Contractual Relationship With Its Users ................. 4

    B. The Court's Order .................................................................... 5

    C. Plaintiffs' Third Amended Complaint ..................................... 5

III. ARGUMENT ........................................................................................... 6

    A. Applicable Standards ................................................................ 6

    B. Plaintiffs Lack Article III Standing To Pursue Their Claims in Federal Court ....................................................................................... 7

        1. The Minor Plaintiffs Cannot Claim They Suffered Injury in Fact From Purchasing Credits with *Their Parents'* Money ............... 7

        2. The Minor Plaintiffs' Only Allegations About Their Own Experiences Confirms They Suffered No Injury In Fact ............ 9

        3. Plaintiffs Cannot Rely on a Theory of Statutory Injury as a Substitute for Article III Injury ..................................... 10

    C. Plaintiffs Have Not Alleged the Facts Necessary to Disaffirm Their Contractual Relationships With Facebook ............................. 12

    D. Plaintiffs' Amended EFTA Claims Still Fail as a Matter of Law ........ 15

    E. Plaintiffs' Amended Claims Under the UCL Also Fail .................... 17

        1. The Minor Plaintiffs' Unfair and Unlawful Claims Fail Because They Have No Standing Under the Statute ............................ 17

        2. The Minors' Parents Have No Independent Claim Under the UCL ........ 17

IV. CONCLUSION ........................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alston v. Advanced Brands & Importing Co.*,
  494 F.3d 562 (6th Cir. 2007).................................................................................................. 10

*Baker v. United States*,
  722 F.2d 517 (9th Cir. 1983)..................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................... 9

*Bill v. Berkeley United Sch. Dist.*,
  No. C 03-4091 ............................................................................................................................ 2

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)............................................................................................... 8, 17

*Buckland v. Threshold Enters., Ltd.*,
  155 Cal. App. 4th 798 (2007)................................................................................................... 17

*Castaneda v. Pickard*,
  648 F.2d 989 (5th Cir. 1981)..................................................................................................... 7

*Colwell v. Dep't of Health & Human Servs.*,
  558 F.3d 1112 (9th Cir. 2009)................................................................................................... 6

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*,
  596 F.3d 1036 (9th Cir. 2010)................................................................................................... 7

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
  No. 11–461–GPM, 2012 WL 3242392 (S.D. Ill. Mar. 8, 2012) ........................................ 5, 12

*Edwards v. First American Corp.*,
  610 F.3d 514 (9th Cir. 2010).................................................................................................... 11

*Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*,
  381 F. App'x 674 (9th Cir. 2010) .............................................................................................. 7

*Friedman v. 24 Hour Fitness USA, Inc.*,
  580 F. Supp. 2d 985 (C.D. Cal. 2008)...................................................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000)................................................................................................................... 6

*H.L. v. Matheson*,
  450 U.S. 398 (1981)................................................................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. FACEBOOK, INC.'S MTN TO DISMISS PLTFS'
THIRD AMEND. CLASS ACTION COMPL.
CASE NO. 12-CV-01894 CW

*Hines v. Cheshire*,
    36 Wash. 2d 467 (1950) ................................................................................................ 11

*Holland v. Universal Underwriters Ins. Co.*,
    270 Cal. App. 2d 417 (1969) .................................................................................. 14, 15

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................ 10

*Kelly v. Furlong*,
    194 Minn. 465 (1935) .................................................................................................. 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 8, 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ....................................................................................... 13

*McCarty-Greene Motor Co. v. McCluney*,
    219 Ala. 211 (1929) .................................................................................................... 11

*Meaunrit v. Pinnacle Foods Grp., LLC*,
    No. C 09–04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010) (Wilken, J.) ................. 10

*Olen v. N. Tier Retail, LLC*,
    No. 11–2665, 2012 WL 1580994 (D. Minn. May 4, 2012) ................................................ 16

*Raines v. Byrd*,
    521 U.S. 811 (1997) .................................................................................................... 11

*Rancheria v. Bonham*,
    No. C-11-6710 EMC, 2012 WL 1965779 (N.D. Cal. May 31, 2012) .................................. 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ....................................................................................... 7

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ....................................................................................... 9

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
    279 F.3d 817 (9th Cir. 2002) ........................................................................................ 9

*School Dist. of Abington Twp., Pa. v. Schempp*,
    374 U.S. 203 (1963) .................................................................................................... 7

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ...................................................................................................... 9

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) ........................................................................................ 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**FB'S MTN TO DISMISS THIRD AMEN. COMPL.**
**CASE NO. 12-CV-01894 CW**

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................ 11

*Swann v. Secretary, Georgia*,
   668 F.3d 1285 (11th Cir. 2012) ............................................................... 10

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
   454 F. Supp. 2d 62 (E.D.N.Y. 2006) ....................................................... 10

*Valencia v. White*,
   134 Ariz. 139 (Ariz. Ct. App. 1982) ....................................................... 13

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................. 8, 11

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) ............................................................ 8, 9

*Worman Motor Co. v. Hill*,
   54 Ariz. 227 (1939) ................................................................................. 13

**STATUTES**

15 U.S.C
   § 1693a(9) ............................................................................................... 15
   § 1693c ........................................................................................ 3, 15, 16
   § 1693g ....................................................................................... 3, 15, 16

Family Code
   §§ 6701 and 6710 ................................................................................... 11

**OTHER AUTHORITIES**

12 C.F.R
   § 205.3(a) ............................................................................................... 15
   § 205.7 .................................................................................................... 16

*Restitution in Minors' Contracts in California*, 19 Hastings L. Rev. 1199 (1968) ..................... 14

Federal Rules of Civil Procedure
   9(b) ........................................................................................................... 5
   12(b)(1) ............................................................................................. 1, 2, 7
   12(b)(6) ........................................................................................... 1, 2, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

**NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**

PLEASE TAKE NOTICE that on February 14 , 2013 at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 1301 Clay Street, Oakland, California in Courtroom 2, 4th Floor, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss the Third Amended Complaint ("TAC") filed by Plaintiffs.

