1  C. Brooks Cutter, SBN 121407
   John R. Parker, Jr., SBN 257761
2  KERSHAW, CUTTER & RATINOFF, LLP
3  401 Watt Avenue
   Sacramento, CA 95864
4  Telephone: (916) 448-9800
   Facsimile: (916) 669-4499
5  Emails: bcutter@kcrlegal.com / jparker@kcrlegal.com

6  Daniel B. Edelman
7  Katz, Marshall & Banks LLP
   1718 Connecticut Avenue NW, Suite 600
8  Washington, DC 20009
   Telephone: (202) 299-1140
9  Email: Edelman@kmblegal.com

10 Benjamin Edelman
11 169 Walnut Street
   Brookline, MA 02445
12 Telephone: (617) 359-3360
   Email: ben@benedelman.org)
13
14 Attorneys for Plaintiffs

15              UNITED STATES DISTRICT COURT
16
17            NORTHERN DISTRICT OF CALIFORNIA
18                    OAKLAND DIVISION

19 I.B., by and through his Guardian ad Litem       Case No.  CV 12-01894 CW
   BRYAN FIFE; GLYNNIS BOHANNON; J.W.,
20 by and through his Guardian ad Litem STEVEN      **PLAINTIFFS' MEMORANDUM OF**
   WRIGHT; JULIE WRIGHT, individually and          **POINTS AND AUTHORITIES IN**
21 on behalf of all others similarly situated,      **OPPOSITION TO DEFENDANT'S**
                                                    **MOTION TO DISMISS AND REQUEST**
22         Plaintiffs,                              **FOR JUDICIAL NOTICE**
23
24   v.                                             Hearing Date: February 14, 2012
                                                    Hearing Time: 10:00 a.m.
25 FACEBOOK, INC.,                                  Courtroom:    2 (4th Floor)
26         Defendant.
27
28

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES TO BE DECIDED ...............................................1

II.  INTRODUCTION..........................................................................................1

III. THE COURT'S ORDER ON FACEBOOK'S PRIOR MOTION TO DISMISS ...................2

IV.  ARGUMENT..................................................................................................2

    A. The Plaintiffs Have Standing to Pursue The Claims In Third
       Amended Complaint ...............................................................................2

    B. Plaintiffs' Claims Do Not Require That They Plead That They Have
       Ceased Using Facebook..........................................................................8

    C. The Electronic Funds Transmission Act Applies to Purchases of Facebook
       Credits Using Funds from a Debit Account............................................10

        1. Claims Under § 1693g ...............................................................10

        2. Claims Under § 1693c ...............................................................12

    D. Plaintiffs Have Standing To Pursue Their UCL Claims.............................14

        1. The Minor Plaintiffs Can Pursue Their Claims Under the UCL And
           Facebook's Challenge To The Measure of Restitution Is Premature ...............14

        2. The Parent Plaintiffs Can Pursue Claims Under the UCL................................15

V.   CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Harford, Conn. V. Haworth*
    300 U.S. 227 (1937)............................................................................4

*Allergan v. Athena Cosmetics, Inc.*
    640 F. 3d 1377 (9th Cir. 2011) .......................................................7

*Birdsong v. Apple, Inc.*
    590 F. 3d 955 (9th Cir. 2009) .......................................................6, 7

*Burnand v. Iriogoyen*
    30 Cal. 2d 861 (1947) ...............................................................2, 3

*California v. Altus Finance SA*
    36 Cal. 4th 1284 (2005) ...............................................................15

*Clayworth v. Pfizer, Inc.*
    49 Cal. 4th 758 (2010) ................................................................13

*Colgan v. Leatherman Tool Group, Inc.*
    135 Cal. App. 4th 663 (2006) ...................................................14, 15

*Cortez v. Purolator Air Filtration Products Co.*
    23 Cal. 4th 163 (2000) ................................................................14

*E.K.D. v. Facebook*
    2012 U.S. Dist. LEXIS 113761 (S.D. II March 8, 2012)................8, 9, 10

*Fletcher v. Security Pacific National Bank*
    23 Cal. 3d 442 (1979) .................................................................15

*Friedman v. 24 Hour Fitness U.S.A., Inc.*
    580 F. Supp. 2d 985 (C.D. Cal. 2008) ..........................................11

*Juarez v. Arcadia Financial, Ltd.*
    152 Cal. App. 4th 889 (2007) ......................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003) ..............................................................14

*Kraus v. Trinity Management Services, Inc.*
    23 Cal. 4th 116 (2000) ................................................................15

*Kwikset Corp. v. Superior Court*
    51 Cal. 4th 310 (Cal. 2011)....................................................5, 7, 13, 14

# TABLE OF AUTHORITIES  (Continued)

**Cases**

*Labriola v. Bank of America*
    012 U.S. Dist. LEXIS 65853 (N.D. Cal. 2012) ..................................................5

