IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

I.B., by and through his Guardian
ad Litem BRYAN FIFE, et al.,

        Plaintiffs,

  v.

FACEBOOK, INC.,

        Defendant.

========================/

No. C 12-1894 CW

ORDER GRANTING IN
PART AND DENYING
IN PART MOTION TO
DISMISS (Docket
No. 53)

    Defendant Facebook, Inc. moves to dismiss the Third Amended
Complaint (3AC).  Plaintiffs I.B., by and through his guardian ad
litem Bryan Fife, Glynnis Bohannon, J.W., by and through his
guardian ad litem Steven Wright, and Julie Wright oppose the
motion.  After considering the parties' submissions, the Court
grants Defendant's motion in part and denies it in part.
Plaintiffs are not granted leave to amend.

BACKGROUND

    Plaintiffs are two minor children and their adult parents and
guardians.  They initiated this putative class action against
Facebook in 2012 seeking to obtain a refund for several purchases
which the minor Plaintiffs, I.B. and J.W., made through their
Facebook accounts.  In particular, their Third Amended Complaint
(3AC) alleges that the minor Plaintiffs used their parents' credit
and debit cards, without permission, to purchase several hundred
dollars' worth of Facebook Credits.  Docket No. 50, 3AC ¶¶ 27, 31.
According to the 3AC, Facebook refused to issue full refunds for
these purchases to the adult Plaintiffs -- I.B.'s mother,
Bohannon, and J.W.'s mother, Julie Wright -- even after they

sought to notify Facebook that the purchases were made without their consent.[1]  Id. ¶¶ 28, 33.

Plaintiffs assert three causes of action in their complaint. First, the minor Plaintiffs seek a judicial determination under the Declaratory Judgment Act, 28 U.S.C. § 2201, that their purchases of Facebook Credits are void or voidable under sections 6701(c) and 6710 of the California Family Code.  Second, all Plaintiffs assert that Facebook violated California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq., by failing to issue refunds for these purchases.  Third and finally, Julie Wright alleges that Facebook violated the federal Electronic Funds Transfer Act (EFTA), 15 U.S.C. §§ 1693 et seq., by failing to verify adequately that the minor Plaintiffs were authorized to make purchases with the credit and debit cards that they used.

LEGAL STANDARDS

I.   Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.

United States District Court
For the Northern District of California

---

[1] Plaintiffs state in their complaint that Facebook provided partial refunds to Bohannon and the Wrights.  3AC ¶¶ 28, 33.

Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

II.   Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I.   Subject Matter Jurisdiction

Facebook contends that the Court lacks subject matter jurisdiction because Plaintiffs have failed to establish that they have standing.

The standing requirement derives from Article III, section 2 of the United States Constitution, which "confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) (quoting U.S. Const. art III, § 2).  To establish standing, a plaintiff must show: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).  A concrete injury is one that is "'distinct and palpable . . . as opposed to merely abstract.'" Schmier v. U.S. Court of Appeals for 9th Circuit, 279 F.3d 817, 821 (9th Cir. 2002) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus." Schmier, 279 F.3d at 821 (citing Whitmore, 495 U.S. at 155).

Here, Facebook argues that the minor Plaintiffs have not identified an injury-in-fact sufficient to confer standing because they do not allege that they purchased the Facebook Credits with their own money.  Facebook had raised a similar argument in its first motion to dismiss -- asserting that "the minor Plaintiffs may not disaffirm purchase contracts to recover consideration paid by their parents" -- but it framed the issue as a matter of contract law rather than Article III standing.  See Docket No. 44, Order Granting in Part and Denying in Part Motion to Dismiss, at 18.  In its October 2012 order on that motion, the Court rejected

**United States District Court**
For the Northern District of California

Facebook's position because the company failed to "cite any authority to support its argument under California law" and, instead, relied exclusively on antiquated cases interpreting other states' disaffirmance laws.  <u>Id.</u>  The Court also rejected Facebook's related argument that the Declaratory Judgment Act would not provide a proper remedy for the alleged violations of the minor Plaintiffs' disaffirmance rights.  <u>Id.</u> at 22-24.

