C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
CUTTER LAW, P.C.
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Facsimile: (916) 558-9330
Emails: bcutter@cutterlaw.com / jparker@cutterlaw.com

Daniel B. Edelman, *pro hac vice*
Katz, Marshall & Banks LLP
1718 Connecticut Avenue NW, Suite 600
Washington, DC 20009
Telephone: (202) 299-1140
Email: edelman@kmblegal.com

Benjamin Edelman, *pro hac vice*
169 Walnut Street
Brookline, MA 02445
Telephone: (617) 359-3360
Email: ben@benedelman.org

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. CV 12-01894 BLF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENTED MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 17, 2016<br>Time: 9:00 a.m.<br>Court Room 3, 5th Floor<br>Hon. Beth Labson Freeman |

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1
II.   SUMMARY OF THE LITIGATION AND THE PROPOSED SETTLEMENT .............. 1
      A.    The Litigation.......................................................................................... 1
      B.    The Proposed Settlement ........................................................................ 4
            1.    Injunctive Relief............................................................................ 4
            2.    These Terms Provide Valuable Injunctive Relief to Class Members ......... 6
            3.    No Class-Wide Release................................................................. 6
            4.    Attorneys' Fees and Expenses and Service Award to Plaintiff .................. 6
III.  APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................................ 7
IV.   DIRECT NOTICE OF THIS MOTION TO THE CLASS IS NOT REQUIRED............ 11
      A.    Because there is no Class-Wide Release of Claims, Notice is Not Required....... 11
V.    CONCLUSION................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................................................7, 11

*Banks v. Nissan N. Am., Inc.*,
   No. 11-cv-2022-PJH, 2015 U.S. Dist. LEXIS 160414 (N.D. Cal. 2015) ..............................11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................7, 8, 11

*Crago v. Mitsubishi Electric Corp. (In re Cathode Ray Tube (CRT) Antitrust
   Litig.)*,
   2015 U.S. Dist. LEXIS 170525 (N.D. Cal. 2015) ..........................................................8

*Deaver v. Compass Bank*,
   2015 U.S. Dist. LEXIS 166484 (N.D. Cal. 2015) ..........................................................8

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*,
   30 Cal. 4th 1037 (2003) ..........................................................................................7

*Foti v. NCO Fin. Sys., Inc.*,
   No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008)......................12

*Grant v. Capital Mgmt. Servs., L.P*,
   No. 15-cv-04348-MEJ, 2013 U.S. Dist. LEXIS 174190 (N.D. Cal. December
   11, 2013) ..........................................................................................................13

*Green v. American Express Co.*,
   200 F.R.D. 211 (S.D.N.Y. 2001) ..........................................................................12, 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. Cal. 1998) ........................................................................7, 11

*Jermyn v. Best Buy Stores, L.P.*,
   No. 08 CIV 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ....................12, 13, 14

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................................................7, 11

*Kim v. Space Pencil, Inc.*,
   No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922 (N.D. Cal. Nov. 28,
   2012) ...............................................................................................................................8, 13

*Lambeth v. Advantage Financial Servs., LLC*,
   1:15-cv-33-BLW, 2015 U.S. Dist. LEXIS 79009 (D. Idaho June 16, 2015)...........................13

*Lilly v. Jamba Juice Co.*,
   No. 13-CV-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ............................12, 13

*In re Microsoft I-V Cases*,
   135 Cal. App. 4th 706 (2006) ...................................................................................................7

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................................................11

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
   779 F.3d 934 (9th Cir. 2015) ....................................................................................................7

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)
   Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)............................................................................................................12

**Statutes**

Business and Professions Code § 17200........................................................................................2

California Famil Code § 6701(c) ...........................................................................................1, 3, 9

California Family Code § 6701......................................................................................................3

California Family Code § 6701(a) .................................................................................................2

California Family Code § 6710..................................................................................................1, 3

