C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
CUTTER LAW, P.C.
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Facsimile: (916) 558-9330
Emails: bcutter@cutterlaw.com / jparker@cutterlaw.com

Daniel B. Edelman, *pro hac vice*
Katz, Marshall & Banks LLP
1718 Connecticut Avenue NW, Suite 600
Washington, DC 20009
Telephone: (202) 299-1140
Email: edelman@kmblegal.com

Benjamin Edelman, *pro hac vice*
169 Walnut Street
Brookline, MA 02445
Telephone: (617) 359-3360
Email: ben@benedelman.org

Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>                    Defendant. | Case No. CV 12-01894-BLF<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR REPRESENTATIVE PLAINTIFFS; CERTIFICATE OF SERVICE**<br><br>Date: March 17, 2016<br>Time: 9:00 AM<br>Court Room 3, 5th Floor<br><br>Hon.: Beth Labson Freeman, United States District Court Judge for the Northern District of California |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................3

    A. The Attorneys' Fees Requested by Class Counsel Are Reasonable Under the Lodestar-Times-Multiplier Method.. ........................................3

        1. Class Counsel's Exceptional Result is a Proper Basis for Awarding Fees Pursuant to Section 1021.5. ...................................3

        2. Application of the Lodestar Method. ..............................................6

          a. Class Counsel's Request is based on a Reasonable Calculation of Hours at Reasonable Rates...................................6

          b. Class Counsel's Requested Range Lodestar Multiplier is Eminently Reasonable and Supported by Precedent.. ................9

    B. Class Counsel's Request For Reimbursement Of Expenses Is Reasonable and Amply Supported by the Attached Documentation.........13

    C. The Requested Incentive Awards are Presumptively Reasonable.............13

III. CONCLUSION....................................................................................................15

i

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS
CASE NO. CV 12-01894 BLF

**Cases**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216–17 (Cal. App. 1st Dist. 2008) ..... 11

*Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) ................................................................... 7

*Blum v. Stenson*, 465 U.S. 886, 897 (1984) ................................................................................. 5

*Bond v. Ferguson*, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. 2011) ........................................... 10

*Buccellato v. AT&T Operations, Inc.*, No. C10-00463, 2011 U.S. Dist. LEXIS 85699, at *6 (N.D. Cal. 2011).................................................................................................................................. 13

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) .......................................... 7

*Chao v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 124575, at *12 (N.D. Cal. 2014) .... 14

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002).. 9

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565-66 (2004) ...................................... 4, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) .............................................. 5, 9

*Hensley v. Eckerhart*  461 U.S. 424, 440 (1983) ......................................................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-942 (9th Cir. 2011) ................... 9

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005).............................. 10

*In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. 2015)........ 10

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015)............ 7, 10, 13, 14

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 U.S. Dist. LEXIS 11353, *36-39 (N.D. Cal. 2015) ................................................................................................ 7

*Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*, 2009 U.S. Dist. LEXIS 101586, at *13-15 (N.D. Cal. 2009).................................................................................................................. 14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)........................................... 5, 9

*Kethcum v. Moses*, 24 Cal. 4th 1122, 1140 (2001) ....................................................................... 7

*Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 947 (Cal. App. 1st Dist. 2004)............. 6, 11

*Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451, at *12-13 (N.D. Cal. 2015) .................. 6

*Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451, at *13................................................. 10

*Macdonald v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 151277, at *9-13 (N.D. Cal. 2015)..... 4, 5

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) .................................. 3

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1288 (1987) ................................................................. 3

*Muniz v. UPS*, 738 F.3d 214, 224 (9th Cir. 2013) .......................................................... 11, 12

*Petersen v. Lowe's Hiw, Inc.*, 2012 U.S. Dist. LEXIS 123018 a *6 (N.D. Cal. Aug. 24, 2012).... 3

*Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal. 4th 1018, 1026 (2011) ................................ 3

*Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. Cal. 2007) ............ 4, 12

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ............................................................ 14

*Steiner v. Am. Broadcasting Co, Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ......................... 10

*Thorne v. El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)................................................. 11, 12

*Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, at *19-20 (N.D. Cal. 2012) ................................................................................................................................. 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043................................................................................ 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)................................................ 3

*Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979) ................. 3, 12

*Woodland Hills Residents Assn., Inc.*, 23 Cal.3d 939..................................................................... 4

*Wysinger v. Automobile Club of Southern California*, Cal. App. 4th 413, 430 (Cal. App. 2d Dist. 2007) ................................................................................................................................. 6

*Z. D. v. Group Health Coop.*, 2014 U.S. Dist. LEXIS 14376, at *4-7 (W.D. Wash. 2014) ......... 12

**Statutes**

California Code of Civil Procedure § 1021.5 ..................................................................... 8, 9, 10

Federal Rule of Civil Procedure 23(h)............................................................................................ 7

## I. INTRODUCTION

Through the diligent efforts of Cutter Law P.C., Katz, Marshall & Banks LLP, and Benjamin Edelman ("Class Counsel"), Plaintiffs I.B., by and through his Guardian ad Litem Glynnis Bohannon, and J.W., by and through his Guardian ad Litem Steven Wright ("Plaintiffs"), and Defendant Facebook, Inc. ("Defendant" or "Facebook," and together with Plaintiffs, the "Parties" or singularly "Party") reached a mutually agreeable Class Action Settlement ("the Settlement Agreement") (Exhibit 1 to the declaration C. Brooks Cutter filed in support of the joint motion for approval of the settlement) providing injunctive relief to Plaintiffs and millions of class members ("the Class"), defined as "all Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified."

As part of the Settlement Agreement, millions of children will be provided with streamlined procedures for seeking refunds from Facebook, enabling them to assert their rights of disaffirmance, without requiring that they resort to litigation. The Settlement Agreement will also allow Plaintiffs, the class members, and all other minor users of Facebook the opportunity to make future purchases on Facebook while properly apprised of and protected by the California Family Code, ensuring that their rights as minors are protected.  Notably, none of these benefits are contingent on any kind of class-wide release.

These benefits for the class were achieved after years of intensive efforts by Class Counsel to investigate, develop, prosecute, and ultimately resolve this complex class action litigation. Cutter Law, P.C. and Benjamin Edelman partnered together to investigate potential claims for Plaintiffs and engage in extensive legal research into the underlying legal issues.  This case presented substantial legal complexities and was fraught with risk from the outset of the litigation.  Once the potential scope of the case became clear, Plaintiffs' counsel reached out to Daniel Edelman, Esq., a former U.S. Supreme Court Clerk with more than 40 years of experience, for assistance, guidance and strategic depth, in order to best serve the interests of the potential class.  Daniel Edelman and his firm, Katz Marshall & Banks, LLP agreed to assist Plaintiffs' Counsel.  Class Counsel avoided duplication of efforts and promoted efficiency by

assigning primary responsibility for the various tasks involved in prosecuting this action.

Once the matter was initiated, Plaintiffs' claims were challenged by multiple motions to dismiss, vigorous discovery, and a fiercely contested motion for class certification that was ultimately successful. Plaintiffs also mounted a successful and time-consuming, opposition to Defendant's Rule 23(f) appeal. Class Counsel vigorously pursued the class members' claims at every stage of this litigation.

Class Counsel approached the resolution of this case with the same intensity that they investigated and litigated it. With the assistance of Hon. Edward A. Infante (Ret.) of JAMS in San Francisco and the unwavering efforts of Class Counsel, who had the requisite skill and expertise to effectively engage in the negotiations, Plaintiffs and the Class achieved the goals that motivated this litigation from the outset.

As compensation for the efforts expended to achieve this excellent recovery, Class Counsel are requesting a total amount of $1.25 million for reasonable attorneys' fees and $29,115.66 as reimbursement of necessary expenses and costs. Class Counsel does not seek fees for the work of paralegals or law clerks. They have further determined that a ten percent reduction in time associated with preparing the pleadings and opposing Facebook's successive motions to dismiss is warranted given the unsuccessful claims that were involved in this litigation at an earlier stage. As described below, Class Counsel incurred significant expenses and spent over 2000 hours litigating and prosecuting this case – time and expenses that would not be compensated or reimbursed unless Class Counsel had achieved significant relief for the Class. Because the prosecution of this action was undertaken by Class Counsel on an entirely contingent basis and achieved such a significant result, a multiplier in a range of 1.2 to 1.5 should apply to Class Counsel's lodestar amount, an adjustment that is consistent with similar cases in this district. Class Counsel's requested fee is fair and reasonable under these circumstances.

