C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
CUTTER LAW, P.C.
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Facsimile: (916) 558-9330
Emails: bcutter@cutterlaw.com / jparker@cutterlaw.com

Daniel B. Edelman, *pro hac vice*
Katz, Marshall & Banks LLP
1718 Connecticut Avenue NW, Suite 600
Washington, DC 20009
Telephone: (202) 299-1140
Email: edelman@kmblegal.com

Benjamin Edelman, *pro hac vice*
169 Walnut Street
Brookline, MA 02445
Telephone: (617) 359-3360
Email: ben@benedelman.org

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>　FACEBOOK, INC.,<br><br>　　　　　　　Defendant. | Case No. CV 12-01894 BLF<br><br>**DECLARATION OF C. BROOKS CUTTER, IN SUPPORT OF THE MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE REPRESENTATIVE PLAINTIFFS**<br><br>Date:   March 17, 2016<br>Time:   9:00 AM<br>Court Room 3, 5th Floor<br><br>Hon.: Beth Labson Freeman, United States District Court Judge for the Northern District of California |

I, C. Brooks Cutter, hereby declare as follows:

1.     I am a partner of Cutter Law, P.C., co-counsel for Plaintiffs in this action along with John R. Parker, Jr., Tiffany Tran and Jeremy Price, also worked on this matter as associates of my predecessor firm, Kershaw, Cutter & Ratinoff LLP.  (For convenience, I refer throughout this declaration to work done by Cutter Law, P.C., although almost all of the work was done while Mr. Parker and I were members of Kershaw, Cutter & Ratinoff LLP.)  Daniel B. Edelman of Katz Marshall & Banks and Benjamin Edelman (collectively "Class Counsel").  Within Cutter Law, P.C., I have had the primary responsibility for this matter.  I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2.     I am familiar with the file, the documents, and the history related to this case.  The following statements are based on my personal knowledge and review of the files in this case and, if called on to do so, I could and would testify competently thereto.  I submit this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Incentive Awards for Representative Plaintiffs ("Motion").

3.     I am an AV-rated counsel and my partner John R. Parker, Jr. and I have more than forty years of collective experience in class action and complex civil litigation. We have prosecuted numerous state and federal nationwide cases arising from mass tort, unfair business practices, personal injury, consumer fraud, products liability, property damages and environmental disasters. I have personally served as lead and co-lead counsel in numerous class and complex cases.

4.     John R. Parker, Jr. is a fellow partner at Cutter Law, P.C. and one of the attorneys of record for Plaintiffs in the above-entitled action.  Mr. Parker is a graduate of the University of Georgia (1999) and received his Juris Doctor from Harvard Law School in 2002, where he was Deputy Editor-in-chief of the Harvard Journal of Law & Public Policy.  Before joining me, Mr. Parker worked at Spotswood Sansom & Sansbury LLC in Birmingham, Alabama, where he represented a multinational transportation corporation in several nationwide class actions and multidistrict litigation matters. He has been representing plaintiffs exclusively and prosecuting consumer and class actions since 2008, when he joined Kershaw Cutter & Ratinoff, LLP. Since Mr. Parker joined my firm, he has taken the lead in the

prosecution and resolution of several class cases. Attached hereto as Exhibit A is a true and correct copy of Mr. Parker's resume.

5.      I am licensed to practice before all courts in the State of California, and the United States District Court, Northern District of California.  I am a graduate of U.C. Berkeley (1980), Cambridge University (1982) and received my J.D. from Stanford Law School in 1985.  My practice is in the areas of personal injury, medical negligence, products liability, insurance bad faith, and class actions.  I was a past President and a member of the Board of Directors of the Sacramento Consumer Attorneys as well as a former member of the Board of Governors of the Consumer Attorneys of California.  I was named 2007 Advocate of the Year by the Capitol City Trial Lawyers Association, and was a finalist in 2005 for the Consumer Attorney of the Year by Consumer Attorneys of California.  I received the Presidential Award of Merit in 2005 from the Consumer Attorneys of California, am AV rated by Martindale-Hubbell, and have been named a Northern California Super Lawyer from 2005 to present.  I am a member of the American Board of Trial Advocates.  I also participate as faculty for the Stanford Trial Advocacy Program and am a graduate and current faculty member of the Spence Trial Lawyers College.  I clerked for the Chief Judge of the U.S. Court of Appeals for the Ninth Circuit, James R. Browning (1985-1986). Attached hereto as Exhibit B is a true and correct copy of my resume.

6.      Cutter Law, P.C. staffed this case economically and by accepting this case on a contingent basis, my firm assumed the risk that our time and expenses might not be recovered if this litigation were not ultimately successful. Class Counsel worked efficiently and cost-effectively, avoiding duplication of labor wherever possible. As a result of this litigation, my firm's resources were allocated to this matter for many days and weeks at time, requiring us to decline opportunities for work on other cases.

7.      **Pre-Filing Investigation.** Cutter Law, P.C.'s work began by partnering with Benjamin Edelman, a professor at Harvard Business School.  Together we engaged in strategy meetings and conducted extensive legal research into the potential claims of this suit.  Once the potential scope of the case became clear, we reached out to Daniel Edelman, Esq., a former U.S. Supreme Court Clerk with more than 40 years of experience, for assistance, guidance, and strategic

depth, in order to best serve the interests of the potential class.  Daniel Edelman and his firm, Katz Marshall & Banks, LLP agreed to assist Plaintiffs' Counsel.  Class Counsel avoided duplication of efforts by assigning primary responsibility for the various tasks detailed below.  This arrangement promoted efficiency.

After engaging co-counsel, the team spent numerous hours calling, emailing, teleconferencing, and traveling to meet with Plaintiffs and their parents and to meet with co-counsel. We were responsible for coordinating those meetings in order to discuss the organization of the case, proper venue, anticipated pleadings, other pending cases, and litigation strategy.

8.    **Pleadings.** Together with co-counsel, we researched, prepared, edited, and reviewed the original complaint and the subsequent amended complaints.

9.    **Motions to Dismiss**. We had to oppose multiple motions to dismiss, involving extensive legal research, briefing and preparing for and attending various hearings.  Much of the time spent opposing these motions related to the centuries-old law cited by Defendant as well as the complex issue of standing.  We ultimately succeeded in preserving Plaintiffs' core claim for disaffirmance and declaratory relief under the California Family Code and on the crucial issue of standing and subject matter jurisdiction.

10.    **Case Management.** Since the Court's decision on Defendant's latter motion to dismiss over three years ago, Cutter Law, P.C. has engaged in ongoing case management work. This involved statement drafting and negotiation.  We regularly met with co-counsel to engage in strategic analysis as the litigation progressed.  We had to prepare for and attend various hearings and respond to orders of the Court.

11.    **Written Discovery and Document Review**.  Over the past three years, Cutter Law, P.C. has worked diligently to propound all discovery reasonably necessary to advance this litigation.  Our work involved tedious analysis of Facebook's records and policies. We also responded to a series of interrogatories targeted at our clients and timely responded to each request for the production of documents.

12.    **Depositions**. Cutter Law, P.C. took the lead on individual and Rule 30(b)(6) depositions of Facebook employees.  This involved extensive preparation in addition to the actual taking of the

depositions.  Cutter Law, P.C. also had to defend depositions of our clients, including of I.B., J.W., Glynnis Bohannon, Julie Wright, and Steven Wright.  This again involved our own preparation as well as the preparation of our clients.

