C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
CUTTER LAW, P.C.
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Facsimile: (916) 558-9330
Emails: bcutter@cutterlaw.com / jparker@cutterlaw.com

Daniel B. Edelman, *pro hac vice*
Katz, Marshall & Banks LLP
1718 Connecticut Avenue NW, Suite 600
Washington, DC 20009
Telephone: (202) 299-1140
Email: edelman@kmblegal.com

Benjamin Edelman, *pro hac vice*
169 Walnut Street
Brookline, MA 02445
Telephone: (617) 359-3360
Email: ben@benedelman.org

Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem GLYNNIS BOHANNON; J.W., by and through his Guardian ad Litem STEVEN WRIGHT, individually and on behalf of all others similarly situated, <br><br>           Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br>           Defendant. | Case No. CV 12-01894-BLF <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR REPRESENTATIVE PLAINTIFFS** <br><br> Date:     March 17, 2016 <br> Time:     9:00 AM <br> Court Room 3, 5th Floor <br><br> Hon.: Beth Labson Freeman, United States District Court Judge for the Northern District of California |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

I.     ARGUMENT ............................................................................................1

    A.     Class Counsel is Entitled to Fees Because Enforcement of Laws Protecting Children Involves an "Important Right Affecting the Public Interest". ...............1

    B.     Class Counsel's Lodestar was Calculated with Great Care at Achieving the Fairest Estimate Possible and Should Be Affirmed by Court...........................................3

        1.     Class Counsel Have Provided Sufficient Support for Their Fee Request ..................................................................................................4

        2.     The Requested Fee is Proper Given the Excellent Results Achieved by Plaintiffs and Class Counsel. ..................................................6

        3.     Class Counsel Prosecuted this Action Professionally and Efficiently... 11

        4.     There is Ample Support for Class Counsel's Billing Rates ...................12

    C.     A Lodestar Enhancement Is Justified .................................................13

    D.     Plaintiffs Are Entitled to Reimbursement of Their Litigation Expenses Pursuant to § 102.5 ........................................................................................15

    E.     Plaintiffs Are Entitled to the Service Fee Awards Requested ...........................15

II.     CONCLUSION...........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Western Electric Co.*,
 643 F.Supp. 836 (N.D. Cal. 1986) ...............................................................5

*Aguirre v. L.A. Unified Sch. Dist.*,
 461 F.3d 1114 (9th Cir. Cal. 2006) (Pregerson concurring) ...........................9

*Berg v. Traylor*,
 148 Cal.App.4th 809 (2007) .........................................................................1

*Blackwell v. Foley*,
 724 F.Supp.2d 1068 (N.D. Cal. 2010) .........................................................15

*Cabrales v. County of Los Angeles*,
 935 F.2d 1050 (9th Cir. Cal. 1991).........................................................8, 11

*Christian Research Institute v. Alnor*,
 165 Cal.App.4th 1315 (2008) ....................................................................5, 6

*EEOC v. Harris Farms, Inc.*,
 97 Fair Empl. Prac. Cas. (BNA) 1447 (E.D. Cal. 2006)................................4

*Eriksson v. Nunnink*,
 233 Cal.App.4th 708 (2015) .........................................................................1

*Fox v. Vice*,
 131 S. Ct. 2205 (2011) .................................................................................5

*Grant v. American Golf Corp.*,
 2003 Cal. App. Unpub. .................................................................................2

*Harman v. City and County of San Francisco*,
 158 Cal.App.4th 407 (2007) .........................................................................7

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)............................................................................ *passim*

*Herrington v. County of Sonoma*,
 883 F.2d 739 (9th Cir. 1989) ........................................................................9

*Hogar Dulce Hogar v. Community Development Com.*,
 157 Cal.App.4th 1358 (2007) .......................................................................9

*I.B. v. Facebook, Inc.*,
   82 F.Supp.3d 1115, 1122 (N.D. Cal. 2015) ...........................................................1

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) .......................................................................................13, 14

*Ko v. Natura Pet Prods.*,
   2012 U.S. Dist. LEXIS 128615 (N.D. Cal. 2012) ..................................................12

*Krumme v. Mercury Ins. Co.*,
   123 Cal.App.4th 924 (2004) ....................................................................................9

