UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

GLYNNIS BOHANNON, ET AL.,

PLAINTIFFS, CASE NO. CV-12-01894-BLF

VS. SAN JOSE, CALIFORNIA

FACEBOOK, INC., MARCH 17, 2016

DEFENDANT. PAGES 1 - 53

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFFS: CUTTER LAW P.C.
BY: C. BROOKS CUTTER
JOHN R. PARKER, JR.
401 WATT AVENUE
SACRAMENTO, CALIFORNIA 95864

FOR THE DEFENDANT: COOLEY
BY: WHITTY SOMVICHIAN
BENJAMIN H. KLEINE
KRISTINE A. FORDERER
101 CALIFORNIA STREET, 5TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

OFFICIAL COURT REPORTER: IRENE L. RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
TRANSCRIPT PRODUCED WITH COMPUTER.

SAN JOSE, CALIFORNIA MARCH 17, 2016

P R O C E E D I N G S

(COURT CONVENED.)

THE CLERK: CALLING CASE 12-1894, BOHANNON VERSUS FACEBOOK.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

MR. CUTTER: BROOKS CUTTER OF CUTTER LAW P.C. FOR THE PLAINTIFF CLASS.

THE COURT: GOOD MORNING, MR. CUTTER.

MR. CUTTER: GOOD MORNING.

MR. PARKER: JOHN PARKER OF CUTTER LAW P.C. FOR THE PLAINTIFFS.

THE COURT: GOOD MORNING, MR. PARKER.

MR. SOMVICHIAN: GOOD MORNING, YOUR HONOR. WHITTY SOMVICHIAN OF COOLEY REPRESENTING FACEBOOK.

THE COURT: HELLO, MR. SOMVICHIAN. GOOD MORNING.

MR. KLEINE: BENJAMIN KLEINE REPRESENTING FACEBOOK.

THE COURT: GOOD MORNING.

MS. FORDERER: KRISTINE FORDERER ALSO OF COOLEY AND ALSO REPRESENTING FACEBOOK.

THE COURT: GOOD MORNING, MS. FORDERER. ALL RIGHT. WE HAVE TWO THINGS TO ACCOMPLISH TODAY. OF COURSE, I WANT TO START WITH THE SETTLEMENT AGREEMENT ITSELF AND FIRST I WANT TO COMMEND THE PARTIES FOR REACHING THIS AGREEMENT AND OVERALL I ONLY HAVE SOME VERY SPECIFIC QUESTIONS ABOUT IT. AND I THINK

IT'S ACTUALLY IN VERY GOOD ORDER. BUT, OF COURSE, IT'S MY OBLIGATION TO GO THROUGH IT WITH A FINE TOOTH COMB, AND THAT'S WHAT I'VE DONE.

AND WHEN -- AFTER WE'VE DONE THAT, I WOULD LIKE TO TURN TO THE ATTORNEY'S FEES MOTIONS, AND I HAVE SOME QUESTIONS ABOUT TIMING OF ALL OF THIS.

SO IF -- DID YOU HAVE ANYTHING YOU, MR. CUTTER, YOU WANTED TO PRESENT FIRST ON THE SETTLEMENT?

MR. CUTTER: NO. I BELIEVE IT WOULD MAKE SENSE TO ADDRESS THE COURT'S QUESTIONS.

THE COURT: OKAY. AND IT'S MY UNDERSTANDING FROM YOUR BRIEFING THAT THIS WOULD ACTUALLY BE THE ONLY HEARING THAT I WOULD NEED TO HOLD UNDER THE CONDITIONS OF THE SETTLEMENT BECAUSE THE CLASS IS NOT BOUND; IS THAT CORRECT?

MR. CUTTER: THAT'S CORRECT, YOUR HONOR.

THE COURT: ALL RIGHT. AND IS IT YOUR VIEW THAT THE PROPOSED JUDGMENT IS THE ONLY DOCUMENT THAT THE COURT NEEDS TO ISSUE IN TERMS OF AN ORDER EVALUATING THE FAIRNESS AND APPROPRIATENESS OF THE SETTLEMENT?

MR. CUTTER: IT IS.

THE COURT: ALL RIGHT. AND THANK YOU FOR DRAFTING THAT. I HAD SOME QUESTIONS ABOUT THAT AS WELL.

ALL RIGHT. MY FIRST QUESTION IS I BELIEVE A MINOR'S COMPROMISE IS REQUIRED, AND I DON'T BELIEVE YOU'VE DIRECTED -- I DON'T BELIEVE YOU'VE ADDRESSED ALL OF THOSE ISSUES IN THE

BRIEFING, BUT I WANTED YOUR THOUGHTS ON THAT.

MR. CUTTER: IN -- IF I UNDERSTAND THE COURT'S THINKING ON THAT, INSTEAD OF A MINOR'S COMPROMISE IN LIGHT OF THE PAYMENT FOR THE CLASS REPRESENTATIVES?

THE COURT: IN LIGHT OF THE FACT THAT A LAWSUIT INVOLVING CHILDREN IS BEING RESOLVED.

MR. CUTTER: OKAY. I THINK THAT -- I'D SEPARATE THAT INTO TWO SILOS. I DON'T THINK IT'S REQUIRED ON BEHALF OF THE CLASS BECAUSE THERE'S NO RELEASE THERE.

THE COURT: I AGREE WITH THAT.

MR. CUTTER: OKAY.

THE COURT: AND SO WE HAVE THESE TWO KIDS.

MR. CUTTER: RIGHT.

THE COURT: WHO ARE -- AND I BELIEVE UNDER RULE 17(C), I BELIEVE I HAVE AN OBLIGATION TO MAKE THOSE FINDINGS, AND THAT IS -- IT IS CERTAINLY POSSIBLE THAT THE JUDGMENT ITSELF CAN SIMPLY BE MODIFIED TO THE ADDRESS MINOR'S COMPROMISE ISSUES WHICH ARE NOT WHOLLY DIFFERENT THAN WHAT YOU'VE ADDRESSED, BUT I THINK THEY ARE SOMEWHAT DIFFERENT AND THAT THEN GOES INTO SOME OF THE OTHER ISSUES THAT I'M GOING TO DISCUSS. SO PERHAPS WE CAN MOVE ON. YOU'RE FAMILIAR WITH MINOR'S COMPROMISE, I'M SURE?

MR. CUTTER: ABSOLUTELY.

THE COURT: ALL RIGHT. AND IN STATE COURT THERE'S ACTUALLY A FORM. WE DON'T USE THAT, BUT THE LAW IS, I THINK,

FAIRLY CLEAR THAT WE LOOK TO STATE LAW FOR THE CRITERION. IT'S NOT THAT I HAVE ANY PROBLEM, BUT I JUST THINK THAT I NEED TO DO THAT.

MR. CUTTER: RIGHT.

THE COURT: OKAY. SO WE CAN MOVE ON THERE. AND THAT WOULD THEN TAKE ME TO THE RELATED ISSUE AND THAT IS THE INCENTIVE PAYMENTS.

INCENTIVE PAYMENTS ARE COMMON, AND THE AMOUNT HERE IS NOT OPPOSED, BUT I HAVE TWO QUESTIONS HERE. FIRST OF ALL, YOU GAVE ME DECLARATIONS FROM THE PARENTS WHO ARE THE GUARDIANS AD LITEM. I CONSIDER THAT COMPLETELY IRRELEVANT TO THE ISSUE OF WHETHER MONEY GOES TO THE MINORS.

NOW, ONE OF THE MINORS IS PROBABLY AN ADULT NOW, BUT ONE IS NOT AND SO OF COURSE THE MONEY HAS TO GO IN A TRUST. AND THIS IS NOT MONEY FOR THE PARENTS.

MR. CUTTER: CORRECT. THE MONEY WOULD GO INTO A BLOCKED ACCOUNT.

THE COURT: YES. I BELIEVE THAT, AND I'M NOW BLANKING ON HIS INITIALS, J.W., MAY BE AN ADULT NOW; IS THAT CORRECT?

MR. CUTTER: RIGHT.

MR. PARKER: YES, I BELIEVE THAT IS CORRECT, YOUR HONOR.

THE COURT: I THOUGHT HE WAS AN OLDER TEENAGER.

MR. CUTTER: YES, I THINK THAT'S RIGHT. THE MONEY

FOR I.B. WOULD GO INTO A BLOCK.

THE COURT: ALL RIGHT. AND BY MY CALCULATION I.B. IS ABOUT 17 NOW?

MR. CUTTER: THAT SOUNDS CORRECT.

THE COURT: OKAY. THE OTHER THING IS THESE TWO MINORS ARE RELEASING ALL RIGHTS THEY WOULD HAVE TO ACTUALLY OBTAIN RESTITUTION IN THE CASE.

AND ALL YOU'VE DONE, I DON'T MEAN "ALL," BUT YOU'VE COUCHED THE PAYMENT TO THESE TWO MINORS AS INCENTIVE PAYMENTS AND YOU SHOW NO PAYMENT FOR THEIR VOIDING OF THE -- WHETHER OR NOT THEY CAN VOID THE CONTRACTS. YOU DON'T EVEN ACKNOWLEDGE THAT IT WOULD INCLUDE A PAYMENT FOR THE DISPUTED AMOUNT THERE, AND I THINK THAT'S A PROBLEM. THAT WOULD GET IN THE WAY OF A MINOR'S COMPROMISE, IN MY VIEW.

AND I'M NOT SUGGESTING MORE MONEY HAS TO BE GIVEN. AND YOU MAY HAVE ANTICIPATED -- IT MAY HAVE BEEN IN THE BACK OF YOUR MIND THAT THAT 5,000 TAKES CARE OF BOTH, BUT IT'S ONLY WRITTEN AS AN INCENTIVE FOR THE WORK THAT THEY DID.

MR. CUTTER: YOUR HONOR, WE WOULD BE HAPPY TO FILE SOMETHING SUPPLEMENTAL INDICATING THE AMOUNT IN DISPUTE THAT THEY GAVE UP.

MR. SOMVICHIAN: YOUR HONOR?

THE COURT: YES.

MR. SOMVICHIAN: I BELIEVE IT IS FOR I.B. THAT THEY DID ALREADY GET A REFUND. SHORTLY AFTER FILING THE COMPLAINT,

WE REFUNDED THE ENTIRE AMOUNTS.

THE COURT: WELL, THOSE ARE THINGS THAT COULD BE REFLECTED IN THE MINOR'S COMPROMISE. THAT'S HELPFUL TO KNOW THAT SOMETHING THAT SHOWS A RESOLUTION OF THE RESTITUTION ISSUE.

AND SO THAT CERTAINLY, IF IT'S BEEN -- IF HE HAD BEEN MADE WHOLE, THEN, OF COURSE, THAT'S FINE.

AND FOR J.W. I THOUGHT THERE WAS MORE AT ISSUE.

MR. SOMVICHIAN: THERE WAS SOMEWHAT MORE, AND WE HAD NOT PROACTIVELY REFUNDED THAT.

THE COURT: AND THE CIRCUMSTANCES -- THE FACTUAL CIRCUMSTANCES WERE A LITTLE DIFFERENT THERE AS I RECALL.

SO I THINK THAT -- AND, AGAIN, WE CAN CIRCLE BACK TO THIS, MR. CUTTER, AT THE END. IT MAY BE THAT YOU WANT TO SIMPLY SUPPLEMENT THIS RECORD AND MODIFY THE PROPOSED JUDGMENT TO INCLUDE A PARAGRAPH ON MINOR'S COMPROMISE.

MR. CUTTER: WE'D BE HAPPY TO DO THAT.

THE COURT: THAT'S GREAT. I'M NOT TRYING TO MAKE THIS WORK, BUT OBVIOUSLY WE NEED TO GET ALL OF THIS RIGHT.

ALL RIGHT. THE ISSUE OF NOTICE, I ACTUALLY AGREE WITH YOU THAT NOTICE IS NOT REQUIRED. UNDER RULE 23(E) THE CLASS IS NOT BOUND, AND I'M SATISFIED THERE THAT THERE IS NO NEED FOR NOTICE.

NOW, I WANTED TO TURN TO A FEW THINGS IN THE AGREEMENT ITSELF. AND I'M FIRST GOING TO DIRECT YOUR ATTENTION TO PAGE 8

OF THE SETTLEMENT AGREEMENT, PARAGRAPH 2.1(B), THE LAST SENTENCE -- I'M STRUGGLING WITH THE LANGUAGE THERE. IT SAYS ALL FUNDING TRANSACTIONS ARE FINAL UNLESS REQUIRED BY LAW.

AND THAT MEANS NOTHING TO ME. IF IT SAID, "UNLESS OTHERWISE REQUIRED BY LAW" OR "UNLESS PROHIBITED BY LAW," I COULD LIVE WITH IT. BUT I DON'T KNOW WHAT THIS -- THIS DOESN'T SAY ANYTHING TO ME.

SO HELP ME OUT.

MR. SOMVICHIAN: I DON'T REALLY HAVE A PROBLEM WITH ADDING IN ANOTHER WORD "OTHERWISE REQUIRED BY LAW."

THE POINT WAS THAT THIS WAS A REACTION TO THE PRIOR LANGUAGE THAT SAID ALL SALES ARE FINAL.

THE COURT: SURE, ABSOLUTELY.

