United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GLYNNIS BOHANNON, et al., | Case No.  12-cv-01894-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING AS MODIFIED MOTION FOR FEES, COSTS, AND EXPENSES** |
| FACEBOOK, INC., | |
| Defendant. | [Re:  ECF 142] |

The parties have settled this class action with agreement by Facebook to bring its refund practices and policies into compliance with the California Family Code, update the relevant language in its terms, and dedicate an internal queue to refund requests for in-app purchases made by U.S. minors and agreement by Plaintiffs to release their, but no other class member's, claims. The parties have agreed on all but attorneys' fees, costs, and incentive payments to Plaintiffs—a dispute they now bring to the Court. Plaintiffs seek $1.5 million in attorneys' fees, $29,115.66 in costs, and $10,000 in incentive payments. Mot., ECF 142. Defendant opposes the request. Opp., ECF 145. For the reasons stated below, the Court GRANTS the motion AS MODIFIED.

## I.      BACKGROUND

As discussed below, the parties' attorneys' fee dispute focuses on the reasonableness of the hours expended and the public benefit of the outcome achieved. Therefore, the Court begins with a summary of the history of the case.

### A.  Complaints

Glynnis Bohannon initiated this lawsuit on behalf of herself and her minor child, I.B. on February 23, 2012 in state court. Compl., ECF 1-4. Ms. Bohannon based her single claim for unjust enrichment on allegations that, after she granted I.B. permission to use her credit card to

make $20 of purchases in a Facebook game, I.B. proceeded to charge several hundreds of dollars to her card for in-app purchases while believing that he was using virtual currency. *Id.* ¶ 4. Facebook refused to provide a refund. *Id.* ¶ 5. The Complaint spanned only three pages, pled one claim, and contained no class allegations.

On March 2, 2012, Ms. Bohannon amended her complaint to include a putative class of U.S. parents whose minor children made unauthorized purchases on Facebook. First Amended Compl. ("FAC") ¶ 24, ECF 1-7. The FAC also introduced claims under the Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL").

After Facebook removed the case to federal court and moved to dismiss, Plaintiffs filed a Second Amended Complaint on May 31, 2012 ("SAC"). ECF 18. Julie Wright and her minor child J.W. joined as named plaintiffs, alleging that J.W. charged more than $1,000 to his parents' debit card for in-app purchases on Facebook, of which Facebook refunded only $59.90. *Id.* ¶¶ 29, 31.

In the SAC, Plaintiffs sought to represent an umbrella class and three subclasses that, for the first time, included minors. The "Minor Class" was defined as: "All Facebook users who are or were minor children according to Facebook's own records, and those children's parents and guardians" over a specified time period. *Id.* ¶ 39. [1] The SAC also defined two subclasses of the Minor Class: those minors and adults who sought refunds of credit transactions originating from a minor's account and those whose payment was made via a debit card or PayPal account. *Id.* ¶¶ 40, 41. In addition, the SAC introduced a claim for declaratory relief that the purchases are void or voidable under California Family Code §§ 6701(a), (c), and 6710 and a claim under the Electronic Funds Transfer Act ("EFTA"). *Id.* ¶¶ 59-72, 108-112.

Facebook filed its second Motion to Dismiss on July 2, 2012. ECF 25. After the Court[2] struck Plaintiffs' Opposition for failure to comply with the Civil Local Rules, ECF 31, Plaintiffs filed an amended Opposition, ECF 32.

On October 25, 2012, the Court dismissed with prejudice the parents' claims to disaffirm

---

[1] The SAC refers to this group as both a class and a subclass. *See* SAC ¶ 39.
[2] References to "the Court" encompass actions taken by Judge Wilken, to whom this case was previously assigned.

United States District Court
Northern District of California

the minors' contracts, the CLRA claim, and related UCL claims. First Dismissal Order at 1, ECF 44. The Court also dismissed the EFTA claim and the unlawful and fraudulent UCL claims with leave to amend. *Id.* Finally, the Court allowed the minors' claims to disaffirm the contracts and the unfair UCL claim to go forward. *Id.*

Benjamin Edelman was added as counsel for Plaintiffs shortly before the Court issued its First Dismissal Order, and Daniel Edelman was added shortly after. ECF 41, 49.

On November 15, 2015, Plaintiffs filed their Third and final Amended Complaint ("TAC"). ECF 50. Consistent with the Court's order, the TAC alleged UCL, EFTA, and declaratory relief claims. The TAC also offered new class definitions, including a "Minor Class" that was, for the first time, limited exclusively to minors. *Id.* ¶ 36. The Minor Class also included a purported "Minor Purchasing Subclass," defined as those minors "from whose Facebook accounts Facebook Credits were purchased." *Id.* ¶ 36.

Facebook moved to dismiss the TAC on December 6, 2012. ECF 53. After taking the matter under submission, the Court dismissed the EFTA and UCL claims—the only remaining claims of the adult Plaintiffs—with prejudice and allowed the minors' claim for declaratory relief to go forward. Second Dismissal Order at 11, 14, 16, ECF 58. As a result, the adult Plaintiffs were no longer parties to the action. *Id.* at 16.

