D. VICTORIA BARANETSKY (SBN 168423)
vbaranetsky@revealnews.org
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141

Attorney for Intervenor The Center for Investigative
Reporting, Inc.

# IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GLYNNIS BOHANNON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | CASE NO.: 12-CV-01894 BLF<br><br>**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS** |

1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND......................................................................................................................... 2

   I.   FACTS ABOUT THIS CASE............................................................................... 2

   II.   INTERVENOR'S INTEREST ON BEHALF OF THE PUBLIC............................ 5

ARGUMENT .............................................................................................................................. 6

   I.   CIR SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED
       PURPOSE OF UNSEALING COURT RECORDS ......................................... 6

   II.   THERE IS A STRONG PRESUMPTION THAT THE CLASS CERTIFICATION
        RECORDS IN THIS CASE ARE OPEN TO THE PUBLIC............................ 7

      A.   The First Amendment and Common Law Rights of Access Apply to Civil
          Court Records to Ensure Accountability and Integrity ..................................... 8

      B.   The Records Filed Under Seal In Connection With Plaintiffs' Motion for
          Class Certification Are Presumptively Open to the Public ............................... 9

          1.   The Compelling Reasons Standard Applies In This Case Pursuant to the
              Common Law.................................................................................................. 9

          2.   First Amendment Right of Access Also Applies..................................... 12

   III.  THE PARTIES CANNOT MEET THE BURDEN OF OVERCOMING THE
        PRESUMPTIVE RIGHT OF ACCESS ......................................................... 12

      A.   There Is No Compelling Reason to Justify Continued Stealing ..................... 13

          1.   Spurious Claims of Trade Secrecy Are Not Compelling Reasons
              to Seal............................................................................................................ 13

          2.   The Parties Have Not Shown Any Commercial Interest that Overcomes the
              Right of Access. ........................................................................................... 16

          3.   The Passage of Time Has Diminished Any Compelling Reasons and Good
              Cause. ........................................................................................................... 17

          4.   The Public Will Benefit from Making the Videotapes Public Outweighing
              Any Possible Compelling Interest and Good Cause. ...................................... 18

CONCLUSION .......................................................................................................................... 20

i

# TABLE OF AUTHORITIES

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)................................................................. 10

*Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992).................................... 7

*Bohannon v. Facebook*, No. 5:12-cv-01894 (N.D. Cal. 2016) ..................................................... 1

*California ex rel. Lockyer v. Safeway*, 355 F. Supp. 2d 1111 (C.D. Cal. 2005)............... 7, 16-18

*Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092
    (9th Cir. 2016) .................................................................................. 1, 7-8, 10-12, 17

*Clark v. Bunker*, 453 F.2d 1006 (9th Cir. 1972) ....................................................................... 14

*Cohen v. Trump*, 2016 U.S. Dist. LEXIS 69985 (S.D. Cal. May 27, 2016)...........9, 11, 13-15, 19

*Corvello v. Wells Fargo Bank N.A.*, 2016 U.S. Dist. LEXIS 11647,
    (N.D. Cal. Jan. 29, 2016) ...................................................................................1, 11, 16

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014).......................................6, 8, 19

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975).................................................................... 19

*Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) .............8, 13, 17

*Globe Newspaper Co. v. Superior Court*, 456 U.S. 596 (1982) ........................................... 6, 8

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34
    (C.D. Cal. 1984) ............................................................................................... 17-18

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ........................................................ 9

*In re Midland National Life Insurance Company Annuity Sales Practices Litigation*, 686 F.3d
    1115 (9th Cir. 2012) ............................................................................................ 10

*In re Target Corporation Customer Data Breach Litig.*, Case No.
    14-md-2522, Order (D. Minn. Aug. 13, 2015)............................................................ 14, 17

*Joint Equity Cmte of Investors of Real Estate Partners, Inc. v. Coldwell Banker
    Real Estate Corp.*, 2012 U.S. Dist LEXIS 12964 (C.D. Cal. Jan. 24 2012)........................ 11

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ...................... 7-14, 17

*Labrador v. Seattle Mortg. Co.*, 2010 U.S. Dist. LEXIS 95763 (N.D. Cal. Sept. 1, 2010) ... 11-12

*Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012) ....................................................................... 13

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ................................................................... 10

*Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589 (1978) ...................................................... 8, 13

ii

*Oliner v. Kontrabecki*, 745 F.3d 1024 (9th Cir. 2014) ................................................................ 17

*Opperman v. Path, Inc.*, 2016 U.S. Dist. LEXIS 17222 (N.D. Cal. Feb. 11, 2016) .... 1, 11, 14, 16

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ............................................................... 3

*Phoenix Newspapers v. United States Dist. Ct.*, 156 F.3d 940 (9th Cir. 1977) ......................... 12

*Philips v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 176826 (N.D. Cal.
Dec. 20, 2016) ............................................................................................................ 11, 13-14

*Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986) ............................ 9, 13

*Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) ............................. 8

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ................................................... 8

*San Jose Mercury News, Inc. v. District Court*, 187 F.3d 1096 (9th Cir. 1999) ................... 7, 18

*Seattle Times Co. v. U.S. District Court*, 845 F.2d 1513 (9th Cir. 1988) ................................. 12

*Shahinian v. Kimberly-Clark Corp.*, 2016 U.S. Dist. LEXIS 185773
(C.D. Cal. July 29, 2016) ....................................................................................................... 11

*Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016) ......................... 11-14

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) ........................................... 9

*United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188 (9th Cir. 2011) ... 8-9

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) ................................... 7

*United States v. Kravetz*, 706 F.3d 47 (2013) .......................................................................... 10

*United States v. Nosal*, No. 10-10038, 2012 WL 1176119 (9th Cir. April 10, 2012) ................. 4

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................. 10

MEMORANDUM ISO MOTION TO INTERVENE AND UNSEAL JUDICIAL RECORDS
CASE NO. 12-CV-01894-BLF

**PRELIMINARY STATEMENT**

Over six years ago this case was initiated in federal district court to remedy alleged injuries resulting from Facebook's consumer practices used on children.  The business practices of Facebook are one of the most discussed issues before our nation today.  Given the extraordinary facts of this case, the need for transparency is paramount, but central documents remain under seal.  Through this action, The Center for Investigative Reporting, d/b/a Reveal from The Center for Investigative Reporting ("CIR" or "Reveal") seeks to unseal court records concerning Facebook's actions that impact vulnerable consumers in order to better inform the American public about this critically important issue.

