COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
KRISTINE FORDERER (278745)
(kforderer@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| I.B., by and through his Guardian ad Litem GLYNNIS BOHANNON and J.W., by and through his Guardian ad Litem STEVEN WRIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  12-CV-01894 BLF<br><br>**FACEBOOK, INC.'S OPPOSITION TO THE CENTER FOR INVESTIGATIVE REPORTING, INC.'S MOTION FOR LEAVE TO INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS**<br><br>Date:       December 13, 2018<br>Time:       9:00 a.m.<br>Dept.:      Courtroom 3 (5th Floor)<br>Judge:      Hon. Beth Labson Freeman |

I.   **INTRODUCTION**

In response to the Motion for Leave to Intervene and to Unseal Judicial Documents ("Motion to Unseal") filed by the Center for Investigative Reporting ("CIR"), Facebook has carefully reconsidered the exhibits that CIR seeks to unseal (the "Sealed Exhibits" or "Exhibits")[1] and will not oppose unsealing of most documents, as identified below.

However, CIR's Motion to Unseal should be denied in whole or in part as to the other Exhibits for which public disclosure still raises serious ongoing concerns.  CIR's Motion asks how Facebook could have an ongoing need to seal documents in this case when "Facebook Credits"—the specific payment method that Plaintiffs used to make the transactions in dispute— are no longer used.  The answer is that while "Facebook Credits" are no longer in use, users can still make purchases on the Facebook platform through other methods (including in-app purchases in games) and Facebook still handles refund requests relating to such purchases. Facebook thus has a significant and ongoing interest in preventing fraud and abuse in its refund process.

The Court has already performed a "detailed analysis" of the Sealed Exhibits and determined that the risks of potential abuse and other "compelling reasons" support sealing of the Sealed Exhibits under applicable law.  (*See* Dkt. No. 115.)  These reasons still apply, as confirmed in the Declaration of John Green ("Green Declaration") filed herewith, and there is no basis for the Court to reverse its prior ruling on these specific materials.

Accordingly, Facebook respectfully requests that the Court deny CIR's Motion to Unseal as to **Exhibits G and FF** and as to portions of **Exhibits D, E, V, JJ, OO and Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Class Certification ("Plaintiffs' MPA")**.

---

[1] As identified in CIR's Motion, the Sealed Exhibits consist of Exhibits D, E, F, G, H, I, K, L, M, N, O, P, Q, R, U, V, DD, EE, FF, GG, II, JJ, KK, LL, MM, NN, OO, and PP to the Declaration of John R. Parker Jr. in Support of Plaintiffs' Motion for Class Certification, and Plaintiffs' MPA. (Motion to Unseal at 2.)

Cooley LLP
Attorneys At Law
San Francisco

1.

FACEBOOK'S OPP. TO CIR'S MTN FOR LEAVE TO
INTERVENE AND UNSEAL JUDICIAL DOCUMENTS
CASE NO. 12-CV-01894 BLF

## II.   BACKGROUND

### A.   The Current Status of Facebook's Payment Operations

Although some of Facebook's relevant business practices have changed since the Court ruled on sealing in late 2014, many of them have not. Thus, much of the information contained in the Sealed Exhibits is still commercially sensitive today. For instance, Facebook no longer offers "Facebook Credits"—the original subject of the lawsuit—which were a form of virtual currency that users could purchase and then spend on Facebook's platform. But Facebook still allows users to purchase various items through Facebook's platform, including purchases in various third-party applications and games on Facebook's platform. (*See* Green Declaration at ¶ 9.) Facebook still handles refund requests in connection with these purchases, including requests from minors, and still deals with attempted fraud and abuse of its payment processes and refund policies. (*Id.*)

### B.   The Sealed Exhibits

The Sealed Exhibits, filed by Plaintiffs in connection with their Motion for Class Certification, relate to Facebook's systems for processing payments on its platform. Specifically, the documents discuss or reflect Facebook's refund policies, fraud detection practices, and/or strategic and competitive information about Facebook's business. As the Court previously found, there are "compelling reasons" to maintain the confidentiality of the Sealed Documents (Dkt. No. 115), which fall into the following categories:

