**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GLYNNIS BOHANNON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 12-cv-01894-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS** <br><br> [Re: ECF 173] |

Before the Court is a motion by the Center for Investigative Reporting ("CIR") to intervene and unseal certain documents filed by Defendant Facebook, Inc. in support of its opposition to Plaintiffs' motion for class certification. Mot., ECF 173. For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

**A. Factual Background**

The Court previously described the factual background of this case in its Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification:

> In October 2011, Plaintiff I.B., a minor, asked his mother Glynnis Bohannon for permission to spend $20 on his Facebook account to purchase Facebook Credits to use in a game called Ninja Saga.[FN 1]  I.B. gave his mother $20, and used her Wells Fargo MasterCard to purchase Facebook Credits. I.B. claims he was unaware that Facebook would store this credit card information, and thereafter continued to make in-game purchases in Ninja Saga. I.B. believed these purchases were being made with virtual currency, and that his mother's credit card was not being charged for these purchases. Glynnis Bohannon's card was ultimately charged several hundred dollars. Ms. Bohannon sought a refund from Facebook, but was not provided one until after this action was filed. *See* [Third Amended Compl. ("TAC") ¶ 28, ECF 50]; Second Amended Compl., ECF 18 at ¶ 28 ("Since being served with the initial complaint in this action, Facebook has apparently provided a 'courtesy' refund to Ms. Bohannon."). I.B. is a resident of Arizona. TAC ¶ 8.

> [FN 1] Facebook Credits were developed by Facebook as a virtual currency payment system. A user who wanted to make a purchase within Facebook would buy Facebook Credits, which could then be redeemed for various items or applications on Facebook. In 2013, Facebook Credits were discontinued and replaced with a system called Facebook Payments.
>
> In December 2011, Plaintiff J.W., a minor, took his parents' debit card without their permission and began to make a series of charges on Facebook through the use of Facebook Credits. These charges totaled over $1,000. Unlike I.B., J.W. did not have his parents' initial permission to make charges on Facebook. Upon learning of J.W.'s actions, his father, Steven Wright, contacted Facebook to dispute the charges and request a refund. In this interaction with Facebook, Mr. Wright stated that neither he nor his wife had authorized the use of their debit card. Facebook provided Mr. Wright with a partial refund of $59.90, despite a Facebook representative telling him that he had "refunded the charges to your funding instrument." TAC ¶ 33. At the time the TAC was filed, the Wrights had not been refunded the remaining $999.30 spent by J.W. without their permission. *See* TAC ¶¶ 31-33. J.W. is a resident of California. TAC ¶ 9.
>
> Both Plaintiffs contend that Facebook misinforms its users, including minors, that "all sales are final." TAC ¶ 4; *see also* Parker Decl. Exh. B. at 1 (stating under "Payment Terms," revised on June 3, 2009, that "[p]urchases of credits are non-refundable"); Parker Decl. Exh. D at 32:4-16 (testimony by Bill Richardson stating that, as of 2012, Facebook's refund policies for individuals between 13 and 17 were the same as its policies for adults, but that policies for minors under 13 were different). Plaintiffs contend that under its policies, Facebook "routinely refuses requests by children and their parents and legal guardians to provide refunds for transactions that are subject to disaffirmance under California law." TAC ¶ 16.
>
> Plaintiffs seek declaratory relief under 28 U.S.C. § 2201, requesting a determination by the Court that purchases made by minors through their Facebook accounts are void or voidable. *See* TAC ¶ 68. Plaintiffs also seek individualized restitution. *See* TAC at p. 20.

Class Certification Order at 1–2, ECF 131.

### B. Procedural Background

Plaintiffs filed this putative class action on April 17, 2012, after which it was subject to several rounds of motions to dismiss, which left only the minor children's claims pursuant to Family Code Sections 6701(c) and 6710. *See* ECF 44, 58. Defendant ultimately answered Plaintiffs' Third Amended Complaint on January 20, 2014. *See* ECF 62. Plaintiffs filed a motion for class certification on August 21, 2014 (ECF 82), along with a motion to seal certain exhibits to their motion because Facebook had designated those exhibits confidential (ECF 81, 85). Facebook filed a memorandum and declaration in support of sealing these exhibits, as well as in

1 support of sealing certain additional exhibits. ECF 87, 88. Plaintiffs opposed Facebook's motion to seal these exhibits, but the Court ultimately agreed with Facebook that sealing was appropriate. *See* Sealing Order, ECF 103. The Court applied the "good cause" standard to its analysis—requiring that Facebook demonstrate only good cause to seal the documents. *See id.* at 2–3.