Facebook's Motion is made pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Whitty Somvichian ("Somvichian Decl."), and accompanying exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Have Plaintiffs I.B. and J.W. (the "Minor Plaintiffs") pled an injury in fact sufficient to satisfy Article III where (i) they are seeking to recover funds paid *by their parents* and do not allege that they themselves suffered any personal loss, (ii) they allege that they were disciplined by their parents but do not claim these consequences were due to any direct action by Facebook, and (iii) they bring a claim under the California Family Code that has not been recognized in any case law as a possible substitute for Article III injury?

2.    Have the Minor Plaintiffs stated a claim for disaffirmance under the Family Code where (i) their allegations show they are not seeking to disaffirm their entire contract with Facebook but are seeking only to unwind particular transactions, (ii) they do not allege that they have discontinued using Facebook's services, and (iii) they expressly rely on certain terms in their contract with Facebook to support the claims in the TAC?

3.    Have Plaintiffs stated a claim under the Electronic Funds Transfer Act ("EFTA"), where Facebook is not a financial institution and Plaintiffs rely exclusively on statutory provisions that apply only to financial institutions?

4.    Have Plaintiffs stated a claim under the Unfair Competition Law ("UCL") where (i) the Minor Plaintiffs have not alleged that they lost any "money or property" as a result of their transactions, as required under the UCL, and (ii) Plaintiffs Bohannon and Wright (the "Minor

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

**DEF. FACEBOOK, INC.'S MTN TO DISMISS PLTFS'
THIRD AMEND. CLASS ACTION COMPL.
CASE NO. 12-CV-01894 CW**

Plaintiffs' parents) rely on purported violations of the Family Code, which this Court has held can be invoked only by minors, and the EFTA, which fails for the reasons above?

## I.  INTRODUCTION

Plaintiffs' Third Amended Complaint suffers from a fatal defect that mandates dismissal of the complaint in its entirety—one which the Court has not yet had an opportunity to consider in this matter.[1]  In this action, the Minor Plaintiffs seek to recover the amounts they paid (from their parents' funds) for the Facebook Credits ("Credits") they used to play games on Facebook's website.  Because the Minor Plaintiffs have brought their claims in federal court, Article III of the Constitution requires them to demonstrate that they suffered an "injury in fact" that is personal to themselves.  But here, the Minor Plaintiffs are seeking to recover amounts paid *from their parents' accounts* and are *not* seeking to remedy any personal losses of their own.  This demand to recover the purported losses of *others* cannot support constitutional standing for the Minor Plaintiffs under Article III.[2]  Indeed, the Minor Plaintiffs' only attempt at alleging their own individual harm – a passing reference that they were disciplined because they spent their parents' money allegedly without permission – underscores their inability to allege any personalized injury that is attributable to Facebook's actions.  This failure to allege a personalized injury caused by Facebook is dispositive and mandates dismissal of the Minor Plaintiffs' claims as a matter of law.Moreover, the Minor Plaintiffs cannot rely on the terms of the California Family Code as a substitute for Constitutional standing.  While the Ninth Circuit has held that a properly pled statutory claim can establish standing in some circumstances, a disaffirmance claim under the Family Code bears no similarity to the comprehensive statutory schemes that have been deemed adequate to meet the injury requirements of Article III.

Apart from failing to allege a cognizable injury, the Minor Plaintiffs' allegations also do

---

[1] This challenge to Plaintiffs' standing is a jurisdictional issue that can be asserted at any time under Rule 12(b)(1), notwithstanding the prior motion to dismiss under Rule 12(b)(6). *See Bill v. Berkely United Sch. Dist.*, No. C 03-4091 SBA, 2004 WL 2075447, at *5 (N.D. Cal. Sept. 16, 2004) ("A litigant may raise a challenge to a federal court's subject matter jurisdiction under Rule 12(b)(1) at any time in the litigation, as can the court sua sponte.").

[2] Regarding Plaintiffs Bohannon and Wright, who have no direct claim for disaffirmance, their only asserted claims arise under the Electronic Funds Transfer Act (EFTA) and the California Unfair Competition Law (UCL), which both fail for independent reasons as set forth herein.

not support a claim for disaffirmance under the standards set forth in the Court's prior order. Specifically, the Minor Plaintiffs do *not* seek "disaffirmance of the entire contract" with Facebook, as they must in order to pursue their claims.  (Order Granting in Part and Denying Part Motion to Dismiss, Dkt. 44 ("Order") at 16:23-24.)  Instead, they carefully phrase their claims as seeking only to unwind their individual "transactions," and they do not allege anywhere in the TAC that they have discontinued their use of Facebook's services.  Indeed, Plaintiffs continue to explicitly *rely on* the Facebook contract to support their claims in the TAC, by selectively invoking the choice of law clause to apply California law to the claims of the nationwide class they seek to certify.  In effect, Plaintiffs claim the right to unilaterally amend the terms of their agreement.  This is not disaffirmance of a contract; it is revision.  As the Court has recognized, however, Plaintiffs cannot simply cherry pick the particular contract terms they wish to avoid while refusing to disaffirm their contractual relationship with Facebook as a whole.