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)..................................................................................4, 6

*Lujan v. Nat'l Wildlife Fed'n*
    497 U.S. 871 (1990)..........................................................................................5

*Maya v. Centex Corp.*
    658 F. 3d 1060 (9th Cir. 2011) ......................................................................4

*McGarvey v. Penske Automotive Group, Inc.*
    2011 WL 1325210 (D.N.J. 2011) ...................................................................7

*Meaunrit v. The Pinnacle Foods Group, LLC*
    2010 U.S. Dist. LEXIS 43858 (N.D. Cal. 2010) .........................................6, 7

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118 (2007).........................................................................................4

*Nashville, C. & St. L.R. Co. v. Wallace*
    288 U.S. 249 (1933)........................................................................................4

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*
    111 Cal. App. 4th 102 (2003) ......................................................................15

*Preminger v. Peake*
    552 F.3d 757 (9th Cir. 2008) .........................................................................5

*Sanchez v. Wal-Mart Stores, Inc.*
    2008 WL 3272101 (E.D. Cal. 2008).............................................................6,7

*In re Toyota Motor Corp.*
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) .........................................................5

*United States v. Students Challenging Regulatory Agency Procedures*
    412 U.S. 669 (1973)......................................................................................13

*Webb v. Carter's Inc.*
    272 F.R.D. 489 (C.D. Cal. 2011) ................................................................6, 7

*Warth v. Seldin*
    422 U.S. 490 (1975)........................................................................................3

*///*

**TABLE OF AUTHORITIES (Continued)**

<u>**Statutes**</u>

15 U.S.C. § 1693a(7) .................................................................................................12

15 U.S.C. § 1693c ...............................................................................................12, 13

15 U.S.C. § 1693c(a) ...............................................................................................12

15 U.S.C. § 1693c(a)(2) .....................................................................................12, 13

15 U.S.C. § 1693g .............................................................................................11, 12

15 U.S.C. § 1693g(a) .........................................................................................10, 11

15 U.S.C. § 1693g(e) .........................................................................................10, 12

28 U.S.C. § 2201(a) ...................................................................................................3

UCL § 17204 .........................................................................................................7, 8

California Family Code § 6701 ..................................................................................4

California Family Code § 6107(c) .......................................................................2, 4, 9

California Family Code § 6710 ...........................................................................2, 4

<u>**Miscellaneous**</u>

Moss Magnuson Warranty Act ...................................................................................7

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss

# I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Facebook's motion to dismiss should be denied because Plaintiffs have pleaded that they each suffered injury in fact giving them sufficient standing to proceed under Article III.

2.    Whether Facebook's motion to dismiss should be denied because the Court has already ruled that Plaintiffs may disaffirm Facebook Credit transactions under the California Family Code.

3.    Whether Facebook's motion to dismiss should be denied because the Electronic Funds Transfer Act ("EFTA") applies to Facebook Credit purchases.

4.    Whether Plaintiffs have stated a claim under the UCL because they have alleged that they lost money or property as a result of Facebook's illegal and unfair conduct.

# II.    INTRODUCTION

After the Court rejected most of Facebook's arguments in its first motion to dismiss, Facebook filed a new motion to dismiss, attempting to retread many of the same arguments that were rejected previously by the Court.  The remainder of Facebook's arguments in support of its motion to dismiss are meritless.

Facebook attempts to dismiss a straw man.  Having waited more than nine months since Plaintiffs' original complaint was filed, Facebook now contends that Plaintiffs lack standing under Article III, even though the Court has already ruled that Plaintiffs present a clear case or controversy.  Regardless, the governing law on standing under Article III establishes that Plaintiffs have pleaded injuries sufficient for all the Plaintiffs' claims to proceed.  Additionally, Plaintiffs seek to disaffirm those specific Facebook Credit transactions that the Court has held Plaintiffs have adequately alleged are void and/or voidable under the California Family Code. Accordingly, Facebook's attempt to re-craft Plaintiffs complaint as one that attacks the entire architecture of Facebook.com, rather than, specifically, Facebook Credit transactions originating from Facebook accounts of minor Facebook users, does not provide any basis for dismissing Plaintiffs' claims.  Plaintiffs have also pleaded a viable claim that Facebook has violated the EFTA, and each Plaintiff has alleged sufficient facts to survive Facebook's motion to dismiss

their claims under the UCL.  Accordingly, Facebook's motion to dismiss should be denied in its entirety.

**III.    THE COURT'S ORDER ON FACEBOOK'S PRIOR MOTION TO DISMISS.**

The Court entered an order on October 25, 2012 that denied in part and granted in part Facebook's previous motion to dismiss, and granted Plaintiffs leave to file a Third Amended Complaint.  Pertinent to Facebook's most recent motion to dismiss are several findings of the Court.