Facebook's latest argument -- that the minor Plaintiffs lack standing -- fails for the same reasons its earlier arguments failed.  As this Court explained in its prior order, the minor Plaintiffs have "present[ed] an actual controversy over the rights of minors to disaffirm their purchases of Facebook Credits."  <u>Id.</u> at 23; <u>see also id.</u> ("Plaintiffs have sufficiently stated a claim for declaratory relief to determine their rights under the California Family Code.").  This controversy is sufficient to confer standing under both the Declaratory Judgment Act and Article III.[2]  <u>Scott v. Pasadena Unified Sch. Dist.</u>, 306 F.3d 646, 658 (9th Cir. 2002) ("Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a plaintiff must establish standing by showing 'that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant

---

[2] Other federal district courts have allowed minors to pursue declaratory relief under 28 U.S.C. § 2201 in order to determine their rights to disaffirm contracts, although these courts did not expressly address standing.  <u>See, e.g.</u>, <u>Rimes v. Curb Records, Inc.</u>, 129 F. Supp. 2d 984, 985 (N.D. Tex. 2001) (denying motion to dismiss where a minor plaintiff sought declaratory judgment under 28 U.S.C. § 2201 against a record company "to disaffirm a recording contract she entered into as a minor"); <u>CBS, Inc. v. Tucker</u>, 412 F. Supp. 1222, 1223 (S.D.N.Y. 1976) (recognizing "that the right of the infant to disaffirm the contract is virtually certain" under New York law in case where both parties sought declaratory relief pursuant to 28 U.S.C. § 2201).

**United States District Court**
For the Northern District of California

issuance of a declaratory judgment.'" (quoting <u>Maryland Casualty</u>
<u>Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941))); <u>Societe</u>
<u>de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.</u>, 655
F.2d 938, 942 (9th Cir. 1981) ("The 'actual controversy'
requirement of the [Declaratory Judgment] Act is the same as the
'case or controversy' requirement of Article III of the United
States Constitution."). Facebook has not acknowledged, let alone
refuted, the Court's prior ruling in this case. Nor has it shown
that the minor Plaintiffs' claim that it violated their statutory
right of disaffirmance is insufficient to plead a cognizable
injury-in-fact.

    The Ninth Circuit has recognized that the "injury required by
Article III can exist solely by virtue of 'statutes creating legal
rights, the invasion of which creates standing.'" <u>Fulfillment</u>
<u>Servs. Inc. v. United Parcel Serv., Inc.</u>, 528 F.3d 614, 618-19
(9th Cir. 2008) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 500
(1975)). These legal rights may arise from state statutes.
<u>Cantrell v. City of Long Beach</u>, 241 F.3d 674, 684 (9th Cir. 2001)
(recognizing that "the violation of a state-created legal right
can, in itself, satisfy the injury in fact requirement for
standing under Article III" if the plaintiff has cause of action
for damages under the state law); <u>FMC Corp. v. Boesky</u>, 852 F.2d
981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-
created legal rights, therefore, must suffice to satisfy Article
III's injury requirement."). Typically, the violation of such a
right will confer standing when the "statutory provision on which
the claim rests properly can be understood as granting persons in

the plaintiff's position a right to judicial relief."[3]  <u>Warth</u>, 422 U.S. at 500.  Here, the statute on which the minor Plaintiffs' disaffirmance claim rests -- section 6710 of the California Family Code -- has long been recognized to provide a right to judicial relief.  <u>Le Baron v. Berryessa Cattle Co.</u>, 78 Cal. App. 536, 548 (1926) (recognizing that "the trial court is vested with a broad discretion to see that equity is done" in an action for disaffirmance brought under an earlier version of section 6710); <u>see also</u> <u>Berg v. Traylor</u>, 148 Cal. App. 4th 809, 818 (2007) ("'The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts.'" (quoting <u>Niemann v. Deverich</u>, 98 Cal. App. 2d 787, 793 (1950))).  Thus, in light of this statutory right, the minor Plaintiffs have standing to pursue their claims in federal court.