Electronic Funds Transfer Act, 15 U.S.C. § 1693 .........................................................................2

Money Transmission Act, Cal. Fin. Code § 2000 ............................................................................. 2

**Other Authorities**

Federal Rules of Civil Procedure 23 ............................................................................................... 12

Federal Rules of Civil Procedure 23(b)(2) ............................................................................. 3, 4, 12

Federal Rules of Civil Procedure 23(b)(3) ..................................................................................... 13

Federal Rules of Civil Procedure 23(b)(l) ...................................................................................... 12

Federal Rules of Civil Procedure 23(c)(2)(A) ................................................................................ 12

Federal Rules of Civil Procedure 23(e) .................................................................................... 12, 13

Federal Rules of Civil Procedure 23(f) ............................................................................................. 9

Federal Rules of Civil Procedure 30(b)(6) ....................................................................................... 3

iv

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS
CASE NO. CV 12-01894 BLF

## I. INTRODUCTION

Plaintiffs and Defendant Facebook, Inc. (also herein as "Facebook") have agreed to a settlement of this class action. The terms of the settlement are set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of C. Brooks Cutter. Plaintiffs requests that the Court grant approval of the settlement. Counsel for the Plaintiffs are filing a separate motion for attorney's fees, costs, and for enhancement awards for the representative plaintiffs in this action.

As set forth more fully below, the settlement will completely resolve litigation that was initiated by Facebook users, in particular minors, who have made purchases through Facebook's Credit and Payment systems. Under the terms of the Settlement Agreement, Facebook has agreed to change several procedures and the terms and conditions that govern its transactions with minors. These changes by Facebook are intended to ensure that Facebook's transactions with minors are conducted consistent with the requirements of California law, as set forth in more detail below. Facebook has also agreed to this settlement without requiring any kind of class-wide release. For these reasons, the settlement accomplishes this litigation's objectives.

## II. SUMMARY OF THE LITIGATION AND THE PROPOSED SETTLEMENT

### A. The Litigation

Plaintiffs I.B. and J.W. are minors who filed a class action seeking to establish the rights of minor users of Facebook to disaffirm purchases of virtual goods made by them through Facebook's website and to require Facebook to conform its treatment of minor users to the law of California selected by Facebook to govern disputes with its users.[1] Facebook users can pay real money to purchase virtual currency and virtual goods for use in playing online games and other applications. Plaintiffs have contended that purchases by minor users are variously void and/or voidable under §§ 6701(c) and 6710 of the California Family Code.

On February 23, 2012, Glynnis Bohannon filed a Complaint in the Superior Court of the

---

[1] Plaintiffs sued originally in the Superior Court of California for the County of Santa Clara on March 8, 2012. Facebook removed the matter to the United States District Court for the Northern District of California on April 17, 2012. The operative complaint is Plaintiffs' Third Amended Class Action Complaint.

State of California, County of Santa Clara, Case No. 1-12-CV-219256, asserting an unjust enrichment claim against Facebook, on behalf of herself and her minor child, I.B.  On March 8, 2012, Ms. Bohannon amended her complaint to include a putative class of "[a]ll parents and legal guardians in the United States whose minor children made unauthorized purchases of Facebook Credits from the minor child's Facebook account" and to add claims for declaratory judgment for violation of the Consumers Legal Remedies Act ("CLRA"), and for violation of Business and Professions Code § 17200 *et seq* (the "UCL").  On April 17, 2012, Facebook removed the action to the United States District Court, Northern District of California, where it was assigned Case No. 12-CV-01894 (the "Action").

On May 31, 2012, in response to Facebook's motion to dismiss the First Amended Complaint, Plaintiffs filed a Second Amended Class Action Complaint ("Second Amended Complaint").  The Second Amended Complaint added another minor plaintiff, J.W., together with J.W.'s mother, Julie Wright, as plaintiffs.