In addition, Class Counsel requests incentive awards for each of the named Plaintiffs in this action. Their efforts throughout this litigation were critical to its ultimate success. Accordingly, Class Counsel believe awards of $5000 for I.B. and J.W. each are warranted.

For the reasons described below, Class Counsel's motion for attorneys' fees, reimbursement of expenses and costs, and incentive awards for Plaintiffs should be granted.

## II.     ARGUMENT

### A. The Attorneys' Fees Requested by Class Counsel Are Reasonable Under the Lodestar-Times-Multiplier Method.

#### 1. Class Counsel's Exceptional Result is a Proper Basis for Awarding Fees Pursuant to Section 1021.5

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."  Fed. R. Civ. P. 23(h).  Rule 23 does not specify how fees should be calculated; the availability and amount of a fee award are substantive issues of state law under *Erie*.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Petersen v. Lowe's Hiw, Inc.*, 2012 U.S. Dist. LEXIS 123018 a *6 (N.D. Cal. Aug. 24, 2012).  The Supreme Court of California has found that California Code of Civil Procedure § 1021.5 ("§1021.5") authorizes an award of fees when:

> (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . . ," and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . .

*Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal. 4th 1018, 1026 (2011).  Section 1021.5 is a codification of the private attorney general doctrine of attorney fees:

> [T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1288 (1987) (quoting *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979)).

3

Courts have taken a "broad, pragmatic view of what constitutes a 'successful party'" in this context. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565-66 (2004). In fact, an award of attorney's fees may be justified "even when plaintiff's legal action does not result in a favorable final judgment." *Id.* "It is also clear that the procedural device by which a plaintiff seeks to enforce an important right is not determinative of his or her entitlement to attorney fees under section 1021.5." *Id.* A plaintiff can be considered successful "'if they succeed on any significant issue in the litigation that achieves some of the benefit they sought in bringing suit.'" *Macdonald v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 151277, at *9-13 (N.D. Cal. 2015) (quoting *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection*, 187 Cal. App. 4th 376, 382 (Cal. App. 5th Dist. 2010)). In determining whether a given plaintiff is to be considered a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." *Graham*, 34 Cal. 4th at 565-66 (internal quotations and citations omitted).

Section 1021.5 explicitly recognizes that "the fact that the chief benefits afforded by an action have no readily ascertainable economic or monetary value in no way forecloses an attorney fee award under the statute. This language recognizes that in many cases the important gains or contributions rendered by public interest litigation will be reflected in nonmonetary advances." *Woodland Hills Residents Assn., Inc.*, 23 Cal.3d at 939. The Ninth Circuit has held that "[u]nder California law, '[i]t is undisputed that relief obtained through a settlement may qualify a plaintiff as the prevailing party.'" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. Cal. 2007) (quoting *Lyons v. Chinese Hospital Assn.*, 136 Cal. App. 4th 1331, 1345 (2006)) (finding the injunctive relief achieved was sufficient to establish plaintiff as a prevailing party).

Based on this review of the relevant case law, it is clear that Class Counsel is entitled to fees under §1021.5. Establishing the rights of disaffirmance of Facebook's minor users and conforming the company's practices to the protections of the California Family Code undoubtedly vindicates "an important right affecting the public" and confers the requisite "significant benefit" not only on a "large class of persons" but on the general public. Cal. Code

4

Civ. Proc. § 1021.5.  Courts have explicitly held that enforcement of California laws aimed at protecting consumers qualifies as "an important right affecting the public interest."  *See Macdonald*, 2015 U.S. Dist. LEXIS 151277, at *23.  Furthermore, the Settlement Agreement achieved by Class Counsel ensures additional measures will be put into place to protect the rights of millions of children across the nation, an outcome that is surely within the scope of §1021.5.  These benefits are provided without requiring a class-wide release or diminishing the rights of any class members other than the representative plaintiffs.