13. **Class Certification and Associated Procedural Matters**.  The main impetus for initiating this case was addressing the unlawful policies and practices of Facebook and to vindicate the rights of millions of children using the site.  Therefore, the certification of the Class was at the center of this litigation.  Together with co-counsel, Cutter Law, P.C. engaged in intensive legal research on the issues underlying the motion. Class Counsel spent a great deal of time ensuring that the briefing on the motion for class certification was as clear, thorough, and concise as possible.  Class Counsel also spent time on related procedural matters as they arose, including the motion to seal.  On August 21, 2014, Cutter Law, P.C. and co-counsel moved for class certification seeking, in part, to certify the class under Rule 23(b)(2).  Cutter Law, P.C. prepared for and attended the class certification hearing.  On March 10, 2015, the Court granted in part and denied in part our motion, certifying the following class and subclass for claims for declaratory and injunctive relief under Rule 23(b)(2):

> All Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified ("the Minor Class").  Within the Minor Class is a subclass of Minors from whose Facebook accounts Facebook Credits were purchased[] ("the Minor Purchasing Subclass").

14. **Rule 23(f) Motion**.  Following the Court's certification of the Class, Facebook filed a petition for permission to appeal, contending the Court's order violated Rule 23.  Cutter Law, P.C. was therefore required to engage in exhaustive research in order to rebut Facebook's claims and arguments.  Along with co-counsel, Cutter Law, P.C. prepared and filed an opposition to the petition.  Ultimately, Class Counsel's efforts were rewarded when the petition was denied.

15. **Trial Preparation**.  Following our successful opposition to Facebook's petition for appeal, we went to work preparing for trial.  This involved researching relevant legal issues, coordinating with co-counsel and our clients on strategy and preparing necessary documents and exhibits.

16. **Mediation and Settlement**.  After serious, intense and protracted negotiations, the parties reached a tentative settlement, which after subsequent months of negotiation resulted in the

1   proposed Settlement Agreement.  The Settlement Agreement was the result of a day-long mediation

2   session and months of negotiation before and after the mediation.  The parties submitted extensive

3   mediation briefs, evidence and legal authorities to a mediator, the Hon. Edward Infante (Ret.) of JAMS

4   in San Francisco.  All counsel participated in the session.

5        17.   **Approval**.  Following Class Counsel's successful settlement negotiations with Facebook,

6   we went to work drafting documents necessary for seeking the Court's final approval.

7        18.   **Attorneys' Fees**.  Class Counsel has had to commit further time and energy into drafting

8   the current motion for attorneys' fees, reimbursement of costs and expenses, and incentive awards for

9   the named Plaintiffs, and the accompanying declarations.

10       19.   In summary, Cutter Law, P.C. has spent over 1,500 hours investigating and prosecuting

11  this action for more than three years and has expended tens of thousands of dollars in costs and

12  expenses.  All of the work described above was done to obtain class certification, to prepare the case for

13  trial, if necessary, and to ensure that counsel could conduct settlement negotiations on an informed basis.

14  In short, I believe it is fair to say that the quality of the work done over the past three years by Class

15  Counsel on behalf of Plaintiffs and the Class has been detailed and thorough, and placed Class Counsel

16  in an excellent position to evaluate the merits and value of this lawsuit.

17       20.   The following information regarding my firm's time and expenses is taken from time and

18  expense printouts prepared and maintained by my firm in the ordinary course of business. I am the

19  attorney who oversaw and/or conducted the day-to-day activities in the litigation and who reviewed

20  these printouts (and backup documentation where necessary or appropriate).  The purpose of these

21  reviews was to confirm both the accuracy of the entries on the printouts as well as the necessity for

22  reasonableness of the time and expenses committed to the litigation. As a result of these reviews,

23  reductions were made to both time and expenses either in the exercise of billing judgment or to conform

24  to the firm's guidelines and policies regarding certain expenses such as charges for hotels, meals, and

25  transportation.  As a result of these reviews and adjustments, I believe that the time reflected in the

26  firm's lodestar calculation and the expenses for which payment is sought are reasonable in amount and

27  were necessary for the effective and efficient prosecution and resolution of the litigation. My firm has

28  cut and does not seek reimbursement for any work expended in this matter by law clerks and paralegals.

5

DECLARATION OF C. BROOKS CUTTER, IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS
CASE NO. CV 12-01894 BLF

21.     The total number of hours spent on this litigation by attorneys in my firm in prosecution of this matter is 1322. The hourly rates shown below are the usual and customary rates charged by my firm.  These rates are wholly consistent with those charged by comparable attorneys in the Sacramento area and numerous other locales throughout California for work comparable to that performed in this case.  My firm's billing practices are similarly comparable to those of other attorneys in the Sacramento area and elsewhere in California.

22.     My reasonable hourly rate as a partner is $800 per hour.  This rate is based on my over 28 years of litigation experience and substantial involvement in class actions.

23.     Mr. Parker's reasonable hourly rate is $600 per hour based on his over ten years of litigation experience, including numerous class actions, serving as lead or co-counsel.  The reasonable rate for our two associates, Ms. Tran and Mr. Price, is $150 per hour.

24.     Given the lack of success on claims earlier involved in this litigation, Class Counsel has determined that a reduction of 10% of the time spent on the pleadings and motions to dismiss should be made in order to reach a more just estimate.  This reduction is incorporated into the attached chart.  *See* Exhibit E.

25.     After this deduction, the total lodestar amount for attorney time committed by my firm based on its current rates is $683,557.  A breakdown of the lodestar for my firm is incorporated into the attached chart.  *See* Exhibit E.

26.     My firm seeks an award of $26,702.42 for costs and expenses which were reasonably and necessarily committed to the prosecution of the litigation.

27.     The expenses pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

28.     I submit that the time and expense detailed in this Declaration were incurred in this litigation.

29.     Submitted concurrently with this declaration are declarations from Daniel B. Edelman, Audra Ibarra and Benjamin Edelman identifying their firms' time associated with this case and their expenses, if any.  In all, Class Counsel have dedicated 2183.75 hours to this litigation. Class Counsel's

1  total lodestar after subtracting the work of paralegals and support staff and making the relevant 10%

2  reductions, amounts to $1,155,499 in attorneys' fees plus $29,115.66 in costs.  *See* Exhibit E.

3     30. Given the quality of representation provided by Class Counsel, the benefit obtained for

4  Plaintiffs and the Class, the complexity of the legal issues involved, and the risk of nonpayment, Class

5  Counsel asks the Court to apply a multiplier in a range of 1.2 to 1.5 that results in an award of the $1.25

6  million Class Counsel agreed would be the cap on fees under the Settlement agreement.  This proposed

7  adjustment is below those applied in similar cases I have been involved in.  *See* Exhibits C and D.

8     31. Based on the settlement agreement reached by the parties, Class Counsel requests

9  reimbursement of $1.25 million in fees and $29,115.66 in actual costs.

10     32. I further ask the Court to award representative Plaintiffs I.B. and J.W. $5000 each as

11  incentive awards to be paid by Defendant Facebook.  Plaintiffs were tireless in their efforts to ensure this

12  litigation reached a just conclusion.  Without their willingness to be available when needed and to fully

13  engage with the discovery process, the outcome of this litigation would likely not have conferred such a

14  significant benefit to the Class and to the general public.

15     I declare under penalty of perjury that the foregoing facts are true and correct and that this

16  declaration was executed this 15th day of January, 2016 in Sacramento, California.

17

18          /s/ C. Brooks Cutter_____

19          C. Brooks Cutter

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 15, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

By: /s/John R. Parker, Jr.
John R. Parker, Jr.