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................13

*Lota v. Home Depot U.S.A., Inc.*,
   2013 U.S. Dist. LEXIS 181848 (N.D. Cal. 2013) ..................................................12

*Lunada Biomedical v. Nunez*,
   230 Cal.App.4th 459 (2014) ...................................................................................11

*Lytle v. Carl*,
   382 F.3d 978 (9th Cir. 2004) ....................................................................................4

*Macdonald v. Ford Motor Co.*,
   2015 U.S. Dist. LEXIS 151277 (N.D. Cal. 2015) ....................................................2

*In re Magsafe Apple Power Adapter Litig.*,
   2015 U.S. Dist. LEXIS 11353 (2015)......................................................................13

*Olsen v. Breeze, Inc.*,
   48 Cal.App.4th 608 (1996) .......................................................................................2

*Piping Rock Partners, Inc. v. David Lerner Assocs.*,
   2015 U.S. Dist. LEXIS 109016 (N.D. Cal. 2015) ....................................................5

*Raining Data Corp. v. Barrenechea*,
   175 Cal.App.4th 1363 (2009) ...................................................................................5

*Rodriguez v. Cty. of Los Angeles*,
   96 F. Supp. 3d 1012, 1024-25 (C.D. Cal. 2014) ....................................................11

*Salazar v. Dist. of Columbia*,
   991 F. Supp. 2d 39 (D.D.C. 2014) ..........................................................................13

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ......................................................................................6

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*,
   668 F.3d 677 (9th Cir. 2012) ....................................................................................5

iii

*Steiny & Co. v. Cal. Elec. Supply Co.*,
    79 Cal.App.4th 285 (2000) ....................................................................5

*Stonebrae L.P. v. Toll Bros.*,
    521 Fed. Appx. 592 (9th Cir. 2013) ....................................................9

*Thomas v. City of Tacoma*,
    410 F.3d 644 (9th Cir. 2005) ...............................................................8

*United Steelworkers of America v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .............................................................12

*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) .............................................................7

**Statutes**

California Code of Civil Procedure § 1021.5 ..............................1, 2, 15

§§ 6701(c) and 6710 of the Family Code ...............................................1

**Other Authorities**

National Law Journal, *Annual Survey of Billing Rates* (Jan. 13, 2014),
    http://www.nationallawjournal.com/id=1202636785489 .....................13

Class Counsel have submitted a Motion for an Award of Attorneys' Fees ("the Motion") citing to abundant legal and factual support for their request of fees and litigation expenses, as well as documentation of the hours worked and the fees requested. Class Counsel have requested only what they considered undeniably fair compensation for their work.

In response, Facebook has filed an Opposition replete with conclusory allegations and arguments and a series of unsubstantiated ad hominem attacks on Class Counsel. Class Counsel submit this Reply in support of their Motion and in response to Facebook's scurrilous Opposition.

## I.  ARGUMENT

### A.  Class Counsel is Entitled to Fees Because Enforcement of Laws Protecting Children Involves an "Important Right Affecting the Public Interest"

Facebook argues Class Counsel have not demonstrated they are entitled to fees because they have not shown the lawsuit involved "an important right affecting the public interest." Opp. at pp. 3-5. Facebook does concede that the litigation conferred a "valuable benefit to the class" but still argues that there is no important right involved as required by California Code of Civil Procedure § 1021.5 ("§ 1021.5"). Opp. at p. 4. Facebook fails to account for clear precedent to the contrary, and its attempts to analogize this case are both unpersuasive and disingenuous.

The rights of minors to void contracts pursuant to the Family Code are important rights affecting the public interest. This Court has already specifically found that §§ 6701(c) and 6710 of the Family Code reflect "a strong public policy in favor of protecting minors." *I.B. v. Facebook, Inc.*, 82 F.Supp.3d 1115, 1122 (N.D. Cal. 2015). California courts have repeatedly found that "the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and *the designs of others*." *Berg v. Traylor*, 148 Cal.App.4th 809, 818 (2007) (emphasis added); *see also Eriksson v. Nunnink*, 233 Cal.App.4th 708, 720-21 (2015). This litigation is the first in a century to reaffirm these invaluable rights for not only the minors affected by Facebook's unlawful policies, but potentially for many other minors and their parents who are now more fully apprised of their rights. Because this litigation successfully

1

enforced laws which reflect a "strong public policy in favor of protecting minors," Class Counsel are entitled to fees under § 1021.5.