MR. SOMVICHIAN: AND BY AGREEMENT WE WANTED TO HAVE SOME RECOGNITION THAT IN SOME INSTANCES SALES MAY NOT BE FINAL PURSUANT TO SOME LAW.

SO IF YOU'RE REACTING TO THIS AND YOU WANT IT TO BE REPHRASED IN ONE OF THE WAYS YOU SUGGESTED, I DON'T THINK WE HAVE A PROBLEM WITH THAT.

THE COURT: ALL RIGHT. AND SO I'M HAPPY TO EITHER SAY THAT UNLESS OTHERWISE REQUIRED BY LAW OR UNLESS PROHIBITED BY LAW.

MR. SOMVICHIAN: OTHERWISE.

MR. CUTTER: WE'RE FINE WITH EITHER OF THOSE, YOUR HONOR.

THE COURT: AND THEN YOU WILL PREPARE A NEW SETTLEMENT DOCUMENT AND FILE THAT FOR ME AND THE TWO OF YOU CAN TALK AND CHOOSE AND THAT WILL BE FINE.

ALL RIGHT. IF YOU WOULD THEN LOOK AT PARAGRAPH 10. I'M SORRY. MAYBE I -- IS THERE A PARAGRAPH 10?

MR. CUTTER: I DON'T THINK SO.

THE COURT: NO. AND THAT MUST BE IN THE JUDGE -- THE PROPOSED JUDGMENT, THEN. SORRY. YES, I'M SORRY. THAT'S IN THE PROPOSED JUDGMENT.

MR. SOMVICHIAN, I -- I'LL ASK YOUR INDULGENCE. I'M NOT ACTUALLY FAMILIAR WITH THE GOVERNMENT NOTIFICATIONS THAT YOU NEED TO GIVE UNDER CAFA, AND IT SAYS THAT THE COURT HAS REVIEWED THE SUBSTANCE OF FACEBOOK'S NOTICE AND IT SAYS ECF NUMBER BLANK.

MR. SOMVICHIAN: YEAH, THAT -- THERE'S A DECLARATION, YOUR HONOR. IT'S THE DECLARATION OF SOMEBODY FROM THE HEFFLER CLAIMS GROUP THAT SENT OUT THE CAFA NOTICES. THE DECLARATION IS DOCUMENT 150.

THE COURT: 150?

MR. SOMVICHIAN: YES.

THE COURT: OKAY. THEN I CAN GO LOOK AT THAT.

MR. SOMVICHIAN: AND THAT INCLUDES THE FORMS OF THE CAFA NOTICES.

THE COURT: OKAY. GOOD. SO IF I GO TO ECF 150, I'LL SEE ALL OF THAT?

MR. SOMVICHIAN: YES, AND THE EXHIBITS ARE THERE, TOO. AND JUST SO YOU KNOW FOR CONTEXT, WE DIDN'T HEAR BACK FROM ANY OF THE RECIPIENTS OF THE CAFA NOTICE.

THE COURT: OKAY. THAT'S FINE. AND WHEN YOU -- YOU'LL GIVE ME A MODIFIED DOCUMENT FOR THIS AS WELL AND IF YOU WOULD CORRECT THAT.

NOW, THE NEXT THING THAT I WANT TO TALK ABOUT, AND I'M SORRY, I'M SKIPPING AROUND, I AM GOING TO GO BACK TO THE SETTLEMENT AGREEMENT ITSELF.

AND WHEN I LOOK AT PARAGRAPHS 2.1 AND 2.3 ALONG WITH 5.2(F), 5.2(F) TALKS ABOUT THE CONTENT OF THE JUDGMENT, AND IT SAYS THAT THE JUDGMENT IS TO ENJOIN FACEBOOK IN THE MANNER PROVIDED IN 2.1 AND 2.2.

THERE'S NOTHING IN THE JUDGMENT THAT IS AN INJUNCTION. IT MERELY INCORPORATES A SETTLEMENT AGREEMENT WHICH IS ENTIRELY DIFFERENT THAN AN INJUNCTION.

AND SO I HAVE AN INCONSISTENCY HERE, AND I DON'T KNOW WHAT -- I ACTUALLY DON'T KNOW WHAT YOUR -- IT APPEARS YOUR INTENTION WAS THAT THE JUDGMENT WOULD CONTAIN AN INJUNCTION.

MR. CUTTER: THAT'S CORRECT, YOUR HONOR.

THE COURT: SO I DON'T HAVE THAT.

MR. CUTTER: YES. SO WE CAN MODIFY THE JUDGMENT TO REFLECT THE INJUNCTION LANGUAGE.

THE COURT: ALL RIGHT. AND, AGAIN, THAT'S GOING TO TAKE SOME WORK. I KNOW YOU'LL HAVE TO TALK ABOUT THAT.

THE -- I THINK YOU HAVE WORKED MOST OF THIS OUT, BUT THE LANGUAGE OF THE INJUNCTION IS ACTUALLY VERY IMPORTANT BECAUSE IT CAN HAVE BAD CONSEQUENCES LATER. AND SO I DO WANT YOU TO SPEND SOME TIME ON THAT.

BUT I WILL NEED -- IT IS GOING TO HAVE TO BE A JUDGMENT AND INJUNCTION, AND THAT IS WHAT THE DOCUMENT IS GOING TO NEED TO BE CALLED, AND I'M GOING TO LEAVE IT TO YOU TO DEVELOP THAT LANGUAGE. IT'S CERTAINLY CONTAINED IN 2.1 AND 2.2.

2.3 SAYS THE INJUNCTIVE RELIEF SPECIFIED IN 2.1(B) THROUGH (G) SHALL BE IN EFFECT FOR AT LEAST THREE YEARS. SO, AGAIN, IT APPEARS THAT AN INJUNCTION WAS ANTICIPATED, BUT IT IS NOT PROVIDED IN THE ORDER.

AND THEN GOING ON TO 2.7(C) -- NO, THAT'S WRONG. THAT MUST BE IN THE -- I'M SORRY. I GUESS I WAS READING THESE BACK AND FORTH WITH EACH OTHER. ALL RIGHT. I MADE A NOTE HERE. AND IT HAD TO DO WITH SEALING OF THE DOCUMENTS, AND I'M SORRY I WROTE DOWN -- OH, I'M SORRY. IT WAS JUST 2.4(C). PARTIES SHALL REDACT AND REQUEST THAT THE COURT SEAL THE DOCUMENTS SUBMITTED IN CONNECTION WITH THE FEE PETITION IN ACCORDANCE WITH THE TERMS OF THE COURT'S PRIOR SEALING ORDERS. I DON'T UNDERSTAND THAT. I DON'T KNOW WHAT IS IN THIS THAT SHOULD BE SEALED.

MR. PARKER: YOUR HONOR, WHEN WE PREPARED OUR FEE PETITION, WE REVIEWED IT AND DID NOT SEE ANYTHING THAT OUGHT TO BE SEALED, AND I BELIEVE THAT WE CONFERRED WITH COUNSEL FOR

FACEBOOK ON THAT. THEY AGREED ACCORDINGLY. OUR FEE PETITION ISN'T SEALED. THEIR OPPOSITION IS NOT SEALED, AND OUR REPLY IS NOT SEALED. WE ALL AGREE THAT DOESN'T NEED TO BE SEALED.

I THINK THAT PROVISION WAS JUST IN THE EVENT THAT SOMETHING IN THAT PETITION OR ITS LITIGATION PAPERS IN SUPPORT OF IT NEEDED TO BE SEALED, THAT WE WOULD DO THAT.

BUT IT TURNED OUT WE DIDN'T NEED TO.

THE COURT: OKAY. SO THIS WAS MERELY A PLACE HOLDER FOR SUCH A REQUEST WHICH HAS NOT COME TO BE?

MR. CUTTER: CORRECT.

MR. SOMVICHIAN: CORRECT.

THE COURT: OKAY. I'M GOOD WITH THAT. ALL RIGHT. SO THOSE ARE MY QUESTIONS HERE AS YOU CAN SEE, THEY WERE VERY SPECIFIC BUT NOT GAME CHANGERS.

NOW, LET ME ASK YOU ANOTHER QUESTION, WAS IT YOUR ANTICIPATION THAT I WOULD ENTER THIS JUDGMENT BEFORE OR AT THE SAME TIME THAT I ENTER THE ORDER ON THE AMOUNT OF ATTORNEY'S FEES, IF ANY?

MR. CUTTER: I DON'T THINK WE HAD AN EXPECTATION EITHER WAY, YOUR HONOR.

MR. SOMVICHIAN: AND I THINK IT CAN PROCEED AND CAN PROCEED AND SHOULD PROCEED INDEPENDENT, AND WE HAVE A PROVISION IN THE SETTLEMENT AGREEMENT THAT APPROVAL OF THE SETTLEMENT TERMS IS INDEPENDENT ON ANY DETERMINATION ON THE FEES.

THE COURT: THAT'S GREAT, BECAUSE I WOULD LIKE THIS

TO MOVE FORWARD QUICKLY FOR YOU AND SO I DON'T -- AND SO IT'S NOT GOING TO HAPPEN BUT, FOR EXAMPLE, I KNOW YOU NEGOTIATED A SEALING ON ATTORNEY'S FEES AND SO IF ONE WERE TO DETERMINE THAT $3 MILLION WAS REASONABLE, IT WOULD JUST BE CAPPED BY THE AGREEMENT OF THE PARTIES.

MR. CUTTER: THAT'S CORRECT, YOUR HONOR.

THE COURT: THAT'S HOW IT IS WORKING. ALL RIGHT. YOU HAVE NOT REQUESTED ANY MORE THAN THE AGREEMENT SO THAT'S NOT GOING TO HAPPEN. ALL RIGHT. AND IT'S NOT APPEALABLE.

THEN WOULD YOU SIMPLY AMEND THE JUDGMENT TO INCORPORATE THE ATTORNEY'S FEES, OR DO YOU NOT THINK THAT'S NECESSARY? BECAUSE THE JUDGMENT IS A DISMISSAL OF THE CASE EXCEPT FOR MONITORING ITS ENFORCEMENT. SO THAT WAS MY CONCERN.

AND, AGAIN, YOU MIGHT WANT TO JUST ADD A LINE INDICATING THE COURT RETAINS JURISDICTION TO CONSIDER AND RULE ON THE REQUEST FOR ATTORNEY'S FEES AND THESE OTHER THINGS.

YOU KNOW, AGAIN, IT'S JUST THE NIT-PICKING THAT I GO THROUGH IN GOING THROUGH THE JUDGMENT ITSELF.

MR. CUTTER: WE'LL DO THAT, YOUR HONOR.

THE COURT: I APPRECIATE IT. I'M SURE YOU CAN HAVE ALL OF THIS BACK TO ME IN A DAY OR TWO BECAUSE THESE ARE VERY MINOR THINGS.

MR. CUTTER: YES.

THE COURT: OKAY.

MR. SOMVICHIAN: AND JUST SO I UNDERSTAND, YOUR

HONOR, YOU WANT THAT SO THAT WE CAN PROCEED QUICKLY WITH IMPLEMENTING THE SETTLEMENT TERMS.

THE COURT: IT SEEMS AS THOUGH THAT'S WHAT YOU WOULD LIKE TO DO.

IT'S GOING -- I'M JUST FINISHING A TRIAL AS YOU CAN SEE AND SO REALISTICALLY I'M NOT GOING TO GET THE ATTORNEY'S FEES ORDER OUT SO FAST, AND I WOULD LIKE THIS -- THE REST OF THIS TO BE DONE.

IF YOU WANTED ME TO WAIT AND DO IT ALL AT ONCE, I'M PERFECTLY GLAD TO DO IT, I JUST CAN'T GIVE YOU A DEADLINE OF WHEN I WILL HAVE THE ATTORNEY'S FEES ORDER.

MR. CUTTER: I THINK YOUR PROPOSAL MAKES SENSE, YOUR HONOR. WE WILL GET THIS BACK TO YOU IN THE NEXT DAY OR TWO WITH THESE MINOR CHANGES.

THE COURT: SO I'LL GET A NEW COPY OF THE SETTLEMENT AGREEMENT AND A NEW PROPOSED JUDGMENT AND ORDER.

MR. CUTTER: YES.

THE COURT: THAT'S GREAT. THOSE ARE ALL OF MY QUESTIONS. DID MY QUESTIONS RAISE ANY CONCERNS THAT YOU MIGHT HAVE OR ANY OTHER ISSUES THAT YOU NEED ME TO CONSIDER AND AT LEAST MAKE AN ORAL RECORD ON?

MR. CUTTER: NOT FOR ME, YOUR HONOR.

THE COURT: ALL RIGHT. AND JUST SO THE RECORD IS CLEAR, THE JUDGMENT WILL SAY, I ACTUALLY THINK THAT THIS IS A VERY REASONABLE SETTLEMENT, AND I DO THINK THAT IT DOES

INCORPORATE TERMS THAT BENEFIT THE CLASS IN THE WAY ENVISIONED BY THE PLEADINGS AND THAT I DO WANT TO SEE SOME MORE INFORMATION ON THE MINOR'S COMPROMISE ISSUE I WOULD LIKE AND THAT WILL BE STATEMENTS OF EITHER FULL RESTITUTION HAVING BEEN MADE SEPARATE AND APART FROM THIS JUDGMENT OR SOME ESTIMATE OF THE GREATEST AMOUNT THAT COULD BE REQUESTED THAT IT'S A CONTROVERTED AMOUNT AND SOMETHING ALONG THE LINES AND THAT THE -- AND I'M ACTUALLY -- YOU KNOW, I DON'T KNOW THAT IT'S WORTH NIT-PICKING IT.