**B. Class Certification**

On August 21, 2014, Plaintiffs moved to certify the Minor Class and Minor Purchasing Subclass. ECF 82. At the hearing, the Court ordered the parties to provide supplemental briefing on whether or not the Court can certify a nationwide class of minors pursuant to alleged violations of the California Family Code. *See* Transcr. at 40:11-15, ECF 123; *see also* Pls.' Supp. Brief, ECF 126; Def.'s Supp. Brief, ECF 127. On March 10, 2015, the Court certified the Minor Class and Minor Purchasing Subclass to pursue declaratory and injunctive, but not monetary, relief. ECF 131. Of the cases the Court cited in its decision, half were the result of the Court's own research and several others appeared only in the parties' supplemental briefing.

Plaintiffs then filed for permission to appeal the Class Certification Order pursuant to Rule 23(f), ECF 132, with the help of Audra Ibarra, which was denied on June 10, 2015, ECF 136.

United States District Court
Northern District of California

**C.  Sealing Motions**

In addition, the parties expended significant time on a dispute over sealing related to the Motion for Class Certification. First, because Plaintiffs used materials Facebook had designated as confidential in their Motion for Class Certification, Plaintiffs filed an administrative motion to seal that information. ECF 81. However, after reviewing Facebook's supporting brief and declaration, *see* ECF 87, 88, Plaintiffs determined that most of the redactions were improper and filed a Notice of Intent to Withdraw their sealing request. ECF 90. The parties met and conferred numerous times to determine the proper redactions, but were unable to agree. Plaintiff then filed an 18-page opposition to the sealing, ECF 96, Facebook filed a 6-page reply, ECF 101, and the Court approved the requested redactions. ECF 103.

Separate from that debate, Plaintiffs also filed two motions asking the Court to remove confidential documents they had inadvertently filed publicly without redaction. *See* ECF 86, 116. In granting the second of these requests, the Court wrote, "Troublingly, this is the second time Plaintiffs have filed a motion to remove an incorrectly filed document with regard to this Motion" and warned that improper filing of confidential information could result in sanctions. ECF 118.

**D.  Settlement**

Following certification of the Minor Class, the parties stipulated to continue the trial date and engaged in private mediation. ECF 134; *see also* Infante Decl. ¶ 2, ECF 141-3. On January 15, 2016, the parties submitted a settlement agreement for the Court's approval. *See* Exh. 1 to Cutter Decl., ECF 141-2. The Court provided comments at a hearing and Plaintiffs then submitted a revised version of the agreement. ECF 157 ("Revised Settlement Agreement").

Pursuant to the Revised Settlement Agreement, Facebook has agreed to do the following for at least three years: (1) bring its refund practices and policies with respect to U.S. minors into compliance with the California Family Code; (2) include language like "All funding transactions are final unless otherwise required by law" in its Community Payments Terms ("CPT") applicable to U.S. minor users; (3) include language like "You acknowledge that transactions with minors may be voidable by law and agree that you may be required to refund amounts paid" in its Developer Payments Terms applicable to U.S. developers; (4) add a checkbox or something

similar and accompanying text to its refund request form for In-App Purchases for U.S. users, such that users are able to indicate that the Purchases for which they are seeking a refund were made when the user was a minor; (5) implement a dedicated queue to addressing refund requests in In-App Purchases made by U.S. minors, staffed by employees who receive special training, (6) include like "Please always make sure you have your parent or guardian's consent to use their payment sources" in receipt and confirmation emails sent to U.S. minors, as well as a link to the CPT; and (7) emphasize the following language in the CPT: "If you are under the age of eighteen (18), you may use Facebook Payments only with the involvement of your parent or guardian. Make sure you review these Terms with your parent or guardian so that you both understand all of your rights and responsibilities." *Id.* § 2.1. The Agreement does not include a class-wide release of any kind and binds only Facebook, the minor Plaintiffs, and their parents. *Id.* § 3. Pursuant to the Revised Settlement Agreement, Plaintiffs cannot seek more than $1.25 million in fees or $5,000 service awards for each of the class representatives. Revised Settlement Agreement §§ 2.4(a), 2.5.

Plaintiffs now seek $1.25 million in attorneys' fees for the work of Cutter Law P.C., Katz, Marshall & Banks LLP ("Cutter Law")[3] and Benjamin Edelman ("Class Counsel"), as well as attorneys Daniel Edelman and Audra Ibarra. Mot., ECF 142-1. In addition, Plaintiffs seek $29,115.66 for costs and $5,000 in incentive payments to each of I.B. and J.W.

## II.      LEGAL STANDARD

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Because [California] law governed the claim, it also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). This extends to determining "not only the right to fees, but also . . . the method of calculating the fees." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

Under California law, a court may award attorneys' fee to a "successful party" if "(1) [the party's] action has resulted in the enforcement of an important right affecting the public interest,

---

[3] For the majority of the case, the Cutter Law attorneys who seek fees were partners or associates at Kershaw, Cutter & Ratinoff, LLP ("Kershaw Law"). *See* Cutter Decl. ¶ 1, ECF 142-4.

United States District Court
Northern District of California

(2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate.'" *Bui v. Nguyen*, 230 Cal. App. 4th 1357, 1365 (2014) *review denied* (Feb. 25, 2015) (quoting *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 935 (1979)); *see also* Cal. Civ. Proc. Code § 1021.5.