Intervenor CIR is the oldest non-profit investigative newsroom in the country.  CIR now moves the Court, on behalf of the public, to unseal court records to be viewed by everyone.  Specifically, CIR seeks to vindicate the public's common-law and First Amendment rights of access to judicial documents, by unsealing documents attached to the motion to certify, including various exhibits and all other sealed records in this case.  *See Bohannon v. Facebook*, 5:12-cv-01894 (N.D. Cal. 2014) (ECF Nos. 103, 104) (sealing orders).

These documents should be released because they are judicial records to which the public has qualified access rights under both the common law and First Amendment, as more recent case law dictates.  The Ninth Circuit held in a recent 2016 decision, after the sealing took place in this case, that the presumption of access applies to records attached to any motion that "is more than tangentially related to the merits of a case."  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  Courts subsequently have held that motions for class certification meet this standard.  *See, e.g., Opperman v. Path, Inc.*, 2016 U.S. Dist. LEXIS 17222, at *20 (N.D. Cal. Feb. 11, 2016); *Corvello v. Wells Fargo Bank N.A.*, 2016 U.S. Dist. LEXIS 11647, at *3 (N.D. Cal. Jan. 29, 2016).

Under the First Amendment, such sealing of judicial records is only permissible where a compelling interest can overcome the strong presumption in favor of access.  Here, the interests in continued secrecy – are insufficient to overcome the overwhelming public interest at hand where Americans' privacy, security, and safety are impacted.

1

1    This is especially the circumstance where there is no longer a need for ongoing secrecy,

2  retroactively and going forward, particularly where Facebook's already specious interests are

3  even less convincing as time passes and Facebook's former business practices are no longer

4  relevant or applicable in the fast-paced technology industry.  Moreover, indefinite sealing of

5  judicial orders is contrary to the long-standing American tradition of open access to the courts.

6  The public has a right under the First Amendment and the common law to have access to judicial

7  records involving private entities that shed light on their grave impact on the public.

**<u>BACKGROUND</u>**

**I.    FACTS ABOUT THIS CASE**

10    The sealed documents in this case involve Facebook's profound impact on those most

11  vulnerable in our society through is old payment system called Facebook Credits.  ECF 18 at ¶ 2.

12  As alleged in the Second Amended Complaint, "This case arises from minor children purchasing

13  from Defendant Facebook certain virtual goods, incurring charges for void or voidable purchases

14  that Facebook has misrepresented to be 'final' and nonrefundable, under a scheme that does not

15  comply with either California or Federal law regulations."  ECF 18 at ¶ 1.

16    In this case, Plaintiffs filed an administrative motion to seal hide Exhibits A, D, E, F, G,

17  H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, DD, EE, FF, GG, II, JJ KK, LL, MM, NN, OO, PP,

18  RR, SS to the Declaration of John R. Parker Jr. In Support of Plaintiffs' Motion for Class

19  Certification ("Plaintiffs' MPA") as well as portions of Plaintiffs' Memorandum of Points and

20  Authorities in Support of Their Motion for Class Certification.  *See* ECF 88 at ¶¶ 2-3.  These

21  documents were also attached to the Declaration of Tiffany T. Tran in Support of Plaintiffs'

22  Administrative Motion to Seal.  "This is information that Facebook designated Confidential

23  under the terms of the Stipulated Protective Order entered on May 13, 2014."  *Id.*  "Facebook

24  then made a Supplemental Motion to Seal more limited portions of Parker Exhibits D, E, F, and

25  V which were filed entirely under seal and Parker Exhibits G, H, I K, L, M, N, O, P, Q, R, U,

26  DD, EE, FF, GG, II, JJ, KK, LL, MM, NN, OO, and PP in their entirety."  ECF 88 at ¶¶ 3.  The

MEMORANDUM ISO MOTION TO INTERVENE AND UNSEAL JUDICIAL RECORDS
CASE NO. 12-CV-01894-BLF

1    question as to what should be sealed was highly contested throughout the case. ECF 159 at 4.

2    The Court then issued two sealing orders according to a good cause standard. ECF 103, 104.

3        In its support of Plaintiffs' Administrative Motion to File Certain Documents Under Seal

4    the company wrote, "Facebook submits that public disclosure of the documents or information

5    could cause competitive or other financial harm to Facebook or could create a security risk for

6    Facebook and its users if not sealed." ECF 88 ¶ at 2.  It continued "Facebook is cognizant of

7    Civil Local Rule 79-5 and the importance of public access to documents.  However, a sealing

8    order is nevertheless appropriate where the party requesting such an order establishes that 'the

9    document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to

10   protection under the law.'  Civ. L.R. 79-5(a)." *Id.*

11       In more factual detail, Facebook explained it does not publicly disclose information about

12   its refund procedures and criteria because "[t]he mechanisms, procedures, algorithms, and

13   criteria that Facebook uses to process payments and refund are highly sensitive" and "if

14   Facebook's refund policies became public, Facebook would need to alter its policies, which

15   would very likely be detrimental to the user experience on Facebook." ECF 88 ¶ at 7.  In

16   addition, "The mechanics of how Facebook detects fraudulent behavior" is exempt. *Id.*

17   Applying a "good cause standard" instead of the compelling reasons standard that the Ninth

18   Circuit has more recently explained to be correct, the court agreed to seal a majority of the

19   documents. *See generally* ECF 103, 104.