- **Refund Policies**: Facebook does not publicly disclose the specific circumstances in which it will provide refunds for the simple reason that sharing this information would allow dishonest users to exploit Facebook's policies. Armed with this information, users could tailor their refund requests to Facebook's specific parameters that they know make it more likely that Facebook will grant their request. This causes harm not only to Facebook (and to honest users), but also to the third-party developers of the games and apps on Facebook's platform. Further, Facebook's policies and procedures for processing refund requests were developed over multiple years by Facebook's analysts and engineers. Disclosure of this

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S OPP. TO CIR'S MTN FOR LEAVE TO
INTERVENE AND UNSEAL JUDICIAL DOCUMENTS
CASE NO. 12-CV-01894 BLF

information would give Facebook's competitors the unfair benefit of Facebook's labor and analysis.  The Court agreed with this justification for sealing.  (*See, e.g.* Dkt. No. 103 at 5:12-15 ("***It seems logical for Defendant to be concerned, given their past experiences with such dishonest users, that public disclosure of their refund and fraud detection policies could cause the company financial harm***.") (emphasis added); *id.* at 7:15-18 ("The Court agrees with Facebook that disclosure of the information contained in these seven exhibits could ***cause Facebook economic harm, by both permitting users to learn how refunds are granted in certain circumstances, see id., and also informing Facebook's competitors what circumstances have merited and currently merit refunds***[.]") (emphasis added).

- **Fraud Detection Practices**:  Facebook has various systems in place in order to detect and deter fraudulent action on its platform.  This information is not shared with the public because, in order for it to work, it must be kept out of the hands of fraudsters.  Public disclosure of this information could make Facebook's systems more vulnerable to fraudsters.  Additionally, as also described above with respect to Facebook's refund policies, the methods and procedures that Facebook uses to detect and monitor fraud are the product of many years of development by Facebook.   Public disclosure of this information would give Facebook's competitors an unfair benefit.  The Court agreed with this justification for sealing.  (*See, e.g.* Dkt. No. 103 at 4:21-24 ("The Court agrees with Defendant that ***disclosure of this information … could be used by Facebook's competitors to harm the company economically***[.]") (internal citations and quotations omitted) (emphasis added); *id.* at 5:20-22 ("Facebook contends that this information, if disclosed, would ***harm its ability to detect and manage fraudulent behavior. Such disclosures could cause Facebook financial and operational harm***.") (internal citations and quotations omitted) (emphasis added).")

- **Sensitive Business and Financial Information**:  The final category of documents reflect sensitive information about Facebook's business strategies and finances.

Cooley LLP
Attorneys At Law
San Francisco

3.

Facebook's Opp. to CIR's Mtn for Leave to
Intervene and Unseal Judicial Documents
Case No.  12-CV-01894 BLF

Public disclosure of this information would put Facebook at an unfair competitive disadvantage in dealing with its partners and competitors. The Court agreed with this justification for sealing.  (*See, e.g.*, Dkt. No. 103 at 6:3-5 ("***This information, if publicly disclosed, could result in Facebook's competitors learning about Facebook's research to reduce the number of chargebacks***, in particular portions that discuss the effectiveness of the methods Facebook uses.) (internal citations and quotations omitted) (emphasis added); *id.* at 6:11-12 ("Disclosure of this information could *give Facebook's competitors valuable information regarding return processes*.") (emphasis added).)

## C.    Facebook's Review of CIR's Request

When Facebook first heard from CIR regarding its interest in the Sealed Exhibits, Facebook agreed to engage with CIR to determine whether any of the documents could be unsealed.  Rather than engaging with Facebook in that process, CIR filed its Motion to Unseal with the Court.  Nonetheless. Facebook has continued its review process in good faith and agrees that **Exhibits F, H, I, K, L, M, N, O, P, Q, R, U, DD, EE, GG, II, KK, LL, MM, NN, and PP** no longer require sealing given the passage of time and ongoing developments in Facebook's business practices.  Facebook further agrees that **Exhibits D, JJ, OO, and Plaintiffs' MPA** may be disclosed with redactions as set forth in Exhibits 1-4 to the Green Declaration.  However, **Exhibits E, G, V, and FF** present the same concerns that originally required sealing and these documents should remain sealed or redacted in accordance with the Court's prior findings.