The Court granted in part and denied in part the motion to certify the class (ECF 131), after which the parties settled, *see* ECF 138. The Court granted the motion approving the class action settlement and issued judgment on May 26, 2016. ECF 163. On September 17, 2018, CIR filed the instant motion to intervene and unseal documents.

## II. LEGAL STANDARD

### A. RIGHT TO INTERVENE

Federal Rule of Civil Procedure 24(b)(1) allows intervention in an action when an applicant "has a claim or defense that shares with the main action a common question of law or fact." The Ninth Circuit has interpreted this rule to encompass a range of scenarios outside the context of litigating a claim on the merits. *See, e.g.*, *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (allowing intervention to challenge protective order). One such scenario is when a non-party news organization seeks to intervene in a civil case to move to unseal judicial records. *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006) (newspaper intervened in civil lawsuit for purpose of unsealing judicial records); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1082–83 (9th Cir. 2014) (newspaper intervened in civil contempt proceeding to bring unsealing motion).

### B. SEALING

"The law recognizes two qualified rights of access to judicial proceedings and records," a First Amendment right of access to criminal proceedings and a common-law right of access to inspect and copy judicial records and documents. *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1192 (9th Cir. 2011). The Ninth Circuit has not squarely addressed whether the First Amendment standard also applies to access to civil proceedings as opposed to access to criminal judicial records and documents. *Perry v. Schwarzenegger*, 302 F. Supp. 3d 1047, 1053–54 (N.D. Cal.

2018). Facebook does not contest the application of the First Amendment here, so the Court assumes without deciding that the First Amendment applies. *See generally* Opp.

Common Law

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana*, 447 F.3d at 1178 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178–79.

However, "while protecting the public's interest in access to the courts, we must remain mindful of the parties' right to access those same courts upon terms which will not unduly harm their competitive interest." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228–29 (Fed. Cir. 2013). Records attached to motions that are "not related, or only tangentially related, to the merits of a case" therefore are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action.").

Facebook does not contest that the compelling reasons standard applies to the documents related to the class certification motion at issue here. *See generally* Opp.

First Amendment

Under the qualified First Amendment right of access, courts must consider whether "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Pub. Co. v. U.S. Dist. Court for*

4

*Dist. of Or.*, 920 F.2d 1462, 1466 (9th Cir. 1990). To determine whether a First Amendment right of access exists to particular proceedings or documents, courts apply the two part "experience and logic" test, asking: (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017). Even when the experience and logic test is satisfied, however, the public's First Amendment right of access establishes only a strong presumption of openness, and "the public still can be denied access if closure . . . is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 n.1 (9th Cir. 1989) (quoting *Press–Enter. Co. v. Super. Ct.*, 464 U.S. 501, 509–10 (1984)).

The First Amendment is "generally understood to provide a stronger right of access than the common law." *Custer Battlefield*, 658 F.3d 1197 n.7. However, as noted above, both the qualified First Amendment and common-law right of access standards require a showing of compelling justifications for the sealing of court proceedings and documents.

The Supreme Court in *Nixon*, 435 U.S. at 598 recognized that the "common-law right of inspection has bowed before the power of a court to insure that its records" do not provide "sources of business information that might harm a litigant's competitive standing"—that is, that compelling reasons support the filing of such records under seal. Since then, countless courts have sealed certain confidential business documents in civil cases, either without reference to the First Amendment or citing *Nixon* to hold that there are sufficiently compelling reasons under the First Amendment to file such documents under seal. Thus, preventing harm to a business's competitive standing seemingly serves as a compelling interest under the First Amendment in civil cases.

### III. DISCUSSION

#### A. Request to Intervene

CIR seeks to intervene to move to unseal previously sealed documents in this case. Facebook does not oppose this request. *See generally* Opp. CIR is the "oldest investigative newsroom in America" and has won numerous journalism awards. Decl. of Victoria Baranetsky ISO Mot. ¶ 2, ECF 173-2. CIR seeks to vindicate the rights of its readers and listeners to have

5

access to documents concerning Facebook's "data and customer practices over time, particularly those affecting minors." Mot. at 5. "CIR intends to produce a documentary and radio special on the general subject of this litigation." Baranetsky Mot. ¶ 3. As the Ninth Circuit has recognized, non-party news organizations, like CIR, have the right to intervene to seek to unseal documents. *See Kamakana*, 447 F.3d at 1176. The Court GRANTS CIR's request to intervene.