Separately, Plaintiffs' amended EFTA claim still fails to allege any violation of any provision that applies to Facebook, as a non-financial institution.  The specific provisions of the EFTA that Plaintiffs now rely on, 15 U.S.C. §§ 1693c and 1693g, explicitly and exclusively regulate financial institutions' relations with their account-holders. These provisions do not apply at all to non-financial institutions like Facebook.

Finally, although they have given up their claim under the fraudulent prong of the UCL, the Minor Plaintiffs' claims under the unfair and unlawful prongs fail for the same reasons as their underlying Family Code claim – the Minor Plaintiffs lack any injury.  The statutory requirements of the UCL mirror the standing requirements of Article III and further require claimants to show that they lost "money or property" as a result of the challenged transactions. The Minor Plaintiffs cannot satisfy this basic requirement because the only "money or property" that allegedly was "lost" belonged to *their parents'*.  Moreover, Plaintiffs Bohannon and Wright have no UCL claim because their claims rely on alleged violations of the Family Code (which adults cannot invoke) and the EFTA (which fails for the reasons above).

Cooley LLP
Attorneys At Law
San Francisco

3.

FB's Mtn To Dismiss Third Amen. Compl.
Case No. 12-CV-01894 CW

## II.   BACKGROUND

### A.   Facebook's Contractual Relationship With Its Users.

Facebook is a social networking service, allowing its users to connect and share with friends and family in a variety of ways.  (TAC ¶ 11.)  Facebook's core services are, and always have been, free.  Among other services, Facebook users can (1) create personal pages to share updates and information, (2) view their friends' pages, (3) store and share photos, (4) send messages to other users, (5) access a variety of applications ("apps") offered by third-party developers, and much more.  Among these third-party applications are games, many of which are offered on the Facebook platform free of charge.  (*Id.* ¶ 21.)  Some of these games allow users to buy upgrades or special features, which users can purchase using Credits, as described in the TAC.  (*Id.* ¶ 12.)

Facebook provides these services to users subject to the contractual terms and conditions set forth in the Statement of Rights and Responsibilities ("SRR"), to which all users must agree in order to use Facebook.com.  (*Id.* ¶ 18.)  The SRR governs both the conduct of Facebook (by specifying how Facebook can use data from its users, for example) and its users (by specifying certain prohibited uses of Facebook, for example).  (Somvichian Decl. Ex. A.)  The SRR "makes up the entire agreement between the parties regarding Facebook," which is defined to include all "the features and services [Facebook] makes available." (*Id.*)  The SRR includes Facebook's Payments Terms, which govern the purchase of Credits on Facebook and states that, "[a]ll of the commitments you make in the Facebook Statement of Rights and Responsibilities apply to your use of Facebook Payments" and (*Id.* Ex. B.)  Specifically, the SRR states that, "If you make a payment on Facebook or use Facebook Credits, you agree to our Payments Terms."  (*Id.* Ex. A.)  The Payments Terms require all users to acknowledge that "If [they] are under the age of eighteen (18), [they] may use Facebook Payments only with the involvement of [their] parent or guardian." (*Id.* Ex. B.)  Users must also acknowledge that "[w]hen [they] provide a funding instrument to [Facebook], [they] confirm that [they] are permitted to use that funding instrument," and that Facebook may "collect and store that funding instrument" after the transaction.  (*Id.*)  As

Plaintiffs allege in the TAC, the Payments Terms also state that, "All funding transactions are final unless required by law."  (*Id.* Ex. B.)[3]

### B.    The Court's Order.

On October 25, 2012, the Court issued its Order on Facebook's prior Motion to Dismiss. The Court held that a minor's prior acceptance of benefits under a contract does not preclude him from seeking to disaffirm a contract under the Family Code.  (Order at 14:14–15:6.)  Nonetheless, the Court emphasized that minors must disaffirm the "entire contract" and may not "disaffirm a particular contract clause" while "continu[ing] to benefit from the contract."  (*Id.* at 15:7–11.) This conclusion was based in significant part on *E.K.D. ex rel. Dawes v. Facebook, Inc.*, No. 11–461–GPM, 2012 WL 3242392 (S.D. Ill., Mar. 8, 2012), in which the court decided, under the California Family Code, that a minor could not disaffirm a portion of the SRR (in that case, the forum selection clause) and also "continue using facebook.com."  (Order at 15:11-20 (citing *E.K.D.*, 2012 WL 3242392, at *3).)  The Court acknowledged the "well-established maxim" that "[m]inors must either accept or repudiate the entire contract" when seeking to disaffirm.  (*Id.* at 15:17-18 (citing and quoting *E.K.D.*, 2012 WL 3242392, at *3).)

The Court also dismissed Plaintiffs' claims under the "fraudulent" conduct prong of the UCL for failure to meet the heightened pleading standards of Fed. R. Civ. P. 9(b).  (*Id.* at 37:23-26.)  In addition, the Court dismissed Plaintiffs' claims under the EFTA due to Plaintiffs' failure to plead a violation of any specific provision of the EFTA that applies to non-financial institutions, noting that "Plaintiffs do not contend that Facebook is a financial institution."  (Order at 25:11–12, 25–26.)

Finally, the Court dismissed, with prejudice, Plaintiffs' claims under the Consumers Legal Remedies Act ("CLRA") and the Money Transmission Act ("MTA").  (*Id.* at 29:7-8; 32:25-28.)