First, the Court ruled that the Minor Plaintiffs had alleged sufficient facts to proceed with their claims for a declaratory judgment under California Family Code sections 6107(c) and 6710.  Order at 11:9-10 ("The motion to dismiss the claim for declaratory relief under section 6701(c) is therefore denied"); 11:11-20:2 (denying Facebook's motion to dismiss the Minor Plaintiffs' claim for declaratory relief under California Family Code section 6710).  The Court also dismissed the Parent Plaintiffs' claims for declaratory relief.  Order at 21:24-27.  The Court held that the Minor Plaintiffs had stated a valid claim for declaratory relief and specifically that "Plaintiffs present an actual controversy of the rights of minors to disaffirm their purchases of Facebook Credits."  Order at 23:10-12.  The Court granted Facebook's motion to dismiss Plaintiffs' EFTA claims with leave to refile, Order at 24:6-26:11, and denied Facebook's motion to dismiss Plaintiffs' UCL claims under the "unfair" prong of the UCL in connection with Facebook's practices that violated the public policy underlying the California Family Code.  Order at 33:13-35:21.   Most of the arguments in Facebook's latest motion to dismiss are attempts to revisit the Court's Order without seeking leave to file a motion for reconsideration of the Court's Order.

**IV.    ARGUMENT**

**A.    The Plaintiffs Have Standing to Pursue The Claims In Third Amended Complaint.**

In ruling on Facebook's motion to dismiss the Second Amended Class Complaint, this Court cited the warning that "one deals with infants *at his peril*."  Order at 14: 19, *quoting Burnand v. Irigoyen*, 30 Cal. 2d 861, 866 (1947) (emphasis added).  Oblivious to the admonition, Facebook now claims it is entitled to continue dealing with infants at *no* peril.

Facebook's latest motion to dismiss recycles essentially the same arguments that the Court has rejected. Namely, the Court ruled that Plaintiffs may recover for consideration paid by others, over Facebook's objection. Order at 18:6 through 20:2. Moreover, the question of Article III standing in this case was already decided when the Court held, in response to Facebook's prior challenge to the Plaintiffs' standing, that "**Plaintiffs present an actual controversy of the rights of minors to disaffirm their purchases of Facebook Credits**." Order at 23:10-12 (emphasis added). Accordingly, Facebook's motion to dismiss is an illegitimate attempt to revisit the law of the case, without seeking leave for a motion to reconsider the Court's October 25, 2012 Order.

Facebook's spurious claim of immunity rests on a "heads we win, tails you lose" argument. First, as the Court has held, the right to disaffirm the purchase contracts can only be exercised by the minors themselves through their legal representatives acting on their behalf. Second, Facebook contends that because the transactions were funded from debit or credit accounts that belonged to the Minor Plaintiff parents', the Minor Plaintiffs and class members suffered no harm and therefore lack Article III standing to exercise their right to disaffirm Facebook credit transactions. Facebook argues that it is consequently impervious to claims to disaffirm the purchase contracts as void and/or voidable under the Family Code and as well for restitution pursuant to the UCL.

Facebook's claim of immunity for preying on minors is multiply flawed. The Minor Plaintiffs surely do claim "a distinct and palpable injury to [themselves]", *Warth v. Seldin*, 422 U.S. 490, 501 (1975). It is their right to the protection of the California Family Code which Facebook has infringed and which this Court has already allowed to proceed.

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Unquestionably, the Minor Plaintiffs satisfy the requirements for standing under the Declaratory Judgment Act.

///

To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, the dispute must be definite and concrete, touching the legal relations of parties having adverse legal interests; the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 238 (1937); *Nashville, C. & St. L.R. Co. v. Wallace*, 288 U.S. 249 (1933) (both decided under the previous incarnation of the Declaratory Judgment Act). When "ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Warth*, 422 U.S. at 501). In fact, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Maya*, 658 F.3d at 1068 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Actual cases or controversies clearly exist in the present case. First, California law prohibits minors from "making a contract relating to any personal property not in the immediate possession or control of the minor"—the Plaintiffs accordingly contend that Facebook Credit transactions originating from minor users' accounts are void. TAC ¶¶ 27, 31, 61; Cal. Fam. Code § 6701. Here, Plaintiffs also contend that minors have the right to disaffirm contracts under California law, rendering them void and/or voidable. TAC ¶ 57-68; Cal. Fam. Code § 6710. Accordingly, Plaintiffs contend that the contracts between Facebook and Minor Plaintiffs are void and/or voidable. TAC ¶ 57-68. As such, the Minor Plaintiffs seek declaratory relief in the determination of, *inter alia*, the validity of the contracts between Defendant and the Minor Plaintiffs, and the legality of Facebook Credit transactions with minors. *Id*.