II.  Failure to State a Claim

    A.   Declaratory Judgment Act (First Cause of Action)

    Facebook contends that the minor Plaintiffs have failed to state a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, because they are not permitted under California law to

---

[3] Facebook cites <u>Edwards v. First American Corp.</u>, 610 F.3d 514 (9th Cir. 2010), to argue that a statutory violation will only support Article III standing if the statute defines certain acts to be criminal violations and imposes civil penalties on violators of the statute. Although the specific statute at issue in <u>Edwards</u>, <u>id.</u> at 517-18, happened to have those characteristics, the <u>Edwards</u> court never suggested that <u>every</u> statute had to have the same characteristics in order to support Article III standing.  Indeed, the court relied on the same test for statutory standing outlined above.  <u>Id.</u> at 517 ("'Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" (quoting <u>Warth</u>, 422 U.S. at 500)).

United States District Court
For the Northern District of California

disaffirm selectively their individual Facebook Credit purchases while continuing to use Facebook's other services.

As noted above, the minor Plaintiffs seek a judicial determination that their purchases of Facebook Credits are void under California Family Code section 6701(c).  3AC ¶ 61.  That provision states that a minor cannot "[m]ake a contract relating to any personal property not in the immediate possession or control of the minor."  Cal. Family Code § 6701(c).  Because contracts that fall under this provision are void, no act of disaffirmance is required to avoid them.  E.K.D. ex rel. Dawes v. Facebook, Inc., 885 F. Supp. 2d 894, 898 (S.D. Ill. 2012) (citing Burnand v. Irigoyen, 30 Cal. 2d 861, 865 (1947)).

In the alternative, if the Facebook Credit purchases are not void, the minor Plaintiffs seek a determination that the purchases are voidable under California Family Code section 6710.  3AC ¶ 64.  That provision states, "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards."  Cal. Family Code § 6710.  Thus, any contract of a minor which is not void under section 6701 and not shielded from disaffirmance under sections 6712 or 6751 is potentially voidable by means of disaffirmance.

> Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and the designs of others.  It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant.  Any loss occasioned by the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> disaffirmance of a minor's contract might have
> been avoided by declining to enter into the
> contract.

Berg, 148 Cal. App. 4th at 818 (internal quotation marks and citations omitted).  That said, the "infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit."  E.K.D., 885 F. Supp. 2d at 899.  Accordingly, if a minor seeks to disaffirm a contract under section 6710, equitable principles dictate that he or she "must disaffirm the entire contract, not just the irksome portions."  Holland v. Universal Underwriters Ins. Co., 270 Cal. App. 2d 417, 421 (1969).

Here, Facebook contends that the minor Plaintiffs cannot disaffirm their Facebook Credit purchases because they failed to allege that they have stopped using Facebook's services.  According to Facebook, as long as the minor Plaintiffs continue to use Facebook's services, they remain bound by Facebook's Statement of Rights and Responsibilities (SRR), which includes specific payment terms.  Those terms require Facebook users under the age of eighteen to acknowledge that they "may use Facebook Payments only with the involvement of [a] parent or guardian."  Docket No. 55, Declaration of Whitty Somvichian, Ex. B, Payments Terms, at 1.[4]  Users must also confirm that they are permitted to access whatever funding instruments they use to make purchases through Facebook.  Id.  Facebook argues that the minor Plaintiffs cannot seek to disaffirm these payment terms while, at the same time,

---

[4] Facebook's unopposed request to take judicial notice of Facebook's SRR and Payments Terms, Docket No. 54, is granted.

relying on other terms of the SRR and continuing to use Facebook's services.

This argument fails for several reasons.  First, the premise of Facebook's argument -- that the minor Plaintiffs continued to use Facebook's services after asserting their right of disaffirmance -- is not supported by any allegations in the complaint.  Because the Court is bound to construe the complaint favorably to Plaintiffs at this stage, it cannot rely on Facebook's unsupported allegation that the minor Plaintiffs have continued using Facebook's services.  NL Indus., 792 F.2d at 898 ("We must accept all material allegations in the complaint as true and construe them in the light most favorable to [the plaintiff].").

Second, Facebook has not shown that the provisions of the SRR that it cites were actually in effect in 2011, when the minor Plaintiffs allege that they began purchasing Facebook Credits. 3AC ¶¶ 27, 31.  Facebook concedes that both the SRR and payment terms that it has submitted here were downloaded from its website in December 2012.  Somvichian Decl. ¶¶ 2-3.  Furthermore, both of these documents indicate that they were revised in 2012.  Id. Ex. A, at 1 ("Date of Last Revision: June 8, 2012."); Ex. B, at 1 ("Date of Last Revision: September 12, 2012.").  Thus, as this Court explained in its prior order, "whether the minor Plaintiffs I.B. and J.W. would have viewed these particular payment pages is subject to reasonable dispute."  Docket No. 44, at 7. Accordingly, these documents do not provide a basis for dismissal.