The Second Amended Complaint brought claims for (1) declaratory relief; (2) violation of the CLRA; (3) violation of the UCL; and (4) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") on behalf of Julie Wright and J.W. On October 25, 2012, the Court granted in part and denied in part Facebook's motion to dismiss the Second Amended Complaint.  The Court dismissed without leave to amend Plaintiffs' claims under the CLRA; dismissed without leave to amend Plaintiffs' claims for violation of the "unlawful" and "unfair" prongs of the UCL based on alleged violations of the Money Transmission Act, Cal. Fin. Code § 2000 *et seq.* and the CLRA; dismissed without leave to amend Plaintiffs' claims under California Family Code § 6701(a); dismissed without leave to amend the claims brought by the parents (Glynnis Bohannon and Julie Wright) to disaffirm their children's contracts; dismissed with leave to amend Plaintiffs' claims under the EFTA, dismissed with leave to amend claims under the unlawful and unfair prongs of the UCL based on alleged violations of the EFTA, and dismissed with leave to amend claims under the fraudulent prong of the UCL; and denied Facebook's motion to dismiss the claim brought by the minor Plaintiffs (I.B. and J.W.) to disaffirm their contracts pursuant to California Family Code § 6701(c) and § 6710 and their

claim under the unfair prong of the UCL alleging violation of public policy protecting minors.

On November 15, 2012, Plaintiffs filed a Third Amended Class Action Complaint (the "Third Amended Complaint"). The Third Amended Complaint included a claim for declaratory relief by I.B. and J.W. that their transactions with Facebook are void under California Family Code § 6701(c) and that the transactions are voidable under California Family Code § 6710, a claim by I.B., J.W. and their parents (Glynnis Bohannon and Julie Wright) under the unlawful and unfair prongs of the UCL claiming that Facebook's conduct violated the EFTA and California Family Code §§ 6701 and 6710, and a claim by Julie Wright under the EFTA.

On December 20, 2013, the Court granted in part and denied in part Facebook's motion to dismiss the Third Amended Complaint. The Court dismissed the minor plaintiffs' UCL claims with prejudice, finding that Plaintiffs had not alleged that they had suffered an economic harm. The Court also dismissed with prejudice the adult plaintiffs' UCL claims, finding that they had not identified any conduct by Facebook that would support their claims. And the Court dismissed Julie Wright's claim under the EFTA with prejudice. The Court allowed Plaintiff I.B. and J.W.'s claims for declaratory relief to proceed.

Following the Court's decision on the motion to dismiss the Third Amended Complaint, the Parties engaged in written document discovery, the production of documents, and depositions, including depositions of I.B., J.W., Glynnis Bohannon, Julie Wright, and Steven Wright (J.W.'s father), and three personal and Rule 30(b)(6) depositions of Facebook.

On August 21, 2014, Plaintiffs moved for class certification seeking to certify the class under Rule 23(b)(2). On March 10, 2015, the Court granted in part and denied in part Plaintiffs' motion. The Court certified a class and subclass for declaratory and injunctive relief under Rule 23(b)(2), but denied Plaintiffs' motion to certify a class for restitution or other monetary relief. The certified class and subclass are defined as:

> All Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified ("the Minor Class"); Within the Minor Class is a subclass of Minors from whose Facebook accounts Facebook Credits were purchased. ("the Minor Purchasing Subclass").

On August 25, 2015, the Parties met for a formal, in-person mediation with Hon. Edward A. Infante (Ret.) of JAMS in San Francisco. Hon. Edward A. Infante Declaration ("Infante Declaration"), at ¶ 2. Over the course of that day and in discussions leading up to the mediation, the Parties engaged in productive arms'-length negotiations. Prior to the August 25, 2015, mediation, the parties also exchanged detailed mediation briefs, setting forth their factual and legal positions. With the assistance of Judge Infante, the Parties were able to come to agreement on some general terms regarding benefits for Settlement Class Members during the initial mediation session, but they were unable to agree to all elements of the settlement.