The overarching goal of Plaintiffs and Class Counsel from the initiation of this litigation has been to enforce the consumer protections afforded minors under California law.  The Settlement Agreement explicitly achieves this goal through Facebook's agreement to reform its policies and procedures, addressing the very issues that brought about this litigation.  Accordingly, the requirements of §1021.5 have been met; given that the motivating agenda underlying this litigation from the outset has been accomplished, it can certainly be said that Class Counsel has achieved much more than just "some of the benefit" sought.  *See Macdonald v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 151277, at *9-13.

The next issue is determining the proper method for calculating an award of fees under the present circumstances.  The Ninth Circuit has found that when calculating appropriate attorneys' fees in injunctive relief class actions, such as this, "courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  "The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate."  *Hanlon*, 150 F.3d at 1029 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  "The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.  *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  "The party seeking fees bears the burden of providing documentation and other evidence, including their own affidavits or rates counsel has received in comparable cases, that their hourly rate is consistent with similarly

5

experienced attorneys in the relevant community." *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451, at *12-13 (N.D. Cal. 2015).

### 2. Application of the Lodestar Method

#### a. Class Counsel's Request is based on a Reasonable Calculation of Hours at Reasonable Rates

Class Counsel have dedicated a total of 2183.75 hours to this litigation. Declaration of C. Brooks Cutter in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards ("Motion") ("Cutter Decl."), at ¶¶ 19, 21, 25, 29, and Exhibit E; Declaration of Daniel Edelman in Support of the Motion ("D. Edelman Decl."), at ¶¶ 4-8; Declaration of Benjamin Edelman in Support of the Motion ("B. Edelman Decl."), at ¶ 7; Declaration of Audra Ibarra in Support of the Motion ("Ibarra Decl."), at ¶ 10. Although crucial to the prosecution of this litigation, Class Counsel have cut and do not seek reimbursement for any work expended in this matter by law clerks and paralegals. Cutter Decl., at ¶ 20; D. Edelman Decl., at ¶¶ 2, 4. In addition, recognizing the lack of success on certain claims earlier involved in this litigation, Class Counsel have cut ten percent of the time counsel spent preparing the pleadings and opposing Facebook's motions to dismiss, resulting in a total of 1962.8 hours.[1] Cutter Decl., at ¶¶ 24-25, 29, and Exhibit E; D. Edelman Decl., at ¶ 9. The range of hourly rates included in Class Counsel's lodestar is between $150 and $800. Cutter Decl., at ¶¶ 22-23, 29, and Exhibit E; D. Edelman Decl., at ¶¶ 10-12; B. Edelman Decl., at ¶¶ 7-8; Ibarra Decl., at ¶¶ 7,

---

[1] Lack of success in some claims does not automatically call for a reduction, however. *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 947 (Cal. App. 1st Dist. 2004) (1.5 multiplier appropriate when plaintiff sought restitution, but only received injunctive relief). *Wysinger v. Automobile Club of Southern California*, provides a useful framework for evaluating fee decreases.157 Cal. App. 4th 413, 430 (Cal. App. 2d Dist. 2007). Drawing on *Hensley v. Eckerhart* 461 U.S. 424, 440 (1983), the court recognized that while it could be appropriate to exclude hours spent on unsuccessful claims, an attorney who obtains excellent results for his client should be entitled to a fully compensatory fee, even if some claims are unsuccessful. *Id.* at 430–31. It also recognized that time spent on unsuccessful claims intertwined with successful ones should be compensated. *Id.* While some claims pursued earlier in the litigation may not be closely linked with the successful ones, the other claims are inextricably connected. Courts must be cautious in reducing fees in these situations because "reduc[ing] the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the costs of enforcing" the plaintiff's rights." *Id.* Here, nearly all of Plaintiffs' claims were necessarily intertwined with their successful pursuit of relief under the California Family Code.

9. Multiplying the reasonable amount of hours being billed by the reasonable rates requested, Class Counsel's total lodestar amounts to $1,155,499. Cutter Decl., at ¶ 29 and Exhibit E.