8

EXHIBIT A

**Contact Information:**
jparker@cutterlaw.com
Telephone: (916) 290-9400
Facsimile: (916) 669-4499

401 Watt Avenue
Sacramento, CA 95864

**www.cutterlaw.com**



# JOHN R. PARKER, JR.

Mr. Parker is a partner dedicated to representing plaintiffs in personal injury, consumer, products liability, insurance bad faith, False Claims Act (Qui Tam), birth injury, medical malpractice, as well as class action, civil rights, and employment matters.

## PRIOR PROFESSIONAL EXPERIENCE

- *Associate, Spotswood Sansom & Sansbury LLC, 2004-2008. (A national litigation boutique firm, specializing in handling complex matters for an international transportation company)*
- *Associate, Conley Griggs LLP (formerly Conley, Sacks & Griggs LLP), 2003-2004. (A plaintiff's personal injury firm)*
- *Law clerk for Chief Judge Joseph C. Anderson in the United States District Court for the District of Carolina.*

## REPRESENTATIVE CASES

- *Doan v. State Farm*, Santa Clara County Superior Court, Case Number 108CV129264. Co-lead counsel in certified class action against State Farm awaiting trial in Santa Clara Superior Court.

- *Bohannon v. Facebook, Inc.,* Northern District of California, Case Number 4:12-CV-01894-BLF. Appointed Class Counsel representing certified nationwide class of Facebook users in case pending in the Northern District of California

- *Johnson v. CSAA*, Sacramento County Superior Court, Case Number 07AS03197. Co-Lead Counsel in class action against CSAA relating to failure to waive deductible.  Resolved by settlement providing complete cash reimbursement, plus interest.  Settlement valued at over $80 million.

- *Zmucki, et al. v. Extreme Learning*, Santa Clara County Superior Court, Case Number 111CV197630. Appointed settlement class counsel on behalf of class of educators for wage and hour violations in the Northern District of California.

- *Shurtleff, et al. v. Health Net*, Co-Lead and Plaintiffs' Liaison counsel in class actions (federal and state) against Health Net for a breach of confidential information.  Nationwide class action settled in 2013.

- *Parry, et al. v. National Seating & Mobility Inc*., Northern District of California, Case Number 3:10-CV-02782-JSW. Appointed Class Counsel on behalf of representing nationwide class of sales representatives for medical equipment company in breach of contract case that settled on a class-wide basis after certification in the Northern District of California.

**BAR MEMBERSHIP**

- California
- Alabama
- Georgia

**TRIAL EXPERIENCE**

- Miranda v. Ornelas, a $596,000 verdict in a contested liability case involving a motorcycle and auto collision.

**SETTLEMENTS**

- Personally settled both class action and individual matters totaling over $1 million dollars.

**ACADEMIC BACKGROUND**

- Harvard Law School, J.D. (2002). Deputy Editor-in-Chief of the *Harvard Journal of Law & Public Policy.*

- University of Georgia, A.B., *summa cum laude* (Greek, Latin; 1999). Phi Beta Kappa.

**PROFESSIONAL ACTIVITIES, AFFILIATIONS, & ACCOMPLISHMENTS**

- Northern California Super Lawyer Rising Star 2013, 2014
- Member, Public Justice
- Member, Sacramento Trial Lawyers
- Member, Consumer Attorneys of California
- Member, American Bar Association
- Member, American Association for Justice
- Member, Taxpayers Against Fraud

**PRO BONO ACTIVITY**

- Volunteer mediator for Eastern District of California Alternative Resolution Program
- Appointed counsel through the Eastern District of California's pro bono program in several civil cases brought on behalf of prisoners.

EXHIBIT B



**Contact Information:**
bcutter@cutterlaw.com
Telephone: (916) 290-9400
Facsimile: (916) 669-4499

401 Watt Avenue
Sacramento, CA 95864

**www.cutterlaw.com**

# C. BROOKS CUTTER

Mr. Cutter is a partner dedicated to representing plaintiffs in personal injury, consumer, products liability, False Claims Act (Qui Tam) and class action matters.

## PRIOR PROFESSIONAL EXPERIENCE

- *Law Clerk, Chief Judge James R. Browning, U.S. Court of Appeals for the Ninth Circuit (1985-1986)*
- *Latham & Watkins (1986 – 1990)*
- *Friedman, Collard, Cutter & Panneton* (1990 – 2002)

## REPRESENTATIVE CASES

- <u>Doan, et al. v. State Farm</u> – Co-lead counsel in certified class action against State Farm awaiting trial in Santa Clara Superior Court. Case No: 108CV129264.

- <u>Bartek, et al. v. Skechers USA, Inc., et al.</u> – Co-Lead and Plaintiffs' Liaison counsel in mass tort litigation venued in Los Angeles County Superior Court. Lead Case No. BC476903. Settlement pending valued at over $20 million.

- <u>Bohannon v. Facebook</u> – Appointed Class Counsel representing certified nationwide class of Facebook users in case pending in the Northern District of California. Case No: 5-12-cv-01894-BLF.

- <u>In re: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation</u> Member of the Plaintiffs' Steering Committee  in MDL in Minnesota on behalf of people implanted with defective Stryker hip components.

- <u>Shurtleff, et al. v. Health Net</u> – Co-Lead and Plaintiffs' Liaison counsel in class actions (federal and state) against Health Net for a breach of confidential information.  Nationwide class action settled in 2013.

- <u>In re: ACTOS Product Liability Cases</u> – Member of Plaintiffs' Steering Committee in California Coordinated Proceeding venued in Los Angeles County Superior Court, JCCP No. 4696.

- <u>In re: Medtronic Sprint Fidelis Leads Litigation</u> – Member of the Plaintiffs' Steering Committee and of Claims Committee in settled medical device MDL.

- <u>In re: Sulzer</u> – Member of the Plaintiff's Steering Committee and Co-Chair of the Hip Discovery Committee in MDL in Ohio on behalf of people implanted with defective Sulzer hip components.

- <u>Johnson v. CSAA</u> – Co-Lead Counsel in class action against CSAA relating to failure to waive deductible.  Resolved by settlement providing complete cash reimbursement, plus interest.  Settlement valued at over $80 million.

- In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation – Member of the Plaintiffs' Steering Committee and designated co-trial counsel for bellwether trials in this MDL. Settlement for $245 million reached shortly before trial.

- Vanderpool v. Allstate – Co-Lead counsel in statewide class action in Sacramento Superior Court relating to overcharges to auto policyholders. Case resolved by Allstate agreeing to pay full refund plus interest to affected policyholders.

- America Online "SOSA" Litigation: (MDL CD Cal.) Co-Lead Counsel in nationally coordinated consumer class actions involving double billing of AOL customers through "spin off sub-accounts" in U.S. D.C. Central District of California.  Case resolved through nationwide settlement in conjunction with Illinois state court proceeding.

- Stickles, et al. v. Ford Motor Credit Corporation – Lead Counsel in nationwide class action against Ford Motor Credit Corporation regarding late fees. Resolved on eve of trial with FMCC agreeing to return up to $80 million to lessees.

- Cornn v. UPS – Filed and assisted with prosecution of wage and hour class action against UPS in which firm was lead counsel, which resolved by UPS agreeing to pay over $87 million to settle the action.

- In re: Vicryl Sutures – Co-Lead Counsel in nationwide case against Johnson & Johnson for contaminated sutures. Tried to a final conclusion in confidential proceeding.

- Ette – Pro Bono representation of family of Sadie Ette before U.S. Victim's Compensation Fund arising from Ms. Ette's death at the World Trade Center on September 11, 2001.