As discussed in the Motion, this litigation has resulted in the enforcement of consumer protection laws aimed at protecting children and the vindication of California's strong public policy. Plaintiffs and Class Counsel obtained this benefit for millions of minors who were part of the Class certified by the Court. As cited in the Motion, a recent court in the Northern District explicitly found that actions to enforce California's consumer protection laws involved "important rights affecting the public interest." *Macdonald v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 151277, at *22-23 (N.D. Cal. 2015); *see* Motion at pp. 4-5. Facebook ignores this on-point precedent and, instead, seeks to analogize this case to two others, *Olsen v. Breeze, Inc.*, 48 Cal.App.4th 608 (1996) and *Grant v. American Golf Corp.*, 2003 Cal. App. Unpub. LEXIS 8617 (2003).

Facebook argues this case is "factually similar" to *Olsen*, where a plaintiff representing himself challenged the legality of liability waivers at a ski resort. 48 Cal.App.4th at 615. The plaintiff's claims were eventually all dismissed, but he sought partial attorney's fees because he claimed his suit spurred changes to the waivers at issue. *Id.* at 615-17. The court upheld the earlier denial of attorney's fees under § 1021.5 because, among other things, "skiing is not a matter of public interest." *Id.* at 629. The second case Facebook claims is "similar" to the one before the Court is *Grant*, an unpublished state court opinion in which condominium owners challenged a fee being charged for access to a country club golf course. 2003 Cal. App. Unpub. LEXIS 8617, at *1-2. The *Grant* court denied fees because the right involved related primarily to golfing, which like skiing is a recreational activity and not an important right. *Id.*, at *19.

Facebook strains to argue that this case is about protecting the right to play games and therefore, like golfing and skiing, not an important right of public interest. Opp. at p. 5. It blatantly mischaracterizes the rights at issue in this case. This is a case where Class Counsel have vindicated the rights of children to void contracts under the California Family Code, not "playing games on Facebook." This case is about a large corporation that systematically

encourages and facilitates minors to become users of its website and programs, tells them that no refunds are available, and denies their requests for refunds, despite the requirements of California law.  This case resulted in the validation and protection of the rights of all minors using Facebook to disaffirm transactions and request refunds under the California Family Code for any Facebook Payment or Credit transaction; comparing it to skiing and country club golfing is juvenile.  Facebook's cavalier attitude toward its infringement of its minor users' rights provides an insight into how Facebook's unlawful policies came about in the first place.

### B. Class Counsel's Lodestar was Calculated with Great Care at Achieving the Fairest Estimate Possible and Should Be Affirmed by the Court

Facebook challenges the lodestar calculated by Class Counsel on a number of grounds. Opp. at pp. 5-20.  Although much of the argument section offers repetitive, conclusory claims that the numbers appear "unreasonably inflated" or "padded," Class Counsel will respond to each claim.  However, it should be first noted that the attacks leveled by Facebook's counsel in its opposition are unbecoming of the legal profession.  The personal and unsubstantiated attacks on Class counsel are uncalled for and should have no place in a legal brief.  The attached supplemental declaration of Benjamin Edelman debunks a few of the more egregious attacks. Facebook carelessly accuses Benjamin Edelman of improperly using and disclosing confidential information based solely on "an emergency motion" in one case and a motion alleging that he violated a protective order in another.  Opp. at pp. 10-11.  Facebook fails to mention that the courts in both instances found the allegations unsubstantiated and denied both motions.  B. Edelman Supplemental Decl. ¶¶ 6-7.  In addition, the attack on Daniel Edelman's value to the overall success of this case is belied by the declarations and attached materials submitted with the original motion.  *See* D. Edelman Decl. ¶¶ 1-3, 5-8, 12 & Exh. A and B; Cutter Decl. ¶ 7. Class Counsel have documented the vast experience, including briefing of certification and merits issues in complex class litigation, and the honed skillset that Daniel Edelman brought to this litigation and which ultimately contributed to its success.  The impetus for engaging Daniel Edelman has already been explained: "Once the potential scope of the case became clear, [Cutter

Law, P.C.] reached out to Daniel Edelman, Esq., a former U.S. Supreme Court Clerk with more than 40 years of experience, for assistance, guidance, and strategic depth, in order to best serve the interests of the potential class."  Cutter Decl. ¶ 7; Motion at p. 1.