I, FRANKLY, THOUGHT $5,000 WAS A LARGE INCENTIVE PAYMENT UNDER THE CIRCUMSTANCES OF THIS CASE IF IT'S ONLY FOR THE WORK WE PUT IN. AND, QUITE FRANKLY, I DON'T KNOW WHAT THESE KIDS MEANT WHEN THEY SAID THEY SPENT TEN DAYS TALKING ABOUT THE CASE BECAUSE WHAT I IMAGINED THEY MEANT WAS OVER TEN DISCRETE DAYS THAT THEY HAD TO ANSWER SOME QUESTIONS FOR A SMALL PORTION OF THOSE DAYS AND THAT KIND OF VAGUENESS IS CONCERNING TO ME.

AND I ACTUALLY THINK GIVEN THEIR AGE AND THE AMOUNT OF TIME THAT THEY MIGHT ACTUALLY PUT INTO IT AND THE IMPETUS FOR THE CASE, THAT THAT ACTUALLY -- AND THE FACTUAL CIRCUMSTANCES OF THE CASE, THAT IT'S -- IT SEEMED TOO MUCH TO ME.

SO I MAY BE -- I'M NOT SURE I'M GOING TO APPROVE THAT AMOUNT, AND LET ME HEAR A LITTLE BIT ON THAT. AND THAT'S SOMETHING THAT I MAY CHANGE THE JUDGMENT ON THAT. IT JUST SEEMS LIKE FOR I.B. WHO HAS NO RESTITUTION OWED, IT'S TOO MUCH, AND FOR J.W., WHO MAY HAVE, MAY HAVE BEEN ABLE TO MAKE A CLAIM

FOR RESTITUTION UNDER THE TERMS OF THE INJUNCTION, IT MAY BE APPROPRIATE, I JUST DON'T KNOW.

MR. CUTTER: WELL, FIRST OF ALL, JUST TO CLARIFY, YOUR HONOR, IN TERMS OF WHAT WE'RE SUPPLEMENTING, IT IS JUST GOING TO BE AS TO I.B. BECAUSE HE'S A MINOR AND NOT AS TO J.W.?

THE COURT: NO, NO. OH, RIGHT. OH, THAT'S INTERESTING. NO, I DON'T THINK I NEED A MINOR'S COMPROMISE NOW THAT HE'S NO LONGER -- I DON'T THINK --

MR. CUTTER: IN STATE COURT WE WOULDN'T.

THE COURT: YOU WOULDN'T. OKAY. BUT I DO NEED TO HAVE SOME JUSTIFICATION -- MORE JUSTIFICATION FOR THE PAYMENT TO HIM.

MR. CUTTER: RIGHT.

THE COURT: AND FOR J.W. IT MAY BE THAT HE -- I DON'T KNOW. I BELIEVE IT WAS IN THE PAPERS THAT I SAW EARLIER THE AMOUNT OF CHARGES THAT HE RACKED UP --

MR. CUTTER: RIGHT.

THE COURT: -- WAS, I THOUGHT, PRETTY SIGNIFICANT.

MR. CUTTER: AND WE'RE HAPPY TO PROVIDE THAT DETAIL, YOUR HONOR.

BUT IN TERMS OF THE OVERALL SIZE OF THE PAYMENT, I GUESS WE PLACED IT IN THE CONTEXT OF THE BURDEN THAT THESE CHILDREN AND THEIR FAMILIES UNDERTOOK.

THE COURT: I'M NOT PAYING THE FAMILIES.

MR. CUTTER: I UNDERSTAND, YOUR HONOR. BUT IT'S

CONSEQUENTIAL THAT THEY STEPPED UP IN THIS CASE AND THE RISK TO THE FAMILIES WHO ARE THE GUARDIAN AD LITEM SPEAKING THROUGH THEIR GUARDIAN AD LITEM, SO I THINK THIS HAS TO BE WEIGHED INTO THIS AND THE BURDEN AND THE ROLE IN RESPONDING TO THE DISCOVERY AND THEY'RE CHARACTERIZED AS A SET OF AWARDS FOR A REASON, THAT YOU WANT PEOPLE TO COME FORWARD AND UNDERTAKE THIS.

THE COURT: SURE. SURE.

MR. CUTTER: THE DEPOSITIONS WERE KIND OF GRUELLING OF THESE FOLKS, YOU KNOW. THE KIDS WERE REALLY PUT ON THE HOT SEAT. SO I THINK GIVEN ALL OF THOSE CONSIDERATIONS, I DON'T THINK IT'S TOO --

THE COURT: WELL, AS I SAY, IT'S NOT OPPOSED, AND YOU'LL SUPPLEMENT IT.

I APPRECIATE THAT. WE HAVE MUCH MORE TO TALK ABOUT IN REGARDS TO ATTORNEY'S FEES. LET'S SEE, WHERE DO WE BEGIN?

MR. SOMVICHIAN: I'M SORRY, YOUR HONOR. ONE LAST POINT ON THE JUDGMENT.

THE COURT: YES.

MR. SOMVICHIAN: I BELIEVE UNDER CAFA BEFORE THE FINAL JUDGMENT CAN ISSUE, 75 DAYS NEEDS TO ELAPSE FROM THE DATE OF THE CAFA NOTICE.

THE COURT: OH, OKAY.

MR. SOMVICHIAN: IT WAS A DATE IN JANUARY. JANUARY 25TH, I BELIEVE, IS WHEN THE CAFA NOTICE WAS SENT OUT.

THE COURT: WELL, WE'RE BEYOND THAT NOW.

JANUARY 25TH? IT'S MARCH -- NOT QUITE.

I'M SORRY. I'M SORRY. I MISSED A MONTH THERE. I BEG YOUR PARDON.

MR. SOMVICHIAN: YES, SO WE'RE GETTING CLOSE AND WE'LL PROCEED SO YOU HAVE THE JUDGMENT AS REVISED IN HAND BUT IN TERMS OF WHEN IT CAN ACTUALLY GO INTO EFFECT.

THE COURT: WHEN YOU SUBMIT THE REVISED JUDGMENT, IF ON THE COVER PAGE YOU COULD SUBMIT IT AND GIVE ME THE DATE THAT WOULD REPRESENT THE 75 DAYS, BECAUSE, OF COURSE, WE WILL HOLD THAT. AND ACTUALLY, I MAY GET EVERYTHING OUT TOGETHER THEN AT THAT POINT, THEN.

MR. SOMVICHIAN: OKAY.

THE COURT: THANK YOU. THANK YOU. I DIDN'T -- 75 DAYS, THAT'S FINE. OKAY.

ALL RIGHT. LET ME GET MY PAPERS ORGANIZED HERE NOW ON THE ATTORNEY'S FEES.

MR. CUTTER, I'M STRUGGLING HERE. FIRST OF ALL, LET ME JUST SAY, AND ALTHOUGH I'M GLAD TO HEAR ARGUMENT ON IT, I DO BELIEVE THIS IS A CASE WHERE ATTORNEY'S FEES ARE WARRANTED, AND, OF COURSE, THAT'S THE FIRST HURDLE AND PERHAPS THE MOST IMPORTANT ONE. THE REST IS IMPORTANT TO YOU.

BUT I DID THINK THAT THERE WAS AN IMPORTANT PUBLIC INTEREST THAT WAS ADDRESSED HERE, AND THERE WAS SIGNIFICANT RELIEF TO WHAT TURNED OUT TO BE A NATIONWIDE CLASS OF MINORS BASED ON CALIFORNIA FAMILY CODE PROVISIONS THAT AS MY CLASS

CERTIFICATION ORDER INDICATED, I FELT WAS REALLY A STATUTE THAT DIRECTED THE CONDUCT OF THE ADULT SIDE OF THE EQUATION, AND THAT'S WHY I WAS WILLING TO MAKE THIS A NATIONWIDE CLASS, AND I DO THINK THAT THIS RELIEF DOES ADDRESS THOSE IMPORTANT PUBLIC POLICY CONCERNS.

SO IF FACEBOOK WANTS TO MAKE ANY FURTHER ARGUMENT, I'VE CERTAINLY CONSIDERED YOUR ARGUMENTS, BUT I THINK THIS DISCUSSION IS REALLY ABOUT THE HOW MUCH AND I HAVE A LOT OF QUESTIONS THERE.

MR. KLEINE: YOUR HONOR?

THE COURT: YES.

MR. KLEINE: TO THE EXTENT THAT THEY'RE ENTITLED TO FEES AT ALL, WE'VE MADE THE ARGUMENT IN OUR PAPERS. AND IF YOU LOOK AT THE CASE THAT PLAINTIFFS CITE, THE CASE THAT PLAINTIFFS CITE IS OF MACDONALD V. FORD AND THEY CITE IT FOR THE PROPOSITION THAT ANY CONSUMER PROTECTION LAWSUIT WARRANTS FEES UNDER 1021.5.

BUT IF YOU LOOK AT THE CASE ITSELF, AFTER MAKING THAT BROAD STATEMENT, THE COURT ACTUALLY UNDERTAKES A SPECIFIC DETERMINATION THAT IN THE CONTEXT OF THAT CASE ITSELF, AND THAT CASE IT WAS WATER COOLANTS -- DEFECTIVE WATER COOLANTS IN FOREIGN CARS. IN THAT CONTEXT THERE WAS A SIGNIFICANT RIGHT THAT AFFECTED THE PUBLIC INTEREST THAT WAS BEING REMEDIED.

AND THAT COURT, WHICH IS A DISTRICT COURT CASE, IS -- TO THE EXTENT THAT IT CAN BE READ TO SAY THAT ALL LAWSUITS UNDER

THE CONSUMER PROTECTION STATUTES WARRANT FEES UNDER 1021.5, IT'S IN CONFLICT WITH THE CASES WE'VE CITED SUCH AS OLSEN V. BREEZE, WHICH LIKE MACDONALD WAS A CASE THAT BROUGHT UCL AND CLRA CLAIMS.

AND OUR ARGUMENT IS THAT THIS CASE IS EXACTLY LIKE OLSEN IN THAT THE COURT IS FACED WITH CLAIMS UNDER THE UCL AND THE CLRA AND THE COURT ALSO SAYS, NO, YOU KNOW WHAT, EVEN THOUGH YOU TRIED TO VOID A CONTRACT AS BEING IN VIOLATION OF CALIFORNIA LAW, THAT CONTRACT RELATED TO SKIING, WHICH IS NOT A MATTER OF PUBLIC INTEREST.

SAME HERE. WE HAVE CONTRACTS THAT PLAINTIFFS ARE TRYING TO AVOID AS BEING CONTRARY TO CALIFORNIA LAW, BUT THOSE CONTRACTS RELATED TO THEIR PLAYING OF GAMES OR RECREATIONAL ACTIVITY JUST AS IN OLSEN AND JUST AS IN THE AMERICAN GOLF CASE THAT WE CITE.

THE COURT: OKAY. MR. MR. CUTTER.

MR. CUTTER: I THINK THE COURT'S INITIAL INCLINATION IS ABSOLUTELY CORRECT AND IT'S BORNE OUT BY THE CLASS CERTIFICATION ORDER, AND I WOULD JUST NOTE THAT JUDGE INFANTE, AN EXTREMELY EXPERIENCED MEDIATOR, NOTED IN HIS DECLARATION THAT THE RESULTS, QUOTE, "PROVIDES TREMENDOUS BENEFIT TO THE CLASS AND THE PUBLIC," END QUOTE.

WE'RE NOT VINDICATING SIMPLY MINOR'S RIGHTS WITH RESPECT TO THE WORTHLESS GAME CURRENCY THAT THEY PURCHASED ON FACEBOOK. IT'S PROVIDING A FENCE AROUND MINORS AND PROTECTING THEM FROM

ADVERSE CONDUCT ON THE INTERNET.

AND AN IMPORTANT FEATURE OF THIS SETTLEMENT THAT WE REALLY HAVE NOT TALKED ABOUT IS FACEBOOK WARNING ITS END GAME, ITS DEVELOPERS, THAT THESE TRANSACTIONS ARE VOIDABLE AND PUTTING THEM ON NOTICE OF THAT.

AND FACEBOOK HAS ENORMOUS MARKET POWER IN THIS SPACE, ALMOST MONOPOLY POWER. SO I THINK WE HAVE VINDICATED IMPORTANT PUBLIC RIGHTS THAT EFFECT WHETHER FACEBOOK SELLS ANYTHING.

THE COURT: WELL, I'LL LOOK AT OLSEN, AND I WOULD AGREE WITH YOU THAT I WOULD CERTAINLY NOT JUST SAY LIKELY THAT FEES ARE APPROPRIATE IN ANY CONSUMER CASE. I AGREE COMPLETELY.