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 1579705, at *6 (9th Cir. Apr. 20, 2016) (internal citation omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363-64, nn.3-4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

"Attorneys' fee awards are reviewed for abuse of discretion, and an award will be upheld unless 'there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice.'" *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2015 WL 6745408, at *3 (N.D. Cal. Nov. 2, 2015) (quoting *Bui*, 230 Cal.App.4th at 1367–68).

### III.   DISCUSSION

#### A.  Availability of Fees

The Court first considers whether or not an award of attorneys' fees is proper in this case. Plaintiffs contend that they satisfy each of § 1021.5's four requirements, while Defendant disputes only one: that the lawsuit resulted in the enforcement of "an important right affecting the public interest." Therefore, the Court focuses its inquiry on that factor.

1   Section 1021.5 "directs the judiciary to exercise judgment in attempting to ascertain the

2   'strength' or 'societal importance' of the right involved." *Bui*, 230 Cal. App. 4th at 1366 (quoting

3   *Woodland Hills*, 23 Cal. 3d at 935). Plaintiffs argue that this lawsuit resulted in vindication of an

4   important right by enforcing laws that protect minors' rights to disaffirm contracts under

5   California law. Plaintiffs argue that this suit was about "a large corporation that systematically

6   encourages and facilitates minors to become users . . . and denies their requests for refunds."

7   Reply at 2-3; *see also* Mot. at 4-5. Defendants, on the other hand, contend that this case resulted in

8   nothing more than enabling minors to get refunds for virtual goods they purchased in online

9   games—often without their parents' permission and after using the products. Opp. at 4. Defendant

10  describes this as a "valuable benefit to the class," but not "an important right affecting the public

11  interest." *Id.*

12  Defendant compares this case to two cases in which a court did not award fees in part

13  because the interest at stake was only recreational. In *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608

14  (1996), the appellate court upheld the denial of a *pro se* plaintiff's request for attorneys' fees after

15  his lawsuit led numerous ski shops to modify the liability language in their contracts in part

16  because the action "did not vindicate 'an important right,' inasmuch as skiing is not a matter of

17  public interest." *Id.* at 616-17, 629 (quoting *Westside Community for Independent Living, Inc. v.*

18  *Obledo*, 33 Cal. 3d 348, 353 (1983)). Similarly, in *Grant v. American Golf Corp.*, No. E031417,

19  2003 WL 22080215 (Cal. Ct. 6 App. Sept. 9, 2003), an unpublished and not citable decision under

20  California Rule of Court 8.1115, the trial court denied a plaintiff's request for attorneys' fees after

21  she won some claims challenging a country club's transfer fee in part because "the right at issue

22  relates primarily to golfing, a recreational activity." *Id.* at *6-7. Defendant argues that the same

23  result should apply here because, like skiing and golfing, playing games on Facebook does not

24  qualify as a matter of public interest. Opp. at 5.

25  The Court agrees with Plaintiffs. This case resulted in the enforcement of an important

26  right affecting the public interest, specifically the protection of minors against their "own

27  improvidence and the designs of others." *See Berg v. Traylor*, 148 Cal.App.4th 809, 818 (2007).

28  "It is the policy of the law to protect a minor against himself and his indiscretions and immaturity

United States District Court
Northern District of California

as well as against the machinations of other people and to discourage adults from contracting with an infant." *Id.* The result of this lawsuit enacts precisely that public policy by informing the millions of children that Facebook allegedly targets for purchases of their rights and enabling them to seek refunds. Thus, the Court finds that attorneys' fees to Plaintiffs are warranted pursuant to § 1021.5 in this case and turns to the amount requested.[4]

### B.  Amount of Fees

#### 1. Reasonableness of Rates

First, the Court must determine whether Plaintiffs' attorneys' rates are reasonable. When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g,* 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson,* 465 U.S. 886, 886 (1984). The relevant community for analyzing reasonable hourly rates "is the forum in which the district court sits," here the Northern District of California. *Camacho,* 523 F.3d at 979.

Plaintiffs seek to recover fees for work performed by seven attorneys: C. Brooks Cutter, John R. Parker Jr., Daniel Edelman, Benjamin Edelman, Audra Ibarra, Tiffany Tran, and Jeremy Price. Their hourly rates and years of litigation experience are as follows:

| Attorney | Hourly Rate | Years of Experience |
|---|---|---|
| C. Brooks Cutter | $800 | 28 |
| John R. Parker, Jr. | $600 | 10 |
| Daniel Edelman | $800 | 47 |
| Benjamin Edelman | $650 | 8 |

---

[4] Furthermore, the Court notes that neither *Olsen* nor *Grant* denied the request for fees solely because the relevant interest was recreational. In *Olsen,* the court also found that the plaintiff "did not obtain the 'primary relief sought'" and noted that, because the plaintiff was *pro se,* "his eligibility to recover attorney fees is in doubt." *Olsen,* 48 Cal. App. 4th at 621. In *Grant,* the court "found that, for purposes of recovering costs, neither side prevailed" and that the alleged misconduct affected "'a relatively small number of condominium owners' rather than the public at large." *Grant,* 2003 WL 22080215 at *1, *6.

| Audra Ibarra | $525 | 17 |
| Tiffany Tran | $150 | Not provided |
| Jeremy Price | $150 | Not provided |

*See* Cutter Decl. §§ 22, 23, ECF 142-4; D. Edelman Decl. ¶¶ 1, 10, ECF 142-5; B. Edelman Supp. Decl. ¶¶ 2, 26, ECF 148-3; Ibarra Decl., ¶¶ 1, 7, ECF 142-2.