20       Facebook is the operator of the world's largest social network, described by the Supreme

21   Court as "the 21st century equivalent of public streets and parks." *Packingham v. North*

22   *Carolina*, 137S. Ct. 1730, 1735 (2017).  As revealed in recent Congressional hearings,

23   Facebook's public duty goes well beyond its already immense role in stewarding the world's

24   public square.  Given the recent Cambridge Analytica scandal and Facebook's public reports that

25   98% of its quarterly revenue comes from advertising, its role in stewarding consumer data is of

26   the utmost importance in protecting consumer's health, safety, and privacy. *See* Reuters,

27   *Facebook Now Has an Almost Advertising-Only Business Model*, FORTUNE, May 5, 2017,

28   http://fortune.com/2017/05/05/facebook-digital-advertising-business-model/, Declaration of D.

1  Victoria Baranetsky ("Baranetsky Decl."), Ex. C.  In addition, its non-ad revenue, almost entirely

2  composed of video game players buying virtual currency is yet another place of business where

3  consumer health and safety may be impacted.  All three of these areas - that gravely impact the

4  public – may be further hindered by the sealed documents filed in this case.

5      Moreover, the importance of these documents are underscored by the fact that these

6  issues are allegedly impacting minors.  As stated in the complaint, "Facebook knows that many

7  of its users are minors." ECF 18 at ¶ 13.  It continues, "Anyone thirteen years old or older can

8  open an account on Facebook…Many Facebook apps are targeted to minors [which…are by

9  design, highly addictive." *Id.* at ¶¶ 16-17.  "Unlike major e-commerce hubs on the internet, like

10  Google, Netflix, eBay, Twitter, and Amazon, which have restricted minors' access to their

11  websites, Facebook specifically permits minors to register and use its service." *Id.* at ¶¶ 13

12  (*citing United States v. Nosal*, 2012 WL 1176119, *5 (9th Cir. April 10, 2012)).

13      The public interest in these matters is immense.  As recent news media reports have

14  shown, Facebook's business choices are perhaps one of the most reported on stories of the year.

15  Olivia Solon, *Has Your Child Bought A Facebook App Without Asking? You Can Get a Refund*,

16  THE GUARDIAN, July 27, 2016, https://www.theguardian.com/technology/2016/jul/27/facebook-

17  refund-children-app-purchases-lawsuit (Baranetsky Decl., Ex. D); John Stempel, *Facebook To*

18  *Face U.S. Class Action Over Children's Online Purchases*, REUTERS, March 11, 2015,

19  https://finance.yahoo.com/news/facebook-face-us-class-action-175900704.html (Baranetsky

20  Decl., Ex. E); Cecilia Kang, *Google Agrees To Pay $19 Million In FTC In-App Kids Lawsuit*,

21  THE WASHINGTON POST, Sept. 4, 2014, https://www.washingtonpost.com/news/the-

22  switch/wp/2014/09/04/google-agrees-to-pay-19-million-in-ftc-in-app-kids-lawsuit/ (Baranetsky

23  Decl., Ex. F).  Additionally, public outcry over Facebook's choices have been met by

24  Congressional and Parliamentary hearings aimed at understanding Facebook's business structure

25  and historical practices.  John Verhovek, *Facebook Identifies Ongoing Political Influence*

26  *Campaign, Bans 32 Pages And Accounts*, ABCNEWS.COM, Jul. 31, 2018,

27  https://abcnews.go.com/Politics/facebook-identifies-ongoing-political-influence-campaign-bans-

28  32/story?id=56940772 (Baranetsky Decl., Ex. G).

4

## II.   INTERVENOR'S INTEREST ON BEHALF OF THE PUBLIC

Founded in 1977, intervenor CIR is the oldest investigative newsroom in America listened to by millions of public radio listeners around the country and nearly 3 million podcasts listeners every month.  CIR operates *Reveal* an online news site at revealnews.org and *Reveal* a weekly public radio show.  It has received countless awards for its reporting and been nominated for various awards like the Pulitzer Prize and Oscar for best documentary.  Baranetsky Decl. at ¶ 2.

As an investigative newsroom, CIR is uniquely situated to assess the desire its listeners, viewers, and readers have to view the unsealed court records.  That desire remains voracious.  Given the public outcry surrounding the recent Cambridge Analytica controversy as well as Facebook's other business practices, the public has an immediate and overwhelming interest in understanding the facts surrounding the company's data and customer practices over time, particularly those affecting minors.

Many members of the public have learned about Facebook's procedures through the news media—from news reports to podcasts to magazine articles—but there is no substitute for the insight and illumination that only the judicial records can provide.  *See, e.g.*, Carole Cadwalladr and Emma Graham-Harrison, *Revealed: 50 Million Facebook Profiles Harvested for Cambridge Analytica In Major Data Breach*, THE GUARDIAN, Mar 17, 2018, https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election (Baranetsky Decl., Ex. H); Matthew Rosenberg, Nicholas Confessore and Carole Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. TIMES, Mar. 17, 2018, https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (Baranetsky Decl., Ex. I); Joseph Bien-Kahn, *Inside the Decades-Long Fight to Protect Your Children's Data From Advertisers*, N.Y. MAG., Aug. 13, 2018, http://nymag.com/selectall/2018/08/coppa-smart-home-iot-who-protects-childrens-data.html (Baranetsky Decl., Ex. J); Louise Matsakis, *As Zuckerberg Smiles To Congress, Facebook Fights State Privacy Laws*, WIRED, April 12, 2018, https://www.wired.com/story/despite-zuckerberg-pledge-facebook-fights-state-privacy-laws/ (Baranetsky Decl., Ex. K).