## III.    ARGUMENT

### A.    The Court Applied the Proper Legal Standard in its Prior Order.

Throughout its Motion to Unseal, CIR repeatedly, and wrongly, claims that this Court applied the "good cause" standard rather than the "compelling reasons" standard in granting sealing of the Sealed Exhibits.  While the Court referenced the good cause standard in its initial order (Dkt. No. 103), the Court ultimately confirmed that the Sealed Exhibits met the "compelling reasons" standard based on its "detailed analysis":

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

FACEBOOK'S OPP. TO CIR'S MTN FOR LEAVE TO
INTERVENE AND UNSEAL JUDICIAL DOCUMENTS
CASE NO. 12-CV-01894 BLF

1
2
3
4
5
6
7
8

> The Court has already engaged in a detailed analysis of this sealing request. *See* Sealing Order, ECF 103. After Plaintiffs initially requested that these 34 exhibits be sealed because they had been designated confidential or highly confidential by Defendant, Defendant narrowed its request and sought sealing of 24 exhibits in their entirety: Declaration of John Parker Exhibits G, H, I, K, L, M, N, O, P, Q, R, U, DD, EE, FF, GG, II, JJ, KK, LL, MM, NN, OO, and PP; as well as limited portions of five other documents: Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Class Certification and Parker Declaration Exhibits D, E, F, and V.  Pursuant to the analysis provided in the Court's prior sealing order, ECF 103 at 2-8, ***the Court finds the Defendant has shown compelling reasons to seal the documents as requested***[.]

9
10
11
12

(Dkt. No. 115) (emphasis added).  Thus, the entire premise of CIR's Motion—that the Court's prior orders should be reconsidered under the compelling reasons standard—should be rejected.  There is no reason for the Court to reverse its prior conclusion that compelling reasons supported sealing of the Sealed Exhibits, which was entirely consistent with prevailing law.  (*Id.*)

13

**B.    The Court's Order Was Entirely Consistent With Applicable Precedent.**

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Although there is a "presumption in favor of access" to court records, that presumption can be overcome if there is a justification for sealing the record that outweighs the public policy favoring disclosure.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citation omitted).  In weighing the competing concerns, courts must consider "the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes[.]"  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).  As the Ninth Circuit explains, the question of whether "compelling reasons" exist for sealing is "best left to the sound discretion of the trial court."  *See Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016) (citation omitted).  Examples of documents that can be properly sealed under the compelling reasons standard include "sources of business information that might harm a litigant's competitive standing."  *See Center for Auto Safety*, 809 F.3d at 1096-97 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)).

28

CIR suggests that this Court exercised its discretion improperly in sealing the Exhibits at issue, but the authorities that CIR cites in its Motion actually *support* sealing here when read closely.  For instance, CIR relies heavily on *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 U.S. Dist. LEXIS 17222, at *24 (N.D. Cal. Feb. 11, 2016) for the proposition that a litigant's embarrassment about certain records and the prospect of exposure to future litigation cannot justify sealing under the compelling reasons standard.  But this has nothing to do with Facebook's request to seal commercially sensitive information here.   As reflected in Facebook's prior declarations supporting sealing and as this Court found, public disclosure of the Sealed Exhibits could (among other things) cause Facebook to suffer competitive harm.  (*See e.g.*, Dkt. No. 103 at 6:3-4, 11-12, 20-21; 7:17-18.)  *Opperman* confirms that these types of competitive harms are appropriate grounds for sealing under the compelling reasons standard, noting that "sources of business information that might harm a litigant's competitive standing" may be properly sealed. 2016 U.S. Dist. LEXIS 17222, at *21 (quoting *Nixon,* 435 U.S. at 598).

CIR also mischaracterizes the holding of *In re Target Corporation Customer Data Security Breach Litigation*, Case No. 14-md-2522, Order (D. Minn. Aug. 13, 2015).  In *Target*, the court denied a motion to seal various documents related to a data breach because defendant Target failed to demonstrate with "specificity" how the information at issue warranted sealing. *Id.* at p. 3.  However, the court acknowledged that information that would "assist a hacker today in conducting 'reconnaissance' of Target's data security systems" could be properly sealed, even though Target failed to show that the specific documents at issue could be used for that purpose. *Id.  Target* supports sealing here because many of the Sealed Exhibits would, in fact, "assist" fraudsters in conducting "reconnaissance" of Facebook's systems and policies for improper purposes, as explained in the Green Declaration.