**B.    Scope of the Motion to Unseal**

Before addressing the merits of CIR's motion, the Court first identifies the documents contested in this motion.[1]

CIR does not clearly delineate in its motion the exact exhibits it would like unsealed. At times, CIR appears to request that the court unseal documents filed in support of both Plaintiffs' motion for class certification *and* Facebook's opposition thereto. *See* Mot. at 4 (citing ECF 104, regarding sealing the opposition); Mot. at 19 (requesting unsealing of exhibits "filed under seal in support of, *and opposition to*, Plaintiffs' Motion for Class Certification" (emphasis added)). However, Facebook, in its opposition to CIR's motion, identifies CIR's request as pertaining only to Plaintiffs' motion for class certification, not Facebook's opposition—specifically, to Plaintiffs' Memorandum of Points and Authorities ("MPA") and the following Exhibits to the Declaration of John. R. Parker in support of Plaintiffs' Motion for Class Certification: D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, U, V, DD, EE, FF, GG, II, JJ, KK, LL, MM, NN, OO, PP. In reply, CIR no longer references Facebook's opposition to the motion for class certification, but it notes that Facebook has omitted discussion of Exhibits "A, D, E, J, S, T, V, RR, SS." Reply at 5, ECF 185. Thus, as the Court understands it, CIR seeks unsealing of the following documents: portions of Plaintiffs' MPA and the following Exhibits to the Declaration of John. R. Parker in support of Plaintiffs' Motion for Class Certification (ECF 82-3): A, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, DD, EE, FF, GG, II, JJ, KK, LL, MM, NN, OO, PP, RR, and SS.

As Facebook notes in its sur-reply, several of these exhibits are not appropriately at issue in this motion. First, Exhibits J, S, T, RR, and SS were voluntarily withdrawn by Plaintiffs on

---

[1] Plaintiffs do not oppose CIR's motion. *See* Baranetsky Decl. ¶ 4.

October 26, 2014, and are not part of the record on Plaintiffs' motion for class certification. *See* ECF 86, 102. And second, Facebook never requested that Exhibit A be sealed. *See* ECF 87. However, because it appears that Plaintiffs may have failed to file Exhibit A in the public record, even though sealing was denied, Facebook is ORDERED to file an unredacted copy of Exhibit A (ECF 113-5) in the public record.

Next, Facebook does not seek to keep sealed the majority of the remaining exhibits. Specifically, "Facebook agrees that Exhibits F, H, I, K, L, M, N, O, P, Q, R, U, DD, EE, GG, II, KK, LL, MM, NN, and PP may be unsealed." Opp. at 8. As such, Facebook is ORDERED to file unredacted copies of Exhibits F, H, I, K, L, M, N, O, P, Q, R, U, DD, EE, GG, II, KK, LL, MM, NN, and PP (ECF 113-5, 113-6) in the public record.

Finally, Facebook proposes to narrow the previous sealing of Exhibits D, JJ, OO, and Plaintiffs' MPA. *Id.*

In sum then, Facebook requests only that the following documents remain sealed: all of Exhibits G and FF, the previously redacted portions of Exhibits E and V, and newly proposed narrower portions of Exhibits D, JJ, OO, and Plaintiffs' MPA. As described by Facebook, the eight documents at issue here fall into three broad categories, each of which warrants sealing: (1) refund policies; (2) fraud detection practices; and (3) sensitive business and financial information. *See* Opp. at 2–4.

### C. Sealability of Exhibits D, E, G, V, FF, JJ, and OO and Plaintiffs' MPA

Intervenor CIR makes several arguments for why Facebook's alleged business justifications cannot overcome the "strong presumption in favor of access to court records" and CIR's First Amendment right to access these documents. Mot. at 8 (quoting, 331 F.3d at 1135). First, CIR argues that the documents are (likely) no longer relevant to Facebook's business because "[m]any years after the close of this case[,] the technology and business of Facebook has advanced with such celerity as to make the sealed information largely obsolete." Mot. at 7. CIR notes this is "especially" true given that Facebook no longer uses the Facebook Credits system at issue in this case. *Id.* at 8; *id.* at 15 (arguing that policies described in sealed documents might no longer be in use by Facebook); *id.* at 17 ("Facebook's allegations depend on past conduct and do

not specifically explain how . . . future threats may occur."). Relatedly, CIR argues that any argument by Facebook that this information constitutes a trade secret is spurious because the Credits System is no longer in use. Next, CIR argues that some of this information may already be public, given the recent investigations of Facebook. *See id.* at 15. It also argues that the types of information sealed previously under the good cause standard cannot meet the compelling reasons standard because "they are likely no longer used, applicable, and any harms from concerns involving 'refunds' are likely more speculative" and because the asserted commercial interests are not sufficient compelling. *Id.* at 16–18. Finally, CIR notes that the public interest in unsealing these documents is weighty because of the attention that Facebook has garnered over the past few years, particularly with respect to data management. *See id.* at 18; Reply at 5, ECF 185. CIR also notes that this case pertains to minors, which it argues makes disclosure of the documents even more important. Mot. at 18.