### C.    Plaintiffs' Third Amended Complaint.

In the TAC, the Minor Plaintiffs seek a refund for certain specific transactions in which they purchased Credits from Facebook and used them to play games.  (*See, e.g.*, TAC ¶ 30

---

[3] The TAC refers to an older version of this language which provided that, "all sales are final." (*See, e.g.*, TAC ¶¶ 4, 24.)

1    (stating that "Bohannon sought on behalf of herself and her child to unravel Facebook's

2    transactions with her son"), ¶ 33 ("Steven Wright sought to inform Facebook that he and his wife

3    and their minor son wanted a refund for the Facebook credits that were purchased by their minor

4    son").)  Plaintiffs do not allege, however, that they wish to disaffirm their contract with Facebook.

5    Notably, they do not allege anywhere in the TAC that they have stopped using Facebook's

6    services or terminated their Facebook accounts.

7          Further, the Minor Plaintiffs do not allege that they suffered any personal loss or injury

8    from their transactions involving Credits.   Instead, they seek to recover amounts paid by their

9    parents.  (*See* TAC ¶ 27 (stating that all of I.B's purchases were made with "Glynnis Bohannon's

10   Wells Fargo Master Card"), ¶ 31 (stating that all of J.W.'s purchases were made "using the debit

11   card of Julie and Steven Wright").)   The Minor Plaintiffs' sole attempt at stating any form of

12   injury is the statement – newly added, and with no elaboration – that they experienced "shame,

13   punishment, allowance reduction and other consequences" in connection with their purchases of

14   Credits.  (*Id.* ¶ 76.)

15         In addition, the TAC adds new allegations related to the EFTA, referring to two specific

16   sections of the statute which are applicable solely to financial institutions.  (*Id.* ¶¶ 91-92.)  The

17   TAC omits the prior allegations regarding fraudulent conduct by Facebook and, in compliance

18   with the Order, drops the CLRA and MTA claims.

19   **III.    ARGUMENT**

20         **A.    Applicable Standards.**

21         To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in

22   fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

23   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

24   is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

25   decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

26   The burden of establishing standing rests on plaintiffs.  *Colwell v. Dep't of Health & Human*

27   *Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

28

Federal standing requirements apply equally in cases involving minor plaintiffs. As the Ninth Circuit has emphasized, "standing is [] of paramount importance" with respect to minors' ability to sue in federal court. *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010). Accordingly, courts must apply Article III requirements to claims brought by minor plaintiffs. *See, e.g.*, *H.L. v. Matheson*, 450 U.S. 398, 406 (1981) (dismissing a minor's claim under Article III where she "lack[ed] 'the personal stake in the controversy needed to confer standing.'" (citation omitted)); *Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*, 381 F. App'x 674, 676 (9th Cir. 2010) (analyzing whether a minor "suffered injury as a result of [defendant's] discriminatory practice" such that he had standing to assert a claim under the Federal Housing Act); *Castaneda v. Pickard*, 648 F.2d 989, 1000 (5th Cir. 1981) (analyzing whether a group of minor school children properly alleged that they "suffered an 'injury in fact' . . . to establish their standing"); *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963) (analyzing whether minor children were "directly affected by the laws and practices against which their complaints [we]re directed" for purposes of Article III).

A defendant may challenge standing through a Rule 12(b)(1) motion and can attack the complaint on its face or may also submit evidence to demonstrate the lack of standing. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a [12(b)(1)] factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.").

**B.    Plaintiffs Lack Article III Standing To Pursue Their Claims in Federal Court.**

**1.    The Minor Plaintiffs Cannot Claim They Suffered Injury in Fact From Purchasing Credits with *Their Parents'* Money.**

A plaintiff seeking to invoke federal jurisdiction must demonstrate that he or she *personally* suffered an Article III injury and cannot rely on alleged injuries involving *others*. As

the Supreme Court has explained, "the plaintiff still must allege a distinct and palpable injury *to himself,* even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin,* 422 U.S. 490, 501 (1975) (emphasis added); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (holding that plaintiffs lacked standing to challenge their purchases of iPods where the alleged injury was "a potential risk of hearing loss not to [plaintiffs] themselves, but to other unidentified iPod users" and was therefore not "concrete and particularized *as to themselves*." (emphasis in original)).[4]

Consistent with those standards, the court in *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011), held that putative class members lacked standing to challenge transactions involving allegedly defective products where they did not actually "spend money" to purchase the goods at issue. The court specifically distinguished between putative class members who had "acquired" the products at issue and those who had "purchased" the products, holding that the former category of class members "plainly did not suffer any injury" for purposes of Article III. *Id.* at 498.

Similarly here, the Minor Plaintiffs cannot establish Article III standing because they admit in the TAC that they did not actually pay for Credits with their own funds. Instead, they are seeking to obtain a refund of *their parents' money,* which they used to purchase Credits for their own use. (*See* TAC ¶ 27 (stating that all of I.B's purchases were made with "Glynnis Bohannon's Wells Fargo Master Card"), ¶ 31 (stating that all of J.W.'s purchases were made "using the debit card of Julie and Steven Wright").) As in *Birdsong* and *Webb*, the Minor Plaintiffs cannot invoke federal jurisdiction when they have suffered no injury that is "concrete and particularized *as to themselves*" and merely seek to recover purported losses suffered by their parents. *Birdsong*, 590 F.3d at 960. This defect mandates dismissal of the Minor Plaintiffs' claims in their entirety.

---

[4] In *Birdsong*, the court was looking at standing under the UCL, which is "consistent with Article III" and requires that claimants, "suffer[] a distinct and palpable injury as a result of the alleged unlawful or unfair conduct." 590 F.3d at 960.