As such, the Minor Plaintiffs have a real and, as this Court has already ruled, legally tenable claim for disaffirmance under California Family Code sections 6701(c) and 6710, and an actual controversy under the Declaratory Judgment Act. Order at 23:10-12 ("Plaintiffs

present an actual controversy over the rights of minors to disaffirm their purchases of Facebook Credits.").  As the TAC makes clear, the Minor Plaintiffs were unquestionably parties to transactions with Facebook that are the subject of their claims for a declaratory judgment.  They obtained Facebook Credits in transactions that unquestionably originated with their Facebook accounts, identified as minors.  *E.g.*, TAC ¶ 57-61.   These specific transactions are the transactions that the Minor Plaintiffs seek to disaffirm.  The fact that the transactions were funded by their parents' debit or credit cards was one of the bases for the Court's order sustaining these claims on Facebook's prior motion to dismiss.  Order at 10:2-11:10.  Accordingly, there is no risk that the Court, in deciding the Minor Plaintiffs' claims for disaffirmance, will issue an advisory opinion based upon a hypothetical set of facts.  The Court has already ruled that Plaintiffs' claims for a declaratory judgment and for violation of the UCL under the California Family Code should proceed past the pleadings stage.

Moreover, this Court recently recognized that the "'injury in fact' requirement is not a substantial hurdle and that a minimal, 'identifiable trifle' of injury is sufficient." *Labriola v. Bank of America*, 012 U.S. Dist. LEXIS 65853 at * 17 (N.D. Cal. 2012) (Wilken, J.) (citing *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008); *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 324-325 (Cal. 2011)).  As to standing, "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoted by *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1162-1163 (C.D. Cal. 2011)).  Accordingly, on a motion to dismiss, courts must "presum[e]  that general allegations embrace those specific facts that are necessary to support the claim." Id. (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Here, the Minor Plaintiffs claim the requisite injury in fact, as a result of becoming bound by purchase contracts that are void and/or voidable under the California Family Code.  TAC ¶¶ 57-68.  They also allege to have suffered injury in fact as result of Facebook's choice to engage in Facebook Credit transactions that are void and/or voidable under California law.  TAC ¶¶ 35 ("Plaintiffs have all lost money and been injured and suffered violations of California law"), 76 ("The Minor Plaintiffs have been additionally injured in connection with the shame, punishment,

allowance reduction and other consequences that the Minor Plaintiffs have experienced as a result of Facebook engaging in Facebook Credit Transactions with the Minor Plaintiffs in violation of California and Federal law.").

Facebook fails to cite any case remotely similar to the situation here. Instead, Facebook relies upon what this Court has referred to as "no-injury product liability" cases, in which plaintiffs who have suffered no *actual* injury claim to have suffered an injury through the purchase of products that allegedly pose a *potential* for injury. *Meaunrit v. The Pinnacle Foods Group*, LLC, 2010 U.S. Dist. LEXIS 43858 at \*5 (N.D. Cal. 2010) (plaintiffs who alleged mere potential for injury and did not claim that they or putative class members were injured by allegedly contaminated pot pies failed to plead "cognizable injury in fact").

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), and *Webb v. Carter's Inc.,* 272 F.R.D. 489,498 (C.D. Cal. 2011), on which Facebook relies, are far afield. In *Birdsong*, consumers brought a class action against the manufacturer of a digital audio player alleging that it was defective because of risk of noise-induced hearing loss to users. Holding that the plaintiffs lacked standing, the Ninth Circuit found the alleged harm to be "conjectural" and "hypothetical" where the plaintiffs did not claim to have suffered hearing loss themselves and plead only "conjectural" and "hypothetical" harm to "unidentified iPod users who might *choose* to use their iPods in an unsafe manner." *Id.* at 960-61. *See Meaunrit, supra* (discussing *Birdsong*).

*Webb*, on which Facebook also relies, is another "no-injury product liability" class action. The plaintiffs claimed that labels on certain items of children's clothing, which they and putative class members had purchased or acquired through product promotions, contained toxic chemicals that posed a risk of skin irritation. The court held that putative class members whose children suffered no *actual* irritation lacked standing to sue under the UCL. The court held also that those putative class members who acquired the items through promotions as opposed to purchase, lacked standing to claim restitution because they did not part with money.[1]

---

[1] The court in *Webb*, 272 F.R.D. at 499, discussed this Court's decision in *Meaunrit. Webb, supra*, called attention in particular to this Court's distinction of a product-liability case in which standing was upheld. *Sanchez v. Wal-Mart Stores, Inc.*, 2008 WL 3272101 (E.D. Cal. 2008). As described by this Court, the plaintiff there "alleged that a stroller that she had purchased had a

Here, in contrast to no-injury product liability cases such as *Birdsong* and *Webb*, there is *actual* harm.  Facebook holds money garnered through transactions with minors and originating from the Facebook accounts of minors that are void and/or voidable under the California Family Code, which specifically authorizes the Minor Plaintiffs to proceed through their parents and/or guardians.  Moreover, unlike *Webb*, all of the transactions at issue involved *purchases* for which money was actually paid, as opposed to acquisitions without monetary expenditure.   The Minor Plaintiffs easily allege the minimal injury in fact necessary to confer Article III standing.  TAC ¶¶ 35, 57-67, 76.