Third and finally, the minor Plaintiffs do not seek to disaffirm selected portions of Facebook's SRR or payment terms.

United States District Court
For the Northern District of California

Rather, they seek to disaffirm a series of discrete and specific transactions: namely, their purchases of Facebook Credits.  These transactions were supported by separate consideration and constitute separate agreements, distinct from the agreement to abide by the terms of the SRR.  The minor Plaintiffs therefore do not need to disaffirm the entire SRR -- nor allege that they have ceased using Facebook's services -- in order to disaffirm the transactions in question.  In sum, their complaint states a valid claim under the Declaratory Judgment Act.

B.   EFTA (Third Cause of Action)

Julie Wright brings claims against Facebook under EFTA.  As explained in the Court's prior order, EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."  15 U.S.C. § 1693(b).  An "electronic fund transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."  15 U.S.C. § 1693a(7).  Section 1693m of the statute empowers consumers to bring a private cause of action against "any person who fails to comply with any provision of this subchapter."  15 U.S.C. § 1693m.  Because the previous complaint failed to allege that Facebook violated any specific provisions of EFTA, the Court dismissed Julie Wright's prior EFTA claims but granted her leave to amend to allege specific violations of the statute.  Docket No. 44, at 26.

United States District Court
For the Northern District of California

In the 3AC, Julie Wright alleges that Facebook violated two provisions of EFTA, 15 U.S.C. §§ 1693c and 1693g.  Facebook contends that it cannot be held liable under either of these provisions because they apply only to financial institutions and Facebook is not a financial institution.[5]  The relevant statutory language, case law, and legislative history support Facebook's construction of these provisions.

The first provision which Wright cites, § 1693c, states that the "terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service."  15 U.S.C. § 1693c(a).  The provision then identifies ten types of required disclosures, which are intended to notify consumers about their rights under EFTA.  Several of these types of disclosures refer specifically to "the financial institution" involved in each transaction.  See, e.g., 15 U.S.C. § 1693c(a)(1) (requiring disclosure of "the consumer's liability for unauthorized electronic fund transfers and, at the financial institution's option, notice of the advisability of prompt reporting of any loss, theft, or unauthorized use of a card, code, or other means of access" (emphasis added)).  In addition, another provision of EFTA directs the Bureau of Consumer Financial Protection to "issue model clauses for optional use by financial institutions to facilitate compliance with the[se] disclosure requirements."  15

---

[5] EFTA defines "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C. § 1693a(9).

U.S.C. § 1693b(b).[6]  The language in these provisions thus
suggests that the disclosure requirements are directed exclusively
at financial institutions.  Furthermore, the only federal court to
confront the question of whether entities other than financial
institutions may be liable under § 1693c expressly held that "the
disclosure requirements set forth in 15 U.S.C. § 1693c, as further
articulated in 12 C.F.R. § 205.7, apply only to financial
institutions."  Olen v. N. Tier Retail, 2012 WL 1580994, at *3 (D.
Minn.).  Plaintiffs have not cited any authority holding
otherwise.  Accordingly, this Court concludes that § 1693c does
not apply to entities that are not financial institutions.

Nor does § 1693g, the other EFTA provision on which Julie
Wright relies.  The language of that provision, which imposes
certain limits on a consumer's liability for unauthorized
transfers, applies even more clearly to financial institutions
than that of § 1693c.  It specifically provides,

> In any action which involves a consumer's
> liability for an unauthorized electronic fund
> transfer, the burden of proof is upon the
> financial institution to show that the
> electronic fund transfer was authorized or, if
> the electronic fund transfer was unauthorized,
> then the burden of proof is upon the financial
> institution to establish that the conditions
> of liability set forth in subsection (a) of
> this section have been met, and, if the
> transfer was initiated after the effective
> date of section 1693c of this title, that the
> disclosures required to be made to the
> consumer under section 1693c(a)(1) and (2) of
> this title were in fact made in accordance
> with such section.