Based on the framework developed at the mediation, the Parties engaged in further negotiations and reached a mutually agreeable resolution, reflected as Exhibit 1 to the declaration of C. Brooks Cutter, filed concurrently with this motion. The Parties were able to reach agreement on the full terms of the settlement, with the exception of Plaintiff's claim for an award of attorneys' fees and expenses. To separately resolve the issue of attorneys' fees and expenses, Plaintiffs are submitting a separate application for fees and costs to the Court, and Facebook has reserved its right to oppose that application.

**B.     The Proposed Settlement**

1.     <u>Injunctive Relief</u>

Pursuant to the terms of the Settlement Agreement, Facebook has agreed to do the following for at least three years from the Final Settlement Date:

2.1     Injunctive Relief for the Benefit of Plaintiffs and the Class: In consideration for the settlement of this Action and the dismissal contemplated herein, Facebook agrees to the following injunctive relief:

(a)     Facebook agrees that its refund practices and policies with respect to U.S. Minors will comply with the California Family Code.

(b)     Facebook agrees to include language in substantially the following form in its Community Payments Terms applicable to U.S. minor users (currently at https://www.facebook.com/payments_terms): **"All funding transactions are final unless required by law."**

   (c) Facebook agrees to include language in substantially the following form in the Developer Payments Terms applicable to U.S. developers (currently at https://developers.facebook.com/policy/payments_terms): **"You acknowledge that transactions with minors may be voidable by law and agree that you may be required to refund amounts paid."**

   (d) Facebook will add to its refund request form for In-App Purchases for U.S. users a checkbox or substantially similar functionality with accompanying text such that users are able to indicate that the In-App Purchases for which they are seeking a refund was made when the user was a minor.

   (e) Facebook will implement a dedicated queue within Facebook to address refund requests in In-App Purchases, made by U.S. Minors subject to verification of minority.  The employees staffing the dedicated queue will receive further training regarding how to analyze and process such refund requests in accordance with applicable law.

   (f) Subject to regulatory approval in certain states, Facebook will include language similar to the following draft proposal in (a) the email receipt for transactions for U.S. Minors and (b) refund confirmation emails sent to U.S. Minors:  **"Please always make sure you have your parent or guardian's consent to use their payment sources."**  Facebook will include an HTML link to the Community Payments Terms in the foregoing email confirmations.

   (g) Facebook will emphasize the following language in the Community Payments Terms, by bolding and putting a box around the text, or by a substantially similar method:

**If you are under the age of eighteen (18), you may use Facebook Payments only with the involvement of your parent or guardian. Make sure you review these Terms with your parent or guardian so that you both understand all of your rights and responsibilities.**

### 2. These Terms Provide Valuable Injunctive Relief to Class Members

This settlement has achieved the overarching goal of this litigation: it recognizes that Facebook must respect minors' right of contract rescission under California law. Now there is no question that purchases by minors on Facebook are subject to rescission if they so choose. This settlement goes beyond merely stating the law, however. The injunctive relief will require Facebook to implement a dedicated queue for such refunds that will simplify the process for minors who wish to exercise this right. The dedicated queue will allow Facebook to teach employees about this kind of refund, thereby minimizing the risk of the refunds being erroneously denied. The injunction also will require Facebook to take steps to emphasize that minors should receive parental permission before using their parents' payment sources, thereby reducing the number of purchases that minors will ultimately wish to rescind.

This settlement also helps to eliminate the specter of massive numbers of class members being forced to proceed through the court system to enforce their disaffirmance rights. As a result of this settlement, class members will have a streamlined alternative in the form of the refund queue that Facebook will create. In addition, the number of minors who will need to seek refunds will be reduced through Facebook's reminder that they should obtain permission before using their parents' payment sources.