Courts may determine the reasonableness of counsels' hourly rate in part by examining "the prevailing hourly rate in the area for comparable services." *Kethcum v. Moses*, 24 Cal. 4th 1122, 1140 (2001). The Ninth Circuit has found that the "established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)); *see also In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 U.S. Dist. LEXIS 11353, *36-39 (N.D. Cal. 2015); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 U.S. Dist. LEXIS 38667, *51-54 (N.D. Cal. 2011). The relevant community for analyzing reasonable hourly rates "is the forum in which the district court sits," here the Northern District of California. *Camacho*, 523 F.3d at 979.

One Northern District court recently addressed the issue of prevailing rates in the community in another class action suit against a social networking site. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015). There, the court found that "[i]n the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'" *Id.* (quoting *In re Magsafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353, *37). These numbers were formulated based on a collection and analysis of similar cases in the Northern District by another federal court in 2015. *In re Magsafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353, at *37.

The range of rates submitted by Plaintiffs are all well within this presumptively reasonable range. First, although courts have found it reasonable and fair to provide reimbursement for the work of paralegals and litigation support staff at rates of $150 to $240, Class Counsel does not seek any compensation for their work on this matter. Cutter Decl., at ¶ 20; D. Edelman Decl., at ¶¶ 2, 4. In fact, Class Counsel only seeks reimbursement for the work of its attorneys and primarily its experienced and well-respected partners. The rates charged by

7

1. these partners ranges from $525-800, well within the range found to be reasonable by other courts in this district. Cutter Decl., at ¶¶ 20-23, and Exhibit E; D. Edelman Decl., at ¶¶ 10-12; B. Edelman Decl., at ¶¶ 7-8; Ibarra Decl., at ¶ 7. The reasonableness of these rates is further supported by Class Counsel's significant experience and qualifications for litigating the complex issues and claims present in this case. Cutter Decl., at ¶¶ 3-5, 21-23, and Exhibits A-B; D. Edelman Decl., at ¶¶ 1, 10-12, and Exhibits A-B; B. Edelman Decl., ¶¶ 2-3, 8, and Exhibit A; Ibarra Decl., at ¶¶ 1-6, and Exhibit A. Furthermore, the rate charged by the two associates on the matter is only $150, well below the range for associates found to be reasonable by other courts in this district. Cutter Decl., at ¶ 23. Class Counsel possess decades of experience in class action litigation as well as specific knowledge and particular expertise related to class action litigation. Indeed, Class Counsel include attorneys and firms with national prominence and with reputations as attorneys who zealously pursue meritorious cases through trial and appeals. Because of their extensive knowledge and experience, Class Counsel were able to litigate this case efficiently, to grapple with the numerous complicated issues that this case presented, and, ultimately, to achieve an outstanding recovery for the benefit of the Class.

Moreover, Class Counsel's hours are reasonable in light of the extensive work involved in investigating, developing, litigating, and resolving the unique and complex issues underlying this litigation. Cutter Decl., at ¶¶ 6-19; D. Edelman Decl., at ¶¶ 2-9; B. Edelman Decl., ¶¶ 5-6; Ibarra Decl., at ¶¶ 8, 10. The work included exhaustive research on each and every legal issue relevant to the case; extensive legal drafting; thorough written discovery; numerous depositions; and the review and analysis of thousands of pages of documents and records produced by Facebook in discovery. Moreover, Plaintiffs have battled through extensive motion practice including successive motions to dismiss, a fiercely contested and ultimately successful motion for class certification, and a Rule 23(f) appeal.

Most importantly, the excellent end result of this litigation fully supports the rates and hours submitted by Class Counsel. The Settlement Agreement diligently negotiated by Class Counsel ensures that millions of children in this country will now have the full protections afforded by California law when making purchases of Facebook Credits or Payments. Class

Counsel is further responsible for the creation of streamlined, clear channels through which Plaintiffs, the class members, and other future minor users can now seek vindication of their rights under California law and request refunds.

For the aforementioned reasons, Class Counsel's base lodestar is reasonable and appropriate.

### b. Class Counsel's Requested Range Lodestar Multiplier is Eminently Reasonable and Supported by Precedent

As discussed above, the Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-942 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1029). [2] "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.