- In re: Telectronics – Special Counsel to the Plaintiffs' Steering Committee – Assisted in prosecution and settlement of a nationwide class settlement on behalf of people implanted with defective Telectronics pacemakers.  Tried wrongful death case in summary jury trial proceeding.

- Tyler v. Wickland – Lead counsel in shareholder suit for breach of fiduciary duty against the President and Directors of a local bank.

- In re: Vierra – Co-Class Counsel in matter brought and resolved on behalf of thousands of families affected by mishandling of cremated remains.

## TRIAL EXPERIENCE

Results include: $7.6 million medical malpractice verdict, Sacramento County Superior Court; $3 million summary jury verdict federal court, Cincinnati, wrongful death, medical device; multiple verdicts in motor vehicle trials; successful defense of fraud claim.  In binding arbitration or binding confidential proceedings: over $20 million for group of medical device victims; $1.2 million in UIM Arbitration for low impact collision victim; several favorable Kaiser arbitration decisions for clients.

SETTLEMENTS

Multiple individual settlements on behalf of injured people.  Examples include $3 million on behalf of farm worker injured by contact with a power line; $2.5 million for a woman injured by medical negligence; $3.6 million for quarry worker injured by a defective product.

ACADEMIC BACKGROUND

B.A. U.C. Berkeley 1980
M. Phil. Cambridge University 1982
J.D. Stanford Law School 1985
(Editor in Chief Stanford Journal of International Law, 1984-1985, Author: Territorial Distribution and Patent Licensing in the European Community: Towards a Rule of Reason 20 Stan. J. Int'l Law 503 (1984))

PROFESSIONAL ACTIVITIES, AFFILIATIONS, & ACCOMPLISHMENTS

- Judge Pro Tem, Sacramento County Superior Court; El Dorado County Superior Court
- Past President of Sacramento Consumer Attorneys and past member of Board of Governors Consumer Attorneys of California
- Trial Lawyers College – Faculty Member – 1999 to present
- Stanford Trial Advocacy Program – Faculty 2002 to present
- 2007 Advocate of the Year, Capitol City Trial Lawyers Association
- Finalist, 2005 Consumer Attorney of the Year, Consumer Attorneys of California
- Presidential Award of Merit, 2005, Consumer Attorneys of California
- Martindale-Hubbell AV rated
- American Board of Trial Advocates (ABOTA)
- Northern California Super Lawyer, 2005 to present

COMMUNITY SERVICE

- Rotary Club of Sacramento (Past Chair Orthopedic Challenged Children's Committee; Community Service Committee)
- WIND Youth Services, Board of Directors

EXHIBIT C

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SACRAMENTO
## GORDON D SCHABER COURTHOUSE

## MINUTE ORDER

Date: 06/08/2010                          Time: 02:00:00 PM          Dept:  53

Judicial Officer Presiding: Kevin Culhane
Clerk:  T. West
Reporter/ERM: P. Clausen CSR# 3750
Bailiff/Court Attendant: V. Carroll

Case No: **07AS03197**                    Case Init. Date: 08/03/2007
Case Title: **LORIE KUPPENBENDER VS. CA STATE AUTO ASSOC INTER INS**

Case Category: Civil - Unlimited

---

**EVENT TYPE**: Motion for Attorney Fees - Civil Law and Motion

---

**APPEARANCES**
Robert Buccola, counsel, present for Plaintiff(s).
C Cutter, counsel, present for Plaintiff(s).
Hyon Kientzy, counsel, present for Defendant(s).
Eduardo Roy, counsel, present for Defendant,Plaintiff(s).
 Steven Campora, counsel, present for Plaintiff
Larry Schonbrun, counsel, present for putative class member

---

**Nature of Proceeding: Motion for Attorney Fees**

**TENTATIVE RULING**

The Court discloses that in approximately 2006 and while still in private practice, the Court was retained by the insurance carrier for Dreyer, Babich, Buccola, Callaham & Wood to testify as an expert in a case involving an attorney at that firm.   That case did not involve any of the attorneys or facts involved in this case.  The Court knows of no reason that it cannot be fair and impartial in this case.

Plaintiff's Application for Award of Attorneys' Fees and Reimbursement of Costs is GRANTED, as set forth below.

In this motion counsel for the Plaintiff Class request approval of attorneys fees and reimbursement of costs advanced on behalf of the Plaintiff Class. Plaintiffs' counsel, consisting of senior attorneys from three separate law firms, seek the establishment of lodestar rates in the combined amount of $3,683,067.50. Plaintiffs' counsel also request the application of a multiplier of approximately 2.15, resulting in an attorneys' fee award of $7,920,783.29.  In addition, plaintiffs' counsel seek service awards for the named plaintiffs of $4,500 and reimbursement of expenses in the amount of $74,716.71.  Taken together the requested fees, reimbursement of costs advanced on plaintiffs' behalf, and the requested service awards combine for an aggregate total of $8,000,000.

In support of the application, Judge Trotter (Ret) declares that he mediated the arms length negotiation that resulted in defendant CSAA's agreement to pay eight million dollars in fees and costs to class counsel, subject to approval by the Court. Importantly, these fees are in addition to the compensation to the class, and do not reduce any payments to class members. (Trotter Dec., para 6).

---

Case Title: **LORIE KUPPENBENDER VS. CA STATE**   Case No: **07AS03197**
**AUTO ASSOC INTER INS**

The Court has received and reviewed the Objections of Dr. Fred Sondheimer, Dennis McBride, Suzanne Dibble, Charlie J. Ellison, Jr. and Yvonne Bolshom.

Under well-established California law, the first step in determining an appropriate fee amount is to determine the lodestar rates for counsel who handled the case.

Plaintiffs' counsel requests that the Court find the lodestar for the Dreyer, Babich firm is 3,170 professional hours multiplied by hourly rates of $500/hour to $650/hour, for a total of $2,031,000. (Buccola Dec., para. 16). Costs advanced on behalf of the Plaintiff Class are $47,621.58. (Buccola Dec., para. 17)

Plaintiffs' counsel requests that the lodestar for the Kershaw Cutter firm be determined to be 2,192.50 professional hours multiplied by hourly rates of $125.00/hour to $650/hour, for a total of $1,246,817.50. (Cutter Dec., para. 10) Costs advanced on behalf of the Plaintiff Class are $27,095.13. (Cutter Dec., para. 11)

Plaintiffs' counsel requests that the lodestar for the Panish Shea firm be determined to be 555 professional hours multiplied by hourly rates of $550.00/hour to $750/hour, for a total of $405,250. (Panish Dec., para. 7).

The Court is satisfied the lodestar fees are reasonable in amount and reasonably incurred. It is true that the requested hourly rates are at the high end of rates charged for hourly representation, at least in ordinary business litigation cases. At the same time, review of the documents submitted in support of the instant motion demonstrate that Plaintiff's Class benefited from representation by extraordinarily experienced counsel. For example, the attachments to the declaration of Mr. Cutter show that he has served on Plaintiff's Steering Committees and/or as trial counsel in national class action cases and has prosecuted numerous matters successfully against national and international opponents. (Cutter Dec. Exh. A). The attachments to the declaration of Mr. Panish show that he has served on Plaintiff's Steering Committees and/or as trial counsel in significant air crash, consumer and drug class actions and, in litigation against general motors, obtained what was then the highest products liability verdict in U.S. history. (Panish Dec. Exh. A). Similarly, the attachments to the declaration of Mr. Buccola show that he has been widely recognized as one of California's most tenacious and accomplished plaintiff's lawyers (Buccola Dec. Exh. A).