## 1. Class Counsel Have Provided Sufficient Support for Their Fee Request

Facebook complains that the time records submitted by Class Counsel are not specific enough to support the fees requested.  Opp. at 6-11.  If the Court desires more detailed documentation, Class Counsel will provide it; however, the submitted lodestar total was supported by a level of documentation well above the threshold commonly accepted by courts in the Ninth Circuit.  "'[P]laintiff's counsel . . . is not required to record in great detail how each minute of his time was expended.'"  *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (quoting *Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  "Counsel need only 'identify the general subject matter of [its] time expenditures.'"  *EEOC v. Harris Farms, Inc.*, 97 Fair Empl. Prac. Cas. (BNA) 1447 (E.D. Cal. 2006) (quoting *Tise*, 234 F.3d at 427).

Class Counsel submitted charts with their Motion that concisely but clearly detail the time each person spent on *fifteen* discrete tasks throughout this litigation.  *See* Cutter Decl., Exh. E.  This method allowed the data to be analyzed in a manageable way, while still maintaining clarity sufficient to identify the tasks on which the time was spent.  In addition, attorneys from each firm prepared declarations further detailing the specific work and time committed by Class Counsel to successfully prosecuting this action.  Furthermore, the attached declarations clarify the record keeping practices that were used in relation to this litigation.  Cutter Supp. Decl. ¶ 2; Ibarra Supp. Decl. ¶¶ 2-4.  Such documentation far exceeds that found adequate in a multitude of Ninth Circuit cases.  For instance, in *Lytle*, the defendant similarly challenged billing records as "not descriptive enough to support the hours claimed."  382 F.3d at 989.  The *Lytle* court found that although "the time descriptions [were] minimal, they establish[ed] that the time was spent on the matters for which the district court awarded attorneys' fees" and affirmed the award.  *Id.*  The United States Supreme Court has also made clear that determining fees should not result in a

"'second major litigation'" because the essential goal is to do "rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (quoting *Hensley*, 461 U.S. at 437). Facebook implies Class Counsel have somehow been negligent in not detailing every moment of their work when such documentation is not required. In one recent Northern District case, Judge Ilston even found that "a party may prevail on a motion for attorneys' fees without submitting any billing records whatsoever." *Piping Rock Partners, Inc. v. David Lerner Assocs.*, 2015 U.S. Dist. LEXIS 109016, at *11-12 (N.D. Cal. 2015) (citing *Lunada Biomedical v. Nunez*, 230 Cal.App.4th 459, 487-88 (2014) (a party "can carry its burden of establishing its entitlement to attorney fees by submitting a declaration from counsel instead of billing records or invoices.")); *see also Raining Data Corp. v. Barrenechea*, 175 Cal.App.4th 1363, 1375 (2009) ("The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."); *Steiny & Co. v. Cal. Elec. Supply Co.*, 79 Cal.App.4th 285, 293 (2000) (finding an "attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"). Therefore, the organized, detailed records submitted by Class Counsel, supported by declarations from each firm involved support the fees requested.

Although Facebook makes much of the format of the records submitted, courts have been clear that the "formatting of the documentation provided — whether block billed, or otherwise — does not control the Court's analysis." *Piping Rock Partners*, 2015 U.S. Dist. LEXIS 109016, at *11-12; *see also Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012); *Ackerman v. Western Electric Co.*, 643 F.Supp. 836, 863 (N.D. Cal. 1986). Facebook relies most heavily on *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1324-25 (2008), citing it multiple times for its "severe reduction" language. Opp. at pp. 6-9. However, *Christian Research* is entirely distinguishable. The case involved a request for fees pursuant to the anti-SLAPP statute's fee provision that awards fees specifically and exclusively for work on a successful motion to strike. *Christian Research*, at 1324-25. Counsel attempted to include time in its lodestar calculation that was unquestionably dedicated to non-compensable activities

totally unrelated to the motion to strike at issue. *Id.* The trial court specifically noted that it was "a single SLAPP motion on a single issue" with most of the issues uncontested and counsel sought attorney fees for over 600 hours, totaling more than $ 250,000. *Id.* at 1319-20. The unique statutory basis for the fee request there and the extreme audacity of the fee-seeking attorney easily distinguishes the case from the one at hand.