BUT IN LOOKING SPECIFICALLY AT THIS CASE, IT'S ACTUALLY MY VIEW THAT BASED ON THE EVIDENCE THAT I'VE SEEN SO FAR IS THAT IT HAS BEEN ASSERTED THAT FACEBOOK ACTUALLY TARGETS AND MARKETS TO CHILDREN. AND THESE GAMES THAT ARE AT ISSUE ARE NOT -- ARE GAMES THAT WOULD BE OF PARTICULAR ENJOYMENT AND INTEREST TO MINORS AND THEY'RE -- AND SO THE PROVISIONS OF THE FAMILY CODE ALLOWING FOR CHILDREN TO VOID CONTRACTS, I THINK, ARE PARTICULARLY AT ISSUE HERE AND ALSO THE VAST NUMBER OF CHILDREN WHO ARE PARTICIPATING IN THIS COMMERCIAL SPACE, AS IT WERE, IS EXTRAORDINARY COMPARED TO ANY OF THESE OTHER CASES.

SO I THINK THOSE ARE DIFFERENCES. I AM GOING TO LOOK AT OLSEN. THANK YOU FOR POINTING IT OUT. BUT I ACTUALLY THINK THAT THIS IS -- THAT THIS CASE STANDS SEPARATELY FROM THE OTHERS.

ALL RIGHT. THAT'S A VERY IMPORTANT PART.

MR. CUTTER, THERE ARE SOME PROBLEMS THAT I HAVE WITH WHAT YOU'VE PROVIDED ME, AND I AM CONSIDERING YOUR SUPPLEMENTAL DECLARATIONS, AND I APPRECIATE THAT FACEBOOK DID RESPOND WITH A SURREPLY SO THAT I COULD CONSIDER THAT NOW RATHER THAN HAVING TO PUT THIS OVER AND HAVING IT REBRIEFED.

I WANT TO FOCUS ON A FEW THINGS.

FIRST OF ALL, I FOUND IT VERY INTERESTING TO KNOW WHAT THE PREVAILING RATES IN THE EASTERN DISTRICT OF CALIFORNIA, THE DISTRICT OF MASSACHUSETTS, AND THE DISTRICT OF COLUMBIA ARE, BUT I DON'T KNOW ANYTHING ABOUT THE NORTHERN DISTRICT OF CALIFORNIA FROM YOUR PAPERS, AND IT'S YOUR BURDEN. I CAN CERTAINLY DO THE HOMEWORK ON IT, BUT IT'S YOUR BURDEN TO ESTABLISH WHAT THE GOING RATES IN THE NORTHERN DISTRICT OF CALIFORNIA ARE, AND THESE RATES MAY BE REASONABLE, BUT THE DECLARATIONS PROVIDE NO EVIDENCE TO SUPPORT THE RATES, AND IT IS YOUR OBLIGATION.

MR. CUTTER: ACTUALLY, YOUR HONOR, I BELIEVE WE CITED TO THE NATIONAL SURVEY WITH RESPECT TO THE NORTHERN DISTRICT OF CALIFORNIA.

THE COURT: ALL YOU CITED IN THE NATIONAL SURVEY IS THAT WE ARE ONE OF THE THREE MOST EXPENSIVE, AND, THEREFORE, IF YOU LOOK AT DC BY EXTRAPOLATION, THAT THIS WOULD BE REASONABLE. I NEED EVIDENCE.

MR. CUTTER: I BELIEVE WE STATED THE EXACT HOURLY

RATES APPROVED IN THE NORTHERN DISTRICT, CALCULATED IN THE NORTHERN DISTRICT BY THE NATIONAL SURVEY.

THE COURT: WELL, I READ OVER IT THIS MORNING SO IF YOU WOULD PASS IT UP AND MAYBE YOU CAN SHOW ME.

MR. CUTTER: I WOULD BE HAPPY TO BECAUSE I REMEMBER US COMPARING IT TO THE COOLEY RATES.

THE COURT: YOU KNOW, AND WHOSE DECLARATION IS THAT IN, PLEASE?

MR. CUTTER: I'M GOING TO HAVE TO FIND IT.

THE COURT: OKAY. I UNDERSTAND.

(PAUSE IN PROCEEDINGS.)

THE COURT: AND PERHAPS IT WAS WITH YOUR INITIAL FILING, AND I HAVE THOSE HERE AS WELL.

MR. CUTTER: WELL, I MEAN, I THINK WHAT WE SAID IS IN OUR REPLY.

THE COURT: IS IT IN -- WHICH DECLARATION? WOULD YOU POINT ME TO.

MR. CUTTER: IT'S IN THE MEMORANDUM AT PAGES 12 AND 13 AND WE, OF COURSE, WOULD BE HAPPY TO SUPPLEMENT.

FIRST OF ALL, WE MAKE THE POINT THAT AFFIDAVITS REGARDING PREVAILING FEES ARE SATISFACTORY EVIDENCE UNDER NINTH CIRCUIT AND NORTHERN DISTRICT LAW, AND WE CITE SOME CASES FOR THAT.

AND THEN WE DO POINT OUT THAT SAN FRANCISCO IS ONE OF THE TOP THREE RATES AND OBSERVE AND CITE TO THE NATIONAL LAW JOURNAL'S ANNUAL SURVEY IN TERMS OF THE RATE THAT OPPOSING

COUNSEL IS CHARGING IN THIS CASE WHICH IS OBVIOUSLY EVIDENCE OF --

THE COURT: I'M SORRY. HELP ME OUT. I'M LOOKING AT PAGE 12.

MR. CUTTER: NOT THE REPLY. THE MEMORANDUM IN SUPPORT.

THE COURT: THE MEMORANDUM IN SUPPORT. OKAY. AND PAGE 12 OF THAT ONE?

MR. CUTTER: PAGE 12 AND MOST OF THE ARGUMENT IS ON PAGE 13.

THE COURT: THANK YOU.

SO I THINK THE NATIONAL LAW JOURNAL ANNUAL BILLING OF --

MR. CUTTER: THE MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS ON PAGE 13.

THE COURT: AT PAGE 13? I'M SORRY. THAT'S NOT WHAT I'M --

MR. CUTTER: OH. IT'S THE REPLY.

THE COURT: THAT'S WHAT I THOUGHT.

MR. CUTTER: I APOLOGIZE.

THE COURT: THAT'S OKAY.

MR. CUTTER: THE FOOTER IS WRONG ON OUR BRIEF.

THE COURT: AND PAGE 13.

MR. CUTTER: AND JUST TO ADD TO THAT --

THE COURT: I'M SORRY, BUT YOU -- SO YOU'VE REFERRED

ME TO A DOCUMENT THAT I DON'T HAVE.

MR. CUTTER: OKAY.

THE COURT: WHAT WERE YOU EXPECTING ME TO DO, MR. CUTTER?

MR. CUTTER: WE PROVIDED --

THE COURT: SO DID YOU GIVE ME THAT? IT'S NOT --

MR. CUTTER: WE PROVIDED THE URL, BUT I APOLOGIZE, YOUR HONOR, WE SHOULD HAVE PROVIDED THAT IN HARD COPY, AND, YOU KNOW, ALSO IN OUR OPENING.

THE COURT: YOU KNOW, I JUST DON'T GO TO WEBSITES.

MR. CUTTER: I UNDERSTAND.

THE COURT: I'M SORRY.

MR. CUTTER: WE'RE HAPPY TO PROVIDE THAT IN OUR COPY, AND I ALSO POINT OUT IN OUR OPENING MEMORANDUM WE CITE AND QUOTE FROM THE <u>IN RE LINKEDIN USER PRIVACY LITIGATION</u> IN THIS DISTRICT WHERE THE COURT MAKES A SPECIFIC FINDING OF REASONABLE HOURLY RATES.

THE COURT: WELL, THAT, OF COURSE, IS VERY HELPFUL TO ME, AND OFTEN ONE OF THE OTHER JUDGES WILL ACTUALLY COLLECT CASES AND GIVE AN UP-TO-DATE RECITATION AND THAT ALONE COULD BE ENOUGH.

MR. CUTTER: RIGHT.

THE COURT: BUT I JUST DON'T HAVE THAT.

AND IT --

MR. CUTTER: SO THAT'S AT PAGE 7 OF OUR OPENING

MEMORANDUM IN SUPPORT OF FEES.

SO WE CITE THE IN RE LINKEDIN CASE WHICH IS ACTUALLY QUOTING IN RE MAGSAFE APPLE POWER ADAPTOR LITIGATION WHERE THE COURT DID EXACTLY WHAT YOUR HONOR IS SUGGESTING WHICH IS COLLECT AND ANALYZE SOME CASES IN THE NORTHERN DISTRICT IN 2015.

THE COURT: OKAY. AND THAT'S CERTAINLY VERY CURRENT. ALL RIGHT. WELL, I'LL TAKE A LOOK AT THAT.

NOW, YOUR CATEGORIES ARE VERY GENERAL, AND, IN FACT, THIS CASE HAD A VERY SPECIFIC HISTORY. PERHAPS YOU REMEMBER IT PAINFULLY GETTING THROUGH THE PLEADING STAGE. I WASN'T THE JUDGE ON MOST OF THAT.

MR. CUTTER: RIGHT.

THE COURT: BUT I HAVE READ JUDGE WILKEN'S ORDERS, I HAVE REVIEWED THE DOCKET IN THE CASE. AND I FOUND IT INTERESTING THAT AT PARAGRAPH 13 OF THE PARKER DECLARATION IT STATES THE MAIN IMPETUS FOR INITIATING THIS CASE WAS ADDRESSING THE UNLAWFUL POLICIES AND PRACTICES OF FACEBOOK AND TO VINDICATE THE RIGHTS OF MILLIONS OF CHILDREN USING THE CITE.

BUT, OF COURSE, THAT WASN'T THE IMPETUS BECAUSE THE INITIAL COMPLAINT WAS NOT A CLASS ACTION, AND IT WAS NOT TO VINDICATE THE RIGHTS OF MORE THAN ONE CHILD.

I ALSO FOUND IT INTERESTING THAT MR. EDELMAN, BEN EDELMAN, INDICATED AT PARAGRAPH 12 OF HIS DECLARATION THAT HE WAS INVOLVED IN DRAFTING PORTIONS OF THE INITIAL COMPLAINT AS

SOMETHING THAT HE TOUTED AS BEING VERY IMPORTANT TO THE CONTRIBUTION THAT HE MADE AND IN COMPLAINTS HE SHOWS 40.68 HOURS.

I LOOKED AT THE INITIAL COMPLAINT. IT'S THREE PAGES LONG. IT ALLEGES A SINGLE CLAIM FOR UNJUST ENRICHMENT. SO THAT'S A PROBLEM WHEN HE TELLS ME THAT HE DID ALL OF THIS INITIAL INVESTIGATION TO DEVELOP THE THEORIES OF THE CASE.

AND WHEN YOU LUMP THIS TOGETHER AS COMPLAINTS, I SEE NO REASON TO GIVE BEN EDELMAN ANY, ANY HOURS FOR COMPLAINTS WHEN HE SAYS HE WAS BROUGHT IN TO DEVISE THE INITIAL COMPLAINT WHICH WAS A THREE PAGE COMPLAINT.

MR. CUTTER: YOUR HONOR, I THINK THAT'S SIMPLY A MISSPEAKING BECAUSE THE SUBSEQUENT COMPLAINT IN THIS CASE IS THE FIRST AMENDED COMPLAINT.

THE COURT: I'M SORRY. I HEAR YOU.

MR. CUTTER: IF I COULD FINISH?

THE COURT: NO, BECAUSE HE SAID DRAFTING PORTIONS OF THE INITIAL COMPLAINT. INITIAL. THOSE ARE NOT MY WORDS, MR. CUTTER.

MR. CUTTER: I THINK HE MISSPOKE, YOUR HONOR, BECAUSE THE FIRST AMENDED COMPLAINT -- LOOK, THERE ARE PLENTY OF TACTICAL REASONS WHY WE FILED A VERY SIMPLE INITIAL COMPLAINT. IT IS NOT EVEN A CLASS ACTION. THAT'S NOT THE COMPLAINT WE RELIED ON IN THIS CASE, AND IT WAS NOT THE COMPLAINT WE PURSUED.

IT WAS NOT SERVED ON THE DEFENDANT, AND IT WAS NEVER INTENDED TO BE THE OPERATIVE COMPLAINT IN THIS CASE.

THE COURT: SO I HAVE TO PRESUME WHEN AN ATTORNEY SIGNS AN AFFIDAVIT UNDER THE PENALTY OF PERJURY THAT EVERY WORD IN IT HAS BEEN CAREFULLY THOUGHT OUT AND IS AN ACCURATE REPRESENTATION TO THE COURT.

SO NOW YOU'RE TELLING ME THAT I WASTED ABOUT FIVE HOURS OF MY TIME CAREFULLY CONSIDERING THE PRECISE AFFIDAVIT SUBMITTED TO THE COURT SO THAT I COULD DO MY JOB IN DEVELOPING A LODESTAR AMOUNT THAT WOULD BE FAIR AND REASONABLE TO CLASS COUNSEL.

I'VE WASTED MY TIME BECAUSE BEN EDELMAN, WHO IS ASKING FOR $650 AN HOUR, MISSPOKE WHEN HE USED THE WORD "INITIAL COMPLAINT" WHICH IS NOT AMBIGUOUS AT ALL.

MR. CUTTER: I APOLOGIZE FOR THAT, YOUR HONOR.

THE COURT: IN YOUR REPLY BRIEF AT PAGE 3 AND IN THE CUTTER DECLARATION AT PARAGRAPH 7 YOU INDICATE ONCE THE POTENTIAL SCOPE OF THE CASE BECAME CLEAR, DAN EDELMAN WAS RETAINED.