In support of their request, Plaintiffs, who bear the burden of establishing that the rates are reasonable, direct the Court to *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015). That decision, issued in September 2015, considered prevailing rates in a class action suit against a social networking site and found that "[i]n the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'" 309 F.R.D. 573, 591 (N.D. Cal. 2015) (quoting *In re Magsafe Apple Power Adapter Litig.,* No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015)). Plaintiffs argue that their requested rates of $525-800 for partners and $150 for associates fall well within these parameters. Mot. at 7-8.

Defendant takes issue with the proposed rates for Benjamin Edelman, Ms. Tran, and Mr. Price, arguing that Plaintiffs have not provided any information concerning these attorneys' legal experience. Opp. at 19-20. Benjamin Edelman, an associate professor at Harvard Business School who graduated from law school in 2008, responded with a supplemental filing that identifies three class actions in which he has taken an active role. B. Edelman Supp. Decl. ¶ 26. However, Plaintiffs failed to note, much less correct, the deficiency regarding Ms. Tran and Mr. Price. As a result, the Court lacks information regarding when, or even whether, these individuals graduated from law school or gained admittance to the bar.[5] While the Court notes that $150/hour is a low request for an associate's hourly fee in the Bay Area, Plaintiffs have failed to establish that the rate is reasonable for these particular associates. Accordingly, the Court finds that the requested hourly

---

[5] Public records also fail to reveal their years of practice, as the California Bar lists two admitted attorneys named Tiffany Tran and three named Jeremy Price, none of whom are listed as working at Kershaw Law or Cutter Law.

United States District Court
Northern District of California

billing rates are reasonable for all counsel but Ms. Tran and Mr. Price.

### 2. Reasonableness of Hours

The Court next considers the reasonableness of the hours expended. The Court cannot "uncritically" accept the plaintiff's representations of hours expended; rather, the Court must assess the reasonableness of the hours requested. *Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, 1385 (9th Cir. 1984). In making this determination, the Court can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary. *Hensley*, 461 U.S. at 433-34.

Plaintiffs seek fees for the 1,999.2 hours of work done by Mr. Parker ("JRP"), Mr. Cutter ("BCB"), Benjamin Edelman ("BE"), Daniel Edelman ("DE"), Ms. Ibarra, Ms. Tran, and Mr. Price. *See* Exh. E to Cutter Decl., ECF 142-3; *see also* Cutter Decl. ¶ 29; Mot. at 6. Plaintiffs do not submit hourly records, but offer a table that divides each attorney's hours into fifteen categories of work, which the Court reproduces below.[6]

|                     | JRP   | CBC  | BE   | DE    | Ibarra | Tran  | Price |
|---------------------|-------|------|------|-------|--------|-------|-------|
| **Pre-investigation** | 10.2  | 0    | 28   | 0     | 0      | 0     | 0     |
| **Complaints**      | 69.4  | 15.1 | 45.2 | 9.2   | 0      | 0     | 0     |
| **MTD Briefing**    | 92.5  | 32.7 | 42.4 | 42.35 | 0      | 0     | 0     |
| **MTD Hearing**     | 15    | 0    | 0    | 0     | 0      | 0     | 0     |
| **Case Management** | 48.2  | 15.3 | 32   | 0.8   | 0      | 1.3   | 0     |
| **Discovery**       | 66.9  | 3.3  | 24.7 | 20.6  | 0      | 73    | 9.5   |
| **Document Review** | 65.2  | 0    | 18.9 | 32.1  | 0      | 117.8 | 0     |
| **Depositions**     | 174   | 0    | 21.1 | 0     | 0      | 29.2  | 0     |
| **Class Cert. Briefing** | 133.8 | 24.9 | 55.5 | 133.3 | 0      | 46.5  | 0     |
| **Class Cert. Sealing** | 17.4  | 1.3  | 26.5 | 0     | 0      | 10    | 0     |

---

[6] Plaintiffs also offer a table where the hours for Complaints, MTD Briefing, and MTD Hearing are reduced by 10 percent to reflect unsuccessful claims. Because, as discussed below, the Court finds this reduction to be arbitrary, the Court uses the full hours request as its starting point.

United States District Court
Northern District of California

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Class Cert. Hearing** | 27.5 | 18.5 | 7.2 | 8.5 | 0 | 0 | 0 |
| **23(f) Motion** | 22.2 | 12.8 | 2.5 | 18 | 23.5 | 0 | 0 |
| **Settlement** | 69 | 31.5 | 26.7 | 23.35 | 0 | 0 | 0 |
| **Approval/Fees** | 35 | 6 | 5 | 7.9 | 3.5 | 0 | 0 |
| **Trial Preparation** | 18 | 9 | 14.8 | 3.6 | 0 | 0 | 0 |
| **Total** | 864.3 | 170.4 | 350.5 | 299.7 | 27 | 277.8 | 9.5 |

*See* Exh. E to Cutter Decl ("Before Deductions" Table).