1    Moreover, these illuminations are appropriate where countervailing interests are low.

2    Over the past several years, Facebook has explicitly stated that it is continually changing tactics

3    – to improve its product.  According to these business tactics, it is highly suspect that the records

4    requested here – dating back six years – have any value other than providing historical context

5    for a company in an industry that is pressed to change on a near daily basis.  Verhovek, *supra*

6    (Baranetsky Decl., Ex. G).  Indeed, the Facebook Credit system which is the focus of this

7    litigation – is no longer in operation.  *Facebook Scraps Its Own Credit System*, BBCNEWS.CO.UK

8    June, 20, 2012, https://www.bbc.co.uk/news/technology-18519921 (Baranetsky Decl., Ex. L).

9    Counsel for CIR sought both counsels' stipulation that the judicial record be unsealed.

10   Plaintiffs' counsel represented that his clients will not oppose the motion.  *See* Baranetsky Decl.

11   at ¶ 4.  Defendant's counsel stated his client believes the Court correctly found that there were

12   "compelling reasons" to support its sealing orders in this case, ECF 113, but believes the request

13   is premature because Facebook would voluntarily assess the sealed documents.  *Id* at ¶ 4.

14   Defendant provided no concrete timeline.  Regardless, these judicial records are completely and

15   indefinitely hidden from public view.  Accordingly, CIR brings its motion to unseal the

16   documents, which are currently in the custody of the Clerk of Court as sealed records of this

17   proceeding.  CIR is committed to making publicly available whatever portion of the records are

18   unsealed in a way that educates the public through its reporting and by providing context for

19   these important documents.  In particular, if the documents are unsealed, CIR intends to produce

20   a documentary and radio special on the general subject of this litigation.  *Id.* at ¶ 2.

21                                      **ARGUMENT**

22   **I.    CIR SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED**

23   **       PURPOSE OF UNSEALING COURT RECORDS**

24       The press has standing to assert the right of public access to court records and

25   proceedings.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982)

26   ("representatives of the press and general public must be given an opportunity to be heard on the

27   question of their exclusion" from court proceedings) (quotation omitted); *see also Courthouse*

28   *News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (stating "media's right of access to

6

1    judicial proceedings is essential not only to its own free expression, but also to the public's.").

2    The Ninth Circuit has recognized a right of "limited intervention" for such purposes. *Beckman*

3    *Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (allowing non-party to

4    intervene to challenge protective order).

5        Courts routinely permit non-party news organizations to intervene in civil cases for the

6    limited purpose of requesting that records be unsealed. *See, e.g.*, *United States v. Index*

7    *Newspapers LLC*, 766 F.3d 1072, 1082 (9th Cir. 2014) (newspaper intervened in civil contempt

8    proceeding to bring unsealing motion); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,

9    1176 (9th Cir. 2006) (newspaper intervened in civil lawsuit for limited purpose of unsealing

10   judicial records); *San Jose Mercury News, Inc. v. District Court*, 187 F.3d 1096, 1101 (9th Cir.

11   1999) (same); *California ex rel. Lockyer v. Safeway*, 355 F. Supp. 2d 1111, 1112 (C.D. Cal.

12   2005) (same).

13       CIR has been reporting on the questions involving this case for its long-term

14   investigation.  Access to the records at issue is critical for CIR to understand the basis of the

15   Court's rulings, and to present readers with a full and accurate account of the proceedings and

16   historical decisions that helped lead the company to its current state of affairs.  Consistent with

17   the authorities discussed above, CIR respectfully requests leave to intervene for the limited

18   purpose of asserting the public's (and its own) right of access and challenging the sealing of

19   records in this matter.

20   **II.    THERE   IS   A   STRONG   PRESUMPTION   THAT   THE   CLASS**

21          **CERTIFICATION RECORDS IN THIS CASE ARE OPEN TO THE PUBLIC**

22       Now, years after this case was initially filed, this motion presents an opportune time to

23   unseal the court records related to one of the most impactful and important news stories vital to

24   the public interest today.  The exhibits and other sealed documents in this case are subject to the

25   First Amendment and common-law rights of access. *Center for Auto Safety*, 809 F.3d at 1096.

26   Whatever reasons that could previously override the presumption of access are no longer

27   applicable.  Many years after the close of this case the technology and business of Facebook has

28   advanced at such celerity as to make the sealed information largely obsolete and sealing no

1     longer necessary, especially given that Facebook Credits system is now closed.

2     **A.**     **The First Amendment And Common Law Rights Of Access Apply To Civil**

3     **Court Records To Ensure Accountability And Integrity**

4     Both the First Amendment and common law provide the public and the press with a

5     presumptive right of access to court records and proceedings. *Courthouse News Serv.*, 750 F.3d

6     at 786; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (common law); *Press-*

7     *Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 506-10 (1984) (First

8     Amendment); *Center for Auto Safety*, 809 F.3d at 1096 (same).  It is now well-established that

9     the presumptive right of access applies to criminal as well as civil proceedings. *Richmond*

10     *Newspapers, Inc.*, 448 U.S. at 580-81; *Center for Auto Safety*, 809 F.3d at 1096.

11     This right of access "ensure[s] that th[e] constitutionally protected 'discussion of

12     governmental affairs' is an informed one." *Globe Newspaper Co. v. Superior Court*, 456 U.S.

13     596, 604-05 (1982) (quotation omitted).  "This is no quirk of history; rather, it has long been

14     recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers v.*

15     *Virginia*, 448 U.S. 555, 569 (1980).  As far back as the 17th century, leading English jurists "saw

16     the importance of openness to the proper functioning of a trial; it gave assurance that the

17     proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct

18     of participants, and decisions based on secret bias or partiality." *Id.*  Indeed, Ninth Circuit

19     courts, "start with a strong presumption in favor of access to court records," *Foltz v. State Farm*

20     *Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), "based on the need for federal courts,

21     although independent – indeed, particularly because they are independent – to have a measure of

22     accountability and for the public to have confidence in the administration of justice." *Center for*

23     *Auto Safety*, 809 F.3d at 1096 (quotation omitted).