**C.      There Are Still "Compelling Reasons" To Seal The Identified Exhibits.**

As noted above, Facebook reviewed each of the specific documents raised in CIR's motion in good faith to assess whether there are ongoing concerns with public disclosure.  With respect to nearly all Exhibits as identified above, Facebook does not oppose CIR's request for unsealing (subject to the redactions as specified in Facebook's proposed order and attached

exhibits).  But as explained in more detail in the Green Declaration, **Exhibits G and FF** (in their entirety), **Exhibits E and V** (as to the portions that were previously redacted) and **Exhibits D and Plaintiffs' MPA** (as to many of the portions that were previously redacted) still raise the same compelling need for confidentiality that supported the Court's prior sealing orders.  CIR's blanket assertion that *none* of the Sealed Exhibits warrants continued sealing is based on its speculation as to "whether Facebook even uses any of these policies and practices in its business" and "whether much of this information has already become public."  (Motion to Unseal at 15.) Facebook has addressed these questions in the Green Declaration, which confirms why **Exhibits D, E, G, V, FF, and Plaintiffs' MPA** continue to raise the concerns that justified sealing per this Court's prior orders.[2]

### D.     The Documents In This Case Have Little To Do With The Current Issues That Are The Premise Of CIR's Request.

In articulating its interest in the Sealed Exhibits, CIR says that these Exhibits are "related to one of the most impactful and important news stories vital to the public today."  (Motion to Unseal at 7.)  The current issues that CIR points to, however, have nothing to do with this litigation or the information in the Sealed Exhibits.  Specifically, CIR claims that "[g]iven the recent Cambridge Analytica scandal and Facebook's public reports that 98% of its quarterly revenue comes from advertising, its role in stewarding consumer data is of the utmost importance in protecting consumer's [*sic*] heath, safety, and privacy."  (*Id.* at 3.)  But this case concerned only the specific issue of minors seeking refunds for in-app purchases under the California Family Code.  It had nothing to do with advertising revenue, stewarding consumer data, or user privacy.  It certainly had nothing to do with Cambridge Analytica or any sort of political advertising or content on Facebook.  It is not clear how CIR's legitimate interest in the *current* issues identified in its Motion (*see id.* at 4) can support accessing confidential information in a case that is at most tangentially related.

---

[2] As set forth in the Green Declaration, Facebook's proposed redactions to **Exhibits JJ and OO** are not substantive, but rather target internal codes, URLs, and any user-identifying information contained in the document.

1    Indeed, the muted level of public interest in this case is confirmed by CIR's citations.

2    CIR says that "the public interest in these matters is immense" but is able to cite only two articles

3    about this case, from 2015 and 2016.  This effectively confirms there is scant public interest today

4    about this case.[3]  (*Id.* at 7.)  Regardless, even if CIR had showed substantial ongoing public

5    concern over this litigation, Facebook has demonstrated the compelling need to maintain sealing

6    of the identified Exhibits herein.

7    **IV.    CONCLUSION**

8    For the reasons described herein, and in the Green Declaration, Facebook respectfully

9    requests that **Exhibits G and FF** remain under seal and **Exhibits E and V** remain redacted

10   pursuant to the Court's prior Orders.  Facebook agrees that **Exhibits F, H, I, K, L, M, N, O, P,**

11   **Q, R, U, DD, EE, GG, II, KK, LL, MM, NN, and PP** may be unsealed and that **Exhibits D, JJ,**

12   **OO, and Plaintiffs' MPA** may be unsealed with the redactions shown in Exhibits 1-4 to the

13   Green Declaration.

14

15   Dated: October 8, 2018                COOLEY LLP
                                          MICHAEL RHODES (116127)
16                                        WHITTY SOMVICHIAN (194463)
                                          BENJAMIN H. KLEINE (257225)
17                                        KRISTINE FORDERER (278745)

18

19                                        /s/ *Whitty Somvichian*
                                          Whitty Somvichian
20                                        Attorneys for Defendant
                                          FACEBOOK, INC.
21

22

23   188368607

24

25

26   _____
     [3] In fact, CIR actually speculates that the Sealed Exhibits will not have "any value" at all, except
27   as "historical context" given that Facebook no longer uses the Facebook Credits system.  (*See*
     Motion to Unseal at 6 ("[I]t is highly suspect that the records requested here—dating back six
28   years—have any value other than providing historical context for a company in an industry that is
     pressed to change on a near daily basis[.]").)