Facebook argues in response that the policies in the documents it seeks to seal are still in place today. Specifically, its refund and fraud-detection practices, though no longer in use for its Credits System, are still used for other purchases. *See* Green Decl. ISO Opp. ¶ 9, ECF 179-1. According to Facebook, these processes are still "highly sensitive" and public disclosure would "give third parties a road map to exploiting Facebook's generous refund policies and procedures for their own gain" and would otherwise make Facebook more vulnerable to fraudulent behavior by providing details of how they detect such fraud. *Id.* ¶ 10 (citing ECF 88).

CIR argues in response the Facebook's declaration and facts supporting sealing are "vague [and] unsupported" and do not support a finding of specific competitive harm. Reply at 3–4.

The Court now analyzes each document in turn.

### 1. Exhibit D

Exhibit D contains excerpts of the deposition of Bill Richardson, including information "that Facebook uses and evaluates in connection with purchases made by Facebook users." Green Decl. ¶ 21. Facebook seeks to seal a more limited portion of this document than previously approved by the Court. Facebook attests that this information is sealable because it is highly-sensitive and confidential information from which Facebook "derives economic benefit." *Id.*

8

Disclosure of this information, according to Facebook would "cause Facebook significant harm by giving third parties insight into confidential and sensitive aspects of Facebook's internal operations, and could harm users by giving dishonest individuals insight into the protections Facebook provides against those individuals." *Id.*

The Court has reviewed the document in detail and determined that there are compelling reasons to seal the following portions of the document (ECF 113-5): 27:7–17; 28:2–33:25; 35:1–37:7; 46:1–47:25; 49:24–25; 56:13–25; 57:1–3; 78:1–3; 80:1–15; 85:1–25; 87:1–25; 90:1–25; 119:19–25; 120:1–9; 126:1–127:16; 139:13–141:25; 145:1–148:25; 172:1–25. These portions of the document refer to specific policies and methods that Facebook uses to refund users and confirm users' identities and credit card purchasers, as well as other processes that third-parties could exploit to defraud Facebook. This could cause significant harm to Facebook and its users, and thus constitutes compelling reasons to keep these portions under seal. There are no suitable alternatives to disclosure that would protect the compelling interest in protecting Facebook from such harm. Moreover, the public interest in accessing information about Facebook will be served by unsealing the remaining portions of the document; the narrowly tailored sealable portions would not greatly enhance the information provided to the public. By contrast, there are not sufficiently compelling reasons to keep the remainder of the document under seal.

### 2. Exhibit E

Exhibit E is a copy of Facebook's customer assistance policy. Facebook seeks to seal only a list of factors it considers in determining whether to issue a refund to a specific user. Facebook attests that public disclosure of this information "would allow dishonest users to exploit Facebook's refund policies and practices and to defraud Facebook by asking for refunds according to specific parameters that they know will make Facebook more likely to grant their request, harming both Facebook and its developer-partners." Green Decl. ¶ 17.

The Court agrees. Disclosure of this information would competitively harm Facebook, as users could exploit the refund process but seeking to fraudulently tailor their requests to the factors Facebook considers. There are no suitable alternatives to disclosure that would protect the compelling interest in protecting Facebook from such harm, and the public interest in access to

9

1 information about Facebook does not outweigh this harm. As such, compelling reasons exist to
2 keep the redacted portion under seal.

### 3. Exhibit G

Exhibit G is a study done by a Facebook employee in Facebook's Risk Operations ("RiskOps") group. As described by Facebook, "[t]his particular study evaluates the implications of certain RiskOps practices and policies with respect to suspect fraudulent transactions on accounts belonging to minors." Green Decl. ¶ 13. The document "includes discussion of specific classifications that Facebook uses to identify and monitor fraud as well as numerical data, including dollar amounts, related to the number of transactions during specific periods of time matching certain criteria." *Id.* Facebook attests that disclosure of this information would cause it harm by "revealing proprietary and non-public information about the way that Facebook protects its users against fraud, and its data and data processing capabilities." *Id.*; *see id.* ¶ 14. These policies are still in place at Facebook. *Id.* ¶ 14.