Cooley LLP
Attorneys At Law
San Francisco

8.

FB's Mtn To Dismiss Third Amen. Compl.
Case No. 12-CV-01894 CW

**2.      The Minor Plaintiffs' Only Allegations About Their Own Experiences Confirms They Suffered No Injury In Fact.**

Presumably recognizing that the purported loss of their parents' money does not establish injury in fact "as to themselves," the Minor Plaintiffs claim for the first time in the TAC that they purportedly suffered "shame, punishment, allowance reduction and other consequences" from their decisions to purchase and use Credits.  (TAC ¶ 76.)  These conclusory allegations fail to demonstrate any cognizable injury, for multiple reasons.

First, the Minor Plaintiffs must allege "specific facts" to demonstrate each element of Article III standing.  *See Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) (holding that "[t]he party seeking to invoke the jurisdiction of the federal courts" must allege "specific facts sufficient to satisfy" the requirements of Article III); *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly apparent on the face of the complaint."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("courts are not bound to accept as true a legal conclusion couched as a factual allegation" and "a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citations omitted)).  The bare assertions of harm newly added to the TAC are unsupported by any "specific facts" and fall short of meeting these basic requirements for pleading an injury in fact.

Second, if anything, the Minor Plaintiffs' claim of "shame, punishment, [and] allowance reduction" shows that any purported harm stemmed from discipline imposed *by their parents* and not from any action by Facebook.  Under Article III, plaintiffs must show that their purported injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party . . . ."  *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (alterations omitted)).  Given that established principle, courts have consistently rejected claims on standing grounds where the defendant was not the direct cause of the alleged injury.  *See Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (plaintiffs lacked standing where the alleged injury in the form of overfished salmon populations was not caused by the defendant but

by over-harvesting of fish by Canadian fisherman); *Rancheria v. Bonham*, No. C-11-6710 EMC, 2012 WL 1965779, at *4 (N.D. Cal. May 31, 2012) (finding that plaintiff was not injured by the defendant where the injury, in the form of citations and the seizure of fishing equipment, was caused by the local police department and there was no evidence that the defendant "took any action against" plaintiff's members); *Alston v. Advanced Brands & Importing Co.*, 494 F.3d 562, 565 (6th Cir. 2007) (finding that parents of minor children lacked standing to sue importer of alcoholic beverages because its advertising was not the "cause" of the children's alcohol use, which instead resulted from "the intervening criminal acts of the third-party sellers and the third-party, underage purchasers."); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *6 (N.D. Cal. Sept. 20, 2011) (finding no causation under Article III where Plaintiffs alleged only that defendant Apple provided a "platform" on which *other* entities could "possibly engage in harmful acts" not that Apple itself committed the harmful acts.)

Similarly here, if the Minor Plaintiffs in fact experienced "shame, punishment, [and] allowance reduction," it was due to discipline that *their parents* imposed for misusing their credit and debit cards.  These independent decisions by the Minor Plaintiffs' parents to reduce their allowance and to exercise other discipline can hardly be attributed to Facebook.  If anything, the Minor Plaintiffs' tenuous allegations underscore their inability to demonstrate a cognizable injury that is "fairly traceable" to any alleged wrongful act by Facebook.[5]

### 3. Plaintiffs Cannot Rely on a Theory of Statutory Injury as a Substitute for Article III Injury.

Plaintiffs cannot satisfy the constitutional requirements of Article III standing merely by alleging a claim under the California Family Code.  As the Supreme Court has explained, even where the legislature has enacted a statutory claim, Article III's "requirement remains: the

---

[5] Moreover, any injury in this case stemmed from the Minor Plaintiff's own voluntary decision to purchase Credits, which provides an independent basis to reject Article III standing.  *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury."); *Swann v. Secretary, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("a controversy is not justiciable when a plaintiff independently caused his own injury."); *Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09–04555 CW, 2010 WL 1838715, at *3 (N.D. Cal. May 5, 2010) (Wilken, J.) (plaintiffs had no standing to assert claims that resulted from their "unilateral action" to discard certain food items).

Cooley LLP
Attorneys At Law
San Francisco

10.

FB's Mtn To Dismiss Third Amen. Compl.
Case No. 12-CV-01894 CW

plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth*, 422 U.S. at 501; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

While the Ninth Circuit has held that certain statutory violations can support Article III standing without a further showing of injury, a claim for disaffirmance under the California Family Code is not such a statute.  In *Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010), the Ninth Circuit held that a violation of the federal Real Estate Settlement Procedures Act ("RESPA") can support Article III standing, where RESPA (1) defines certain specified acts to be a criminal violation, (2) allows private plaintiffs whose transactions involved a violation to pursue civil claims, and (3) imposes specific civil penalties per violation. *Id.* at 517-18.  In contrast, Family Code sections 6701 and 6710 do not define any specific acts to be criminal and inherently injurious, and they do not allow civil litigants to recover specified penalties for statutory violations.  There is therefore no basis to conclude that merely stating a claim under Sections 6701 and 6710 can eliminate the need for express allegations of injury in fact under Article III, as the Ninth Circuit held in the specific context of RESPA.