The Plaintiff parents and class members also have standing to pursue UCL claims, as discussed in further detail below.  UCL § 17204 states that a UCL claim may be brought *inter alia* "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  The plaintiff parents and class members have undeniably suffered injury fact and have lost money as a result of Facebook's unfair competition, specifically Facebook's conduct, which the Court has already found constitutes unfair and unlawful conduct under the UCL.[2]   *See Allergan v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (9th Cir. 2011), *quoting Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 322 (Cal. 2011) (" to satisfy the standing requirements of section 17204, a plaintiff must allege exactly what the statutory text requires: '(1) ... a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e.

'dangerous, unguarded and unmitigated pinch point'" which reflected an "imminent or unmitigable risk of harm" that was more than merely "speculative."  *Meaunrit, supra* at *3.

[2] In an analogous setting involving claims for a declaratory judgment voiding certain warranties pursuant to the federal Moss Magnuson Warranty Act and for restitution of consideration, the court stated that the claims represented:

> an effort to obtain restitution by a party to a contract that is unenforceable because it conflicts with public policy. Plaintiffs have standing to seek this relief. The injury from which Plaintiffs seek redress is the loss of their payment for a warranty that allegedly violates public policy. There is no concern that the declaratory judgment would be an advisory opinion, because the determination that the contract is void is actually just an underlying determination that the Court must make in order to resolve the controversy over whether Plaintiffs are entitled to restitution damages.

*McGarvey v. Penske Automotive Group, Inc.*, 2011 WL 1325210 (D.N.J. 2011).

economic injury, and (2) ... that [the] economic injury was the result of, i.e. caused by, the unfair business practice....'") The plaintiff parents and class members undeniably claim to have suffered a loss and deprivation of money as a consequence of Facebook's unfair and unlawful conduct in violation of the UCL.

**B.     Plaintiffs' Claims Do Not Require That They Plead That They Have Ceased Using Facebook.**

Facebook raises a somewhat bizarre argument that, because Plaintiffs have not each pleaded that they have ceased using Facebook entirely, their claims must be dismissed. Facebook purports to quote the "holding" of the Court on Facebook's earlier motion, when in fact what Facebook has quoted is the Court's discussion not of this case, but of another, unpublished case: *E.K.D. v. Facebook*, 2012 U.S. Dist. LEXIS 113761 (S.D. Il. March 8, 2012). Order at 15:7-23. In fact, the Court has already distinguished and rejected Facebook's attempt to rely upon the *E.K.D.* decision. Order at 17:10-14 ("Unlike *Paster* and *E.K.D.*, where the courts limited their analysis to the voidability of the forum selection clause, Facebook's motion to dismiss presents the question of whether the minor Plaintiffs may disaffirm their contracts even after receiving the benefits of purchasing Facebook Credits."); *see also* Order at 17, n.1.

Facebook again appears to be retreading an argument that the Court has already rejected without seeking leave to file a motion for reconsideration of the Court's earlier Order. The error of Facebook's argument is its characterization of "the entire contract[s]" that Plaintiffs seek to disaffirm. Facebook has set up a red herring, namely that Plaintiffs seek to undo the entirety of the contractual relationship between Facebook and its users or minor users. Rather, Plaintiffs seek to undo those specific and discrete Facebook Credit transactions—each one itself a contract—that may be disaffirmed under the California Family Code.

In the *E.K.D.* case, the Plaintiffs filed a suit based upon invasion of privacy in Southern District of Illinois. It is important to note that the plaintiffs' there did not seek to unwind specific, concrete transactions under the California Family Code. In fact, in that case plaintiffs contested Facebook's ongoing and continuous practice of displaying users' "likes" to other users, without their permission or the right to opt-out, which they contended violated the right to

privacy under the laws of various states. *E.K.D. v. Facebook*, 2012 U.S. Dist. LEXIS 113761 at *2-*6. After Facebook filed a motion to transfer venue from Illinois to the Northern District of California, the Plaintiffs then raised a theory of disaffirmance to escape the forum selection clause. *Id. Nothing* about the forum selection clause, however, is incompatible with or contradicted by a minor's right to disaffirm specific transactions under the California Family Code, and the forum selection clause had nothing to do with the substance of those plaintiffs' claims in *E.K.D.* Rather, Plaintiffs in *E.K.D.* were using the Family Code defensively and only to oppose Facebook's forum selection clause.