---

[6] The original EFTA legislation directed the Federal Reserve Board
of Governors to carry out this responsibility.  See Pub. L. No. 95-630
(HR 14279), 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C.
§ 1693b).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

15 U.S.C. § 1693g(b) (emphasis added).  This subsection, which

only contemplates suits against financial institutions, would be

rendered meaningless if § 1693g were applied to entities other

than financial institutions.  At least one other federal court has

relied on this subsection to reach the same conclusion.  <u>Friedman</u>

<u>v. 24 Hour Fitness USA, Inc.</u>, 580 F. Supp. 2d 985, 995-96 (C.D.

Cal. 2008) ("Section 1693g thus applies only in actions against

financial institutions.").  Plaintiffs have not addressed this

subsection of the statute or cited any contrary authority.  Thus,

§ 1693g, like § 1693c, cannot be applied to an entity such as

Facebook, which is not a financial institution.

Julie Wright's EFTA claims must therefore be dismissed.

Because she has already been granted leave to amend these claims,

her claims under §§ 1693c and 1693g are now dismissed with

prejudice.

C.   UCL (Second Cause of Action)

The UCL prohibits any "unlawful, unfair or fraudulent

business act or practice."  Cal. Bus. & Prof. Code § 17200.

Plaintiffs previously sought to proceed under all three of these

prongs of the UCL but the Court, in its prior order, found that

they had failed to state a claim under both the unlawful and

fraudulent prongs of the statute.  Docket No. 44, at 29-33, 36-37.

The Court also rejected some of the liability theories Plaintiffs

asserted under the unfair prong of the UCL but ultimately found

that Facebook's alleged refusal to recognize the minor Plaintiffs'

rights of disaffirmance was sufficient to state a claim under that

prong.  <u>Id.</u> at 33-35.  In their 3AC, Plaintiffs sought to cure the

deficiencies in their UCL claims under the unlawful prong of the statute but not under the fraudulent prong.

Facebook now raises an argument that it did not raise in its prior motion to dismiss.  Specifically, it argues that the minor Plaintiffs lack standing to bring claims under the UCL because they did not purchase the Facebook Credits with their own money.  Although this argument was not sufficient to establish a lack of standing under Article III, it does suffice to establish a lack of standing under the UCL.  Both state and federal courts have recognized that the UCL's standing requirements -- which apply to claims brought under all three prongs of the statute -- are stricter than those of Article III because the UCL requires the plaintiff to establish economic harm.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury and 'immediate' causation.  Neither is required for Article III standing." (citations omitted)); Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 336 (2011) (discussing economic harm requirement); see also Cal. Bus. & Prof. Code § 17204 (requiring that any individual who brings a UCL claim "has suffered injury in fact and has lost money or property as a result of the unfair competition").  While the minor Plaintiffs have plausibly alleged that Facebook violated their statutory right to disaffirm their Facebook Credit purchases, they have not alleged that they suffered economic harm as a result.  Thus, their allegation that Facebook violated their statutory rights does not confer standing under the UCL.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The adult Plaintiffs have also failed to state a claim under the UCL because the only other claims that they have asserted in this action -- namely, those arising under EFTA -- must be dismissed for the reasons outlined above.  Although the adult Plaintiffs have sufficiently plead that they, unlike the minor Plaintiffs, suffered economic harm, they have not identified any specific conduct by Facebook that might support their UCL claim. The losses they suffered derive, at bottom, from the unauthorized use of their credit cards by the minor Plaintiffs.

Accordingly, because Plaintiffs have already been granted an opportunity to cure their UCL claims and further amendment appears futile, their UCL claims are now dismissed with prejudice.

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 53) is GRANTED in part and DENIED in part and Plaintiffs are not granted leave to amend.  Because all of the claims of the adult Plaintiffs, Julie Wright and Glynnis Bohannon, have now been dismissed with prejudice, these individuals are no longer parties to this action.  Defendant must file its answer within fourteen days of this order.

A case management conference shall be held at 2:00 p.m. on Wednesday, January 22, 2014.  The parties shall submit a joint case management statement by January 15, 2014.

IT IS SO ORDERED.

Dated: 12/20/2013

CLAUDIA WILKEN
United States District Judge