### 3. No Class-Wide Release

A notable feature of the Settlement Agreement in this matter is that there is **no class-wide release of any kind.** The only parties releasing any claims and the only parties bound by the Agreement are Facebook, the minor Plaintiffs, and their parents. Other than the representative plaintiffs in this action, no class member's existing, future or potential claim against Facebook will be barred by the proposed settlement.

### 4. Attorneys' Fees and Expenses and Service Award to Plaintiff

The parties have not agreed on the amount of payments for Plaintiff's attorneys' fees and expenses, although Facebook has agreed not to appeal any attorneys' fees and costs awarded by the Court (up to a specified maximum). Class Counsel will also request a service award of $5,000 to each Plaintiff.

## III. APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and risk of prolonged litigation. *See Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*, 30 Cal. 4th 1037, 1054 (2003) (Kennard, J., concurring and dissenting) ("Public policy favoring settlement is especially weighty for class actions.  Settlement of class actions is encouraged precisely because they 'consume substantial judicial resources and present unusually large risks for the litigants.'") (citations omitted); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 n.14 (2006) ("Public policy generally favors the compromise of complex class action litigation.") (citation omitted).  In considering a proposed class action settlement, the Ninth Circuit has "repeatedly noted that 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Allen v. Bedolla*, 787 F.3d 1218, 1223-24 (9th Cir. 2015) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

The district court must determine whether a settlement is fair, adequate, and reasonable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. Cal. 1998).  "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *see also Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011). .  However, "'[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fitness.'" *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Hanlon*, 150 F.3d at 1026).  It should be noted that, as set forth below, because this settlement does not affect the rights of any class members, notice is not required, and because this settlement only binds named class representatives and Facebook, and not absent class members, a later fairness hearing

will not be required.  *Kim v. Space Pencil, Inc.,* No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922, at *12 (N.D. Cal. Nov. 28, 2012).

Applying the eight *Churchill* criteria set forth by the Ninth Circuit, the proposed settlement should be approved.

First, although Plaintiffs believe they have a strong case, Plaintiffs' claims present novel issues of law relating to the interpretation of the California Family Code that could threaten class treatment, limit the claims, or provide a basis for reversal on appeal.  There is little case law interpreting these particular sections of the California Family Code.  This uncertainty in the interpretation of the operative statutes presents significant risk. Infante Decl., at ¶¶ 5-6 (finding Plaintiffs' claims raise "numerous issues not previously litigated in either state or federal court").

Applying the Second and Third *Churchill* factors, continuing to litigate the case presents a substantial risk to Plaintiffs, including a risk of decertification.   The benefits of the settlement to Class Members are confirmed by the risk and delay associated with continued litigation. "'[I]t is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.'"  *Deaver v. Compass Bank*, 2015 U.S. Dist. LEXIS 166484, 17-18 (N.D. Cal. 2015) (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *Crago v. Mitsubishi Electric Corp. (In re Cathode Ray Tube (CRT) Antitrust Litig.)*, 2015 U.S. Dist. LEXIS 170525 (N.D. Cal. 2015) (citing *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)).  Here, there are real and significant risks for plaintiffs if the litigation continues, including the risks that their claims will be dismissed outright or be decertified.  Cutter Decl., ¶ 11; Infante Decl., at ¶¶ 7-9.  Even if Plaintiff survives these complex procedural hurdles, Facebook has asserted a number of substantial defenses on the merits that could result in decertification, summary judgment, or a defense verdict at trial.  *Id*.  For example, Facebook likely would argue at summary judgment that (1) Facebook's existing refund policies and practices provide a process by which minors and their parents may obtain refunds and thus fully comply with Facebook's obligations under the California Family code;

(2) Plaintiffs are not entitled to disaffirm contracts for consumable goods that they have already consumed; (3) Plaintiffs' parents' funding instruments were in the minors' "immediate possession or control" such that their transactions with Facebook are not void under Cal. Fam. Code § 6701(c); (4) the California Family Code does not require Facebook to obtain the express informed consent of a minor's parent or guardian prior to accepting payment from the minor. *Id.*; Infante Decl., at ¶ 8.