> "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." This provides the "necessary incentive" for attorneys to bring actions to protect individual rights and to enforce public policies.

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002) (citations omitted). Federal courts should consider the length of the case and the risks inherent in

---

[2] The Ninth Circuit continues to rely on the factors first articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) for analyzing reasonable attorneys' fees:
> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

9

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS
CASE NO. CV 12-01894 BLF

the specific litigation when considering the merits of a proposed multiplier. *In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. 2015) (citing the "years of litigation" and assumption of a "risk of nonpayment" as supporting a positive multiplier).

In similar litigation, federal courts in California continue to consider risk as an important factor in deciding whether adjustments to the proposed lodestar are appropriate. *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 591; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) (finding support for counsel's requested fees in the fact that "Plaintiffs' counsel proceeded entirely on contingency basis, while paying for all expenses incurred" and without any "guarantee of any recovery", and thus, "subjected to considerable risk of no compensation for time or no reimbursement for expenses"); *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451, at *13 (recent Northern District case to consider risk of nonpayment as a significant factor in determining a proper multiplier).

Class Counsel has born the entire cost of this litigation thus far and has taken the case on a purely contingent basis. Cutter Decl., at ¶ 6; B. Edelman Decl., ¶ 6; Ibarra Decl., at ¶ 9.  For over three years, Class Counsel has had to litigate this case without any guarantee of remuneration, and had to turn down other remunerative work because of the resources dedicated to prosecuting this matter.  They now submit that such a risk, joined with their exceptional lawyering and significant outcome as detailed above, should be rewarded with a multiplier in a range of 1.2 to 1.5.  This multiplier is well within the range of those approved for attorneys' fees in class actions in which Class Counsel has been involved in the past.  Cutter Decl., at Exhibits C-D (C. Brooks Cutter awarded multipliers of 2.15 and 2.64); D. Edelman Decl., at ¶ 12. Indeed, several courts in this Circuit have awarded multipliers in the range of up to 3.65, and even higher. *See, e.g., Steiner v. Am. Broadcasting Co, Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving a multiplier of 6.85); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (finding no abuse of discretion in awarding a multiplier of 3.65 given the duration and complexity of the litigation and the risk of nonpayment); *Bond v. Ferguson*, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. 2011) (awarding a multiplier of 1.75). In *Vizcaino*, the court determined that a majority of the cases it examined had fee multipliers in the 1.5-3.0 range.  290 F.3d at 1051 n. 6.  California

state court cases support a fee multiplier of at least 1.4 as well. In *Amaral v. Cintas Corp. No. 2*, the court upheld a 1.65 multiplier because the case raised significant issues of first impression. 163 Cal. App. 4th 1157, 1216–17 (Cal. App. 1st Dist. 2008). Similarly, in *Krumme v. Mercury Ins. Co.*, a 1.5 multiplier was upheld when the attorneys failed to obtain restitution, but did obtain injunctive relief. 123 Cal. App. 4th 924, 947 (Cal. App. 1st Dist. 2004).

Class Counsel were duty-bound to dedicate the resources necessary to prosecute this case. Class Counsel had to forego work on less risky litigation with more certain fees in order to spend the past three years fully investigating, prosecuting, and negotiating to a substantially successful result, this litigation. Class Counsel contend this inherently risky but ultimately successful pursuit warrants the multiplier requested here. Given the terms of the Settlement Agreement, negotiated and agreed to by the parties, Class Counsel requests only $1.25 million in fees, a result that is easily reached or exceeded with a range of multipliers up to 1.5, even if the Court were to decide to cut additional time from Class Counsel's lodestar.

Facebook may argue that certain setbacks faced by Plaintiffs in this litigation justify reducing the award of attorneys' fees. While various claims originally brought by Plaintiffs were previously dismissed and the Court ultimately did not certify a class for restitution, a brief analysis of the relevant case law and the attached records will show that Class Counsel has adequately addressed any legitimate concerns.