The skill and experience of such attorneys can be expected to permit the work necessary to successfully prosecute a class action of the magnitude of the instant case to be accomplished more efficiently than would be the case were the matter prosecuted by less capable counsel, and this fact militates in favor of the suggested lodestar rates. In addition, the court concurs in counsels' observations that while the requested "lodestar " rates are at the high end of the spectrum, they are commensurate with the rates normally charged by seasoned defense counsel engaged in the defense of cases like the instant one, even though defense counsel generally do not bear the risk of non-payment. (Buccola Dec. para. 21).

For the foregoing reasons, the Court is satisfied the lodestar fees are reasonable in amount and reasonably incurred. Hence the total lodestar fees awarded to Plaintiffs' counsel, in the respective amounts set forth in the application, is $3,683,067.50.

Plaintiffs' counsel next request the application of a multiplier of approximately 2.15, resulting in an attorneys' fee award of $7,920,783.29.

A number of the factors that a court may consider to determine the appropriateness of a multiplier are set out in *Serrano v. Priest (Serrano III)* (1977) 20 Cal. 3d 25, 48-49. These include:

"(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them-, (2) the extent to which the nature of the litigation precluded other employment by the attorneys, (3) the

Case Title: **LORIE KUPPENBENDER VS. CA STATE**   Case No: **07AS03197**
**AUTO ASSOC INTER INS**

contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award-, (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; [and] (6) the fact that the monies awarded would inure not to the benefit of the attorneys involved but the organizations by which they are employed." *Serrano III, supra,* 20 Cal. 3d at 49.

Three of the foregoing factors--factors which are typically advanced in opposition to a requested multiplier -- are inapplicable in the present case. This case was not brought against a public entity, and the responsibility to pay a fee award will not fall upon the taxpayers. The plaintiffs were not represented by a nonprofit public interest law firm or a government funded legal services program, and thus the responsibility to fund the litigation and bear the risk of a contingent recovery fell solely upon plaintiffs' counsel. Finally, the monies awarded would inure to the individual benefit of the plaintiffs' attorneys.
Accordingly, the Court has considered the remaining three traditional factors: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys and (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award. Consideration of these factors, in addition to certain additional factors discussed below, all militate in favor of the requested multiplier.
In terms of the first factor, it should be noted at the outset that the economic realities of the instant litigation are stark. The claims involved in this case date from the present rearward through accidents that occurred more than a decade ago. Thousands of pages of documents were required to be analyzed because the settlement entitlements depend, as they should, upon the facts of each case. The processing of the case to completion required significant use of information technology, given the numbers of accidents and plaintiffs. To date, over 50,000 claims have been filed under the claims procedure set forth in the Settlement Agreement. The ability to handle a claim such as the one presented in this case augers in favor of recognizing the appropriateness of a multiplier.
Additional factors unique to the results in this case support the same conclusion. In terms of the results achieved, the Court notes that for fully qualifying claims, the claimants receive total compensation for their losses, including the return of their deductible and interest at the legal rate (10%) to the present. Stated otherwise, the recovery for fully qualifying claimants is not discounted in the settlement. Moreover, the papers submitted show that the amounts payable to claimants are not reduced because of the necessity to reimburse costs advanced and attorneys' fees.
In a related vein, it is clear that the costs to administer a settlement involving the sheer number of claimants involved in this case could be considered to be significant. As of the date that the instant motion was filed, the Settlement Administrator stated that the costs of administration to date were $728,594.95. In this case and through counsels' efforts, it was agreed that the entire cost of the Settlement Administration was to be borne by Defendant CSAA. (Settlement Agreement para. 51). Similarly, the responsibility to both identify and notify potential claimants is placed upon defendant CSAA. (Settlement Agreement para.10-13). Finally, the costs of administering the appeals process anticipated by the Settlement Agreement are to be borne entirely by CSAA (after Plaintiffs' counsel advance an initial $25,000). The foregoing facts speak to counsels' skill in presenting and structuring a settlement in which the responsibility to fund the logistical aspects of the settlement is placed upon the defendant such that the class recovery is not impaired by what would otherwise be unavoidable costs.
Moreover, it is clear that proceeding with the Settlement as structured, Plaintiff's Counsel are required to continue to render legal services in the future, without charge, to any class member who wishes to avail themselves of the appellate process set forth in the Settlement Agreement. Estimates by counsel which appear to be on the conservative side, both in terms of the number of claimants and the amount of time necessary to handle each such claim, indicate that augmentation of the lodestar amount is appropriate here. (Buccola Dec. para 13).
The Court has also noted that over 3000 hours were contributed to this case by the Buccola firm, over 2000 hours were expended by the Kershaw, Cutter Firm, and over 500 were expended by the Panish Firm. It thus seems clear that the handling of this case precluded employment on other matters; at an ordinary billing level the case would consume one full-time lawyer for 1.5 years, 1 year and .25 years, respectively.

Case Title: **LORIE KUPPENBENDER VS. CA STATE**     Case No: **07AS03197**
**AUTO ASSOC INTER INS**

Finally, it seems clear that both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for a fee award, this matter was at all times contingent.  The case was vigorously contested by CSAA, which continues to deny both liability and damages (Settlement Agreement para. 6).  Plaintiff's counsel contributed their efforts, the logistical capabilities of their offices, and significant out of pocket costs, with no guarantee of payment, whether eventual or otherwise.  Once again, these facts militate in favor of the requested multiplier in this case.

Although not controlling, the Court has also considered the requested total fees against the percentage of recovery measure applicable in other contingent recovery settings.  In this regard, it should be noted that while the lodestar method remains the required methodology for determining the amount of attorney fees, our appellate courts have stated that the percentage of the recovery analysis can at least constitute a viable cross-check mechanism which can inform a court's consideration of an appropriate fee calculated under the lodestar analysis.  (See generally *Lealao v. Beneficial California Inc.*, (2000) 82 Cal. App. 4th 19).

In this regard, the Court has noted that according to the documents submitted, over 50,000 claims have already been tendered.  Assuming that these claims are fully qualified, (but excluding interest that must also be paid if this is the case as well as the costs of administration borne by CSAA) recovery on these claims would total $25,000,000. The requested fees would be approximately 31% of the recovery obtained.  Plaintiff's expert has calculated the value of the settlement as between $90,000,000 and $130,000,000 (See McFarlane Dec.)  Using the lower value, the requested fees would constitute just under 9% of the benefit obtained.  These values serve to illustrate that, upon cross checking the requested multiplier against the percentage of the recovery, the lodestar method and the requested multiplier yields a fee award that is well within the accepted range.

Finally, there are three additional factors that inform the court's determination. The first is that former Justice Trotter, who presided over the settlement negotiations in this case, has declared that in his view the requested fee is reasonable compensation for a case of this magnitude and the nature or the result obtained.  It is of course true that this court must exercise its own independent judgment, but the fact that the mediator who presided over the settlement negotiations supports the requested fee constitutes a factor that informs the analysis.

The second is that according to the documents supplied, the requested multiplier yields a result that is not only well within the range of awards previously upheld by our appellate courts, but also within the range of multipliers previously approved by this court in similar cases. (Cutter Dec. Exh. B).

The final factor is the fact that for qualifying claims, the class members receive full compensation for their losses, including interest at the legal rate to the date of payment, whether or not the requested fees are paid.  Stated otherwise, these class members are fully compensated, and their recovery is neither enhanced if the fees are denied or reduced if they are approved.  It is of course true that the Court's analysis of the lodestar and any requested enhancement must be based upon the traditional factors approved by the appellate courts, but the fact that the requested multiplier will not diminish the recovery of any class member confirms that a multiplier that is otherwise appropriate should not be denied where no class member will benefit as a result.