Facebook also argues that the roles of Daniel Edelman and Benjamin Edelman must have been small because Mrs. Bohannon was unaware of them. Opp. at pp. 9-11. However, the fact that plaintiffs were not personally aware of the roles they played is immaterial and reflects no more than that Class Counsel avoided duplication of services by centralizing responsibility for client contacts with Cutter Law, P.C., primarily Mr. Parker. It does not detract from either attorney's contributions as co-counsel. It is telling that Facebook includes no citations to legal authority for its arguments on this point.

### 2. The Requested Fee is Proper Given the Excellent Results Achieved by Plaintiffs and Class Counsel

Facebook argues that the lodestar should be reduced because Plaintiffs achieved only "limited success." Opp. at pp. 11-15. Despite not prevailing on each and every claim, Plaintiffs and Class Counsel achieved excellent results for the Class in this litigation. When a case involves a mixture of successful and unsuccessful claims, the Ninth Circuit, post-*Hensley*, instructs the district courts "to follow a two-part analysis" in analyzing fees:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901-02 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Thorne v. El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).

Claims are only "unrelated" when they do not involve a "common core of facts" **or** "related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Courts have found that an unsuccessful claim is unrelated to a successful claim only if "the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Harman v. City and County of San Francisco*, 158 Cal.App.4th 407, 423 (2007) (internal citations and quotations omitted).

First, Class Counsel have already conceded that certain early claims were unsuccessful and unrelated to the successful claims, namely the Electronic Funds Transfer Act and Money Transactions Act claims included in earlier pleadings. Motion at pp. 6, 11-12. However, the 10% reduction in the hours spent on the earlier pleadings and in drafting oppositions to Facebook's motions to dismiss amply accounts for these discrete, unrelated, unsuccessful claims, especially given that the bulk of the work committed to defending the motions to dismiss involved an issue Plaintiffs ultimately prevailed on, standing.

As for the second step of the analysis, Class Counsel have achieved "excellent results" that make a full reimbursement for all hours committed to this litigation eminently reasonable:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435 (internal citation omitted).

Through this litigation, Class Counsel have achieved a victory that vindicates and proactively protects the rights of millions of children across the country. In its own Opposition, Facebook had to concede that Class Counsel were successful in securing injunctive relief that "provides a valuable benefit to the class" and achieved a "fair settlement for the class." Opp. at pp. 1, 4. The Court should give no credence to Facebook's arguments that the unsuccessful

claims and the restitution issue reduce the ultimate impact of this action and the fees that should be awarded.  *See also Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (finding that even if certain claims are not related it "does not automatically bar an award of attorney's fees associated with those unrelated claims; work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims").

From the start of this litigation, the goal has been to change the unlawful practices of Facebook in connection with its online contracting with minors and to test those practices against the requirements of the California Family Code's provision for the disaffirmance of transactions by minors.  Despite evolving legal theories, the same core of facts has guided this litigation and the work performed by Class Counsel, all contributing to the ultimate success of this case.  The Ninth Circuit has ruled that "plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.  Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims."  *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. Cal. 1991).  Faced with a defendant that similarly challenged an attorneys' fees request because of some unsuccessful claims, the Ninth Circuit took care to illustrate the proper context for analyzing such issues:

> Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The [defendant] would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

*Id.* at 1053.

Although there have been setbacks and some claims lost, it makes little sense to "scalpel out" hours here and there when Class Counsel has ultimately achieved vindication for Plaintiffs and the Class.  Facebook would have the Court require minute by minute records for it to pick apart, but, lawsuits such as this "cannot be viewed as a series of discrete claims," rather, the Court must examine the overall relief obtained.  *Hensley*, at 435.  Furthermore, Class Counsel have voluntarily reduced certain categories of hours and not requested any fees for work done by

8

law clerks and paralegals. Ultimately, Class Counsel have achieved excellent results and, despite some lost battles, have won the war, justifying the eminently reasonable fee award requested. *See Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1122-1123 (9th Cir. Cal. 2006) (Pregerson concurring) (fee award was justified given that all the claims were focused on improving the same system); *Herrington v. County of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989) (refusing to adjust the fee award downward for lost damages issue because the plaintiff "still obtained significant relief through the injunction and the overall determination of liability"); *Hogar Dulce Hogar v. Community Development Com.*, 157 Cal.App.4th 1358, 1369 (2007) (fee should not be reduced simply because court did not adopt each contention raised, when substantial relief had been won); *Stonebrae L.P. v. Toll Bros.*, 521 Fed. Appx. 592, 594-95 (9th Cir. 2013) (where a plaintiff "achieves an excellent result, the court should refuse to reduce the lodestar amount").