BUT I DON'T KNOW WHAT TIMEFRAME THAT IS. AND SO BECAUSE -- AND I'M NOT SAYING THAT I NEED IT BUT BECAUSE I DON'T HAVE TIME SHEETS THAT SHOW ME THE DATES ON WHICH ATTORNEYS WORKED ON THE CASE, I DON'T KNOW WHETHER DAN EDELMAN CAME IN BEFORE THE INITIAL COMPLAINT WAS FILED BECAUSE OBVIOUSLY, I MEAN, IN FACT, IT LOOKS LIKE TWO YEARS OF WORK MAY HAVE GONE INTO THIS BEFORE IT WAS INITIALLY FILED.

I DON'T KNOW AT WHAT TIMEFRAME DAN EDELMAN CAME IN.

MR. CUTTER: I THINK THAT'S ILLUMINATED, YOUR HONOR, BY THE EXHIBIT E WHICH LAYS OUT EXACTLY WHAT TASK MR. EDELMAN'S TIME --

THE COURT: AND WOULD THAT BE THE CHART THAT I SHOULD BE LOOKING AT?

MR. CUTTER: YES.

THE COURT: SO IT JUST SAYS COMPLAINT, THOUGH.

MR. CUTTER: BUT IF I MAY, YOUR HONOR, MR. EDELMAN HAS MINIMAL WORK AT THE STAGE OF THE COMPLAINTS BEING FILED.

THE COURT: YES.

MR. CUTTER: AND THEN MOST -- REALLY THE BULK OF HIS TIME BEGINS IN THE STAGE OF THE SEVERAL MOTIONS TO DISMISS. SO --

THE COURT: AND I CAN'T TELL -- THE OTHER PROBLEM I HAVE IS THAT THE CASE WENT THROUGH DRAMATIC CHANGE THROUGH THE MOTIONS TO DISMISS, AND I AGREE WITH THE DEFENSE THAT COMPENSATION FOR FAILED CLAIMS FOR CLASSES THAT NEVER EVEN GOT OUT OF THE PLEADING STAGE WOULD NOT BE APPROPRIATE, AND SO I WILL BE REDUCING HOURS. AND I CAN'T TELL HOW IT'S INTERTWINED.

YOU OFFERED IN YOUR PAPERS TO TAKE THE THREE CATEGORIES OF COMPLAINTS AND MOTIONS TO DISMISS FOR RESEARCH BRIEFING AND HEARING AND PREPARATION AND REDUCE THAT BY 10 PERCENT, AND I APPRECIATE THAT ACKNOWLEDGEMENT. AND I APPRECIATE THE ELIMINATION OF THE ATTORNEYS AND STAFF WHO SPENT SMALL AMOUNTS

OF TIME, AND I THANK YOU FOR THAT.

BUT WHEN I LOOK AT THIS, OF COURSE, FROM WHERE I SIT THE NINTH CIRCUIT HAS, I THINK, MADE IT VERY CLEAR THAT ARBITRARY REDUCTIONS BY PERCENTAGES ARE NOT APPROPRIATE TO SUPPORT A JUDICIAL DETERMINATION OF A LODESTAR AMOUNT.

SO IT'S NOT A -- IF THIS WAS SUBMITTED TO ME AS AN AGREEMENT, I COULD ACCEPT IT, BUT IT'S NOT.

AND SO A 10 PERCENT REDUCTION IS NOT -- IT DOESN'T DO -- IT DOESN'T HELP ME DO MY JOB. I ACTUALLY HAVE TO COME UP WITH A NUMBER OF HOURS THAT ARE REASONABLE.

AND, FOR EXAMPLE, I'M NOT LIKELY TO AWARD ANY ATTORNEY'S FEES FOR THE INITIAL COMPLAINT AND PROBABLY NOT FOR THE FIRST AMENDED COMPLAINT EITHER BECAUSE THIS CLASS WASN'T EVEN IDENTIFIED.

AND THEN WHEN WE GET TO THE SECOND AMENDED COMPLAINT AND THIRD, IT CLEARLY IS.

AND THEN I NEED TO GO BACK AND EVALUATE THE MOTIONS TO DISMISS AND ELIMINATE A FAIR NUMBER OF HOURS FOR WORK DEVOTED TO SUPPORTING CLASSES AND CLAIMS THAT NEVER MADE IT OFF THE STARTING BLOCK.

ONCE THEY SURVIVE A MOTION TO DISMISS, CLAIMS SUCH AS SEEKING CLASS CERTIFICATION OF THE RESTITUTION CLASS I'M -- I ACTUALLY THINK THERE'S A FAIR AMOUNT OF LAW THAT SUPPORTS THE FACT THAT A PREVAILING PARTY IS NOT REQUIRED TO WIN ON EVERY ISSUE, AND SO GENERALLY AS LONG AS THE HOURS DEVOTED TO THE

TASK ARE REASONABLE, AND I THINK I MAY BE SHAVING THAT A LITTLE, BUT I WOULDN'T MAKE THE SAME DETERMINATION ON THAT PHASE OF THIS LITIGATION AT CLASS CERTIFICATION WHERE CLEARLY I ONLY CERTIFIED THE (B)(2) CLASS AND NOT THE (B)(3) CLASS FOR RESTITUTION. I'M LESS CONCERNED.

BUT I'M VERY MINDFUL OF THE ARGUMENTS MADE BY FACEBOOK AT THE EARLIER PHASES. ALTHOUGH, IF THIS IS ALL YOU GAVE ME, I WILL HAVE TO SCRUTINIZE THE PLEADINGS AND THE MOTIONS AND DETERMINE HOW MUCH EFFORT WAS PUT INTO THE ARGUMENTS BASED ON THE BRIEFING, WHICH IS WHAT YOU WOULD DO AS WELL, I IMAGINE. AND IT IS, I THINK, A PRETTY GOOD INDICATOR OF WHERE THE EFFORT WAS SPENT AND TO LOOK AT JUDGE WILKEN'S VARIOUS ORDERS.

FACEBOOK HAS GONE THROUGH AND IDENTIFIED MUCH OF THAT, AND I THANK YOU FOR THAT ROAD MAP.

BUT AT THIS EARLY PHASE, I ANTICIPATE REDUCING HOURS SIGNIFICANTLY AND -- BUT LET ME JUST TURN TO DEFENDANT.

YOU HAVE GIVEN ME YOUR EXHIBIT A, WHICH IS YOUR RECOMMENDATION OF REDUCTIONS. I ACTUALLY DON'T UNDERSTAND IT BECAUSE IT LOOKS LIKE JUST TAKING COMPLAINTS -- DO YOU HAVE THAT HANDY?

MR. KLEINE: YES, YOUR HONOR.

THE COURT: YOU WANT ME TO REDUCE 50 PERCENT FOR UNSUCCESSFUL AND 50 PERCENT FROM INSUFFICIENT, BUT IT DOESN'T COME OUT TO BEING ZERO LEFT OVER SO I DON'T KNOW WHAT THAT MEANS.

MR. KLEINE: THAT WAS 50 PERCENT MULTIPLY WHAT THEY HAVE BY .5 AND THEN MULTIPLY THE RESULT BY .5 AND SO YOU END UP WITH 25 PERCENT.

THE COURT: OKAY.

MR. KLEINE: NOT A REDUCTION DOWN TO ZERO.

THE COURT: OKAY. ALL RIGHT. THAT'S -- AND SO IF I GO TO THE THIRD ONE FOR DOCUMENT REVIEW. SO WE TAKE THE INITIAL AMOUNT AND REDUCE IT BY 50 PERCENT, TAKE THE NEW AMOUNT AND REDUCE IT AGAIN BY 50 PERCENT, AND THEN TAKE THE REMAINING AMOUNT AND REDUCE IT BY 25 PERCENT.

MR. KLEINE: CORRECT, YOUR HONOR. WE TRIED TO GIVE THE COURT SOME GUIDANCE IN FOOTNOTE NUMBER 1 OF OUR METHODOLOGY THERE. WE WERE INTENDING IT WOULD BE MULTIPLY BY WHATEVER PERCENTAGE WE'RE GIVEN, AND IF THERE'S A SECOND ENTRY, MULTIPLY THE RESULT BY A SECOND PERCENTAGE.

THE COURT: WELL, AT LEAST I UNDERSTAND IT. I WORK IN HOURS, I DON'T WORK IN PERCENTAGES. SO YOU CAUSED ME TO BUY A CALCULATOR TO DO THIS.

IN THE FUTURE, IF YOU COULD -- I MEAN, REDUCING IT BY 30 HOURS IS HELPFUL TO THE COURT AND REDUCING A TOTAL IS NOT VERY HELPFUL BECAUSE HOW MUCH -- WHAT ATTORNEY -- IS THIS DONE BY AN ATTORNEY OR IS THIS DONE BY THE CATEGORY? THIS IS DONE BY ATTORNEY. OKAY. GOOD. SO THAT'S GOOD.

SO I HAVE CONCERNS ABOUT THE FAILURE TO PROPERLY UTILIZE ASSOCIATE TIME AND I -- MR. CUTTER, ASSUMING THAT THESE RATES

ARE NORMAL FOR THE NORTHERN DISTRICT, THAT'S A DIFFERENT DISCUSSION, I HAVE NO DOUBT THAT YOU AND MR. PARKER AND DAN EDELMAN PRACTICE AT THE LEVEL FOR WHICH THESE FEES WOULD BE APPROPRIATE COMPENSATION. I HAVE NO DOUBT WITH YOUR EXTRAORDINARY QUALIFICATIONS.

I TAKE ISSUE WITH DAN EDELMAN. I'M SURE HE'S A WONDERFUL PROFESSOR IN THE BUSINESS SCHOOL, AND I FIND THIS TO BE, FRANKLY, A LITTLE OFFENSIVE THAT HE COMES IN AND THE WORK THAT HE HAS DONE IS IT EITHER APPEARS TO BE DUPLICATIVE OR WASTED. AND I SEE NOTHING IN HIS DECLARATION THAT TELLS ME THAT HE ADDED VALUE TO THIS CASE CONSIDERING HOW HE TOUTS HIS BEING BROUGHT INTO THE CASE TO HELP DEVELOP THE THEORY OF THE CASE AND THEN FILES TWO COMPLAINTS THAT ARE NOT EVEN BASED ON THE THEORY OF THE CASE.

AND I ALSO WANT TO COMMENT ON AT CLASS CERTIFICATION, YOU KNOW, YOU TALK ABOUT THIS CASE RAISING IMPORTANT AND DIFFICULT AND HERETOFORE UNLITIGATED ISSUES. I AGREE WITH THAT COMPLETELY, AND THAT'S A MULTIPLIER ISSUE THAT WE'LL GET TO IN A MINUTE.

BUT THE FACT THAT BEN EDELMAN PRACTICES, IF YOU CAN CALL IT THAT, IN MASSACHUSETTS, IS APPARENT FROM EVERYTHING THAT HAS BEEN DONE WHEN IF HE TAKES SIGNIFICANT CREDIT FOR DRAFTING THE CLASS CERTIFICATION MOTION, AND I KNOW THAT YOU -- RATHER, MR. PARKER, SEEMS TO HAVE PUT IN THE LABORING OAR THERE ALONG WITH DAN EDELMAN.

BUT I WENT BACK THROUGH THE BRIEFING AND MY ORDER ON CLASS CERTIFICATION TO CONFIRM MY RECOLLECTION BUT, IN FACT, THE COURT, THROUGH ITS OWN RESEARCH, CITED SIX CASES THAT NEITHER PARTY SUBMITTED TO THE COURT AND OTHERS THAT WERE ONLY BROUGHT FORWARD WHEN I LAID OUT THE ISSUE THAT WAS NECESSARY TO OBTAIN CLASS CERTIFICATION.

AND SO I THINK WHAT THIS SCREAMS OUT TO TELL ME IS THAT HAVING CAPABLE ATTORNEYS WHO DON'T KNOW ANYTHING ABOUT CALIFORNIA, WAS DUPLICATIVE AND NOT BENEFICIAL TO THE CASE AND I AM -- AND THEN TO SEE DAN EDELMAN ON THE PHONE LISTENING TO DEPOSITIONS IS DUPLICATIVE WORK AND TO SEE THE KIND OF TIME THAT IS PUT INTO OTHER TASKS IN THE CASE I FIND TO BE INAPPROPRIATE.

I SEE SOMEONE OF HIS UNIQUE QUALIFICATIONS BEING A SIGNIFICANT, PLAYING A SIGNIFICANT ROLE AS A CONSULTANT IN THE MATTER, AN ATTORNEY CONSULTANT FOR WHICH ATTORNEY HOURS WOULD BE APPROPRIATE.

BUT THE FACT THAT HE HAS SUGGESTED THAT HE WAS READING DOCUMENTS, IT'S JUST NOT -- I WOULD NOT OFFEND SOMEONE OF HIS REALLY REMARKABLE ACCOMPLISHMENTS BY LOWERING THE RATE. AND SOME JUDGES DO THAT AND JUST AWARD RATES FOR THE TASK, AND I MIGHT DO THAT. TYPICALLY I DON'T EVER WANT TO OFFEND A HIGHLY SUCCESSFUL PROFESSIONAL BY SAYING THAT THEY ARE ONLY WORTH LESS MONEY, AND I WOULD REDUCE THE HOURS TO REFLECT WHAT A PERSON OF THAT SKILL SHOULD HAVE BEEN ABLE TO ACCOMPLISH AND THAT'S

TYPICALLY -- AND THAT'S PROBABLY WHAT I WILL DO IN THIS CASE IS TO AWARD HOURS.