Defendant first challenges Plaintiffs' submission as too general and insufficiently documented to enable the Court to assess the reasonableness of the claimed hours. Opp. at 7-11.[7] Plaintiffs respond that the chart they submitted provides sufficient detail. Reply at 4-5, ECF 148.

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) ("counsel need only identify the general subject matter of their time expenditures") (internal citation omitted). Here, Plaintiffs clearly meet this standard for Mr. Cutter, Mr. Parker, Benjamin Edelman, Daniel Edelman, and Ms. Ibarra by concisely detailing the time each person spent on fifteen discrete tasks, and supporting the hours with declarations. However, because Plaintiffs provided no information regarding Ms. Tran and Mr. Price's experience, the Court cannot find any of their requested hours to be reasonable.

### a. Unsuccessful Claims

Turning to the reasonableness of the remaining hours, Defendant first argues that the request should be reduced to exclude time spent on unsuccessful claims. When counsel seeks fees for both successful and unsuccessful claims, the Ninth Circuit instructs district courts to follow a two-part analysis.

"First, the court asks whether the claims upon which the plaintiff failed to prevail were

---

[7] Defendant relies, in part, on the fact that neither Cutter Law nor Ms. Ibarra identified the manner in which they maintained their time records as required by Civil Local Rule 54-5(b)(2). Opp. at 7. Both corrected this deficiency with supplemental declarations. *See* Ibarra Supp. Decl. ¶¶ 3-4, ECF 148-1; Cutter Supp. Decl. ¶ 2, ECF 148-2.

United States District Court
Northern District of California

related to the plaintiff's successful claims." *Schwarz v. Sec'y of Health & Human Servs*., 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Thorne v. El Segundo,* 802 F. 2d 1131, 1141 (9th Cir. 1986). "Echoing the Supreme Court's description of related-claim cases, [the Ninth Circuit has] said that related claims involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original) (citing *Hensley*, 461 U.S. at 435). If the Court finds that the claims are unrelated, the inquiry ends and "the final fee award may not include time expended on the unsuccessful claims." *Schwarz*, 73 F.3d at 901 (quoting *Thorne,* 802 F. 2d at 1141). If, on the other hand, "the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion." *Id.* (quoting *Thorne,* 802 F. 2d at 1141).

Here, Defendants seek to exclude time spent on the claims brought by the adults ("Adult Claims"),[8] which were dismissed with prejudice, as well as time spent seeking certification of a class for monetary relief, which was not certified. Opp. at 11-15. Plaintiffs concede that the EFTA and MTA claims,[9] which encompass the bulk of the Adult Claims, were unrelated to the successful claims. They argue that the hours spent on Complaints and Motions to Dismiss should therefore be reduced by 10 percent, but oppose any reduction on any later work as related to the successful claims. Mot. at 12; *see also* Reply at 7.

As noted in the Background Section above, this case shifted dramatically through the course of several iterations of the complaint and related motions to dismiss. What began as a case of unjust enrichment by one parent ended as a class action by minors for declaratory and injunctive relief. The Adult Claims, which ultimately failed, formed the bulk of Plaintiffs' claims

---

[8] These include the EFTA, CLRA, and § 6701(a) claims, as well as the unlawful and fraudulent UCL claims. They do not include the § 6701(c), § 6710, and unfair UCL claims.
[9] Plaintiffs' phrase "MTA claims" appears to refer to the portions of the UCL and CLRA claims that were based on violations of the California Money Transmission Act, California Financial Code § 2000 *et seq. See* SAC ¶¶ 33, 38, 78, 91.

United States District Court
Northern District of California

at the early stages of litigation. In comparing the facts and legal theories upon which those claims and the minors' surviving §§ 6701(c) and 6710 claims were based, the Court finds that the Adult Claims were not related to the successful claims by common legal theories or a core of facts. For example, the surviving claims focus on theories regarding minors' rights to disaffirm contracts and the fact that minors made purchases from Facebook, while the unsuccessful claims focused on legal theories pertaining to the use of credit cards under EFTA and whether or not Facebook Credits qualify as a "good or service" under the CLRA, as well as ultimately irrelevant specifics of the transactions and the economic harm to the adults.

On the other hand, the Court agrees with Plaintiffs that the work they did after the pleadings were set—specifically, seeking to certify a class for monetary relief—although unsuccessful, was related by a common set of facts (i.e., minor Plaintiffs made purchases from Facebook) and legal theories (i.e., those purchases are void or voidable under California law) to the ultimately successful certification of a class for injunctive relief.

With those findings in mind, the Court turns to the second step. Because "the final fee award may not include time expended on the unsuccessful claims," the Court must exclude hours expended on the Adult Claims. The Court agrees that these hours are limited to time spent on Complaints and Motions to Dismiss, as all later work concerned only the minors' claims, but the Court rejects Plaintiffs' 10 percent proposal as arbitrary. Instead, the Court eliminates all hours spent on the initial Complaint and the FAC, neither of which included minor plaintiffs, as well as hours devoted to the Adult Claims in the SAC, TAC, and two rounds of motions to dismiss.