24     The common-law right of access is an exceptionally broad right.  Only "a narrow range

25     of documents" is exempt from the common-law right of public access. *Kamakana*, 447 F.3d at

26     1178.  "When the common law right of access applies to the type of document at issue in a

27     particular case, 'a "strong presumption in favor of access" is the starting point.'" *United States*

28

1    *v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quoting

2    *Kamakana*, 447 F.3d at 1178; citation omitted).

3          To determine if the First Amendment right of access applies courts employ a two-part

4    test.  The court must ask 1) "whether the place and process have historically been open to the

5    press and general public," and 2) "whether public access plays a significant positive role in the

6    functioning of the particular process in question."  *Press-Enterprise v. Superior Court of*

7    *California (Press-Enter. II)*, 478 U.S. 1, 8-9 (1986) (citation omitted).  This test is commonly

8    referred to as the "experience and logic" test.  *See, e.g., id.* at 9.  The same test applies to the

9    disclosure of "*documents* generated as part of a judicial proceeding."  *Times Mirror Co. v.*

10   *United States*, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (citations omitted).  However, in the

11   Ninth Circuit, "logic alone, even without experience, may be enough to establish the right" of

12   access.  *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (citations omitted).

13         **B.     The Records Filed Under Seal In Connection With Plaintiffs' Motion For**

14   **Class Certification Are Presumptively Open To The Public**

15              **1.   The "Compelling Reasons" Standard To Applies In This Case Pursuant To**

16              **The Common Law**

17

18         Subsequent to the court's sealing decision in this case, the Ninth Circuit clarified that

19   common law places an especially high bar to maintain documents involved in a class

20   certification case under seal, leaving no doubt that it applies to the records filed under seal in

21   connection with Plaintiffs' Motion for Class Certification.  According to this new standard, the

22   sealed records Facebook designated as confidential in connection with the motion for class

23   certification should be unsealed, especially as time has elapsed.  *See* ECF 81 (motion to seal),

24   103 (granting redactions).

25         Traditionally, the Ninth Circuit drew a distinction between "dispositive" motions, where

26   courts applied the strong presumption of access and required a compelling reason to seal a

27   document, in contrast to "non-dispositive" motions, where a mere "good cause" standard was

28   required.  *Cohen v. Trump*, 2016 U.S. Dist. LEXIS 69985, at *9 (S.D. Cal. May 27, 2016) (citing

9

1   *Kamakana*, 447 F.3d at 1180.  In 2016, the Ninth Circuit "disapproved of such a binary

2   approach." *Id*. (internal citation omitted).  Instead, it clarified in an watershed decision, that the

3   key in determining which standard to apply "will turn on whether the motion is more than

4   tangentially related to the merits of a case." *Center for Auto Safety*, 809 F.3d at 1101.

5        More specifically, in *Center for Auto Safety* the Ninth Circuit ruled that a district court

6   wrongly refused to unseal documents attached to a preliminary injunction, even though it was

7   "technically [a] nondispositive" motion.  809 F.3d at 1100-03.  In that case, the parties filed

8   confidential discovery documents in connection with a preliminary injunction for a class action

9   lawsuit against Chrysler alleging defects in vehicles. *Id*.  The Center for Auto Safety moved to

10  intervene and to unseal the documents, which the district court denied by relying on a less

11  stringent "good cause" standard for "non-dispositive motions. *Id*.

12       The Ninth Circuit vacated the district court's order and remanded the case so that the

13  district court could apply the appropriate, "compelling reasons" standard for dispositive motions

14  because the motion in practice "may certainly affect litigants' substantive rights." *Id*.  There the

15  court reasoned:

16          Given that preliminary injunctions are "extraordinary and drastic"
            remedies, *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012), they may certainly
17          affect litigants' 'substantive rights,' *see Kravetz*, 706 F.3d at 54, *Amodeo II*, 71 F.3d at
            1049. …A bright line rule that does not afford a presumption of access to a motion for
18          preliminary injunction because it is 'nondispositive' conflicts with the Third and
            Eleventh Circuits and is, at best, in tension with the First and Second Circuits.
19
                  *In re Midland National Life Insurance Company Annuity Sales Practices
20          Litigation*, 686 F.3d 1115 (9th Cir. 2012), illustrates that our circuit looks past the literal
            dispositive/nondispositive label. In that case, an intervenor moved to unseal documents
21          attached to a *Daubert* motion. *Id*. at 1118. The district court, like the district court here,
            concluded that the documents should remain under seal because "the *Daubert* motion was
22          non-dispositive," as it "would not have been a determination on the merits of any claim
            or defense.' *Id*. at 1119. We rejected the district court's focus on whether the motion was
23          literally 'dispositive': 'That the records are connected to a *Daubert* motion does not, on
            its own, conclusively resolve the issue.' *Id*.
24

25  *Center for Safety*, 809 F.3d at 1094-96.

26       Applying the logic of *Center for Auto Safety*, a vast majority of courts in the Ninth

27  Circuit and sister circuits have held that class certification is to be treated as a dispositive motion,

28  because, as the Supreme Court noted in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the

10

1  "rigorous analysis" conducted by district courts to ensure that Federal Rule of Civil Procedure

2  23(a) is satisfied at the class certification stage "frequently...will entail some overlap with the

3  merits of the plaintiff's underlying claim." *Id*. at 351 (citations and quotation marks omitted).

4  For that reason, multiple courts in this circuit applied the compelling reasons test in those

5  circumstances. *See, e.g.*, *Opperman*, 2017 U.S. Dist. LEXIS 39060, at *5, *20 (finding that a

6  class certification motion involves issues that are "more than tangentially related to the merits of

7  the case"); *Corvello v. Wells Fargo Bank N.A.*, 2016 U.S. Dist. LEXIS 11647 (N.D. Cal. Jan. 29,

8  2016) (same); *Cohen v. Trump*, 2016 U.S. Dist. LEXIS 69985, at *3 (S.D. Cal. May 27,

9  2016) (same); *Shahinian v. Kimberly-Clark Corp.*, 2016 U.S. Dist. LEXIS 185773, at *1 (C.D.