The Court agrees with Facebook. The document describes in detail certain of Facebook's policies and methods for tracking and identifying users and their purchases. Disclosure of this information might allow a third party to exploit these processes and undermine Facebook's protections against fraud, in turn causing harm to both Facebook and its users. At the same time, this information is not directly relevant to the issues of the greatest public interest in relation to Facebook, as argued by CIR. Given that the document references this confidential information throughout, there is no suitable alternative to redacting the entire document. As such, compelling reasons exist to keep this document under seal.

### 4. Exhibit V

Exhibit V contains Facebook's responses to Plaintiffs' First Set of Interrogatories. Facebook seeks to keep under seal portions of this document that were previously sealed. It attests that the information includes highly sensitive, confidential dollar values related to transactions, refunds, and chargebacks involving minors between 2008 and 2014. Facebook says that these dollar values are highly sensitive information, the disclosure of which "would put Facebook at an unfair competitive disadvantage in dealing with its partners and competitors." Green Decl. ¶ 18.

1    The Court disagrees. Facebook provides no specific support for the argument that release of revenue figures from nearly five years ago would impact current partnerships or provide undue advantage to its competitors. By contrast, this information would be of great public interest, particularly since it relates specifically to Facebook's transactions with minors. Facebook must file an unredacted version of this document in the public record.

### 5. Exhibit FF

Exhibit FF is a study that Facebook conducted to improve its efficiency in processing refund requests from users. Facebook asserts that this document reveals "proprietary, technical, and highly confidential information about Facebook's technology related to refund processing and data collection on Facebook's systems," as well as certain business strategy discussions. Green Decl. ¶ 15. Disclosure of this information "would give Facebook's competitors and users with fraudulent intent detailed insight into the systems and technology Facebook uses to process refunds." *Id.*; *see also id.* ¶ 15.

The Court agrees. This document is rife with confidential, sensitive information about Facebook's methods and policies related to refunds, including specific computer code. It also discusses business strategies that Facebook states are still relevant today. Compelling justifications exist for sealing the whole document, and there are no alternatives to disclosure that could protect Facebook from harm. The public interest would not be greatly served by release of this technical information. This document may thus remain under seal.

### 6. Exhibits JJ and OO

In Exhibits JJ and OO, Facebook seeks to seal only "internal URLs, task names, and identification numbers that reflect internal classification systems and identifying information about the specific users, posts, or tasks discussed in these documents." Green Decl. ¶ 19. Facebook has narrowed the prior redactions. The Court agrees that compelling reasons exist to seal these portions of the documents, as disclosure of the information may lead to identification of non-party users of Facebook, which does not directly serve the public interest asserted here. These documents may remain redacted as indicated by Facebook.

### 7. Memorandum of Points and Authorities

Finally, as to the memorandum of points and authorities, Facebook seeks to seal those portions that cite sealable exhibits. Green Decl. ¶ 20. Based on the Court's rulings above, compelling reasons exist to redact those portions of this document that cite or quote sealable exhibits. Facebook is required to file in the public record a version of this document with redactions only of information the Court has deemed sealable.

## IV. ORDER

For the foregoing reasons, the motion to unseal is GRANTED IN PART AND DENIED IN PART. Facebook must file the following unredacted (or lesser redacted) documents into the public record no earlier than 4 days and no later than 10 days from the filing of this Order (*see* Civ. L.R. 79-5(e)(2)):

- Exhibit A
- Exhibits F, H, I, K, L, M, N, O, P, Q, R, U, DD, EE, GG, II, KK, LL, MM, NN, and PP
- Exhibit D, with the following portions redacted: 27:7–17; 28:2–33:25; 35:1–37:7; 46:1–47:25; 49:24–25; 56:13–25; 57:1–3; 78:1–3; 80:1–15; 85:1–25; 87:1–25; 90:1–25; 119:19–25; 120:1–9; 126:1–127:16; 139:13–141:25; 145:1–148:25; 172:1–25.
- Exhibit V
- Exhibits JJ and OO, except as to the limited redactions proposed by Facebook at ECF 179-2 and 179-3.
- The Memorandum of Points and authorities, except as to those portions that directly quote or reference information contained in any exhibit the Court has deemed sealable in this Order.

**IT IS SO ORDERED.**

Dated: January 14, 2019

_____
BETH LABSON FREEMAN
United States District Judge

12