This conclusion is bolstered by the fact that the Family Code does not expressly authorize the remedy being sought in this case at all.  As the Court has recognized, there is no "controlling authority" under California law that allows minors to use the Family Code *offensively* to recover money *that was paid by others,* as the Minor Plaintiffs seek to do here.[6]  (Order at 19:26.)[7]   There

---

[6] Other jurisdictions have specifically held that minors may not disaffirm a contract to recover sums paid by others.  *See Hines v. Cheshire*, 36 Wash. 2d 467, 481 (1950) (stating that, "[a] minor who disaffirms his contract is, in no event, entitled to recover any sums paid under the contract by another person."); *McCarty-Greene Motor Co. v. McCluney*, 219 Ala. 211, 212 (1929) ("Upon the rescission of a contract of a minor, upon becoming of age, he should recover only what he parted with, and not what another advanced or paid for his benefit.").
[7] While the court previously ruled that the lack of "controlling authority" supported denial of Facebook's motion under Rule 12(b)(6), the question presented here is fundamentally different: Regardless of whether or not the Minor Plaintiffs may disaffirm their contracts under state law, can a state law theory without any express support in the statute or case law provide a substitute for Article III injury?

Cooley LLP
Attorneys At Law
San Francisco

11.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

1    is nothing in *Edwards* to suggest that Plaintiffs can rely on an entirely novel interpretation of state

2    law – one that has no basis in the plain text of the statute or in any case law – as a substitute for

3    pleading an injury in fact in federal court.

4         Under these circumstances, the Court should not permit the Minor Plaintiffs to avoid the

5    requirement of establishing an injury in fact under Article III merely by alleging a claim for

6    disaffirmance under the Family Code.

7         **C.    Plaintiffs Have Not Alleged the Facts Necessary to Disaffirm Their Contractual Relationships With Facebook.**

8

9         Separate and apart from their failure to allege an Article III injury, the Minor Plaintiffs

10   also fail to allege the facts needed to pursue a claim for disaffirmance under the Family Code.  As

11   the Court recognized in its prior Order, "[m]inors must either accept or repudiate the entire

12   contract, and they cannot retain the contract's fruits and at the same time deny its obligations."

13   (Order at 15:17-19 (quoting *E.K.D.*, 2012 WL 3242392, at *3.))  In the specific context of minors

14   using Facebook, the Court emphasized the court's decision in *E.K.D.*, which held that "the minor

15   plaintiff could not continue using facebook.com and disaffirm the forum selection provision of

16   the Terms of Service . . . ."  (*Id.* at 15:14-16; *see also id.* at 17:5-8 ("The *E.K.D.* court relied on

17   the fact that the minor plaintiffs continued to use the Facebook site to hold that the minors could

18   not disaffirm the forum selection clause of the Terms of Service.").)

19        Similarly here, the Minor Plaintiffs cannot continue to use Facebook's services while

20   seeking to disaffirm the contractual terms pursuant to which those services are provided. (*See*

21   Somvichian Decl.*,* Ex. A. ("If you make a payment on Facebook or use Facebook Credits, you

22   agree to our Payments Terms.").)  In particular, the Minor Plaintiffs cannot continue using

23   Facebook's social networking website while selectively avoiding certain provisions of the SRR

24   that they do not like, including the Payment Terms, which require users to accept and confirm

25   that (1) "all funding transactions are final," (2) use of all "funding instruments" is "authorized,"

26   (3) Facebook may "collect and store" a user's payment information, and (4) users under 18 may

27   make a payment "only with the involvement of a parent or guardian." (Somvichian Decl., Ex. B.)

28        Despite the Court's Order emphasizing that the Minor Plaintiffs must "disaffirm the entire

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

contract," the TAC contains no allegations to show that they are seeking to disaffirm their entire contractual relationship "to use with Facebook's site." (Order at 16:24-17:1.)  Instead, the Minor Plaintiffs carefully phrase their claims as seeking to disaffirm only their individual "transactions," while giving no indication that they are willing to disaffirm the overall contract with Facebook as governed by the SRR. (*See* TAC ¶ 30 (stating that, "Bohannon sought on behalf of herself and her child to unravel Facebook's transactions with her son"); ¶ 33 ("Steven Wright sought to inform Facebook that he and his wife and their minor son wanted a refund for the Facebook Credits that were purchased by their minor son").)   Nor do the Minor Plaintiffs allege, as they must, that they have discontinued their use of Facebook's services as part of pursuing their disaffirmance claims. This failure to allege an essential requirement of a disaffirmance claim, by itself, mandates dismissal of the Minor Plaintiffs' claims as a matter of law.  As in *E.K.D.*, the Court should not allow the Minor Plaintiffs to pick and choose which contractual terms they wish to ignore while refusing to disaffirm the "entire contract."

Moreover, the Minor Plaintiffs explicitly *rely on* the SRR to support their claims in the TAC.  In particular, Plaintiffs rely on the choice of law clause in the SRR to allege that California law should be applied to the claims of all minors in the nationwide class that they seek to certify. (*See* TAC ¶ 51.)  Plaintiffs presumably make this allegation to avoid the choice of law issues that would preclude the certification of a nationwide class if multiple state laws were to be applied based on each putative class member's state of residence.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590-91 (9th Cir. 2012) (overturning certification of a nationwide class where "differences in state law are material").