Here, Plaintiffs specifically seek to disaffirm discrete transactions in their entirety, namely, contracts for the purchase of Facebook Credits, as described in the TAC. Plaintiffs are not using the California Family Code to disaffirm a particular clause, like a forum selection clause, for tactical reasons. Plaintiffs moreover do not seek to disaffirm or attack the ongoing operations of Facebook, the forum selection clause of its terms of service, ***or any other aspect of Facebook's terms of service that do not conflict with California Family Code sections 6107(c) and 6710***. Accordingly, Facebook's argument that Plaintiffs must all plead that they have deleted their Facebook accounts and must immediately cease using Facebook entirely is nonsensical.

Plaintiffs here are certainly not "picking and choosing" which of the terms of Facebook's terms of service or payment terms should be disaffirmed for defensive or tactical reasons. Indeed, Plaintiffs do refer to the choice of law clause contained in Facebook's Terms of Service, which Facebook now apparently contends should only apply when it favors Facebook's defense of nationwide class action suits. However, Plaintiffs do not seek to disaffirm Facebook's terms of service or to defensively disaffirm some discrete clause of the terms of service like the Plaintiffs in *E.K.D* sought to do. Rather, Plaintiffs seek to disaffirm and unwind specific, discrete transactions that inherently conflict with the California Family Code, and which the Court has already held may be void and/or voidable under the California Family Code. Accordingly, Facebook's reliance upon *E.K.D.* is misplaced.

///

**C.     The Electronic Funds Transmission Act Applies To Purchases of Facebook Credits Using Funds from a Debit Account.**

The Third Amended Class Complaint pleads actionable violations of the EFTA, 15 U.S.C. §§ 1693g and 1693c.  Facebook seeks to escape EFTA obligations on the mistaken premise that EFTA is "primarily targeted at banks and other 'financial institutions'" (FB Mot. at 15), and Facebook argues that "it would make no sense" to apply the specified EFTA provisions to Facebook (FB Mot. at 16).  But Facebook overlooks clear provisions of EFTA that plainly apply to Facebook.

1.     Claims under § 1693g .

The plain language of § 1693g(a) encompasses companies that charge consumers' accounts without authorization.  § 1693g(a) provides without qualification or limitation:

> A consumer *shall be liable for any unauthorized electronic fund transfer involving the account of such consumer* only if the card or other means of access utilized for such transfer was an accepted card or other means of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation.

(Emphasis added.)  Nothing in this provision suggests that the obligations of this section are limited to financial institutions.  Indeed, the broad wording of the first clause specifically encompasses all possible sources of unauthorized fund transfers, whether resulting from the action of a financial institution or the action of another company like Facebook.  By charging consumers' debit cards and removing money from consumers' bank accounts, Facebook is unequivocally seeking to hold consumers liable for unauthorized electronic funds transfers made by minors.

Facebook then argues that § 1693g(a) must not apply to Facebook because "it would make no sense to apply identification requirements related to a 'signature, photograph, or fingerprint" to the purchase of Credits online.'" (FB Mot. at 16).  But nothing in § 1693g(a) requires Facebook to employ one of those three specific identification methods; the quoted

language specifically leaves open the possibility of other "electronic or mechanical confirmation" to prove that the user is "the person authorized to use" the account. In fact, just as § 1693g(a) anticipated, the issuers of the debit cards used by the Minor Plaintiff J.W. did provide means by which the users of such cards can be identified as the persons authorized to use them, including the PIN numbers used for PIN-based debit transactions. But Facebook chose not to require such PINs or any other method of confirmation, and Facebook thereby fell short of the requirements of § 1693g(a).

Facebook's Motion does not specifically discuss § 1693g(e), but that subsection is equally applicable to Facebook. §1693g(e) provides:

> (e) Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer.

The quoted language is clear: Consumers are not liable for unauthorized electronic funds transfers. The requirement of this subsection could hardly be more fundamental: When a consumer suffers an unauthorized electronic funds transfer, the consumer is not and cannot be liable for that loss of funds. Whichever company took those funds without authorization should not be surprised to have to return them.

Facebook makes much of the fact that other portions of § 1693g mention financial institutions (FB Mot. at 15, footnote 13). But the quoted section of § 1693g(a) stands on its own, without regard for the other requirements codified elsewhere in that section.

This is so notwithstanding the *dictum* in *Friedman v. 24 Hour Fitness U.S.A, Inc.*, 580 F. Supp.2d 985, 995-96 (C.D. Cal. 2008) relied upon by Facebook. *Friedman* was a challenge to *preauthorized* transfers pursuant to 15 U.S.C. § 1693e. The defendant, which was not a financial institution, sought dismissal based on the plaintiff's failure to provide the notice referenced in § 1693g. In allowing the *Friedman* plaintiffs to proceed, the court held that in light of their claims under § 1693e, they need not comply with the notice requirements for claims against financial institutions under § 1693g. But the *Friedman* court did not consider the possibility of claims for violations of § 1693g. *Friedman* does not bar Plaintiffs' viable § 1693g claim against a company other than a financial institution.