Because of these risks, there is a substantial risk that—in the absence of a settlement—the class may recover nothing, despite incurring the high costs and delay engendered by further discovery, motion practice, trial, and appeals. *Id*. This case has been hard fought for nearly three years, and there is every reason to believe that continued litigation will be equally vigorous and demanding. *Id*.

Fourth, Class Members will be receiving substantial benefits they would not have otherwise received. *See e.g*., Cutter Decl., ¶¶ 13-14. Under the terms of the Settlement Agreement, Facebook has agreed to change several procedures and the terms and conditions that govern its transactions with minors. These changes by Facebook are intended to ensure that Facebook's transactions with minors are conducted consistent with the requirements of California law. Retired Judge Infante found the settlement "represents a favorable outcome for Plaintiffs and provides tremendous benefits to the class and to the public." Infante Decl., at ¶ 13. Additionally, though the injunctive relief provided by the settlement benefits all Class Members, the settlement requires no release of any kind from any Class Member other than the representative plaintiffs and their parents.

Fifth, the parties have engaged in extensive written and deposition discovery, and engaged in extensive briefing and argument on Plaintiffs' motion for class certification, and litigated Facebook's unsuccessful attempt at appellate review under Fed. R. Civ. P. 23(f). Cutter Decl., ¶ 6. Class Counsel accordingly are able to make an informed judgment of the strengths and weaknesses of this case with a view to what sort of settlement is appropriate for the Class. *Id.* Since the inception of this case, Plaintiffs conducted substantial investigation and formal discovery directed at: (1) evaluating how Facebook handles transactions with minors; (2) the

1  specific facts underlying the representative Plaintiffs' purchase of Facebook Credits; and (3)
2  identifying and evaluating corrective actions to be undertaken by Facebook to ensure its
3  compliance with the requirements of California law.  Cutter Decl., ¶ 7.  Class Counsel's
4  investigation and formal discovery included depositions of key Facebook witnesses and of
5  several 30(b)(6) representatives for Facebook.  Cutter Decl., ¶ 8.  Class counsel also reviewed
6  tens of thousands of pages of documents produced by Facebook, including Facebook's terms,
7  conditions, and policies and procedures, internal documents relating to the Facebook's review of
8  its procedures in handling Facebook Credit and Payment transactions and refund requests,
9  complaints by users regarding Facebook Credit and Payment transactions and refund requests.
10  *Id.*

11       Sixth, the proposed settlement before the Court is the product of intensive, arm's-length
12  negotiations that took place over several months, between experienced counsel.  Cutter Decl., ¶
13  9.  Plaintiffs' counsel has significant experience in pursuing and settling class actions and
14  defense counsel is similarly experienced in defending class action cases.  The Parties were also
15  assisted by an experienced mediator, Judge Infante, who found the ultimate settlement "bears all
16  the hallmarks of procedural fairness" as it "resulted from fully-informed, arms-length
17  negotiations."  Infante Decl., at ¶ 13. The negotiations were informed by the parties' extensive
18  discovery and investigation of the facts of the case, and rulings from courts on the motions that
19  had been filed to date, including Facebook's successful motions to dismiss and Plaintiffs'
20  successful motion for class certification.  *Id*. at ¶¶ 2-3, 13.   Given the challenges of trying a class
21  action involving legal issues of first impression and unique factual circumstances, and
22  considering the time, expense and risk of further litigation—particularly in light of the tangible,
23  significant benefits Settlement Class Members will receive now—Class Counsel believe the
24  settlement is in the best interest of Class Members and recommend the settlement without
25  hesitation.  Cutter Decl., ¶ 10; Infante Decl., at ¶ 13;  *see In re Omnivision Techs.*, 559 F. Supp.
26  2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.
27  Cal. 1979)) ("'The recommendations of plaintiffs' counsel should be given a presumption of
28  reasonableness.'").