Both federal and state courts in California require a trial court to "adjust a lodestar award to account for time spent *exclusively* on an unsuccessful claim." *Muniz v. UPS*, 738 F.3d 214, 224 (9th Cir. 2013) (emphasis added). Therefore, courts caution that "before hours may be deducted specifically for unsuccessful claims, the claims must be suitable for entirely separate lawsuits. . . . They must be distinct in both fact and law." *Id.* (internal citations omitted). When unsuccessful and successful claims are related, the Court must still evaluate the significance of the overall relief in relation to the hours reasonably expended on the litigation. *Thorne v. El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). "If unsuccessful and successful claims are related by a common core of facts or related legal theories and the plaintiff obtained excellent results, full compensation may be appropriate." *Z. D. v. Group Health Coop.*, 2014 U.S. Dist.

LEXIS 14376, at *4-7 (W.D. Wash. 2014) (citing *Thorne*, 802 F.2d at 1141). The Ninth Circuit has further said that, in order to deduct time, "the court must find that the time deducted did not aid in proving the successful claims." *Muniz*, 738 F.3d at 224.

Here, Class Counsel has proactively parsed its records to submit only the time it feels was necessary for obtaining the ultimate settlement. As seen in the attached materials, Class Counsel have deducted ten percent of their time spent preparing pleadings and opposing Facebook's motions to dismiss to account for the unsuccessful claims involved in the early parts of this litigation. Cutter Decl., at ¶¶ 24-25, 29; D. Edelman Decl., at ¶ 9. The attached records show that an overwhelming majority of the work accomplished and billed in this litigation occurred after the Court's order on Facebook's last motion to dismiss. Depositions, written discovery, class certification, the Rule 23(f) motion, trial preparation, and settlement and mediation all occurred after the unsuccessful claims were dismissed. All of that work was necessary to advance this case toward the post-certification class Settlement Agreement presently before the Court.

Class Counsel has achieved a result that will vindicate and proactively protect the rights of millions of children across the nation. Courts have made clear that "in many cases the important gains or contributions rendered by public interest litigation will be reflected in nonmonetary advances" such as the case here; and the benefits of injunctive relief should not be understated. *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d at 939; *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007). Ultimately, it is the benefit bestowed on the Class and the general public that should be the focus in evaluating just how significant Class Counsel's work has been in this litigation, rather than the evolving form it took from the initiation of suit to settlement. In determining the level of success of a plaintiff, "the critical fact is the impact of the action, not the manner of its resolution." *Graham*, 34 Cal. 4th at 565-566 (internal quotations and citations omitted). Class Counsel's efforts have resulted in the creation of streamlined procedures by which members of the Class may seek refunds individually. Furthermore, it was only after Plaintiffs filed the original complaint in this case that Facebook imposed upon its third-party app developers the requirement that they

acknowledge transactions with minors may be voidable and developers had to indemnify Facebook in the event any transaction with a minor is voided.  Similarly, Facebook's amendment to its Community Payments Terms, adding the provision "All funding transactions are final unless required by law," only occurred after this lawsuit was initiated. These are terms of the Settlement, but the changes happened only after Plaintiffs challenged Facebook's compliance with the California Family Code as to the right of minors to disaffirm transactions.

Therefore, Class Counsel believe that their requested attorneys' fees of $1.25 million are fully justified, eminently reasonable, and deserving of final approval.

### B. Class Counsel's Request For Reimbursement Of Expenses Is Reasonable and Amply Supported by the Attached Documentation

In total, as set forth in the declarations of counsel submitted to the Court, Class Counsel have incurred a total of $29,115.66 in unreimbursed expenses and costs prosecuting this case on behalf of Plaintiffs and the Class.  Cutter Decl., at ¶¶ 26-29, 31 and Exhibit E; D. Edelman Decl., at ¶ 14. Over the past four years developing, prosecuting, and negotiating the resolution to this litigation, Class Counsel has incurred substantial costs including legal and factual research; travel for participation in settlement discussions and to otherwise prosecute these cases; postage and printing costs; transcript and court reporter fees; filing fees and other court costs; and the services of the mediator.