For all the foregoing reasons, the requested multiplier is appropriate in this case and the motion is granted.

The Court also approves the reimbursement of costs advanced by counsel on behalf of the class in the total amount of $74,716.71. The Court finds the requested costs to be reasonably incurred in the prosecution of this case on behalf of the class.

The additional award of $2,500 to class representative Carol Johnson and $2,000 to Robert Garcia are approved.

Plaintiffs' counsel shall submit a formal order for the Court's signature, pursuant to C.R.C., Rule 3.1312.

**COURT RULING**

The matter was argued and submitted. The Court affirms the tentative ruling.

EXHIBIT D

1   H. SINCLAIR KERR, JR. (61713)
2   MICHAEL VON LOEWENFELDT (178665)
    EMILIA MAYORGA (203688)
3   **KERR & WAGSTAFFE LLP**
    100 Spear Street, Suite 1800
    San Francisco, CA 94105–1528
4   Tel: (415) 371-8500
    Fax: (415) 371-0500
5
6   Attorneys for Defendants
    ALLSTATE INSURANCE COMPANY, and
    ROBERT H. BARGE
7

ENDORSED

NOV 1 6 2004

By B. Rouse, Deputy

8   ROBERT A. BUCCOLA (112880)                    C. BROOKS CUTTER (121407)
    STEVEN M. CAMPORA (110909)                    ERIC RATINOFF (166204)
9   **DREYER, BABICH, BUCCOLA & CALLAHAM**        **KERSHAW, CUTTER**
    715 University Avenue                         **RATINOFF & YORK, LLP**
    Sacramento, CA 95825                          980 9th Street, Suite 1900
10  Tel: (916) 920-2111                           Sacramento, CA 95814
    Fax: (916) 920-5687                           Tel: (916) 448-9800
11                                                Fax: (916) 669-4499
12  HARVEY LEVINE (61879)
    RICHARD HUVER (132945)
13  **LEVINE, STEINBERG,**
    **MILLER & HUVER**
14  550 W. C Street, Suite 1810
    San Diego, CA 92101-3540
15  Tel: (619) 231-9449
    Fax: (619) 231-8638

16  Attorneys for Plaintiffs

17

18              SUPERIOR COURT OF THE STATE OF CALIFORNIA

19                    CITY AND COUNTY OF SACRAMENTO

20  PATRICIA VANDERPOOL, JOHN            Case No. 02AS01532
    VANDERPOOL, and BETTY ASSADABADI,
21  on behalf of themselves and all other similarly   **AMENDED [~~PROPOSED~~] ORDER**
    situated,                            **GRANTING JOINT MOTION FOR**
22                                       **FINAL APPROVAL OF CLASS**
                                         **ACTION SETTLEMENT AND**
23          Plaintiffs,                  **PLAINTIFFS' APPLICATION FOR**
                                         **AWARD OF ATTORNEYS' FEES AND**
24  v.                                   **REIMBURSEMENT OF COSTS**

25  ALLSTATE INSURANCE COMPANY,
    ROBERT H. BARGE, II, and DOES 2 through   Date:  November 16, 2004
26  100,                                 Time:  9:00 a.m.
                                         Dept:  54
27          Defendants.
                                         Hon. Thomas M. Cecil
28

AMENDED [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL
AND PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

1       Plaintiffs Patricia Vanderpool, John Vanderpool, and Betty Assadabadi and Counsel for

2 the Class ("Class Counsel") and Defendants Allstate Insurance Company ("Allstate") and Robert

3 H. Barge II have entered into a Settlement Agreement, subject to this Court's final approval.

4 Before the Court is the parties' joint request for final approval of the Settlement Agreement and

5 Plaintiffs' application for an award of attorneys' fees and reimbursement of costs, pursuant to the

6 Settlement Agreement.

7       This Court has read and considered the pleadings and documents submitted in connection

8 with the Settlement and the parties' joint request for preliminary and final approval of the

9 Settlement, as well as the comments and objections received by the Court from a few members

10 of the Class.  The Court conducted a final approval hearing on November 16, 2004.  Counsel for

11 Plaintiffs and Defendants appeared in support of the Settlement.  No objectors appeared.

12       The Court finds that the Parties have complied with the Court's September 16, 2004

13 Order, preliminarily approving the Settlement and the requirements contained therein in that

14 Notice of Settlement has been properly communicated to the Class.

15       The Court finds that the settlement class certified in the Preliminary Approval Order

16 meets the standards for settlement class certification pursuant to Code of Civil Procedure section

17 382 and Rule of Court 1859(d).  The Court finds that there is an ascertainable class, and a well-

18 defined community of interest in the questions of law and fact affecting the parties, justifying

19 certification of the Settlement Class.

20       The Court finds that the proposed Settlement merits final approval as it will result in

21 substantial savings in time and money to the Court and the litigants, and will further the interests

22 of justice.  The Court further finds that the Settlement is the product of serious, informed,

23 non-collusive negotiations, has no obvious deficiencies, and does not improperly grant

24 preferential treatment to the class representative or segments of the Class.  It therefore appears to

25 this Court's satisfaction that the standards for final class action settlement approval are met, and

26 that the Settlement is fair, reasonable and adequate.

27       As for Plaintiffs' application for an award of attorneys' fees and reimbursement of costs,

28 the Court's review of the matter, including the Declarations of Class Counsel, shows that the

AMENDED [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL
AND PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

1   proposed fee award to Class Counsel as contemplated in the Settlement Agreement is fair,

2   reasonable, and not the product of overreaching or collusion.  Therefore, based upon the

3   foregoing facts, findings and conclusions of law:

4   **IT IS HEREBY ORDERED THAT:**

5   1.      Settlement was reached after multiple rounds of arms-length negotiation and later

6   mediation before a retired justice of the California Supreme Court, who is familiar with the

7   requirements for court approval of class action settlements.  The attorneys' fees and costs were

8   negotiated separately under the supervision of the mediator as well.

9   2.      There has been no substantial opposition to the proposed settlement by members

10  of the Class.

11  3.      The proposed Settlement Agreement is fair, adequate and reasonable and it is in

12  the best interest of the Class and its members.

13  4.      The Settlement Class, as defined in the Settlement Agreement consists of all

14  current and former Allstate Insurance Company, Allstate Indemnity Company, or Allstate

15  Property & Casualty Company private passenger automobile policyholders in California whose

16  mileage band for an existing insured car was increased in 2001 or 2002 to mileage band 5 or 6,

17  or in 2002 from mileage band 1 or 2 to mileage band 3 or 4, or who returned their response to

18  Allstate's California mileage verification mailer and were subsequently assigned to a higher

19  mileage band than was reflected in their response.  Excluded from the Class are: (i) Allstate

20  Insurance Company and Allstate Indemnity Company policyholders whose mileage was changed

21  consistent with their responses to an Allstate annual mileage verification mailer; (ii) Allstate

22  Property & Casualty Insurance Company policyholders whose mileage was changed consistent

23  with their response or failure to respond to Allstate Property & Casualty's annual mileage

24  verification mailer; and (iii) policyholders who did not pay additional premium as a result of the

25  increased mileage band.