Facebook also emphasizes that Plaintiffs did not receive restitutionary relief. However, Facebook fails to even address the cases cited by Plaintiffs in their Motion. In *Krumme v. Mercury Ins. Co.*, 123 Cal.App.4th 924, 946-47 (2004), cited in the Motion, the defendant asserted an argument nearly identical to Facebook's argument here:

> [The defendant] submits that because plaintiff began by seeking restitution but ended up with only injunctive relief that is "technical in nature and confers virtually no benefits on consumers. Without a restitution award, this case should be considered a failure for Plaintiff's attorneys.

The court found that it was not only "true that plaintiff originally sought restitution" but that it "did so up to the entry of judgment." *Id.* However, it concluded that plaintiff "did achieve a significant objective of the lawsuit—halting [the defendant's challenged practice]," and upheld the fee award based on the injunctive relief awarded. *Id.* In addition, the *Krumme* court further held that the applied multiplier of 1.5 was appropriate given the injunctive relief achieved. *Id.* Just as in *Krumme*, that Plaintiffs sought restitutionary relief alongside injunctive relief does not undermine the excellent benefits achieved for the Class or require a reduction in the fee awarded. The Supreme Court in *Hensley* specifically found that it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 436 n.11. The

very example cited by *Hensley* is the one present here: "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* Accordingly, Class Counsel's fee request should be fully awarded here.

Facebook also asks to cut the time spent by Class Counsel opposing Facebook's efforts to seal portions of Plaintiffs' brief in support of class certification. Opp. at pp. 15-16. While it is true that Facebook's ultimate motion to seal was granted, Class Counsel's efforts were not entirely "unsuccessful." In fact, even before Plaintiffs filed their Opposition to Facebook's attempt to seal large amounts of Plaintiffs' brief, the parties engaged in repeated attempts to meet and confer on what should be sealed. This process resulted in Facebook abandoning its attempt to seal much of the text of Plaintiffs' class certification brief. *See* Docket no. 96, fn. 1. Class Counsel's efforts specifically led Facebook to withdraw requests to seal in twelve distinct passages across eleven distinct pages of the Class Certification brief.[1] Facebook originally sought to seal many passages in Plaintiffs' brief because they contained information embarrassing to Facebook, not because they were legitimately something that should be kept from the public. As to the passages referenced in footnote 2 below, Facebook relented after Class Counsel challenged the basis for Facebook's request to seal in the meet and confer process. *Compare* Docket no. 87 with Docket no. 100; *see also* Docket no. 96, fn. 1. It was only through the diligent efforts of Class Counsel that the public was able to gain access to information ultimately left unsealed by the Court, further adding to the benefit this litigation has provided to the public.

As the Ninth Circuit has found, "[j]ust as time spent on losing claims can contribute to the success of other claims, time spent on a losing stage of litigation contributes to success

---

[1] Facebook specifically withdrew requests to seal the following passages from Plaintiff's MPA in support of Class Certification: 3:19-4:4 (partial); 4:20-5:6 (partial); 5:8-5:20 (complete); 5:25-6:6 (partial); 6:9-6:14 (complete but for a numerical reference); 6:15-6:18 (complete); 8:9-9:2 (complete); 10:3-10:11 (complete); 10:13-10:22 (partial); 12:3-12:12 (partial); 13:12-13:15 (complete); 19, FN 13 (complete).

because it constitutes a step toward victory." *Cabrales*, 935 F.2d at 1052; *see also Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1024-25 (C.D. Cal. 2014) ("work pertaining to unsuccessful motions" may warrant a "fully compensatory fee" when it relates to the plaintiff's ultimate success). Therefore, this time should not be cut from Class Counsel's fee request. Class Counsel will not further address Facebook's attacks on Benjamin Edelman in connection with this issue except to again refer to the supplemental declaration of Benjamin Edelman filed herewith, which demonstrates that the aspersions on him cast by Facebook are unfounded and apparently reflect Facebook's animosity for his leading role in identifying its broad release of users' personal information. *See* B. Edelman Supp. Decl. ¶¶ 5-9, 17-18.