AND FOR DAN EDELMAN, IN LOOKING AT HIS RESUME, IT WASN'T CLEAR TO ME THAT HIS EMPLOYMENT WORK WAS ANYTHING BUT THE DEFENSE SIDE, IN LOOKING AT HIS PRIOR WORK, AND MAYBE I READ THAT INCORRECTLY.

MR. CUTTER: I BELIEVE, YOUR HONOR, THAT HE'S DONE EXTENSIVE CLASS WORK, INCLUDING ON THE PLAINTIFFS' SIDE, BUT I HONESTLY HAVEN'T HAD THAT DISCUSSION.

THE COURT: AND, AGAIN, I ASSUME THIS IS FATHER AND SON?

MR. CUTTER: CORRECT.

THE COURT: THAT THE SENIOR MR. EDELMAN IS -- HAS A REMARKABLE SET OF ACCOMPLISHMENTS, REALLY. AND AS YOU REPORT THIS BACK TO THEM, I DON'T WANT YOU TO FEEL IN ANY WAY THAT I'M DENIGRATING THE QUALITY OF HIS ACCOMPLISHMENTS.

MR. CUTTER: RIGHT.

THE COURT: BUT WHEN I SEE THE KIND OF HOURS PUT IN AND THEN THE TASKS, I WOULD HAVE EXPECTED AND I WOULD IMAGINE THAT THE COOLEY MODEL AND MOST OTHER FIRM'S MODELS IS THAT A YOUNGER ASSOCIATE TAKES THE LABORING OAR ON DRAFTING ONE OF THESE MOTIONS WITH THE CAREFUL REVIEW BY A SENIOR ATTORNEY SUCH AS YOURSELF AND AN ULTIMATE RESPONSIBILITY FOR REDRAFTING AND THAT THE HOURS WOULD NOT HAVE BEEN PUT IN HERE.

BUT I DON'T BELIEVE THAT MS. TRAN HAD ANY -- LET'S LOOK AT

THIS -- THE KIND OF TIME FOR CLASS CERTIFICATION AND RESEARCH AND BRIEFING IS ALMOST NONEXISTENT. AND IT WAS MR. PARKER AND MR. EDELMAN WHO PUT IN THE BULK OF THE TIME. AND I CAN ONLY SEE GIVING A PORTION OF THAT TIME TO DAN EDELMAN.

MY VIEW OF THIS IS THAT IT DOES APPEAR THAT YOU, MR. CUTTER AND MR. PARKER, WERE REALLY THE LEAD COUNSEL. EVERYBODY IS TAKING CREDIT FOR BEING LEAD HERE, BUT I CAN'T TELL.

SO THESE ARE MY CONCERNS. AND BY NOT HAVING -- YOU KNOW, IT'S -- THIS IS EXACTLY THE KIND OF CHART THAT I FIND HELPFUL. IT HAS A LITTLE LESS DETAIL FOR THE FACTS OF THIS CASE AND SO I'M GOING TO HAVE TO MAKE SOME ASSUMPTIONS BASED ON THE DOCKET IN THE CASE FOR REDUCING HOURS.

BUT I THINK THAT COVERS -- LET'S JUST SEE.

MR. CUTTER: I'M HAPPY TO -- I THINK IT'S MY TURN.

THE COURT: LET ME JUST SEE IF THERE WERE ANY -- AND THEN THOSE ARE MY CONCERNS. SO I DO WANT TO HEAR YOUR REACTION.

MR. CUTTER: ABSOLUTELY, YOUR HONOR. AND I THINK THOSE ARE ALL POINTS THAT ARE IMPORTANT TO ADDRESS.

FIRST OF ALL, YOU BEGAN YOUR CONCERNS TALKING ABOUT ASSOCIATES. SO MR. PARKER WAS AN ASSOCIATE AT THE OUTSET OF THIS CASE. THAT'S HOW LONG WE'VE BEEN DOING THIS.

HE IS NOT A PARTNER. HE WAS AN ASSOCIATE AT THE OUTSET OF THIS CASE.

THE COURT: SO WHY AREN'T HIS RATES LOWER FOR ONE PORTION THAN THE OTHER?

MR. CUTTER: BECAUSE I TRIED TO PRESENT A BLENDED RATE FOR MR. PARKER THAT I THINK IS APPROPRIATE. IF YOU LOOK AT THE RATES THAT WE CITED IN THE NORTHERN DISTRICT FOR SENIOR ASSOCIATES, THEY'RE IN LINE WITH WHAT WE --

THE COURT: WELL, I COULDN'T LOOK AT ANY RATES THAT YOU CITED BECAUSE YOU DIDN'T GIVE ME A CHART.

MR. CUTTER: I DIDN'T GIVE YOU A CHART, YOUR HONOR. THE CASE THAT WE CITED HAS THE ANALYSIS OF THE RATES, BUT I APPRECIATE, YOUR HONOR, WE COULD HAVE DONE THIS DIFFERENTLY AND WE SHOULD HAVE PRESENTED THE ACTUAL SURVEY, PURCHASED IT FROM THE NATIONAL LAW JOURNAL AND SUPPLIED IT TO THE COURT, AND WE WOULD BE HAPPY TO DO THAT, AND THEY CHARGE A COUPLE THOUSAND DOLLARS OR WHATEVER THEY CHARGE.

THE COURT: WELL, I AM NOT SUGGESTING YOU SHOULD PURCHASE IT. I DIDN'T REALIZE THAT'S WHAT WAS NECESSARY. I MEAN, YOU CITED A CASE TO ME THAT I NOW HAVE TO -- THAT I DIDN'T PULL ON RATES IN THE NORTHERN DISTRICT.

I GUESS I'M USED TO AFFIDAVITS SAYING RATES IN THE NORTHERN DISTRICT HAVE BEEN REFERRED BY MANY COURTS AT ASSOCIATE, JUNIOR PARTNER, AND SENIOR PARTNER, SEE THIS CASE, AS OPPOSED TO SEE THIS CASE.

I'M NOT ASKING YOU TO BUY SOMETHING FOR A COUPLE THOUSAND DOLLARS. THAT'S NOT MONEY WELL SPENT. AND I AM SURE THAT JUST

GETS ADDED TO THE COST HERE, AND I'M SURE FACEBOOK DOESN'T NEED TO PAY FOR THAT, EITHER.

YOU'RE SAYING THAT IT'S FREE IF I JUST CLICK ON IT?

MR. CUTTER: RIGHT, I BELIEVE SO. BUT I WOULD REALLY REFER THE COURT TO THE TWO CASES THAT WE CITED WHICH HAVE GONE THROUGH IN DETAIL THESE -- SO TO RETURN TO MY RESPONSE TO YOUR --

THE COURT: SURE.

MR. CUTTER: SO MR. PARKER WAS AN ASSOCIATE. AND, SECONDLY, I, FRANKLY, FOUND THE COOLEY ARGUMENT THAT WE SHOULD STAFF THIS CASE WITH MORE ASSOCIATES IS OFFENSIVE. WHO ON THAT SIDE HAS EVER RUN A PLAINTIFFS' FIRM? WHO ON THAT SIDE HAS EVER HAD TO DO SOMETHING EFFICIENTLY AND EFFECTIVELY IN ONE DRAFT OR TWO DRAFTS AS OPPOSED TO BEING ABLE TO BILL A CLIENT AND GET PAID THE NEXT MONTH OR A SIXTH DRAFT BY AN ASSOCIATE? THAT'S NOT HOW I WORK, AND THAT'S NOT HOW WE WORK.

AND WE HAVE TO DO THINGS AS QUICKLY AND EFFICIENTLY AND EFFECTIVELY AS WE CAN. WE DON'T HAVE A LUXURY OF HAVING A DEEP STAFF OF ASSOCIATES. AT THE TIME I HAD MS. TRAN WORKING ON A NUMBER OF DIFFERENT MATTERS OF LESS IMPORTANCE THAN THIS AND IT NEVERTHELESS NEEDED TO BE EFFECTIVELY DONE.

IF YOU LOOK AT THE WAY THAT COOLEY STAFFED THIS CASE, THERE'S THREE PARTNERS AND GOD KNOWS HOW MANY ASSOCIATES. SO I THINK THE WAY THAT WE STAFFED THE CASE, IT WAS VERY EFFECTIVE AND VERY EFFICIENT.

WITH RESPECT TO MR. EDELMAN, AND THE EDELMANS IN GENERAL, BEN EDELMAN, AS THE COURT RECOGNIZES, KNOWS AN INCREDIBLE AMOUNT ABOUT THE INTERNET, SOCIAL MEDIA, AND FACEBOOK.

SO I THINK IT WOULD HAVE BEEN MALPRACTICE ON MY PART NOT TO HAVE MR. EDELMAN REVIEW SOME OF THESE DOCUMENTS. THERE WERE TENS OF THOUSANDS OF DOCUMENTS PRODUCED AND NOBODY CAN CUT TO THE QUICK OF WHAT THOSE DOCUMENTS TELL US FASTER THAN MR. EDELMAN. AND PLAINTIFFS' PRACTICE IS ALL ABOUT EFFICIENCY. AND, SURE, I COULD HAVE HIRED A CONTACT ASSOCIATE FOR, YOU KNOW, $100, $150 AN HOUR AND COME IN HERE AND CLAIM 250, 300 FOR THAT ASSOCIATE'S WORK AND THEY WOULD HAVE SPENT A THOUSAND HOURS LOOKING AT THESE DOCUMENTS AND VERY INEFFICIENTLY.

INSTEAD, I HAD A SENIOR ASSOCIATE AND MR. EDELMAN GO THROUGH THE DOCUMENTS MUCH FASTER AND MUCH MORE EFFICIENTLY AND ENABLED US TO GET TO THE HEART OF THE MATTER.

THE COURT: UH-HUH.

MR. CUTTER: I WOULD SAY VERY EFFECTIVELY AND VERY EFFICIENTLY.

DAN EDELMAN, YOU KNOW, FORMER SUPREME COURT CLERK, CERTAINLY, I BELIEVE, GAVE US IMPORTANT ASSISTANCE EVERY STEP OF THE WAY IN TERMS OF GUIDING OUR BRIEFING AND OUR THOUGHT PROCESS IN THE CASE, AND I THOUGHT HE WAS A VALUABLE MEMBER OF THE TEAM.

THE COURT: GIVEN HIS BACKGROUND, I HAVE NO DOUBT HE IS A VALUABLE MEMBER OF THE TEAM. IT IS THE MANNER IN WHICH

HIS SKILL WAS USED.

MR. CUTTER: RIGHT.

THE COURT: AND THAT IS REALLY THE NATURE OF MY CONCERN. AND I SEE THAT MS. TRAN PUT IN THE BULK OF THE HOURS, 117 HOURS FOR DOCUMENT REVIEW.

MR. CUTTER: RIGHT.

THE COURT: AND SHE WAS USED VERY EFFICIENTLY AT A VERY LOW RATE.

AND THOSE, OF COURSE, ARE -- THAT'S THE KIND OF THING THAT I WOULD HOPE TO SEE.

BUT WHEN I LOOK AT THE MOTION FOR CLASS CERTIFICATION, MY QUICK MATH ON IT SHOWS ABOUT 375 HOURS. THAT'S ABOUT EIGHT WEEKS OF WORK, OF ATTORNEY WORK, SPREAD OVER EACH OF THESE INDIVIDUALS AND GIVEN THE FACT THAT I HAD TO DO MY OWN RESEARCH IN ORDER TO CERTIFY THE CLASS, IT'S LEAVING ME A LITTLE BIT IN THE LURCH THERE BECAUSE I DON'T KNOW THAT -- I DON'T THINK THAT'S REASONABLE. AND, YOU KNOW, IT'S A MATTER OF A HAIRCUT, NOT ELIMINATING IT. OBVIOUSLY YOU WERE SUCCESSFUL.

CLEARLY PREPARATION FOR THE HEARING IS IMPORTANT AND THAT TAKES A TEAM. AND WHEN I LOOK AT THE TIME PUT IN BY BEN AND DAN EDELMAN, THOSE ARE THE KINDS OF CONSULTING HOURS THAT I WOULD EXPECT IN RELATION TO THE HOURS THAT YOU AND MR. PARKER PUT IN. THAT KIND OF BALANCE IS WHAT I WOULD BE LOOKING FOR BECAUSE I WOULD CERTAINLY AGREE WITH YOU THAT THAT KIND OF PREPARATION, YOUR WHOLE CASE RESTED ON THE CLASS CERTIFICATION.

THERE'S NO QUESTION.

SO I DON'T ACTUALLY TAKE ISSUE WITH THAT. THIS MOTION TO SEAL THING, I DON'T KNOW THAT I'M GOING TO GET INTO THE WEEDS ON THAT. YOU KNOW, AGAIN, YOU DON'T HAVE TO WIN EVERYTHING. BUT I'LL LOOK TO SEE IF I THINK THE HOURS WERE REASONABLE. I HAVE TO LOOK BACK AT THOSE MOTIONS AND SEE WHAT KIND OF WORK WAS PUT INTO THAT.