Because Plaintiffs do not offer time sheets showing dates, the Court approximates these reductions based on: (1) the pages devoted to the Adult Claims in the Complaints and Motions to Dismiss; (2) the fact that Benjamin and Daniel Edelman joined as counsel in time to work only on the TAC and second Motion to Dismiss; (3) the duplication of work in opposing the initial Motion to Dismiss given that the Court struck the first Opposition; and (4) the Court's understanding of how much work a person of each attorney's skill should have been able to accomplish in a given number of hours. As with all reductions that follow, the precise reductions are set forth by attorney and task in the table at the bottom of this section. The resulting time awarded for the Complaint,

Motion to Dismiss briefing, and Motion to Dismiss hearing total 43 hours, 80 hours, and 10 hours respectively.

### b.  Class Certification

As for the hours spent on the unsuccessful attempt to certify a class for monetary relief, which the Court found to be related to the successful claims, the Court now "evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Schwarz*, 73 F.3d at 901. The Court finds that Plaintiffs obtained an excellent result—certification of a class of minors and injunctive relief that affirms minors' rights under California family law—and therefore will award reasonable fees for success in obtaining class certification.

At the same time, the Court agrees with Defendant that Plaintiffs have failed to justify the reasonableness of the 394 hours they request for researching and briefing class certification. As Defendant notes, Plaintiffs fail to identify the precise work done by certain attorneys who claim these hours. Opp. at 9. More importantly, the Court finds the request of nearly 400 hours to be unreasonable given the years of experience of counsel and the high fees requested. Moreover, the Court notes that it had to do its own work to certify the class, citing six cases that neither party submitted and several others that the parties brought forth only after the Court identified the precise issue to be briefed. Accordingly, the Court finds the hours expended to be excessive.

Mr. Parker and Daniel Edelman request 133 hours each for researching and drafting the class certification motion, while Benjamin Edelman requests an additional 55.5 hours and Mr. Cutter seeks 25 hours for the same motion. It simply is not reasonable for four senior attorneys to draft a class certification motion. In light of the issues briefed, the Court observes that 140 hours is a reasonable amount of time for drafting the motion and apportions 70 hours each to Mr. Parker and Daniel Edelman, who both represent that they devoted substantial time to drafting. The Court also finds that Daniel Edelman, who has considerable expertise in class certification, reasonably expended an additional 25 hours on advising and reviewing Mr. Parker's work. Considering their work to be the primary effort in researching and drafting the motion, the Court determines that Mr. Cutter and Benjamin Edelman reasonably expended a similar number of hours on advising and

1   consultation only. Thus, the Court allows 70 hours for Mr. Parker, 95 hours for Daniel Edelman
2   and 25 hours each for Mr. Cutter and Benjamin Edelman on the class certification motion.

3          Plaintiffs also request 46.5 hours for work performed by their associate Ms. Tran. While
4   this would appear reasonable for an associate, there is no evidence that Ms. Tran is an admitted
5   attorney and her hours are therefore excluded. In sum, the Court will award 208.5 hours as
6   reasonable for the class certification research and briefing. The hours requested for the class
7   certification hearing and 23(f) motion are reasonable and allowed in full.

8          Defendant next argues that Plaintiffs cannot recover fees for the 55.2 hours claimed for the
9   Motion to Seal the Class Certification Motion. Opp. at 15-16. Defendant contends that the
10  majority of this time was spent opposing Facebook's sealing request, which did not aid class
11  members. Plaintiffs respond that this time proved fruitful, as shown by Facebook's withdrawal of
12  certain requests to seal. Reply at 10. Having reviewed the filings, the Court finds that the time
13  reflects both successful public access efforts and a series of mistaken public filings that required
14  unnecessary work by Plaintiffs and the Court. Thus, the Court reduces the requested time for
15  sealing to 21.3 hours.

16         **c.   Discovery**

17         Defendant also challenges the 656.3 hours Plaintiffs submit for discovery, with particular
18  focus on the time spent by Mr. Parker and Daniel Edelman, both senior attorneys, on document
19  review and the hours Benjamin Edelman claims for attending depositions during which he never
20  spoke.

21         Plaintiffs break their discovery hours into three categories: 198 hours for discovery, 234
22  hours for document review, and 224.3 hours for depositions. Of the total, 426.8 hours were
23  expended by senior lawyers (Mr. Cutter, Mr. Parker, B. Edelman, and D. Edelman) and 229.5
24  hours were expended by "associates." As with the class certification briefing, although the hours
25  expended by Ms. Tran and Mr. Price would appear reasonable, there is no evidence that either one
26  is an admitted attorney. Absent such evidence, these hours are excluded.

27         As to the four senior attorneys, Plaintiffs explained at the hearing that their firm model
28  requires partners to devote substantial time to discovery and document review. Daniel Edelman

United States District Court
Northern District of California

explains that he needed to conduct document review to identify documents relevant to class certification. D. Edelman Decl. ¶ 7. While the Court agrees that partners may be able to review documents efficiently because they know what to look for, the Court finds that the submitted hours reflect no such efficiency here. Daniel Edelman and Mr. Parker together seek nearly 100 hours to review documents—specifically, 1,455 documents spanning 11,645 pages, *see* Hearing Transcr. at 45:23-24—that Benjamin Edelman represents he was able to review and notate in their entirety in only 19 hours. *See* B. Edelman Supp. Decl. ¶ 14. Accordingly, the Court reduces the hours requested for document review to reflect the amount of work an attorney of Mr. Parker and Daniel Edelman's skill would be expected to accomplish in a given amount of time. The hours are reduced to allow 67 hours for document review.