10  Cal. July 29, 2016) (same); *Philips v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 176826, at *4

11  (N.D. Cal. Dec. 20, 2016).  Indeed, courts in other jurisdictions have applied this same logic.

12  *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 307-308 (6th Cir. 2016).

13       Indeed, even before *Center for Auto Safety*, many district courts in this circuit applied the

14  presumption of access to class certification-related filings. *See Labrador v. Seattle Mortg. Co.*,

15  2010 U.S. Dist. LEXIS 95763, at *6 (N.D. Cal. Sept. 1, 2010) (denying a sealing motion,

16  observing "that many of the concerns the Ninth Circuit identified in *Kamakana* for applying the

17  'compelling reasons' test to dispositive motions are present" in the class certification context);

18  *Joint Equity Cmte of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate*

19  *Corp.*, 2012 U.S. Dist LEXIS 12964, at *2 (C.D. Cal. Jan. 24, 2012) (chastising defendants for

20  filing documents attached to class certification motion under seal, admonishing that "parties

21  seeking to seal court documents must establish 'compelling reasons' for doing so").

22       These authorities require the same result here.  In its brief in support of the motion to

23  seal, Facebook correctly stated – at that time – that the Ninth Circuit merely requires "[w]here a

24  party seeks to seal documents relating to non-dispositive motions, the party need only show

25  'good cause' for such an order." ECF 87 at 2 (citing *Kamakana*, 447 F.3d at 1180).  In its order,

26  this court relied on that standard to seal a majority of judicial records. ECF 103 at 2-3.

27  However, given the changes in this Circuit's case law, the court now must apply the more

28  demanding "compelling standard" and unseal the records in this case.

11

### 2.  First Amendment Right Of Access Also Applies

The "logic" test is satisfied where public access "would further the public's interest in understanding" the judicial system. *Phoenix Newspapers v. United States Dist. Ct.*, 156 F.3d 940, 948 (9th Cir. 1977).  For instance, the Ninth Circuit has held that the constitutional right of access applies to records of bail proceedings where it furthered "policy concerns of a public educated in the workings of the justice system and a system subjected to healthy public scrutiny." *Seattle Times Co. v. District Court*, 845 F.2d 1513, 1516 (9th Cir. 1988).  "Openness of the proceedings will help to ensure this important decision is properly reached and enhance public confidence in the process and result." *Id.* at 1517.

Applying this logic demands public access to class certification records at issue in this case.  As a general matter, access to civil pre-trial records promotes "a measure of accountability" for courts and allows "the public to have confidence in the administration of justice.'" *Center for Auto Safety*, 809 F.3d at 1096.  And in the specific context of class certification, courts have held that sealing records "would not only hinder the public's understanding of the judicial process, it would also slow the development of the law on class certification." *Labrador*, 2010 U.S. Dist. LEXIS 95763, at *5-6.  Therefore, the constitutional right of access also applies to these records.

### III.   THE PARTIES CANNOT MEET THE BURDEN OF OVERCOMING THE PRESUMPTIVE RIGHT OF ACCESS

Where the presumptive right of access applies, the party seeking to keep documents sealed must meet rigorous constitutional and common law requirements.  Under the common law, the party seeking to keep a record under seal "bears the burden of overcoming this strong presumption" in favor of access by articulating "compelling reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (quotations omitted).  The "court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret," and "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis

12

or conjecture." *Id.* at 1179 (quotations and alterations omitted).  Under the First Amendment standard, the proponent of sealing must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Leigh v. Salazar*, 677 F.3d 892, 899-900 (9th Cir. 2012) (quoting *Press-Enter. II*, 478 U.S. at 8).

Here, the parties tried to demonstrate good cause for sealing; but a "'good cause' showing will not, without more, satisfy a 'compelling reasons' test." *Kamakana*, 447 F.3d at 1180 (quoting *Foltz*, 331 F.3d at 1135-36).  Ultimately, the parties did not, and cannot, meet these extremely strict requirements here.

**A.  There Is No Compelling Reason To Justify Continued Sealing**

A party seeking to seal the judicial record "bears the burden of overcoming this presumption by . . . articulat[ing] compelling reasons supported *by specific factual findings*" *Kamakana*, 447 F.3d at 1178-79 (citations omitted) (internal quotation marks omitted) (emphasis added).  Examples of a 'compelling reason' include "when a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" *Id.* (quoting *Nixon*, 435 U.S. at 598-99).  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136).

**1.  Spurious Claims Of Trade Secrecy Are Not Compelling Reasons To Seal**

"The Ninth Circuit has adopted the definition of 'trade secrets' that "consist[s] of any formula, pattern, device or compilation of information which *is used* in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Philips v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 176826, at *6 (citing *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b)) (emphasis added).  Where trade secrets are no longer relevant or merely speculative, courts will rule in favor of unsealing. *See Cohen v. Trump*, 2016 U.S. Dist. LEXIS 69985, at *3 (S.D. Cal. May 27, 2016).  Courts tend to also consider whether parties are using broad trade secret

1    exemptions to shield embarrassing information given that, "[t]he mere fact that the production of

2    records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation

3    will not, without more, compel the court to seal its records." *Philips*, 2016 U.S. Dist. LEXIS

4    176826, at *6.

5         In class certification actions, courts unseal documents even where parties allege materials

6    are trade secret because the supposedly confidential material was outdated and obsolete.  For

7    instance, in *Cohen v. Trump*, the class action lawsuit involving Trump University, the court

8    applied the "compelling reasons" standard and ruled in favor of disclosure, despite arguments of

9    trade secrets being at issue because the business concerns were no longer viable.  2016 U.S. Dist.