For example, Arizona, where I.B. resides, requires minors to account for any benefits they received as a condition of disaffirming a contract and would therefore preclude I.B.'s effort to seek a refund while retaining the benefits of the Credits he purchased from Facebook.  *See Valencia v. White*, 134 Ariz. 139, 143-44 (Ariz. Ct. App. 1982) (recognizing that in the context of disaffirmance by minors, "the rule which requires a minor to account for the benefit he has received is much the better rule" and ordering a minor to pay the balance owed on a contract representing benefits he had received but that he could not return in kind); *see also Worman*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

*Motor Co. v. Hill*, 54 Ariz. 227, 234 (1939) (holding that a minor "should not be permitted to acquire the property of another dealing fairly with him free from any obligation to account therefor upon a rescission by him. This rule 'protects an infant, but yet requires him to deal fairly and honestly with others. He is not allowed to profit from the mere fact of infancy.'") (citing and quoting *Kelly v. Furlong*, 194 Minn. 465, 467 (1935)). I.B. seeks to avoid his home state's law from being applied to his individual claim by invoking Facebook's contractual choice of law provision. And Plaintiffs collectively seek to use the choice of law provision to pursue a putative class that would otherwise be impossible to litigate on a nationwide basis, given the different legal standards that the various States apply with respect to the disaffirmance of contracts by minors.[8]

This decision to selectively invoke the choice of law provisions of Facebook's SRR for strategic gain in this litigation further confirms that Plaintiffs are *not* seeking to disaffirm the "entire contract" and are merely attempting to avoid the "irksome portions" they do not like. *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417, 421 (1969).[9] Taken as a whole, the Minor Plaintiffs' claims do *not* seek to disaffirm their contractual relationship with Facebook but rather to impose new terms of their own choosing. Although the contract provides that "the features and services [Facebook] makes available" are subject to the terms of the SRR and incorporated Payment Terms, (Somvichian Decl., Ex. A), the Minor Plaintiffs are effectively demanding that Facebook continue providing its "features and services" to them *without* applying the reciprocal obligations that normally apply to users, including the contractual acknowledgement that "all sales are final." (TAC ¶ 4.) This is not disaffirming a contract; it is

---

[8] *See* Note, *Restitution in Minors' Contracts in California*, 19 Hastings L. Rev. 1199 (1968) (reviewing different state law approaches to disaffirmance of contracts by minors and describing an interpretation of the California Family Code that "permits recognition of equitable rights" of the other contracting party and "is the better view").

[9] In *Holland* the court refused to allow a minor who had been involved in an accident with an uninsured motorist to disaffirm only the "uninsured motorist" section of his insurance policy. 270 Cal. App. 2d at 421. The court was persuaded by the potentially harmful impact of allowing minors to disaffirm only part of an agreement. *Id.* (stating that, "although the argument is couched in terms of disaffirmance, what it really amounts to is a contention that uninsured motorist coverage cannot be effectively deleted from a policy issued to a minor: if plaintiff is correct, what minor would fail to disaffirm after an accident with an uninsured motorist?").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

unilaterally amending the contract to remove terms the Minor Plaintiffs simply do not like. Such a demand has no basis in law. *Holland*, 270 Cal. App. 2d at 421. The Minor Plaintiffs' claims should therefore be dismissed.

**D.      Plaintiffs' Amended EFTA Claims Still Fail as a Matter of Law.**

Plaintiffs' new allegations related to the EFTA do nothing to cure the defects of their claim because the added provisions on which Plaintiffs now rely are inapplicable to Facebook, as a non-financial institution. As shown in Facebook's prior motion, the EFTA is primarily targeted at banks and other "financial institutions" that are involved in electronic fund transfers.[10] Facebook is not a "financial institution," and Plaintiffs do not purport to allege as much.[11] (*See* Order at 25:11-12 ("Plaintiffs do not contend that Facebook is a financial institution"); *see also* Plfs. Opp. to Defs. Mot. To Dismiss SAC, Dkt. 28 at 12:12-13 (acknowledging that certain entities, "like Facebook" are "not, themselves, financial institutions." ).)

Yet despite conceding that Facebook is not a financial institution, Plaintiffs seek to rely on two provisions of the EFTA, 15 U.S.C. §§ 1693g and 1693c, which both apply only to financial institutions. (TAC ¶¶ 91-92.) As set forth in Plaintiffs' own cited authority,[12] "Section 1693g describes the allocation of liability between consumers and the financial institutions where their accounts are held." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 995-96 (C.D. Cal. 2008). Accordingly, "Section 1693g [] applies *only in actions against financial institutions*." *Id.* (emphasis added).[13] Indeed, even a cursory review of Section 1693g shows that it would be

---

[10] For example, section 1693d requires a "financial institution" to provide written documentation of funds transfers; section 1693f provides procedures for reporting errors to "financial institutions," and section 1693h provides for a "financial institution's liability" for damages it caused its account holders. *See also* 12 C.F.R § 205.3(a) ("Generally, this part applies to financial institutions.").

[11] The EFTA defines a financial institution as, "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C § 1693a(9).

[12] Dkt. 28 at 12: 15-16.

[13] Section 1693g refers to "financial institutions" a total of ten times. For instance, the section provides that "reimbursement need not be made to the consumer for losses the *financial institution* establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement" and that "[i]n any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the *financial institution* to show that the electronic fund transfer was authorized . . . ." 15 U.S.C § 1693g(a),(b)

nonsensical as applied to Facebook.  For instance, 15 U.S.C. § 1693g(a) provides that consumers should be liable for unauthorized transactions "only . . . if the issuer of such card . . . has provided a means whereby the user of such card . . . can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint . . . ."  This provision has nothing to do with Facebook, as it would make no sense to apply identification requirements related to a "signature, photograph, or fingerprint" to the purchase of Credits online.