2.      Claims under § 1693c.

Facebook argues that plaintiffs' claims under § 1693c are invalid because, Facebook argues, "section 1693c applies only to financial institutions." (FB Mot. at 16).  Facebook selectively quotes subsections of § 1693c that reference disclosures that could or must be made by financial institutions.  But Facebook ignores the fact that other companies, not financial institutions, could also make such disclosures and, indeed, are required by § 1693c to do so if they provide electronic fund transfer services.

Certainly electronic fund transfer services can be provided by companies other than financial institutions.  § 1693a(7) broadly defines an "electronic fund transfer" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone."  Purchases of Facebook credits using a debit card linked to a consumer's bank account fall squarely within this definition.

The requirements of § 1693c apply to electronic fund transfer services provided both by financial institutions and by companies that are not financial institutions.  If an electronic fund transfer service is provided by a financial institution, the § 1693c subsections that reference financial institutions necessarily attach.  If an electronic fund transfer service is provided by a company other than a financial institution, the subsections that reference financial institutions do not attach.  Indeed, the second sentence of § 1693c(a) specifically notes that not all of the subsequent subsections apply to all electronic fund transfer services ("to the extent applicable").

Nor would the requirements of § 1693c(a)(2) have been onerous for Facebook to follow.  Facebook need only have provided the telephone number and address a consumer may contact in the event a consumer believes an unauthorized transfer has occurred.  Instead, through Facebook's failure to provide this information, Plaintiffs struggled at length to determine how to contact Facebook.  See TAC at ¶30, 33, 34.

1      Facebook's reliance on *Olen* is misplaced. The plaintiff in *Olen* had purchased gasoline

2 at an automated pump that placed a temporary hold on her account above the amount of her

3 purchase, preventing her from using certain funds for approximately 24 hours until the hold was

4 automatically released. But *Olen* nowhere suggests that she had difficulty contacting the

5 merchant responsible for the hold; quite the contrary, the record reflects that she did so without

6 significant difficulty. The simple contact information requirements of § 1693c(a)(2) were just

7 not at issue in *Olen*.

**D.**     **Plaintiffs Have Standing To Pursue Their UCL Claims.**

9      This Court has already decided that Plaintiffs' claims founded upon Facebook's violation

10 of the California Family Code may proceed under the unlawful and unfair prongs of the UCL.

11 The only remaining points of contention, then, are (1) whether the Minor Plaintiffs may pursue

12 claims under the UCL and (2) whether the Parent Plaintiffs may pursue claims under the UCL.

14     1.    The Minor Plaintiffs Can Pursue Their Claims Under the UCL And Facebook's Challenge To The Measure of Restitution Is Premature.

15      As set forth above, the Minor Plaintiffs easily allege injury and violation of their rights

16 under the California Family Code and the minimal injury in fact necessary to confer Article III

17 standing including loss of property. TAC ¶¶ 35, 57-67, 76. Accordingly, Facebook's contention

18 that the Minor Plaintiffs are barred from seeking restitution, injunctive relief, and other equitable

19 relief under the UCL is misplaced. Facebook argues for a very narrow interpretation of standing

20 under the UCL that is inconsistent with the law in California, and attempts to decide the scope of

21 restitution before it is procedurally appropriate to do so, because a specific measure of the

22 amount of restitution sought not required on the pleadings. On the pleadings, it suffices that a

23 plaintiff can allege an "identifiable trifle" of economic injury. *Kwikset Corp. v. Superior Court,*

24 51 Cal.4th 310, 330 n.15 (Cal. 2011) (quoting *United States v. Students Challenging Regulatory*

25 *Agency Procedures* 412 U.S. 669, 689 n.14. (1973). The Court's inquiry here is not whether or

26 how Plaintiffs can prove such an amount, but whether they have standing to argue for such relief.

27 *Clayworth v. Pfizer*, *Inc.* 49 Cal.4th 758, 789 (2010).)

28 ///

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss

Plaintiffs are confident that there will be substantial "evidence that supports the amount of restitution necessary to restore to the Plaintiffs and the classes 'any money … which may have been acquired by means of such unfair competition.'" *Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663, 697, 700 (2006). Therefore, through discovery and/or expert testimony, Plaintiffs will provide evidence to "quantify either the dollar value of the consumer impact or the advantage realized by" Defendants. *Id.* There are a number of methods by which this amount can be determined.

First, the purported class members are entitled as a measure of restitution, the value of the advantage realized by Facebook as result of its unfair and unlawful conduct. *See id.* at 135 Cal.App.4th at 698-99. This theory of damages/restitution is susceptible to proof at trial through common evidence and methodologies. Plaintiffs will be able to establish, through expert testimony, the value to Facebook of unfairly and unlawfully declining to allow refunds of its Facebook Credit transactions with minors. For example, after reviewing the facts discovered in this case, Plaintiffs' experts will identify the best method for determining the amount of restitution, be it by analysis of the data provided by Facebook, survey of customers, and/or regression analysis.