1        Seventh, there is no governmental participant in this case, and thus, this *Churchill* factor
is not applicable and does not impact the evaluation of this settlement. *In re Toys "R" Us-Del.,
Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 455 (C.D. Cal.
2014); *Banks v. Nissan N. Am., Inc.*, No. 11-cv-2022-PJH, 2015 U.S. Dist. LEXIS 160414, at *32
(N.D. Cal. 2015).

   The final *Churchill* factor, "the reaction of the class members of the proposed
settlement," also weighs in favor of approving the settlement. *In re Bluetooth Headset Prods.
Liab. Litig.*, 654 F.3d at 946.  This litigation has been ongoing for over three years.  During that
time, no other related actions have been filed.  Although notice is not being recommended and is
not required, the settlement was filed publicly and has received some press attention.  *See e.g.*,
http://www.mediapost.com/publications/article/265721/facebook-settles-lawsuit-over-childrens-in-game-p.html. As Judge Infante has noted, this settlement "provides tremendous benefits to the
class."  Infante Decl., at ¶ 13.  While "some class members will always be happier with a given
result than others," there is no evidence that any class member objects and no evidence that the
settlement was anything but a significant victory for the class.  *Bedolla*, 787 F.3d at 1223.
Accordingly, this factor also weighs in favor of approving the settlement.  To the extent any class
members object, this settlement agreement does not deter in any way their ability to bring their
own actions.

   Because the proposed Settlement is "fair, reasonable, and adequate" under *Hanlon* and
analysis of all of the *Churchill* factors weigh in favor of approving the settlement, the Court
should grant the Plaintiffs' Consented Motion for Approval of Settlement.

**IV.     DIRECT NOTICE OF THIS MOTION TO THE CLASS IS NOT REQUIRED**

   **A.     Because there is no Class-Wide Release of Claims, Notice is Not Required.**

   Under Rule 23, notice to absent class members in a (b)(2) class is not required, but may
be ordered at the option of the court.  As the Supreme Court recognized in *Wal-Mart Stores, Inc.
v. Dukes*, 131 S. Ct. 2541 (2011), Rule 23 "provides no opportunity for (b)(1) or (b)(2) class
members to opt out, and does not even oblige the District Court to afford them notice of the
action."  *Id.* at 2558–59.  Thus, Rule 23(b)(2) "does not require that class members be given

notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory." *Id.* at 2558; *see also Lilly* No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015) (finding that notice was unnecessary for a (b)(2) settlement because "even if notified of the settlement, the settlement class would not have the right to opt out of the injunctive settlement and the settlement does not release the monetary claims of class members"); *Green v. American Express Co.,* 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (explaining that "some courts have adopted a functional interpretation of Rule 23(e) under which notice is not uniformly required" when, for example, "the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Jermyn v. Best Buy Stores, L.P.,* No. 08 CIV 214 CM, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release class members' monetary claims, notice to class members is not required."); *Foti v. NCO Fin. Sys., Inc.,* No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511, at *14 (S.D.N.Y. Feb. 19, 2008) ("Because the Agreement explicitly preserves the individual rights of class members to pursue statutory damages against the defendant, and because the relief in this Rule 23(b)(2) class action is injunctive in nature, notice was not required."); *see also* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (b)(2), the court *may* direct appropriate notice to the class." (emphasis added)); 2 McLaughlin on Class Action § 6:20 ("[a]lthough the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or compromise be provided to class members in all class actions, many courts have adopted a 'functional interpretation of the Rule that permits courts to approve certain settlements without any notice to class members-even in classes certified under Rule 23(b)(3). This approach is sound.").