In light of the significant expenses Class Counsel have had to incur to bring this case to its current settlement posture, Class Counsel's request for reimbursement of costs and expenses is eminently reasonable. All of these costs have been adequately documented by Class Counsel and were "incurred for the benefit of the Class." *Buccellato v. AT&T Operations, Inc.*, No. C10-00463, 2011 U.S. Dist. LEXIS 85699, at *6 (N.D. Cal. 2011).  For these reasons, Class Counsel request that the Court approve reimbursement of $29,115.66 for costs and expenses.

### C. The Requested Incentive Awards Are Presumptively Reasonable

Plaintiffs named in a successful class action are eligible for reasonable incentive payments. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 591-592.  "To determine the appropriateness of incentive awards a district court should use 'relevant factors includ[ing] the

13

actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

    Both Plaintiffs have devoted a significant amount of time and energy over the past three years pursuing this case for the benefit of not only themselves, but millions of others. Cutter Decl., at ¶ 32; Declaration of I.B. in support of the Motion; Declaration of J.W. in support of the Motion; Declaration of Glynnis Bohannon in support of the Motion; Declaration of Steven Wright in support of the Motion. The Representative Plaintiffs and their Guardians ad Litem have worked with counsel in responding to written discovery requests, preparing declarations, preparing for and sitting for depositions, and meeting and conferring with counsel as necessary throughout this case. G. Bohannan Decl., at ¶¶ 3-9, I.B. Decl., at ¶¶ 3-7, S. Wright Decl. at ¶¶ 3-7, and J.W. Decl. at ¶¶ 3-6. The Representative Plaintiffs, moreover, unlike the rest of the Class, have released all their related claims against Facebook. Accordingly, Class Counsel ask for awards of $5000 to each of the minor Representative Plaintiffs. They contend that such awards entirely reasonable given the critical roles they played in bringing about the significant result obtained in this litigation. Furthermore, courts in the Northern District of California have repeatedly found that an incentive award of $5000 is presumptively reasonable. *See Chao v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 124575, at *12 (N.D. Cal. 2014) (acknowledging that a $5000 incentive award is presumptively reasonable, but leaving open the possibility that with proper documentation, Plaintiffs could be granted their requested $7500 incentive award); *Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*, 2009 U.S. Dist. LEXIS 101586, at *13-15 (N.D. Cal. 2009) (granting plaintiff $7500 based on above-average effort in assisting counsel, above the $5000 standard); *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, at *19-20 (N.D. Cal. 2012) (finding a generous award of $10,000 was not unreasonable).

    In *In re LinkedIn User Privacy Litig.*, the court awarded a named plaintiff an incentive award of $5000 despite the fact that she only joined the litigation after it had substantially

progressed and after a motion to dismiss was filed, no written discovery was ever served on her, she did not need to respond to any discovery, she was not deposed, and she did not attend any court hearing or settlement conference. 309 F.R.D. at 591-592.  Here, in contrast to the plaintiff in *In re LinkedIn User Privacy Litig.*, Representative Plaintiffs were closely involved with this litigation from start to finish, addressing the needs of the case for over three years. Cutter Decl., at ¶ 32; I.B. Decl.; J.W. Decl.  Given their significant role in bringing this litigation to a successful conclusion, Class Counsel contends that a presumptively reasonable incentive award of $5000 to each is entirely appropriate.

### III.  CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that this Court grant Plaintiffs' request for attorneys' fees of $1.25 million, reimbursement of $29,115.66 in costs and expenses, and incentive awards of $5000 for each of the named Plaintiffs.

DATED:  January 15, 2016                    Respectfully submitted,

                                                    KERSHAW, CUTTER & RATINOFF, LLP

                                          By:    /s/ John R. Parker, Jr.
                                                    John R. Parker, Jr.

                                                    Daniel B. Edelman
                                                    Katz, Marshall & Banks LLP
                                                    1718 Connecticut Avenue NW, Suite 600
                                                    Washington, DC 20009
                                                    Telephone: (202) 299-1140
                                                    Email: edelman@kmblegal.com

                                                    Benjamin Edelman
                                                    169 Walnut Street
                                                    Brookline, MA 02445
                                                    Telephone: (617) 359-3360
                                                    Email: ben@benedelman.org

                                                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

By: /s/John R. Parker, Jr.

John R. Parker, Jr.