26  5.      In certifying the Class, the Court found and still finds that (a) the members of the

27  Class are so numerous that joinder of all class members in this action is impracticable; (b) there

28  are questions of law and fact common to the members of the Class; (c) the questions of law and

AMENDED [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL
AND PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

1   fact common to the Class are substantially similar and predominate over any questions affecting

2   only individual members; (d) the claims or defenses of the Plaintiffs are typical of the claims or

3   defenses of the members of the Class; (e) the representative Plaintiffs and their counsel have

4   fairly and adequately protected the interests of the Class; and (f) a class action is superior to all

5   other available methods of fair and efficient adjudication of the controversy, considering *inter*

6   *alia*, (i) the interests of the members of the Class in individually controlling the prosecution of

7   separate actions, (ii) the extent and nature of any litigation concerning the controversy already

8   commenced by members of the Class, (iii) the desirability or undesirability of prosecuting the

9   litigation of these claims in the particular forum, and (iv) the difficulties likely to be encountered

10  in the management of the class action.  Accordingly, the Class is now finally and conclusively

11  certified for settlement purposes.

12          6.      In accordance with the Court's Preliminary Approval Order, Notice was

13  published within the time mandated in the Preliminary Approval Order and adequately informed

14  the Class of: (a) the pendency of the proposed settlement of the litigation; (b) all material

15  elements of the proposed settlement as set forth in the Agreement; (c) the November 16, 2004

16  hearing date; and (d) the opportunity to be excluded from the proposed Class or otherwise object

17  to the proposed settlement.  Defendant Allstate also posted the Notice on a website.

18          7.      The Notice provided due and adequate notice to all potential Class members and

19  constitutes the best notice practicable and possible under the circumstances and complies fully

20  with all applicable statutes and laws, including California Code of Civil Procedure Section 382

21  and California Civil Code Section 1781(d) and with the requirements of due process.

22          8.      All those who have timely submitted a request for exclusion from the settlement

23  are hereby excluded from the Class.

24          9.      At all times, including during the prosecution of this action, the negotiation of the

25  settlement and its presentation to the Court, the Class has been represented by competent counsel

26  from the law firms of Dreyer, Babich, Buccola & Callaham, Kershaw, Cutter, Ratinoff & York,

27  LLP and Levine Steinberg, Miller & Huver (hereafter "Class Counsel").  Class Counsel has

28  recommended to the Court that the proposed settlement be approved.  Class Counsel has

– 3 –

AMENDED [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL
AND PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

KERR
&
AGSTAFFE
LLP

1    exercised skill and experience in representing the Class and has adequately represented and

2    protected the interests of the Class in the action and in negotiating the settlement.

3         10.    Class Counsel has requested an award of fees and costs in the amount of

4    $9,550,000.  Of that amount, $95,635.00 is for costs incurred thus far.  Defendants have agreed

5    to pay fees and costs in the amount specified, in addition to sums otherwise payable to class

6    members under the terms of the settlement.  In evaluating the requested attorneys' fee award, the

7    Court has considered the work performed by and hours expended by counsel, the quality of the

8    representation, the novelty and complexity of the issues involved in this litigation, the results

9    obtained, and the contingent risks presented.

10        11.    Class Counsel bore the full expense and risk of pursuing this case on behalf of the

11   Class.  The expenses were substantial, and the risks included, among others, the risk of

12   Defendants succeeding on the merits, the risk of not achieving or maintaining class certification,

13   and the risk of the Court issuing an award at trial that does not exceed the negotiated settlement.

14        12.    Through Class Counsel's efforts the class has obtained a very substantial

15   recovery.  The substantial benefit made available to the class is a factor the Court has considered

16   in approving the award of agreed-upon attorneys' fees and reimbursement of costs.

17        13.    The Court finds that approval of the requested attorneys' fees and reimbursement

18   of costs is appropriate under either the lodestar method or the percentage of the recovery method.

19   The documentation submitted by Class Counsel verifies a combined lodestar of $3,580,096.50,

20   and that, after excluding costs, Class Counsel are requesting a lodestar multiplier of 2.64.  The

21   proposed multiplier is reasonable.  *See Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4[th]

22   224, 225 ("multipliers can range from 2 to 4 or even higher").  The Court finds that the proposed

23   multiplier and upward adjustment are appropriate in this case in light of the quality of

24   representation, the novelty and complexity of issues involved in this litigation, the results

25   obtained, and the contingent risks presented.  Therefore, the agreed-upon attorneys' fees and

26   reimbursement of costs in the total amount of $9,550,000 are approved as fair and reasonable.

27   Plaintiffs' application for attorneys' fees and reimbursement of costs is accordingly GRANTED.

28        14.    The proposed class action Settlement Agreement, attached hereto as Exhibit 1, is

- 4 -

KERR
&
AGSTAFFE
LLP

1   fair, reasonable and adequate and is hereby GRANTED final approval.

2          15.    Allstate shall bear all costs associated with administration of the Settlement,

3   including all costs of notice and processing of claim forms.

4          16.    Pursuant to the terms of the Settlement Agreement, any Class Member who

5   wishes to make a claim must mail their completed claim form to the Independent Claims

6   Administrator, The Garden City Group, Inc., by no later than December 30, 2004 as provided by

7   the notice.

8          17.    Judgment shall be entered in accordance with the terms of the Settlement

9   Agreement.

10         18.    The Court shall retain jurisdiction over this action to enforce the terms of the

11  Settlement Agreement.

12  Dated: November 16, 2004

13                                              THOMAS M. CECIL
                                                _____
14                                              The Honorable Thomas M. Cecil
                                                Judge of the Superior Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
A G S T A F F E
L L P

AMENDED [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL
AND PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

EXHIBIT E

**BEFORE DEDUCTIONS:**

| Category | JRP | CBC | Prlgl | LC | Tran | Price | BE | DE | Ibarra |
|---|---|---|---|---|---|---|---|---|---|
| Pre-investigation | 10.2 | 0 | 0 | 0 | 0 | 0 | 28 | 0 | 0 |
| Complaints | 69.4 | 15.1 | 0.25 | 0 | 0 | 0 | 45.2 | 9.2 | 0 |
| Motion to Dismiss - Research/Briefing | 92.5 | 32.7 | 0 | 0 | 0 | 0 | 42.4 | 42.35 | 0 |
| Motion to Dismiss - Hearing/Preparation | 15 | 0 | 4.5 | 0 | 0 | 0 | 0 | 0 | 0 |
| Case Management | 48.2 | 15.3 | 0 | 7.4 | 1.3 | 0 | 32 | 0.8 | 0 |
| Discovery | 66.9 | 3.3 | 0 | 0 | 73 | 9.5 | 24.7 | 20.6 | 0 |
| Document Review | 65.2 | 0 | 0 | 1 | 117.8 | 0 | 18.9 | 32.1 | 0 |
| Depositions | 174 | 0 | 13 | 0 | 29.2 | 0 | 21.1 | 0 | 0 |
| Motion for Class Certification - Research/Briefing | 133.8 | 24.9 | 0 | 59.6 | 46.5 | 0 | 55.5 | 133.3 | 0 |
| Motion for Class Certification - Mtn to Seal | 17.4 | 1.3 | 0 | 5 | 10 | 0 | 26.5 | 0 | 0 |
| Motion for Class Certification - Hearing/Preparation | 27.5 | 18.5 | 14 | 0 | 0 | 0 | 7.2 | 8.5 | 0 |
| 23(f) Motion | 22.2 | 12.8 | 0 | 0 | 0 | 0 | 2.5 | 18 | 23.5 |
| Settlement/Mediation | 69 | 31.5 | 24.7 | 0 | 0 | 0 | 26.7 | 23.35 | 0 |
| Approval/Fees | 35 | 6 | 55.1 | 0 | 0 | 0 | 5 | 7.9 | 3.5 |
| Trial Preparation | 18 | 9 | | | | | 14.8 | 3.6 | |
| | | | | | | | | | |
| **Total Hours** | 864.3 | 170.4 | 111.55 | 73 | 277.8 | 9.5 | 350.5 | 299.7 | 27 |
| **Billing Rates** | 600 | 800 | 175 | 200 | 150 | 150 | 650 | 800 | 525 |
| **Total Billed** | 518,580.00 | 136,320.00 | 19,521.25 | 14,600.00 | 41,670.00 | 1,425.00 | 227,825.00 | 239,760.00 | 14,175.00 |