### 3. Class Counsel Prosecuted this Action Professionally and Efficiently

Facebook argues that the hours Class Counsel spent in prosecuting this action should be reduced "for failure to delegate tasks appropriately," duplication, and unreasonable trial preparation. Opp. at pp. 17-19. In support for its argument, Facebook makes a series of conclusory determinations about how Class Counsel should have handled this litigation in its opinion. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Lunada Biomedical v. Nunez,* 230 Cal.App.4th 459, 488 (2014). Facebook's arguments fail to raise any reasonable issues that would require any adjustments to the lodestar. It simply points to certain tasks performed and argues it should have been handled differently, yet with no relevant legal support.

In fact, many of Facebook's grievances have already been directly addressed. For instance, Facebook suggests Daniel Edelman's time spent on document review reflects duplication but overlooks the clear explanation provided in Mr. Edelman's declaration. It explained that his document review was focused on identifying particular documents and information to be used in class briefing for which he was personally responsible. D. Edelman Decl. ¶ 7. The work, related to the crucial role he was to perform in briefing class certification,

could not reasonably have been delegated.  Similarly, Facebook argues there is insufficient information regarding whether Mr. Edelman's work opposing the 23(f) petition was properly performed or duplicative.  To the contrary, Mr. Edelman prepared an initial draft of the opposition which was incorporated into the final version compiled by Audra Ibarra.  Ibarra Supp. Decl. ¶ 5.  In addition, Facebook claims more of the discovery should have been delegated by Mr. Parker despite the fact that an associate, Ms. Tran, performed more of the discovery work than anyone else assigned to the case.  Cutter Decl., Exh. E.  As for Facebook's further attack on Benjamin Edelman's experience, his attached declaration should assuage any concern in that regard.  B. Edelman Supp. Decl. ¶¶ 2-4, 10-24.

Facebook's challenge to time Class Counsel spent on trial preparation relies not on any legal authority but Facebook's fundamentally unsound conclusion that any trial preparation was premature.  Upon certification of the class, Class Counsel naturally began preliminary trial preparation work in order to be prepared in the event the case did not resolve.  It is preposterous for Facebook to imply that because mediation is scheduled a party is unreasonable in undertaking preliminary preparation for trial.  Prudent counsel do not wait until after mediation efforts have failed before beginning to prepare for trial.

### 4.  There is Ample Support for Class Counsel's Billing Rates

Facebook also claims the billing rates submitted by Class Counsel are not supported.  Opp. at pp. 19-20.  However, Facebook fails to respond to any of the authority and support provided by Class Counsel in the Motion.  Clear precedent from the Ninth Circuit illustrates that Class Counsel have properly supported the billing rates submitted.

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Ko v. Natura Pet Prods.*, 2012 U.S. Dist. LEXIS 128615, at *25 (N.D. Cal. 2012).  "Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness."  *Lota v. Home Depot U.S.A., Inc.*, 2013

U.S. Dist. LEXIS 181848, at *9 (N.D. Cal. 2013). Class Counsel have submitted declarations from each firm involved supporting the rates. In addition, the Motion cites very recent decisions by other courts in the Northern District that also support the specific rates requested, namely *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015) and *In re Magsafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353, *37 (2015). Motion at p. 7. Such evidence is sufficient to establish Class Counsel's rates are in line with the prevailing market rate in the Northern District.

Two further points should be noted. First, Facebook attempts to undermine Daniel Edelman's evidence that his rate is in line with those prevailing in the District of Columbia by arguing it does not provide evidence of the prevailing rate in the Bay Area. Opp. at p. 19 n.6. However, one court has explicitly found that the "Washington, D.C. market is ranked third nationally for the highest cost of legal services, behind only New York and **San Francisco**." *Salazar v. Dist. of Columbia*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014) (emphasis added). Therefore, Daniel Edelman's rate is even more reasonable given its conformity with only the third most expensive market. The final point is that Facebook has not provided any support of its own regarding the prevailing market rate. Perhaps that is because Facebook's counsel, Cooley LLP, charges rates for partners up to $990 with an average of $820, and for associates up to $630 with an average of $525, clearly above those requested by Class Counsel. *See* National Law Journal, *Annual Survey of Billing Rates* (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489.