MR. CUTTER: WHAT HAPPENED ON THAT, YOUR HONOR, IS THAT ULTIMATELY WE WERE UNSUCCESSFUL ON OUR OPPOSITION TO SEAL, BUT THERE WAS NEGOTIATIONS THAT LED TO REDUCE THE DEMAND FOR SEALING, AND WE JUST THINK IT'S IMPORTANT AS A MATTER OF PUBLIC POLICY TO NOT HAVE EVERYTHING IN THE OPEN.

THE COURT: ANYTHING ELSE, MR. CUTTER?

MR. CUTTER: NO.

THE COURT: RESPONSE?

MR. SOMVICHIAN: I THINK YOUR HONOR IS RIGHT TO QUESTION THE DUPLICATIVENESS OF WORK ACROSS THE LAW FIRMS. PUTTING ASIDE MS. IBARRA, THERE WERE THREE LAW FIRMS THAT WORKED ON THIS CASE. CUTTER LAW GROUP, I GUESS, WERE THE PERSONAL ATTORNEYS BUT BOTH DANIEL EDELMAN AND BENJAMIN EDELMAN AND IT MAY BE OKAY IN SOME CASES FOR THERE TO BE THREE LAW FIRMS INVOLVED IN THE CASE, BUT IF YOU ACTUALLY ADD UP BEN EDELMAN AND DAN EDELMAN'S TIME AND THE FEES THAT THEY SEEK, THEY COMPRISE $467,000 IN FEES THAT THEY'RE SEEKING. THAT'S ALMOST HALF OF WHAT PLAINTIFFS ARE SEEKING IN THIS CASE.

THAT'S ALMOST HALF OF THE FEES.

AND ON THE ASSOCIATES, YOUR HONOR, WE HAVE PRINTED A DEMONSTRATIVE IF IT WOULD BE HELPFUL, AND WE HAVE SHARED IT WITH MR. CUTTER.

THE COURT: THANK YOU.

MR. KLEINE: AND THIS IS BASED ON CUTTER EXHIBIT E. IF YOU ADD UP THE TIME AND THE HOURS, THE TIME AND THE FEES THAT PLAINTIFFS' COUNSEL SEEKS, PARTNERS ACCOUNT FOR 96 PERCENT OF THE FEES THAT THEY SEEK, 96 PERCENT, AND 89 PERCENT OF THE HOURS.

THE COURT: SO WHAT HAPPENS WHEN THE LAW FIRM IS TWO ATTORNEYS WHO ARE PARTNERS AND THEIR BUSINESS MODEL IS TO USE ASSOCIATES SPARINGLY BECAUSE THEY ACTUALLY CANNOT AFFORD TO HIRE THE ATTORNEYS FOR THE ONGOING BUSINESS? I MEAN, I'M NOT SUGGESTING THAT'S EXACTLY WHAT MR. CUTTER HAS, BUT I AM SYMPATHETIC TO THE CONCEPT THAT THIS IS WHAT -- HOW THE FIRM IS MADE UP AND THAT THEY ARE NOT REQUIRED TO HIRE AND STAFF DIFFERENTLY.

I CAN CUT HOURS BASED ON WHAT I THINK EFFICIENCY SHOULD REQUIRE, BUT I AM CONCERNED ABOUT THAT, THAT THEY CERTAINLY ARE -- IT'S NOT UNUSUAL TO HAVE A SMALLER FIRM WITH A DIFFERENT MODEL THAN WHAT A BIG FIRM LIKE YOURS WOULD BE ABLE TO HAVE.

MR. KLEINE: SURE, YOUR HONOR. BUT IN THIS CASE YOU HAVE TWO PARTNERS AT CUTTER LAW. YOU HAVE DANIEL EDELMAN WHO HAS FOUR YEARS OF EXPERIENCE AND WHO HAS CLAIMED TO BILL $800

AN HOUR WORKING ON THE CASE, AND YOU HAVE BEN EDELMAN CLAIMING $650 AN HOUR RATE.

SO PLAINTIFFS ARGUE THAT MR. PARKER WAS AN ASSOCIATE AT THE BEGINNING OF THE CASE. FIRST OF ALL, THERE'S NO EVIDENCE OF THAT IN THE RECORD.

THE COURT: NO.

MR. KLEINE: SECOND, I CAME ON BOARD IN THIS CASE, YOU KNOW, ALSO AS AN ASSOCIATE BY THE WAY, BUT IN EARLY 2014 WHEN DISCOVERY WAS STARTING AND AFTER -- JUST AS THE MOTIONS TO DISMISS WERE DONE AND THE FIRST TIME THAT I LOOKED UP MR. PARKER, HE WAS LISTED AS A PARTNER.

SO IT MAY BE TRUE THAT AT THE VERY BEGINNING OF THE CASE MR. PARKER WAS AN ASSOCIATE, BUT FOR THE BULK OF THE WORK AND DISCOVERY AND CLASS CERTIFICATION EFFORTS, MR. PARKER WAS NOT AN ASSOCIATE.

SO YOU HAVE FOUR SEPARATE PARTNERS WORKING ON THE CASE AND ALMOST NO TIME BEING SPENT BY THE TWO ASSOCIATES WHO ARE NOT EVEN IDENTIFIED BY FIRST NAME IN THE DECLARATIONS.

CLEARLY THERE WAS A FAILURE TO DESIGNATE -- EXCUSE ME, TO DELEGATE TASKS APPROPRIATELY AMONGST THE DIFFERENT EXPERIENCED ATTORNEYS.

YOUR HONOR, I WOULD ALSO LIKE TO ADDRESS THE ISSUE OF THE PLAINTIFFS' FAILURE OF SUCCESS ON THE CLASS CERTIFICATION PORTION OF THIS CASE. THIS CASE WAS RIGHT FROM THE VERY BEGINNING ABOUT RESTITUTION AND MONETARY RELIEF, AND THAT'S

WHAT PLAINTIFFS SOUGHT IN THE FIRST COMPLAINT. THERE WAS NO DEC RELIEF CLAIM IN THE FIRST COMPLAINT. ALL OF THE LATER COMPLAINTS WHERE THEY SEEK DEC RELIEF, THE DEC RELIEF IS TIED TO RESTITUTION. SAME SENTENCE. WE SEEK TO VOID THE CONTRACTS AND IF THE CONTRACTS ARE VOIDED, WE SEEK RESTITUTION.

THIS CASE WAS ALL ABOUT RESTITUTION. AND I WOULD DIRECT YOUR HONOR'S ATTENTION TO THE SUPREME COURT'S DECISION IN <u>HENSLEY V. ECKERHART</u>. THIS IS A 1983 DECISION.

THE COURT: UH-HUH.

MR. KLEINE: AND THERE IT WAS A REALLY INTERESTING CASE. IN THAT CASE IT WAS A CLASS ACTION FOR PRISONERS UNDER 1988, AND THEY ACTUALLY OBTAINED SIGNIFICANT RELIEF AT TRIAL. THEY ACTUALLY OBTAINED SIGNIFICANT RELIEF AT TRIAL. THEY USED THE WORD "SIGNIFICANT" AND "SUBSTANTIAL RELIEF" AT TRIAL.

BUT WHAT THE SUPREME COURT DOES IS THAT IT SAYS THAT'S NOT ENOUGH TO JUSTIFY RECEIVING ALL OF YOUR FEES. THE DISTRICT COURT HAD SAID THAT THE SIGNIFICANT EXTENT OF THE RELIEF CLEARLY JUSTIFIES AN AWARD OF REASONABLE ATTORNEY'S FEES, BUT THE SUPREME COURT SAYS THAT THAT DOES NOT ANSWER THE QUESTION OF WHAT IS REASONABLE IN LIGHT OF THE LEVEL OF SUCCESS.

AND THE COURT SAID THAT A REDUCED FEE AWARD IS APPROPRIATE IF THE RELIEF, HOWEVER SIGNIFICANT, IS LIMITED IN COMPARISON TO THE SCOPE OF THE LITIGATION AS A WHOLE.

AND IT'S OUR ARGUMENT THAT IN THIS CASE THIS WAS A CASE 99, 95 PERCENT ABOUT RESTITUTION, AND THAT'S WHY THEY WERE IN

IT. THEY LOST THAT, AND IT WAS NOT A VIABLE CLAIM AT THE CLASS CERTIFICATION STAGE AND NOW THEY'RE SEEKING ALL OF THEIR FEES, INCLUDING FEES THAT WERE DIRECTED TOWARDS RESTITUTION.

NOW, THE LAST THING I WOULD POINT YOUR HONOR'S ATTENTION TO IS MR. EDELMAN, BEN EDELMAN'S SUPPLEMENTAL DECLARATION AT, I BELIEVE, 14, PARAGRAPH 14 IN WHICH MR. EDELMAN STATES, QUOTE, "HE EXAMINED EACH DOCUMENT THAT FACEBOOK PRODUCED IN THIS CASE." MR. BEN EDELMAN BILLING AT $650 AN HOUR CLAIMS TO HAVE REVIEWED EVERY DOCUMENT THAT FACEBOOK PRODUCED IN THIS CASE.

THE COURT: AND HOW MANY DOCUMENTS WERE PRODUCED?

MR. KLEINE: AND, YOUR HONOR, MR. CUTTER REPRESENTS JUST NOW THERE WERE TENS OF THOUSANDS. THERE WERE ACTUALLY ONLY 1400 DOCUMENTS PRODUCED.

AND EDELMAN, MR. BEN EDELMAN, HIS TIME ON THE DOCUMENT REVIEW DOESN'T REFLECT ENOUGH TIME TO REVIEW 1400 DOCUMENTS BUT CLEARLY HE MUST BE INCLUDING THOSE HOURS IN OTHER CATEGORIES BECAUSE HE CLAIMS UNDER THE PENALTY OF PERJURY THAT HE REVIEWED EVERY DOCUMENT IN THE CASE.

THE COURT: WELL, THEN THAT RAISED -- IF IT WAS TENS IN THOUSANDS, WHICH HAPPENS OFTEN IN CASES LIKE THIS --

MR. CUTTER: I MEANT PAGES, YOUR HONOR.

THE COURT: PAGES. OKAY. AND LET'S GET THIS CLEAR.

MR. KLEINE: I HAVE THE EXACT NUMBER. IT'S 1455 DOCUMENTS AND 11,645 PAGES.

THE COURT: OKAY. THAT'S HELPFUL. PAGES ARE MORE

DESCRIPTIVE TO THE COURT THAN DOCUMENTS BECAUSE I PROBABLY HAVE A LOT OF DOCUMENTS THERE, BECAUSE I'M LOOKING AT MS. TRAN, 117 HOURS AND MR. EDELMAN, 18.

WELL, IF HE READS THAT FAST, THAT WOULD BE A MIRACLE. SO THAT'S A LITTLE BIT OF AN ISSUE THERE.

MR. CUTTER: YOU CAN EITHER BE EFFICIENT OR NOT.

THE COURT: I KNOW. THAT'S RIGHT. I JUST THINK THERE MAY BE A LITTLE HYPERBOLE IN SOME OF THIS, TOO.

AND I DON'T KNOW WHAT MS. TRAN WAS DOING IF BEN EDELMAN REVIEWED EVERY DOCUMENT.

MR. KLEINE: OUR POINT IS THAT MR. EDELMAN SAID UNDER OATH THAT HE REVIEWED EVERY DOCUMENT. HE MAY NOT HAVE INCLUDED ALL OF HIS TIME PROPERLY IN THE RIGHT CATEGORIES BUT WE DON'T KNOW BECAUSE WE DON'T HAVE ANYTHING MORE DETAILED THAN THIS CHART. CLEARLY HE SAID HE REVIEWED EVERY DOCUMENT IN THE CASE.

MR. CUTTER: YOUR HONOR, WHENEVER --

THE COURT: OKAY. AND ANYTHING ELSE THAT YOU WANTED TO IDENTIFY?

MR. KLEINE: NO, YOUR HONOR.

THE COURT: THANK YOU. ALL RIGHT. MR. CUTTER.

MR. CUTTER: SO I WOULD CITE TO THE COURT THE CABRALES DECISION BY THE NINTH CIRCUIT, AND I THINK THIS IS SUCH AN IMPORTANT QUOTE WHERE THE COURT SAID LAWSUITS USUALLY INVOLVE MANY REASONABLY DISPUTED ISSUES AND A LAWYER WHO TAKES

ON ONLY THOSE BATTLES IS CERTAIN OF WINNING IS PROBABLY NOT SERVING HIS CLIENT VIGOROUSLY ENOUGH. LOSING IS PART OF WINNING. THE DEFENDANT WOULD HAVE A SCALPEL OUT OF ATTORNEY'S FEES FOR EVERY SETBACK NO MATTER HOW TEMPORARY REGARDLESS OF ITS RELATIONSHIP TO THE ULTIMATE DISPOSITION OF THE CASE. THIS MAKES LITTLE SENSE.

THE COURT: WELL, I AGREE WITH THAT. AS I SAY, I TAKE A VERY DIFFERENT VIEW FROM CLAIMS THAT DON'T GET OFF THE STARTING BLOCK TO WINNING AND LOSING. I ACTUALLY DON'T THINK THAT YOU CAN VIGOROUSLY REPRESENT YOUR CLIENT IF YOU HAVE TO BE AFRAID THAT YOU CAN ONLY BRING WINNING ARGUMENTS.