As for Benjamin Edelman's hours for the depositions, he admits that he did not speak during the depositions, but explains that he listened and assisted Mr. Parker remotely by drafting questions, identifying documents, and noting unclear answers. B. Edelman Supp. Decl. ¶ 15. The Court finds the requested 21.1 hours to be entirely unreasonable for these tasks, and reduces the time to 2 hours. The hours Mr. Parker requested for depositions are reasonable and allowed in full.

### d.  Case Management, Settlement, and Trial Preparation

The Court also finds the 97.6 hours requested for case management to be unreasonable. The parties attended only four case management conferences and submitted five joint statements that numbered less than ten pages each. In addition, Benjamin Edelman, who is located in Boston, requests nearly a third of these hours. As with class certification, the Court observes that Mr. Parker did the bulk of the work on case management, with advising by Mr. Cutter and therefore allows 25 and 10 hours, respectively, for their work. The Court finds the 0.8 hours by Daniel Edelman, located in D.C., to be reasonable while the 32 hours requested by Benjamin Edelman, located in Boston, are unsupported and unreasonable. Therefore, the Court allows 5 hours for Benjamin Edelman's case management contributions. As above, because the Court lacks any evidence of Ms. Tran's admission to the bar, her requested hours (1.3) are excluded. In sum, the Court awards 40.8 hours for case management.

Finally, Defendant challenges the 45.4 hours Plaintiffs seek for trial preparation because

16

the work occurred after the parties had agreed to mediate and the Court had moved the trial date to several months away. Opp. at 18-19. The Court agrees that the hours were unreasonable given the posture and schedule of the case and therefore reduces the time to 17 hours. The Court finds the remaining hours, expended on settlement discussions, settlement approval, and this motion, to be reasonable and awards them in full.

Combining the reductions outlined above results in a total award of 1,159.45 hours, detailed in the table below. As explained above, the Court finds these hours to be reasonable in light of the work accomplished, the skill and expertise of the attorneys, and the mix of successful and unsuccessful claims.

|  | JRP | CBC | BE | DE | Ibarra | Tran | Price |
|---|---|---|---|---|---|---|---|
| **Pre-investigation** | 10.2 | 0 | 15 | 0 | 0 | 0 | 0 |
| **Complaints** | 20 | 10 | 10 | 3 | 0 | 0 | 0 |
| **MTD Briefing** | 40 | 15 | 15 | 10 | 0 | 0 | 0 |
| **MTD Hearing** | 10 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Case Management** | 25 | 10 | 5 | 0.8 | 0 | 0 | 0 |
| **Discovery** | 66.9 | 3.3 | 24.7 | 20.6 | 0 | 0 | 0 |
| **Document Review** | 50 | 0 | 12 | 5 | 0 | 0 | 0 |
| **Depositions** | 174 | 0 | 2 | 0 | 0 | 0 | 0 |
| **Class Cert. Briefing** | 70 | 25 | 25 | 95 | 0 | 0 | 0 |
| **Class Cert. Sealing** | 10 | 1.3 | 10 | 0 | 0 | 0 | 0 |
| **Class Cert. Hearing** | 27.5 | 18.5 | 7.2 | 8.5 | 0 | 0 | 0 |
| **23(f) Motion** | 22.2 | 12.8 | 2.5 | 18 | 23.5 | 0 | 0 |
| **Settlement** | 69 | 31.5 | 26.7 | 23.35 | 0 | 0 | 0 |
| **Approval/Fees** | 35 | 6 | 5 | 7.9 | 3.5 | 0 | 0 |
| **Trial Preparation** | 5 | 5 | 5 | 2 | 0 | 0 | 0 |
| **Total** | 634.8 | 138.4 | 165.1 | 194.15 | 27 | 0 | 0 |

### 2.  Lodestar Calculation

Based on the foregoing, the total lodestar calculation is summarized in the following table:

| Attorneys | Hourly Rate | Hours Requested | Hours Excluded | Hours Awarded | Total Tentatively Awarded |
|---|---|---|---|---|---|
| Mr. Parker | $600 | 864.3 | 165.7 | 698.6 | $380,880 |
| Mr. Cutter | $800 | 170.4 | 32.1 | 138.3 | $110,720 |
| B. Edelman | $650 | 350.5 | 185.4 | 165.1 | $107,315 |
| D. Edelman | $800 | 299.7 | 175.55 | 124.15 | $155,320 |
| Ms. Ibarra | $525 | 27 | 0 | 27 | $14,175 |
| Ms. Tran | -- | 0 | 277.8 | 0 | 0 |
| Mr. Price | -- | 0 | 9.5 | 0 | 0 |
| | | | | **Total** | $768,410 |

### 3.  Lodestar Multiplier

Plaintiffs seek a multiplier of 1.2 to 1.5. Mot. at 2. They explain that they bore the entire cost of this litigation and took the case, which has now spanned more than three years, on a purely contingent basis. *See* Cutter Decl. ¶ 6; B. Edelman Decl. ¶ 6; Ibarra Decl. ¶ 9. They argue that this risk, coupled with the significant outcome achieved, warrants a modest multiplier. Defendant argues that such risk is inherent in nearly every class action and a significant outcome is necessary for any recovery of fees under § 1021.5 at all. Opp. at 20-23.