10   LEXIS 69985, at *9.  There, the court rejected Trump's overall "blanket assertion [that] the

11   disputed materials constitute[d] trade secrets" as "wholly speculative" where Trump University

12   had stopped enrolling new students in 2010.  *Id.*

13        This court's decision in *Opperman* is also instructive.  There, one member of the putative

14   class action tried to keep exhibits sealed that it claimed would disclose trade secrets including

15   "features, algorithms, and concepts that have not yet been implemented or publicly released." *Id.*

16   at *21-22.  But as the court explained, this was merely a technical way of characterizing the

17   party's "uploading and further use of users' contact information," which, as the central subject of

18   the litigation, was referred to in the complaint and other court documents.  *Id.* at *22-23.  The

19   court rejected both companies' sealing requests, adding that "the mere fact that the publication of

20   records may lead to a litigant's embarrassment or exposure to further litigation is not sufficient to

21   meet the 'compelling reasons' standard." *Id.* at *24 (quoting *Kamakana*, 447 F.3d at 1179).

22        In addition to courts in this circuit, courts around the country have also unsealed where

23   there are spurious trade secret claims.  *See Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d

24   299, 307-308 (6th Cir. 2016) (reversing a district court's sealing orders in a class action lawsuit

25   brought against Blue Cross Blue Shield alleging the company engaged in price-fixing and

26   rejecting Blue Cross' concern about disclosing "competitively-sensitive financial and negotiating

27   information"); *In re: Target Corporation Customer Data Breach Litig.*, Case No. 14-md-2522,

28   Order (D. Minn. Aug. 13, 2015) (rejecting Target's argument that disclosure would risk another

MEMORANDUM ISO MOTION TO INTERVENE AND UNSEAL JUDICIAL RECORDS
CASE NO. 12-CV-01894-BLF

1   data breach, ruling that Target had failed to demonstrate how statements about Target's alleged

2   negligent conduct prior to and during the data breach in 2013 constituted a disclosure of

3   confidential material).

4        Here, just as in other cases, the compelling reasons standard cannot be met where claims

5   of trade secrets are now outdated and spurious. First, the Facebook Credits system which was

6   the central focus of this litigation was shut down in 2012, after this litigation began. Baranetsky

7   Decl. Ex. L. Any documents concealed to protect this system, which is no longer in use should

8   therefore be unsealed. Many of the other sealed documents, such as Exhibits G, H, and M have

9   also likely become outmoded. For instance, these "studies done by a Facebook employee in

10   Facebook's Risk Operations ("RiskOps") group" which included classifications used by

11   Facebook to detect fraud also seem to be dubiously described as trade secret. ECF 103 at 4.

12   Given the immense changes that have taken place in the last six years, it is hard to imagine that

13   Facebook employs any of the techniques used over five years ago. Facebook similarly argued

14   Exhibits DD and GG, which included documents regarding Facebook's policies for granting

15   refunds in "certain specified circumstances" could "invit[e] abuse by users with fraudulent intent

16   who wish to exploit Facebook's system by receiving undeserved refunds." *Id.* at 6. Once again,

17   it is unclear whether Facebook even uses any of these policies and practices in its business.

18   Therefore, just as the blanket claims in *Cohen* were dubious because they no longer were

19   applicable, here too many of the documents involving alleged trade secret claims are likely no

20   longer applicable in such a quick-paced market and where the Credits program is no longer in

21   use.

22        Moreover, given the recent news investigations into Facebook's policies it is unclear

23   whether much of this information has already become public. Therefore, just as some of the

24   documents in *Cohen* were unsealed because other news outlets had published the information, it

25   is important to understand whether many of these documents may be public today.

26        Lastly, the court held in this case, that the Richardson Declaration, filed concurrently

27   with Defendant's Motion, "meets the good cause standard because four documents it seeks to

28   have sealed could competitively disadvantage it in the future, as the documents describe

15

1    'mechanisms, procedures, algorithms, and criteria that Facebook uses to process payments and

2    refunds,'" ECF 104 at 2-3.  However, just as in *Opperman*, 2016 U.S. Dist. LEXIS 17222, at

3    *23, while these algorithms and procedures may be enough to meet the good cause standard,

4    they are unlikely to meet the compelling reasons standard when they are likely no longer used,

5    applicable, and any harms from concerns involving "refunds" are likely more speculative.

6          **2.  The Parties Have Not Shown Any Commercial Interest That Overcomes The**

7              **Right Of Access**

8          The records filed under seal in connection with Plaintiffs' Class Certification Motion

9    relate to the historical business practices of Facebook.  There is nothing in the description of

10   these exhibits or sealed motions to suggest that any plausible commercial interests requires

11   withholding any part of these records, let alone sealing them in entirety.

12         To the contrary, in analogous cases courts routinely find that parties' asserted commercial

13   interests are insufficient to overcome the presumptive right of access.  *See Safeway*, 355 F. Supp.

14   2d at 1112 (rejecting that sealing would allow "competitive disadvantage" as it would require

15   court to "speculate" about how the companies might be affected "at some point in the future in

16   an unidentified labor dispute."); *Opperman*, 2016 U.S. Dist. LEXIS 17222, at *23 (rejecting

17   Apple's claims that exhibits that ostensibly "'protect the integrity' of the process by which Apple

18   reviews and approves apps" filed in connection with a class certification motion should be sealed

19   because they "reflect internal Apple processes and deliberations that Apple regards as highly

20   confidential.").