Plaintiffs' reliance on section 1693c fails for the same reason.  Section 1693c details the terms and conditions that banks and other financial institutions must include when opening a new account for a consumer.  *See, e.g.*, 15 U.S.C. § 1693c(a) ("The terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service").  For instance, it provides that disclosures to the consumer should include, "the consumer's liability for unauthorized electronic fund transfers and, at the *financial institution's* option, notice of the advisability of prompt reporting of any loss, theft, or unauthorized use of a card, code, or other means of access."  15 U.S.C. § 1693c(a)(1) (emphasis added).   The section also provides that "*[a] financial institution* shall notify a consumer in writing at least twenty-one days prior to the effective date of any change in any term or condition of the consumer's account . . . ."  15 U.S.C. § 1693c(b) (emphasis added).  Like section 1693g, applying the terms of section 1693c to a non-financial institution like Facebook would be nonsensical.  It is not surprising, then, that courts have also expressly recognized that section 1693c applies only to financial institutions.  *See Olen v. N. Tier Retail, LLC*, No. 11–2665 (DWF/JJG), 2012 WL 1580994, at *3 (D. Minn. May 4, 2012) (finding that, "the disclosure requirements set forth in 15 U.S.C. § 1693c, as further articulated in 12 C.F.R. § 205.7, apply only to financial institutions.).[14]

Given Plaintiffs' continued failure to allege any viable theory under the EFTA, their claim

---

(emphasis added).

[14] The court in *Olen* further noted that the Regulations implemented to carry out section 1693c, "specifically require[] that a 'financial institution' shall provide a series of disclosures 'at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account.'" *Olen*, 2012 WL 1580994, at *3 (quoting 12 C.F.R. § 205.7).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW

should now be dismissed with prejudice.

### E.    Plaintiffs' Amended Claims Under the UCL Also Fail.

#### 1.    The Minor Plaintiffs' Unfair and Unlawful Claims Fail Because They Have No Standing Under the Statute.[15]

The Minor Plaintiffs lack statutory standing to bring their claims under the unlawful and unfair prongs of the UCL for the same reason that they more generally lack standing under Article III – they have not alleged *any* cognizable injury to themselves.  As the Ninth Circuit has recognized, the UCL requires that plaintiffs satisfy, at a minimum, the same federal standing requirements imposed by Article III.  *See Birdsong*, 590 F.3d at 959-60 (noting that the UCL requires a plaintiff "'who has been injured in fact under the standing requirements of the United States Constitution.'" (citing and quoting *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007)) (emphasis omitted)).

Indeed, the standing requirements under the UCL are *more* stringent than the requirements of Article III because they require a plaintiff to have "lost money or property as a result of the unfair competition." *Birdsong*, 590 F.3d at 959.  As described above, Plaintiffs do not allege that the minors have lost "money or property" as a result of their transactions with Facebook.  Instead, Plaintiffs admit that the minors used *only their parents' money* to purchase Credits, that they entered the transactions voluntarily, and that they got the full benefit of their bargain.  (*See* TAC ¶ 27 (describing I.B.'s use of "Glynnis Bohannon's Wells Fargo Master Card" to make "repeated[]" "in-game purchases"), ¶ 31 (alleging that J.W.'s "ma[de] a series of charges via Facebook Credits using the debit card of Julie and Steven Wright").)

#### 2.    The Minors' Parents Have No Independent Claim Under the UCL.

The TAC also purports to include the Minor Plaintiffs' parents, Ms. Bohannon and Ms. Wright, as Plaintiffs on the UCL claims, which are predicated on alleged violations of the Family Code and EFTA.  But, as discussed in the Court's Order, the minors' parents have no claim whatsoever for disaffirmance under the Family Code.  (*See* Order at 21:9–27 (dismissing Julie Wright and Glynnis Bohannon's claims and stating: "It is clear that while the infant may avoid

---

[15] Plaintiffs no longer assert a claim under the "fraudulent" prong of the UCL.

Cooley LLP
Attorneys At Law
San Francisco

17.

FB's Mtn To Dismiss Third Amen. Compl.
Case No. 12-CV-01894 CW

his or her obligations, the adult party to a contract cannot avoid it on the ground that an infant's promise or conveyance is voidable.").) Only minors, not their parents, may disaffirm their contracts under the Family Code. It follows that the Minor Plaintiffs' parents have no viable claim under the UCL based on the Family Code.[16] Moreover, none of the Plaintiffs can purport to rely on an EFTA violation to support their UCL claims because the EFTA sections alleged in the TAC do not apply to Facebook on their face, as discussed. Because the claims on which their UCL violations are based fail in all respects as to both the Minor Plaintiffs and their parents, Plaintiffs' third cause of action under the UCL should be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the TAC, in its entirety, as a matter of law.

Dated: December 6, 2012

COOLEY LLP
MICHAEL RHODES (116127)
WHITTY SOMVICHIAN (194463)
KRISTINE VAN HAMERSVELD (278745)


/s/ Whitty Somvichian

Whitty Somvichian (194463)
Attorneys for Defendant
FACEBOOK, INC.

---

[16] Plaintiffs propose four new subclasses in connection with the TAC. Plaintiffs define the "Refund Class" expressly to include parents of minors: "[a]ll Facebook users who are the parents or guardians of a minor child and who attempted to obtain a refund of a Facebook credit transaction that originated from the minor child's account." The Refund Class, however, is not tied to any specific claim. (*See* TAC ¶ 37.) To the extent the Refund Class includes parents under a disaffirmance theory, it is precluded by the Court's prior order. (*See* Order 39:18-20 (stating that "Plaintiffs must amend their complaint to separate the minors [*sic*] Plaintiffs' disaffirmance claim from the independent claims brought by their parents or guardians.").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

FB'S MTN TO DISMISS THIRD AMEN. COMPL.
CASE NO. 12-CV-01894 CW