Second, Plaintiffs' claims for restitution may be measured by restitutionary disgorgement. In *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1149 (2003), the California Supreme Court concluded that "restitutionary disgorgement" is available under the UCL. This may include monies that were not necessarily in the Plaintiff's possession: "We have stated that '[t]he concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person.' Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id.* at 1149 (quoting *Cortez v. Purolator Air Filtration Products Co.* 23 Cal.4th 163, 178 (2000)); *see also Juarez v. Arcadia Financial, Ltd.* 152 Cal.App.4th 889, 914-15 (2007) (quoting Rest., Restitution, § 1; § 1 com. a., p. 12.) ("The basic premise of this type of remedy is that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' 'Ordinarily, the measure of restitution is the amount of

enrichment received . . . , but as stated in Comment e, if the loss suffered differs from the amount of benefit received, *the measure of restitution may be more or less than the loss suffered or more or less than the enrichment*.'") (emphasis added.).)  Thus, the profits of which disgorgement was sought in *Juarez*, for example, were restitutionary and available as a remedy under the UCL. (*See also California v. Altus Finance, SA*. 36 Cal.4th 1284, 1304 n.7 (2005) (quoting *Kraus v. Trinity Management Services, Inc.* 23 Cal.4th 116, 127 (2000)) ("As we explained, '[a]n order that a defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited. . . .  [S]uch orders may compel a defendant to surrender all money obtained through an unfair business practice of all unlawfully obtained profits even though not all is to be restored to the person from whom it was obtained or those claiming under those persons.'").)

Third and finally, restitution operates under the courts' powers of equity and a trial court has "broad authority" under the UCL to fashion a restitutionary remedy.   Restitution, based in the courts' equity powers, serves two distinct purposes: (1) returning to the plaintiff monies in which he or she has an interest; and (2) deterring the offender from future violations.  *Colgan,* 135 Cal.App.4th at 695 (citing *Fletcher v. Security Pacific National Bank* 23 Cal.3d 442, 450 (1979) (the trial court has broad authority under the UCL to fashion a remedy to deter the defendant from engaging in future unfair trade practices); *People ex rel. Kennedy v. Beaumont Investment, Ltd.* 111 Cal.App.4th 102, 135 (2003) ("statutory restitution is not solely 'intended to benefit the [victims] by the return of money, but instead is designed to penalize a defendant for past unlawful conduct and thereby deter future violations.")).

2.    The Parent Plaintiffs Can Pursue Claims Under the UCL.

Facebook argues that the Court held what it did not hold, namely, that the parent Plaintiffs here cannot assert claims under the UCL.  The Court did hold that the parent Plaintiffs could not proceed directly for a declaratory judgment under California Family Code to disaffirm their minor children's transactions with Facebook.  However, the Court also held that Facebook's conduct was both unlawful and unfair under the UCL.  Facebook's scheme of wrongful conduct, namely, its refusal to provide refunds in Facebook Credit transactions with

minors, has directly injured the parent Plaintiffs, whose funds have been wrongfully retained by Facebook, the basis for their UCL claims. The parent Plaintiffs *do not* assert a claim for Declaratory Judgment, consistent with the Court's Order. *See* TAC ¶ 56 (declaratory judgment claim sought only behalf of Minor Plaintiffs and Minor Class).

## V. CONCLUSION

For all the reasons set forth above, Facebook's latest motion to dismiss should be denied in its entirety.


Dated: January 15, 2013                              Respectfully submitted,

                                                     KERSHAW, CUTTER & RATINOFF, LLP


                                          By:    /s/ John R. Parker, Jr.
                                                 John R. Parker, Jr.


                                                 C. Brooks Cutter
                                                 John R. Parker, Jr.
                                                 KERSHAW, CUTTER & RATINOFF, LLP
                                                 401 Watt Avenue
                                                 Sacramento, CA 95864
                                                 Telephone: (916) 448-9800
                                                 Facsimile: (916) 669-4499
                                                 Emails: bcutter@kcrlegal.com /
                                                 jparker@kcrlegal.com

                                                 Daniel B. Edelman
                                                 Katz, Marshall & Banks LLP
                                                 1718 Connecticut Avenue NW, Suite 600
                                                 Washington, DC 20009
                                                 Telephone: (202) 299-1140
                                                 Email: Edelman@kmblegal.com

                                                 Benjamin Edelman
                                                 169 Walnut Street
                                                 Brookline, MA 02445
                                                 Telephone: (617) 359-3360
                                                 Email: ben@benedelman.org

                                                 *Attorneys for Plaintiffs*