Courts that do not require notice to the class "recognize[] that when notice to class members would not serve the purpose of ensuring that the settlement is fair but would, in fact, jeopardize the settlement, that the court may opt to forego notice." *Green*, 200 F.R.D. at 212. The "key question in determining whether notice is required is whether the rights of absent class members were compromised in any way" and, "where the class members effectively retain their

rights to sue for any damages they may have incurred from the alleged practice, then there is no prejudice to the class members" from a settlement agreement that does not give notice. *Jermyn*, 2012 WL 2505644, at *12 ("[c]ourts have held that no notice is required under several circumstances, including, relevant to this case, when the settlement provides for only injunctive relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class[.]") (citations and quotations omitted); *Lambeth v. Advantage Financial Servs., LLC*, 1:15-cv-33-BLW, 2015 U.S. Dist. LEXIS 79009, *7 (D. Idaho June 16, 2015) (same).

Courts in the Ninth Circuit do not require notice when the only remedy sought is injunctive relief that does not bind the absent class members. *See, e.g., Grant v. Capital Mgmt. Servs., L.P,* No. 15-cv-04348-MEJ, 2013 U.S. Dist. LEXIS 174190 *15 (N.D. Cal. December 11, 2013); *Kim v. Space Pencil, Inc.,* No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922, at *11-12 (N.D. Cal. Nov. 28, 2012); *Lilly v. Jamba Juice Co.,* No. 13-CV-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015). For example, in *Lilly*, the court ruled that "class notice is not necessary" under Rule 23(e) where, "the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members" 2015 WL 1248027 at *9 (citing *Jermyn*, 2012 WL 2505644, at *12).

Here, the terms of the Settlement Agreement actually go further than what was found to eliminate the necessity of class notice in *Lilly and Jeremyn* in which class members released injunctive, but not monetary claims, against the respective defendants. *See Lilly*, 2015 WL 1248027, at *8-9; *Jermyn*, 2012 WL 2505644, at *12. The Settlement Agreement here contains *no* release of *any* claim by absent class members at all. The rights of the absent class members are thus not "compromised in any way" and they "retain their rights to sue for any damages they may have incurred from the alleged practice," *Jermyn*, 2012 WL 2505644, at *12, as well as their rights to sue for injunctive or declaratory relief. Further, as in *Jermyn*, because the instant settlement provides for only injunctive relief, there is no prejudice to absent class members, and there is "no potential for the named plaintiffs to benefit from the settlement at the expense of the interests of the rest of the class." *Id.*

 *///*

Thus, under the circumstances of the settlement described herein, the Court need not and should not order notice of the Settlement Agreement to the class.  Doing so would frustrate the Parties' efforts to resolve the litigation without providing any tangible benefit to absentee class members who are not bound by a class release.

## V.     CONCLUSION

Plaintiff requests that the Court grant approve of the proposed settlement and enter the accompanying proposed order.

DATED:  January 15, 2016                        Respectfully submitted,


                                                By:   /s/ C. Brooks Cutter


                                                C. Brooks Cutter, SBN 121407
                                                John R. Parker, Jr., SBN 257761
                                                CUTTER LAW, P.C.
                                                401 Watt Avenue
                                                Sacramento, CA 95864
                                                Telephone: (916) 290-9400
                                                Facsimile: (916) 558-9330
                                                Emails: bcutter@cutterlaw.com /
                                                jparker@cutterlaw.com


                                                Daniel B. Edelman, *pro hac vice*
                                                Katz, Marshall & Banks LLP
                                                1718 Connecticut Avenue NW, Suite 600
                                                Washington, DC 20009
                                                Telephone: (202) 299-1140
                                                Email: edelman@kmblegal.com

                                                Benjamin Edelman, *pro hac vice*
                                                169 Walnut Street
                                                Brookline, MA 02445
                                                Telephone: (617) 359-3360
                                                Email: ben@benedelman.org

                                                *Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

By: /s/John R. Parker, Jr.
John R. Parker, Jr.