**Grand Total: $1,213,876.25**

**AFTER RELEVANT 10% DEDUCTIONS AND REMOVAL OF PARALEGAL AND LAW CLERK TIME:**

| Category | JRP | CBC | Tran | Price | Ben | Dan | Ibarra |
|---|---|---|---|---|---|---|---|
| Pre-investigation | 10.2 | 0 | 0 | 0 | 28 | 0 | 0 |
| Complaints | 62.46 | 13.59 | 0 | 0 | 40.68 | 8.28 | 0 |
| Motion to Dismiss - Research/Briefing | 83.25 | 29.43 | 0 | 0 | 38.16 | 38.115 | 0 |
| Motion to Dismiss - Hearing/Preparation | 13.5 | 0 | 0 | 0 | 0 | 0 | 0 |
| Case Management | 48.2 | 15.3 | 1.3 | 0 | 32 | 0.8 | 0 |
| Discovery | 66.9 | 3.3 | 73 | 9.5 | 24.7 | 20.6 | 0 |
| Document Review | 65.2 | 0 | 117.8 | 0 | 18.9 | 32.1 | 0 |
| Depositions | 174 | 0 | 29.2 | 0 | 21.1 | 0 | 0 |
| Motion for Class Certification - Research/Briefing | 133.8 | 24.9 | 46.5 | 0 | 55.5 | 133.3 | 0 |
| Motion for Class Certification - Mtn to Seal | 17.4 | 1.3 | 10 | 0 | 26.5 | 0 | 0 |
| Motion for Class Certification - Hearing/Preparation | 27.5 | 18.5 | 0 | 0 | 7.2 | 8.5 | 0 |
| 23(f) Motion | 22.2 | 12.8 | 0 | 0 | 2.5 | 18 | 23.5 |
| Settlement/Mediation | 69 | 31.5 | 0 | 0 | 26.7 | 23.35 | 0 |
| Approval/Fees | 35 | 6 | 0 | 0 | 5 | 7.9 | 3.5 |
| Trial Preparation | 18 | 9 | | | 14.8 | 3.6 | |
| | | | | | | | |
| **Total Hours** | 846.61 | 165.62 | 277.8 | 9.5 | 341.74 | 294.545 | 27 |
| **Billing Rates** | 600 | 800 | 150 | 150 | 650 | 800 | 525 |
| **Total Billed** | 507,966.00 | 132,496.00 | 41,670.00 | 1,425.00 | 222,131.00 | 235,636.00 | 14,175.00 |

**Grand Total**: $1,155,499.00

**CUTTER LAW COSTS AND EXPENSES**

| Date | Description | Costs |
|---|---|---|
| 3/1/2012 | Filing fee - One legal | 462.60 |
| 4/1/2012 | Process Service fee - Moe's | 30.00 |
| 5/31/2012 | Online legal research | 28.93 |
| 8/1/2012 | Online legal research | 63.91 |
| 8/24/2012 | Messenger and Delivery Fee - FedEx | 49.23 |
| 9/2/2012 | Travel expense - Amtrack, meal, taxi - Amex | 115.39 |
| 9/18/2012 | Filing fee, pro hac vice, UCDC | 305.00 |
| 9/18/2012 | Filing fee, pro hac vice, UCDC | 305.00 |
| 9/18/2012 | Filing fee, pro hac vice, UCDC | 305.00 |
| 10/1/2012 | Online legal research | 7.94 |
| 10/2/2012 | Travel expense - taxi - Amex | 20 |
| 10/5/2012 | Messenger and Delivery Fee - FedEx | 12.54 |
| 1/1/2013 | Online legal research | 19.71 |
| 1/1/2013 | Teleconferencing billing | 107.44 |
| 1/14/2013 | Teleconferencing - call | |
| 2/20/2013 | Filing fee - One legal | 109.95 |
| 3/1/2013 | Teleconferencing billing | 35.13 |
| 3/5/2013 | Online legal research | 93.3 |
| 10/1/2014 | Transcription fees, depo of Ian Michael Bohannon | 1,045.50 |
| 2/2/2014 | Travel expense - Amex | 34.27 |
| 3/1/2014 | Online legal research | 10.21 |
| 4/1/2014 | Online legal research | 5.23 |
| 4/17/2014 | Teleconferencing - billing | 41.87 |
| 5/30/2014 | Travel expense - mileage, taxi | 25.08 |
| 6/2/2014 | Travel expense - Amex | 123 |
| 7/23/2014 | Photocopy | 66.6 |
| 7/29/2014 | Travel expense - mileage, toll, meal for witness prep and depositions over multiple days | 423.09 |
| 9/1/2014 | Messenger and Delivery Fee - FedEx | 53.25 |
| 9/1/2014 | Online legal research | 16.21 |
| 9/1/2014 | Tavel expense - flights, meals, hotel, ground transportation | 4,177.65 |
| 9/1/2014 | Video Services, depo of Allison Hendrix | 539.00 |
| 9/1/2014 | Transcription fees, depo of Allison Hendrix | 1,105.45 |
| 9/1/2014 | Transcription fees, depo of Bill Richardson | 1,290.70 |
| 9/1/2014 | Transcription fees, depo of Sidharth Garg | 1,225.40 |
| 9/1/2014 | Video Services, depo of Bill Richardson | 1,317.00 |
| 9/1/2014 | Transcription fees, Johnathan William Wright | 1,111.00 |
| 9/1/2014 | Transcription fees, depo of Julie Wright and Steven Robert Wright | 1,766.25 |
| 9/2/2014 | Travel expense, meal. Amex. | 49.55 |
| 9/30/2014 | Messenger and Delivery Fee - FedEx | 33.47 |
| 9/30/2014 | Online legal research | 282.57 |
| 10/1/2014 | Travel expense, mileage, toll and parking. | 96.37 |
| 10/1/2014 | Online legal research | 54.50 |
| 10/1/2014 | Transcription fees, depo of Glynnis Bohannon | 1,453.50 |
| 11/1/2014 | Messenger and Delivery Fee - FedEx | 22.55 |
| 11/2/2014 | Courtcall | 86.00 |
| 1/1/2015 | Travel expense, mileage to/from San Jose | 151.20 |
| 1/1/2015 | Online legal research | 19.11 |
| 1/2/2015 | Travel expense, Amtrak, ground transportation, hotel | 380.47 |
| 2/1/2015 | Transcription fees - Summer Fisher | 50.40 |
| 3/3/2015 | Filing fee - One legal | 125.90 |

**CUTTER LAW COSTS AND EXPENSES**

| Date | Description | Costs |
|---|---|---|
| 7/1/2015 | Filing fee - Rapid Legal | 861.18 |
| 8/4/2015 | Mediation fee - JAMS | 6,275.00 |
| 9/2/2015 | Travel expense, Amtrak | 32.00 |
| 10/1/2015 | FedEx | 122.00 |
| 11/1/2015 | Online legal research | 158.82 |
| | **TOTAL** | 26,702.42 |

**Dan Edleman Costs & Expenses**      2,413.24

**TOTAL CLASS COUNSEL COSTS AND EXPENSES**      **29,115.66**