### C. A Lodestar Enhancement Is Justified.

Facebook contends that a lodestar enhancement is not justified here, primarily challenging the concept that the contingency fee involved in this litigation supports a lodestar enhancement. Opp. at pp. 20-23. Interestingly, the case most heavily relied on by Facebook is *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), a case that undermines Facebook's arguments.

Facebook argues that the unenhanced lodestar "more than sufficiently" provides market-level compensation, thereby achieving the "purpose of contingent-risk enhancements." Opp. at

p. 22-23. In *Ketchum*, the California Supreme Court did state the purpose of contingent-risk enhancements was "to fix a fee at the fair market value for the particular action." 24 Cal.4th at 1132-33. However, it went on to explain that "[i]n effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the *unadorned lodestar* in order to approximate the fair market rate for such services." *Id.* at 1132 (emphasis added). Because a contingent-fee contract involves a gamble on the result it "may properly provide for a larger compensation than would otherwise be reasonable." *Id.* (quotation marks omitted). "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id.* The *Ketchum* court went on to explain the economic rationale for such enhancements:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.

*Id.* at 1132-33 (internal citations and quotation marks omitted).

Facebook fails to appreciate the logic being applied in *Ketchum* and subsequent California courts applying its reasoning. Facebook posits that the market rate is the "unadorned lodestar" and therefore that is the proper rate for adequately compensating Class Counsel. *Ketchum*, at 1132. However, this is compensating Class Counsel "only for the second of the[] functions" they are providing, and therefore fails to provide Class Counsel with the "fair market value" of their work." *Id.* at 1132-33. Accordingly, the enhancement requested by Class Counsel is more than fair given the entirely contingent nature of their services.

Facebook also argues that the work done by Class Counsel and the result achieved do not justify application of a multiplier. Opp. at p. 22. Class Counsel worked diligently over four

14

years to carry the claims of Plaintiffs and the Class forward. Despite the setbacks and risks involved, Class Counsel persevered and skillfully brought this litigation to a just conclusion, resulting in the vindication of the rights of millions of children across the United States. Ultimately, it is within the Court's discretion to determine whether the lawyering in this case and the result it accomplished, coupled with the entirely contingent basis of Class Counsel's compensation, warrants a modest multiplier in the range of 1.2 to 1.5.

### D. Plaintiffs Are Entitled to Reimbursement of Their Litigation Expenses Pursuant to § 1021.5

Facebook argues Plaintiffs are not entitled to the litigation expenses they seek in the Motion pursuant to § 1021.5. Opp. at p. 24. "An award of reasonable attorney fees also includes expenses of the type normally billed to a fee-paying client as statutory 'litigation expenses' per . . . Code of Civil Procedure § 1021.5." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1084-85 (N.D. Cal. 2010). As the prevailing party in this litigation, Plaintiffs and their counsel are entitled to an award of attorneys' fees and reimbursement of the attendant litigation expenses reasonably incurred in prosecuting this action and requested in the Motion pursuant to § 1021.5.

### E. Plaintiffs Are Entitled to the Service Fee Awards Requested

In the Motion, Class Counsel requested service fee awards of $5000 for each of the minor Plaintiffs. Motion at pp. 13-15. It appears Facebook does not oppose such a request, and Class Counsel asks that such amounts be awarded.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs and their counsel are entitled to an award of attorneys' fees, reimbursement of litigation expenses, and incentive awards as requested in the Motion.

/ / /

/ / /

/ / /

Dated: February 19, 2016                    CUTTER LAW, P.C.


                                   By:    /s/ John R. Parker, Esq.
                                          C. Brooks Cutter, Esq.
                                          John R. Parker, Jr., Esq.
                                          *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

By: <u>/s/John R. Parker, Jr.</u>
John R. Parker, Jr.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS
CASE NO. CV 12-01894 BLF