AND THE VERY NATURE OF A CONTINGENT FEE CASE IS THAT THERE -- WE WANT TO REDUCE THE CONFLICT THAT COULD APPEAR BETWEEN A CLIENT AND AN ATTORNEY AND SO TO ALLOW ONLY COMPENSATION FOR WINNING ARGUMENTS MAY CAUSE CAPABLE COUNSEL TO FOREGO ASSERTING CERTAIN CLAIMS AND, IN FACT, THE CLAIMS IN THIS CASE THAT I CERTIFIED A CLASS ON WERE UNTRIED AND SO, YOU KNOW, I AM NOT GOING TO PARSE THAT ISSUE THE WAY FACEBOOK IS REQUESTING. I AGREE WITH YOU COMPLETELY.

MY CONCERN IS THE MANNER IN WHICH IT WAS STAFFED AND TO HAVE BEN AND DAN EDELMAN, IT JUST STICKS OUT IN A WAY THAT THESE ARE HIGHLY SKILLED CONSULTANT ATTORNEYS AND NOT ROLL-UP-THE-SLEEVES, IN-THE-TRENCH ATTORNEY.

SO IT APPEARS THAT IT WASN'T REASONABLE TO USE THEIR SKILLS IN THE WAY THAT THEY WERE USED AND THAT IT WAS

DUPLICATIVE. IT'S A DIFFERENT ISSUE.

MR. CUTTER: I UNDERSTAND.

THE COURT: AND THAT'S WHERE I'M FOCUSSED IN THIS CASE.

NOW, JUST TO MOVE ON AND TO WRAP THIS UP, THERE'S A MODEST REQUEST FOR A MULTIPLIER, AND MY VIEW IS THAT IF THERE IS A CONTINGENT FEE CASE THAT I NEED TO LOOK VERY CAREFULLY AT THE FULL SET OF ISSUES THAT SURROUND THE AWARD OF A MULTIPLIER.

IN THIS CASE ONCE I HIT MY LODESTAR, IT APPEARS THAT THERE -- THAT THIS WAS A COMPLICATED CASE, THAT IT TOOK -- THAT THERE WAS A HIGH DEGREE OF RISK GIVEN THE NATURE OF THE CLAIMS MADE, THAT IT WAS TAKEN ON A CONTINGENT FEE AND THAT -- I MEAN, FRANKLY, IT'S PART OF THE HOURLY RATE THAT THE SKILL OF THE ATTORNEYS IS REFLECTED IN THEIR HOURLY RATE. SO I DON'T DOUBLE REWARD FOR THAT, BUT I DO BELIEVE THAT A MULTIPLIER IS APPROPRIATE AND IN THIS CASE WHAT IS REQUESTED IS, FRANKLY, VERY MODEST IN LIGHT OF OTHER CASES AND WHETHER I'M AT THE 1.2 OR CLOSER TO THE 1.5, I HAVEN'T DECIDED, BUT I DO BELIEVE THAT A MULTIPLIER IS WARRANTED AND ESTABLISHED IN THIS CASE.

MR. KLEINE: THE ONLY THING I WOULD SAY ON THAT, YOUR HONOR, IS THAT IF YOU LOOK AT THE KETCHUM CASE.

THE COURT: YES, UH-HUH.

MR. KLEINE: THE CALIFORNIA SUPREME COURT MAKES REALLY CLEAR THAT THE PURPOSE OF A CONTINGENT RISK ENHANCEMENT IS TO SET MARKET LEVEL COMPENSATION.

HERE WHAT WE WOULD ARGUE IS THAT BECAUSE PLAINTIFFS' COUNSEL WERE LOOKING AT THIS TENS OF MILLIONS OF DOLLARS OF RESTITUTION, THERE'S NO ADDITIONAL AMOUNT THAT IS REQUIRED TO INCENTIVIZE PLAINTIFFS' COUNSEL TO BRING THE CASE.

IF THEY HAD BEEN SUCCESSFUL IN OBTAINING A RESTITUTIONARY RELIEF CLASS, THEY WOULD HAVE BEEN LOOKING AT POTENTIALLY MILLIONS AND MILLIONS OF DOLLARS IN A COMMON FUND PAYOUT IF THEY WERE TO SETTLE OR WIN THE CASE AND THAT SHOULD BE SUFFICIENT INCENTIVE FOR CLASS COUNSEL TO BRING THESE TYPES OF CASES.

THE COURT: I ACTUALLY DON'T READ THE LAW THAT WAY. I ACTUALLY READ THE LAW UNDER THE CALIFORNIA CASES, AND I DON'T THINK THE NINTH CIRCUIT IS ANY DIFFERENT AS TO LOOK FAVORABLY UPON MULTIPLIER AWARDS IN CASES LIKE THIS.

AND, YOU KNOW, IT'S EVEN BEEN ARGUED TO ME THAT IT'S ERROR NOT TO AWARD A MULTIPLIER WHERE THERE IS A CONTINGENT FEE. I THINK IT'S NOT QUITE THAT CLEARCUT MYSELF, AND I'VE AWARDED NEGATIVE MULTIPLIERS IN CASES WHERE IT WAS APPROPRIATE, AND THIS IS NOT THAT CASE.

I AM GOING TO BE LOOKING AT A POSITIVE MULTIPLIER HERE, BUT THAT'S BASED ON MY LODESTAR APPLICATION. AND SO THAT'S WHAT I WILL BE LOOKING AT.

FINAL ISSUE, AND THAT IS THE COST. IN FACT, I WAS SURPRISED THAT YOU ARGUED THAT COSTS ARE NOT ALLOWED. I'VE NEVER SEEN THAT. SO, I MEAN, YOU CITED A CASE AND -- BUT I

GUESS I WAS THROWN OFF BY THAT. MAYBE MR. CUTTER WAS, TOO, I DON'T KNOW.

MR. CUTTER: I WAS, YOUR HONOR.

THE COURT: I DON'T KNOW.

MR. KLEINE: YOUR HONOR, THIS IS A MATTER OF STATUTE. THIS IS NOT A COMMON FUND SETTLEMENT. THIS IS A 1021.5 SETTLEMENT, AND THEY'RE SEEKING FEES UNDER 1021.5.

THE COURT: SURE.

MR. KLEINE: YOU HAVE TO GO BY THE STATUTE. THE STATUTE DOES NOT PROVIDE FOR COSTS. IT SIMPLY DOES NOT PROVIDE FOR COSTS AND EXPENSES.

AND THE ONLY CASE THAT PLAINTIFFS CITE IS THE BLACKWELL CASE.

THE COURT: YES.

MR. KLEINE: BUT THE BLACKWELL CASE AWARDED COSTS AND EXPENSES UNDER THE ADA, NOT 1021.5, AND IF YOU GO TO PAGE 1073 OF THAT OPINION, THAT BLACKWELL OPINION, YOU'LL SEE THAT THE COURT IN LAYING OUT WHAT THE LEGAL AUTHORITY IS, SAYS THAT THE ADA ALLOWS FEES AND EXPENSES TO A PREVAILING PARTY AND THEN IT SAYS 1021.5 PROVIDES AN ALTERNATIVE, AN ALTERNATIVE BASIS FOR THE RECOVERY OF FEES.

MR. CUTTER: THAT'S NEVER BEEN READ THAT WAY, YOUR HONOR. AND NOT ONLY DOES BLACKWELL INCLUDE EXPENSES OF THE TYPE NORMALLY BILLED TO A FEE PAYING CLIENT, CCB 1032(B) PROVIDES THAT PREVAILING PARTY CAN RECOVER COSTS AS WELL.

THE COURT: SO UNDER A SETTLEMENT -- BUT I'M NOT MAKING A DETERMINATION OF PREVAILING PARTY, AM I? I'M ASKING REALLY. YOU'RE RIGHT, 1033.5 CLEARLY SAYS THAT AND COSTS ARE EXPECTED.

MR. KLEINE: THEY HAVE NOT CITED 1033.5 IN THEIR BRIEF AT ALL. WE HAVEN'T HAD A CHANCE TO LOOK AT THAT.

MR. CUTTER: 1032(B).

MR. KLEINE: EXCUSE ME.

MR. CUTTER: LIKE YOU, I'VE NEVER SEEN THE ARGUMENT, AND IT WOULD MAKE ZERO PUBLIC POLICY SENSE.

THE COURT: IT MAKES NO SENSE.

MR. CUTTER: AND SO I WOULD JUST LIKE TO FINISH WITH A COUPLE OF COMMENTS ABOUT THE MULTIPLIER ISSUE THAT I HAVEN'T HAD A CHANCE TO ADDRESS.

THE COURT: OKAY.

MR. CUTTER: AND I WOULD LIKE TO POINT OUT THAT OUR TOTAL TIME, AND, OF COURSE, I'D ASK THE COURT TO BEGIN WITH OUR TOTAL TIME AND NOT TAKE OFF THE 10 PERCENT. IF YOU'RE GOING TO DO YOUR OWN INDEPENDENT --

THE COURT: YOU'RE RIGHT, ABSOLUTELY.

MR. CUTTER: AND THEN I WOULD JUST POINT OUT THAT WE DIDN'T INCLUDE THE TIME AND OBVIOUSLY IT WASN'T SUPPLEMENTED FOR THE REPLY BRIEF IN THE CASE.

AND THE TIME THAT WE BEGAN, BEFORE WE GO THROUGH THESE VARIOUS ANALYSES, IS VERY CLOSE JUST ON A STRAIGHT LODESTAR

ANALYSIS, TO WHAT WE AGREED TO BE CAPPED AT WHICH IS 1250.

THE COURT: SURE.

MR. CUTTER: THE REASON I INCLUDED A RANGE IS BECAUSE I THINK BY ANY MEASURE OF CLEAR NINTH CIRCUIT AUTHORITY THE MILLION 250 IS NOT EXCESSIVE COMPENSATION FOR THE WORK THAT WE DID IN THIS CASE, AND I'LL LEAVE IT AT THAT.

MR. KLEINE: JUST ON COSTS, WE'VE LOOKED AT CASES THAT WOULD ALLOW COSTS UNDER 1021.5 AND WE DIDN'T FIND ANY, AND THEY HAVEN'T CITED ANY.

THE COURT: THANK YOU. WELL, AS I SAID WHEN WE STARTED, I DO FIND THAT THIS CASE IS APPROPRIATE FOR AN AWARD OF ATTORNEY'S FEES TO THE PLAINTIFF. I DO BELIEVE THAT THAT AWARD NEEDS TO BE SUFFICIENT TO COMPENSATE COUNSEL FOR THE WORK THAT THEY DID IN SUCCESSFULLY LITIGATING THE CASE.

MY JOB IS TO MAKE THAT A REASONABLE AWARD. AND SO, MR. CUTTER, I KNOW I HAVE KIND OF SLICED THROUGH THIS, AND I APPRECIATE YOUR RESPONSE TO EVERYTHING THAT YOU PROVIDED TO ME AND THAT WILL ASSIST ME IN REVIEWING THIS.

CLEARLY I WILL GO THROUGH THIS IN DETAIL AND LOOK AT THE HOURS IN THESE CATEGORIES AND MAKE SPECIFIC RULINGS ON ANY REDUCTIONS THAT I THINK ARE APPROPRIATE.

I'M NOT GOING TO USE A PERCENTAGE REDUCTION. IT WILL BE BY NUMBER OF HOURS REDUCED, AND I CAN ONLY GIVE IT MY BEST REVIEW OF WHAT IS REASONABLE FOR THE TASK PERFORMED AND THE RESULTS ACHIEVED AND RESULTS ACHIEVED I'VE MADE IT CLEAR WHAT

MY MAJOR DIVISION IS THAT ONCE YOU GOT THROUGH THE PLEADING STAGE, I DON'T THINK YOU GET PAID FOR JUST WHAT YOU WIN.

I WILL LOOK AT THE HENSLEY CASE, AND I KNOW YOU CITE IT IN A NUMBER OF PLACES IN YOUR BRIEFING, AND MAKE SURE THAT ON THE CLASS CERTIFICATION BRIEFING ISSUE THAT AN AWARD IS APPROPRIATE WITHOUT THAT BEING REDUCED FOR THE (B)(3) RESTITUTION CLASS AND I WILL, I WILL WORK MY WAY THROUGH THAT.

ALL RIGHT. THEN IT SEEMS CLEAR THAT YOU'RE GOING TO MODIFY THE SETTLEMENT AGREEMENT AND THE PROPOSED JUDGMENT AND THAT JUDGMENT WILL INDICATE THAT AN ORDER ON ATTORNEY'S FEES WILL BE SEPARATE AND THE COURT RETAINS JURISDICTION FOR THAT.

AND SO FACEBOOK WILL INFORM THE COURT OF THE DATE THAT THE 75 DAY NOTICE RUNS SO THAT WE CAN HOLD THAT JUDGMENT UNTIL THAT DATE. AND THANK YOU FOR THAT INFORMATION.

MR. CUTTER, MR. PARKER, ANYTHING ELSE YOU'D LIKE TO ADD?

MR. CUTTER: NO. THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. THANK YOU ALL. ANYTHING ELSE FROM COOLEY?

MR. SOMVICHIAN: NO, YOUR HONOR. THANK YOU.

THE CLERK: THIS COURT IS ADJOURNED.

(COURT CONCLUDED AT 10:18 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

Irene Rodriguez

IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074

DATED: APRIL 4, 2016