"Although the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Yamada*, 2016 WL 1579705, at *6 (internal citations omitted). "Of those factors, a party's success in the litigation is the 'most critical.'" *Id.* (quoting *Hensley*, 461 U.S. at 436). In addition, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. This provides the

'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).

Applying those principles here, the Court finds a multiplier of 1.2 to be appropriate given the novel issues involved in the case, the substantial benefit obtained for Facebook users who are minors, and the fact that the case was taken on a contingency basis. The following table sets forth the resulting totals:

| Attorneys | Total Tentatively Awarded | Multiplier | Total Awarded |
|---|---|---|---|
| **Mr. Parker** | $380,880 | 1.2 | $457,056 |
| **Mr. Cutter** | $110,720 | 1.2 | $132,864 |
| **B. Edelman** | $107,315 | 1.2 | $128,778 |
| **D. Edelman** | $115,320 | 1.2 | $186,384 |
| **Ms. Ibarra** | $14,175 | 1.2 | $17,010 |
| **Ms. Tran** | 0 | 1.2 | 0 |
| **Mr. Price** | 0 | 1.2 | 0 |
| | | Total | $922,092 |

**C.  Costs**

In addition, Plaintiffs seek $29,115.66 as reimbursement for expenses and costs spent on prosecuting this case. Mot. at 13; *see also* Cutter Decl. ¶¶ 26-29, 31; D. Edelman Decl. ¶ 14. Defendant does not contest the amount, but argues that § 1021.5 does not provide for the recovery of costs. Opp. at 24. Defendant relies on *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254 *as modified on denial of reh'g* (July 26, 2007) for this result. However, while *Benson* explains that "Section 1021.5 . . . does not mention costs" it concludes that "the Legislature clearly intended to authorize recovery of attorney fees in private attorney general actions, but limited the recovery of other expenses to the costs generally allowed in litigation." *Id.* at 1283. In other words, rather than preclude any award of costs, "the Legislature intended Code of Civil Procedure section 1033.5, the general costs statute, to apply." *Id.*

1    As a result, the Court finds that Plaintiffs may seek costs under § 1033.5, which permits

2    costs for, *inter alia*, filing and motion fees, certain travel expenses, and service. The statute

3    additionally provides that "[i]tems not mentioned in this section and items assessed upon

4    application may be allowed or denied in the court's discretion." Cal. Civ. Pro. Code § 1033.5(c)

5    (4). Allowable costs include those that were "reasonably necessary to the conduct of the litigation

6    rather than merely convenient or beneficial to its preparation" and "reasonable in amount." *See*

7    Cal. Civ. Pro. Code § 1033.5(c)(2) and (3). Having reviewed Plaintiffs' table of Costs and

8    Expenses, *see* Cutter Decl. Exh. E, the Court finds that each item meets these standards.

9    Accordingly, the Court GRANTS Plaintiffs' request for $29,115.66 in costs.

10    **D.   Incentive Awards**

11    Finally, Plaintiffs seek an incentive payment of $5,000 for each named minor Plaintiff, I.B.

12    and J.W. Mot. at 13-15. Plaintiffs argue that I.B. and J.W. were critical to the success of this case,

13    which benefitted not only themselves but also millions of minor Facebook users, and that they

14    devoted significant time and energy to it. *Id.* at 14; *see also* I.B. Decl., ECF 142-7; J.W. Decl.,

15    ECF 142-8. Defendant does not oppose this request.

16    "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

17    are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th

18    Cir.2003). "The district court must evaluate their awards individually, using 'relevant factors

19    including the actions the plaintiff has taken to protect the interests of the class, the degree to which

20    the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff

21    expended in pursuing the litigation . . . .'" *Id.* "Incentive awards are fairly typical in class action

22    cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

23    The Court finds that I.B. and J.W. devoted significant time and effort to protect the

24    interests of the class, responding to "written questions from Facebook's lawyers" and requests for

25    production, making declarations, traveling to and attending depositions, and spending days

26    discussing the details of the case with their parents and lawyers. J.W. Decl. ¶¶ 3-6; I.B. Decl. ¶¶ 3-

27    7. As discussed at length above, the Court also finds that the case conferred a significant public

28    benefit. Thus, the incentive award is appropriate. *See, e.g., Chao v. Aurora Loan Servs., LLC,* No.

United States District Court
Northern District of California

20

C 10-3118 SBA, 2014 WL 4421308, at *4 (N.D. Cal. Sept. 5, 2014) (nothing that $5,000 payment is presumptively reasonable in this district). Accordingly, the Court GRANTS Plaintiffs' request for an incentive payment of $5,000 for each named minor Plaintiff.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorneys' Fees is GRANTED AS MODIFIED. Plaintiffs shall recover attorneys' fees in the amount of $922,092, costs in the amount of $29,115.66, and incentive payments in the amount of $5,000 for each of I.B. and J.W.

**IT IS SO ORDERED.**

Dated: May 23, 2016

BETH LABSON FREEMAN
United States District Judge