21         For instance, in *Corvello*, this court denied Wells Fargo's request to seal exhibits despite

22   claims that exhibits to a class certification motion "contain confidential, commercially sensitive

23   information" and "publication of the information 'could pose significant commercial harm to

24   Wells Fargo.'" 2016 U.S. Dist. LEXIS 11647, at *3.  The court rejected these speculative

25   assertions, observing that "[p]erhaps Wells Fargo is concerned that these materials make it look

26   bad" (because the materials support the plaintiffs' contention that Wells Fargo administered the

27   HAMP program in an irresponsible fashion), but a litigant's embarrassment is not enough to

28   justify concealing material from the public." *Id.* Many courts have found that litigants who try to

1   seal records because of concerns about commercial harm are actually shielding negative

2   publicity.

3        Here, the court ordered for five exhibits containing information regarding to an inquiry

4   by a game developer, Rovio Entertainment Ltd., to Facebook regarding refunds associated with

5   one of Rovio's games to be sealed because they ostensibly were commercial in nature.  At the

6   time, Facebook contended that disclosure of these documents would reveal information about its

7   refund policies and practices, and permit users to exploit Facebook's system and could harm

8   both companies' business dealings with other corporations in the future.  *Id.* at 5.  Just as the

9   documents in *Target* were rejected for risking another data breach, here Facebook's allegations

10   depend on past conduct and do not specifically explain how these future threats may occur.  *See*

11   *also Safeway*, 355 F. Supp. 2d at 1117 (requiring the court "speculate" about how the companies

12   might be affected "at some point in the future in an unidentified labor dispute.").

13        Moreover, to the extent that any business information in the sealed documents is

14   embarrassing, that is not enough to shield the information from the public. "is not the duty of

15   federal courts to accommodate the public relations interests of litigants." *In re Coordinated*

16   *Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34, 40 (C.D. Cal. 1984); *see*

17   *also Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) ("[t]he only reasons provided

18   for sealing the records—to avoid embarrassment or annoyance to [a party to bankruptcy

19   proceedings] and to prevent an undue burden on his professional endeavors – are not

20   'compelling'").

21        **3.  The Parties' Stipulated Protective Order Does Not Support Sealing**

22        A party's reliance on a stipulated protective order does not constitute a compelling reason

23   or overriding interest to justify sealing judicial records.  *See Center for Auto Safety*, 809 F.3d at

24   1095 n.2 (rejecting argument that a party "should have been able to 'confidently rely on the

25   district court's protective order' to shield these documents from public scrutiny"); *Kamakana*,

26   447 F.3d at 1183 ("reliance on a blanket protective order is unreasonable and is not a

27   'compelling reason' that rebuts the presumption of access"); *Foltz*, 331 F.3d at 1133 (because

28   blanket protective orders are "by nature overinclusive," a party's "reliance on a blanket

17

1  protective order in granting discovery and settling a case, without more, will not justify"

2  sealing); *Safeway*, 355 F. Supp. 2d at 1121 ("[d]efendants should have known that they could not

3  rely on the discovery protective order to bar the public's access to the summary judgment record

4  … any such reliance was unreasonable").

5        Here, Defendant asked the Court to seal Exhibits RR and SS but, pursuant to a stipulation

6  between the parties. *See* ECF 86-1.  Controlling case law bars the parties from relying on such a

7  stipulation to keep the records under seal.  *San Jose Mercury News*, 187 F.3d at 1103.

8  ### 4.  The Public Will Benefit From Making The Videotapes Public Outweighing Any

9  ### Possible Compelling Interest And Good Cause

10        In right of access cases the intervenor does not need to establish any particular public

11  interest to support unsealing. *Safeway*, 355 F. Supp. 2d at 1124.  Instead, the court must

12  "strongly presume the public's interest in access and require a showing of compelling reasons to

13  rebut it." *Id.* (companies opposing newspaper's unsealing request sought to "erroneously

14  reverse[] the burden by seeking to require an evidentiary showing of the public interest").

15  However, the level of public interest in a particular case can lean the scales in favor of

16  transparency.  As courts have made clear, the "interest in access to court proceedings in general

17  may be asserted more forcefully when the litigation involves matters of significant public

18  concern." *Petroleum Prod. Antitrust Litig.*, 101 F.R.D. at 38.

19        Over the past several years the public attention on Facebook's choices has been a central

20  focus in the public discourse.  Given the public focus on Facebook's ability to detect fraud as

21  well as its data practices following the Cambridge Analytica controversy, the public has an

22  immediate and overwhelming interest in understanding the history of facts surrounding

23  Facebook's practices over time.  This is especially important as the facts of this case were

24  focused on minors.  Moreover, the documents involved in this case are not just issues for the

25  Facebook community they address larger societal issues and challenges that impact our entire

26  democracy.  They enable the public not only to understand what happened but also based on that

27  information what should be done.

28

1     Given the immense importance of this subject and the "public interest in understanding

2     the judicial process is heightened" as well as the importance of understanding the "integrity of

3     these court proceedings at issue," movants ask this court to unseal.  *See Cohen*, 2016 U.S. Dist.

4     LEXIS 69985, at *9 (unsealing where the Post had "made a strong argument that the public

5     interest in understanding the judicial process is heightened" given that Trump had become "the

6     front-runner" for the 2016 presidential race")."

7     Moreover, many years have passed, and where the merits of this case have long been

8     decided and there are no direct harms that would come from unsealing the records, protecting the

9     "integrity of the judicial process" cuts in favor of unsealing that would "'bring to bear the

10    beneficial effects of public scrutiny upon the administration of justice,'" *Courthouse News Serv.*,

11    750 F.3d at 786 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491-92 (1975)).  Even if the

12    good standard were to ostensibly apply, it appears inapplicable given the amount of time that has

13    passed.

14                                              **CONCLUSION**

15    For all the reasons stated, CIR respectfully requests that this Court grant its request for

16    limited person intervention, and order the immediate unsealing of the following exhibits filed

17    under seal in support of, and opposition to, Plaintiffs' Motion for Class Certification.

18                                              Respectfully submitted,

19

20    Dated:  September 17, 2018

21                                              D. VICTORIA BARANETSKY (SBN 168423)

22

23

24

25

26

27

28

---

19